Mark Punzalan (CA Bar No. 247599)
Email: mark@chanpunzalan.com
Nicole Daryanani (CA Bar No. 328068)
Email: nicole@chanpunzalan.com
CHAN PUNZALAN LLP
2000 Alameda de las Pulgas, Suite 154
San Mateo, CA 94403
Telephone: 650.362.4150

*Counsel for Defendants*
*JadooTV, Inc. and Sajid Sohail*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C., | Case No. 3:20-cv-01891-CRB |
| Plaintiff, | **NOTICE OF MOTION AND MOTION TO DISMISS BY DEFENDANT SAJID SOHAIL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| JADOOTV, INC. and SAJID SOHAIL, | *Proposed Order and Application for Telephonic Appearance filed concurrently.* |
| Defendants. | Judge: Hon. Charles R. Breyer |
| | Date: September 25, 2020 |
| | Time: 10:00 am Pacific Time |
| | Location: Telephonic appearance requested |

1

# **TABLE OF CONTENTS**

2  NOTICE OF MOTION ..................................................................................................... 1

3  CONCISE STATEMENT OF THE RELIEF SOUGHT ............................................... 1

4  SUMMARY OF ARGUMENT……………………………………………………………1

5  MEMORANDUM OF POINTS AND AUTHORITIES.................................................. 1

6  I. INTRODUCTION...................................................................................................... 2

7  II.  STATEMENT OF ISSUES TO BE DECIDED.................................................... 2

8  III.  STATEMENT OF FACTS ................................................................................... 2

9  IV.  ARGUMENT ........................................................................................................ 6

10       A. DISH FAILS TO STATE A CLAIM AGAINST MR. SOHAIL. ................................ 6

11         1. Mr. Sohail has not personally guaranteed any JadooTV obligations. ................ 7

12         2. JadooTV is not Mr. Sohail's alter ego.............................................................. 7

13         3. All three of DISH's causes of action are for copyright infringement. ............... 8

14      B. MR. SOHAIL IS NOT SUBJECT TO INDIVIDUAL LIABILITY UNDER THE COPYRIGHT ACT. ..... 8

15         1. DISH has not pled facts linking Mr. Sohail to any direct infringement.............. 9

16         2. DISH has not pled facts that support its contributory infringement claim......... 10

17         3. DISH has pled no facts to support its vicarious infringement claim. ................. 12

18      C. DISMISSAL WITH PREJUDICE IS WARRANTED. ................................................. 14

19  V. CONCLUSION........................................................................................................ 15

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Cases**

3  *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ............................... 9, 10, 12, 13

4  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) .................................................... 6

5  *Caltex Plastics, Inc. v. Lockheed Martin Corporation*, 824 F.3d 1156 (9th Cir. 2016) ................. 6

6  *Cisco Sys. Inc. v. Link US, LLC*, No. 18-CV-07576-CRB, 2019 WL 6682838 (N.D. Cal.) ............ 7

7  *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020 (9th Cir. 2013) ........................................ 12

8  *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003) .......................................................... 6

9  *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188 (9th Cir. 1989) ................................................ 14

10 *Eleanor Licensing LLC v. Classic Recreations LLC*, 21 Cal.App.5th 599 (2018) ........................ 7

11 *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996) ..................................... 12, 13

12 *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389 (9th Cir. 1984) ......................................................... 7

13 *Greenberg v. Sunrun Inc.*, 233 F.Supp.3d 764 (N.D. Cal. 2017) .................................................. 14

14 *Grosset v. Wenaas*, 42 Cal.4th 1100 (2008) ................................................................... 6

15 *Harris v. Amgen, Inc.*, 573 F.3d 728 (9th Cir. 2009) ...................................................................14

16 *Haley v. City of Boston*, 657 F.3d 39, 46 (2011) ................................................................. 2

17 *In re Yahoo! Inc. Shareholder Derivative Litig.*, 153 F.Supp.3d 1107 (N.D. Cal. 2015) ............. 14

18 *Keck v. Alibaba.com Hong Kong Ltd.*, 369 F.Supp.3d 932 (N.D. Cal. 2019) ................................ 12

19 *Kevin Barry v. Ken Gangbar Studio*, Inc., 391 F.Supp.3d 959 (N.D. Cal. 2019) ........................... 10

20 *Lonberg v. City of Riverside*, 300 F.Supp.2d 942 (C.D. Cal. 2004) ............................................... 14

21 *Mesler v. Bragg Management Co.*, 39 Cal.3d 290 (1985) ......................................................... 7

22 *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) .............................................. 1, 10, 11, 12

23 *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ........................................ 10-12

24 *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017) ............................................. 11-12

25 *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007) ................................. 1, 8, 10

26 *Pixion, Inc. v. Citrix Sys. Inc.*, No. 09-CV-03496, 2012 WL 762005, at *8 (N.D. Cal.) ............. 14

27 *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035 (9th Cir. 2010) ........................ 6

28 *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ................................................................. 6

ii

*UMG v. Veoh Networks Inc.*, No. 07-CV-5744-AHM, 2009 WL 334022 (C.D. Cal.) ................. 12

*VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723 (9th Cir. 2019) ...................................... 1, 10

*Wild v. Preventive Pest Control, LLC*, No. 19-CV-01420, 2019 WL 2871155 (C.D. Cal.) ......... 13

*Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773 (1979) ........................................................ 7

**Statutes and Rules**

17 U.S.C. § 106 ................................................................................................. 9

Federal Rule 12(b)(6) ....................................................................................... 1, 6

**Other Authorities**

James F. Fotenos et al., California Practice Guide: Corporations (The Rutter Group 2020) ........ 6

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on September 25, 2020 at 10:00 Pacific Time before the Honorable Charles R. Breyer at the United States District Court for the Northern District of California, Courtroom 6, 17th Floor, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Sajid Sohail, through his counsel of record, will move the Court to dismiss DISH's claims against him in his individual capacity under Federal Rule 12(b)(6). Mr. Sohail respectfully requests that the parties appear for the hearing by telephone and will file an Application and Proposed Order for a Telephonic Appearance concurrently with this Motion.

## CONCISE STATEMENT OF THE RELIEF SOUGHT

Sajid Sohail respectfully requests that the Court again dismiss DISH's claims against him. The Court has already done so once (Dkt. No. 192), and DISH's latest complaint fails to add any allegations sufficient to support a claim against Mr. Sohail in his individual capacity. This motion to dismiss for failure to state a claim under Federal Rule 12(b)(6) is based on this notice and memorandum of points and authorities, the pleadings and papers on file in this action, and such other oral argument and evidence as may be presented at the hearing of this Motion.

## SUMMARY OF ARGUMENT

DISH has alleged that Sajid Sohail, president of JadooTV, has infringed upon its copyrights in his individual capacity in three ways: directly, contributorily, and vicariously. DISH's vague direct infringement theories are insufficient to impose personal liability on Mr. Sohail under *VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723, 731 (9th Cir. 2019) and related cases. The company's contributory infringement theories also fail, as Mr. Sohail did not "(1) ha[ve] knowledge of another's infringement and (2) either (a) materially contribut[e] to or (b) induc[e] that infringement." *Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007). DISH has also not pled any facts sufficient to support a cause of action for vicarious infringement against Mr. Sohail, as none of its allegations show that Mr. Sohail was "[1] profiting from direct infringement while [2] declining to exercise a right to stop or limit it." *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). DISH's complaint should be dismissed with prejudice under Federal Rule 12(b)(6), given its failure to add meaningful allegations.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

DISH Network's original complaint failed to state a claim against JadooTV president Sajid Sohail, and this Court dismissed it. Dkt. No. 192. A month later, DISH is apparently still unwilling to back down: the company has now filed an amended complaint. Dkt. No. 194 ("Complaint"). But the sequel, as usual, is no better than the original. Recognizing that it still has no coherent legal theory of how Mr. Sohail committed any act of copyright infringement, DISH has grasped for every negative anecdote about Mr. Sohail it can find and recklessly tried to stuff those irrelevant "facts" into its existing causes of action. The result is nothing more than a bloated, confused rehash of the allegations that this Court has already found insufficient.

DISH's shockingly personal litigation crusade against Mr. Sohail needs to stop. The company's conduct in this litigation has already taken a tremendous toll on Mr. Sohail and his family, and the Court need not allow DISH to continue to do so. Mr. Sohail respectfully requests that the Court dismiss the claims against him again—this time with prejudice—and put an end to DISH's personal attacks once and for all.

### II.  STATEMENT OF ISSUES TO BE DECIDED

Whether DISH has stated a plausible claim that Mr. Sohail is personally liable for copyright infringement.

### III.  STATEMENT OF FACTS

As it resolves a motion to dismiss, this Court is empowered to "augment the[] facts and inferences" from the plaintiff's complaint "with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley v. City of Boston*, 657 F.3d 39, 46 (2011). Mr. Sohail submits this statement of facts with that broad discretionary power in mind. The "facts" that DISH has alleged about Mr. Sohail in its amended complaint are so extreme and misleading that some additional context is appropriate at the outset here.

#### A.  JadooTV's platform provides access to content for thousands of immigrants.

JadooTV, Inc. ("JadooTV") exists to serve the millions of Pakistani and Afghan expats in

2

the United States who want to watch familiar, culturally relevant content but have no financially feasible way to do so.[1] Subscribing to DISH's service, for instance, is generally cost prohibitive. It costs at least $59.99 per month just to purchase DISH's required basic subscription (this is the company's basic "America's Top 120" plan), then another $34.99 for one of DISH's additional "Urdu: Pak Mega" package of Pakistani programming, plus other miscellaneous fees.[2] The number of recent immigrants who can afford this type of substantial monthly expense is extremely limited. This is exactly the market opportunity that JadooTV recognized and addressed as it launched its new service.

DISH Network L.L.C. ("DISH"), for its part, offers only a limited number of Pakistani channels.[3] The television situation for Afghan expats is even more extreme. Before JadooTV, Afghan-Americans only had access to a small number of local channels via Galaxy 19, a satellite that transmits a limited amount of free, unencrypted Afghan programming.[4] Given the small number of Afghan-Americans, no large company like DISH had the financial incentive to bundle and distribute content that originally aired in Afghanistan. JadooTV's model, though, was perfectly suited to this community, and JadooTV brought channels from Afghanistan to the United States. These types of savvy decisions made JadooTV an instant leader in certain niche communities. Today, JadooTV offers over 100 Pakistani channels and over 40 Afghan channels.[5] To date, DISH still does not have any Afghan programming.

**B.  DISH is a monopolist that uses lawsuits to shut down competitors like JadooTV.**

DISH's antiquated business model is to force international content providers into lopsided exclusive agreements, then weaponize those agreements against any would-be competitors.[6] This

---

1.  *See* JadooTV, Inc., *About Us*, https://jadootv.com/about-us/.

2.  *See* Dish Network, *Urdu TV Packages*, https://www.dish.com/international-packages/urdu/.

3.  *Id.*

4.  *E.g.*, FTList, *All FTA Ku-band channels on Galaxy 19*, https://www.ftalist.com/galaxy19.php.

5.  JadooTV, *Afghan Content*, https://jadootv.com/afghan-content/; JadooTV, *Pakistani Content*, https://jadootv.com/pakistani-content/.

6.  *See, e.g.*, Dish Network, *Sling TV and DISH Announce Landmark Agreement with Zee*, http://about.dish.com/2016-06-02-Sling-TV-and-DISH-Announce-Landmark-Agreement-with-Zee (exclusive agreement with Indian programming group Zee).

1    is exactly what DISH has tried to do to JadooTV since the company emerged on the scene.

2         JadooTV's alternative model is simple: it works with content providers around the world to

3    bring their channels directly to the United States at no cost to them. Instead of locking those

4    content providers into exclusive agreements or charging them tens of thousands of dollars like

5    DISH does, JadooTV negotiates only for the right to replace the local (international) advertising

6    with advertising specific to the regions the channels will ultimately broadcast. JadooTV's business

7    model was ahead of its time at the outset and has been a force disrupting the very conservative

8    television industry since then. Legacy providers like DISH have struggled to keep up and often

9    doubled down on reactionary tactics like trying to litigate their smaller competitors into oblivion.

10        This case is a prime example: from the start, it has been an anticompetitive crusade in the

11   guise of a copyright infringement lawsuit. DISH has unfairly attempted to frame JadooTV as a

12   piracy outfit designed to violate its exclusive rights. This could not be further from the truth.

13   JadooTV simply filled a need for thousands of consumers who were looking for a lower-cost

14   alternative to the bulky, expensive solutions that DISH and other legacy providers offered.

15   JadooTV's content team and other senior leaders are respected television industry executives with

16   deep experience and expertise, not the rag-tag coalition of conspirators that DISH has tried to

17   make them out to be. The hyperbole DISH has now employed in its most recent complaint strains

18   credulity. Despite its innovations, JadooTV is still a very small company with annual revenue of

19   about $10 million per year. How could a company of that size possibly do the type of harm that

20   DISH alleges occurred?

21        **C.  DISH's personal attacks on Mr. Sohail are misleading and inappropriate.**

22        Sajid Sohail has started several successful technology companies over the course of his

23   three-decade career in Silicon Valley. DISH's frivolous lawsuit has had a severe impact on his

24   personal and professional reputation, and he does not take DISH's claims about him lightly.

25        In a last-ditch effort to salvage those claims against him in his personal capacity, DISH has

26   added a slew of additional "facts" about Mr. Sohail to its most recent complaint. Those "facts"

27   range from simply conclusory and misleading to outright false, as Mr. Sohail will ultimately be

28   forced to prove if DISH is allowed to continue litigating its baseless claims.

1    In the simplest possible terms, at no time was Mr. Sohail involved in any infringing

2  activity. Mr. Sohail is a technologist and has certainly been a force in shaping JadooTV's

3  technological and financial growth. But content has never been Mr. Sohail's area of expertise, and

4  Mr. Sohail has never been involved in JadooTV's content process the way that DISH has

5  continued to claim he was. In fact, Mr. Sohail hired two content specialists with deep industry

6  experience to handle most questions related to JadooTV's channels and programming.

7    More specifically, despite DISH's new allegations to the contrary, Mr. Sohail:

8  • never used GitHub to add SASP channels to eMedia (¶ 37)[7];

9  • knew nothing about the YouTube video "Emedia URL 2018" (¶ 42);

10  • had nothing to do with "upload[s of] additional videos to YouTube providing []

11     instructions for Jadoo Users to locate and install the software files needed to integrate

12     SASP channels, including the Protected Channels, into the eMedia and Live TV menus

13     of the Jadoo set-top box and mobile app" (¶ 45);

14  • had no knowledge of the instructional YouTube video DISH refers to (¶ 49);

15  • knows nothing about DISH's claims that "Shah used the alias 'ali85one' to create an

16     account with domain registrar DynDNS, and then used that account to register the

17     domain name seethen.net that was used with computer servers to transmit channels

18     through the SASP, including the Protected Channels." or that "Shah also used the email

19     address ali85one@gmail.com to contract for computer servers with CDNs including

20     Verizon and Highwinds that were used to transmit the SASP." (¶ 64); and

21  • knew nothing about Mr. Shah's alleged promotion of JadooTV boxes through social

22     media accounts, as that was not his responsibility. (¶ 73); and

23  • never received "$224,000 in 'loans' from Jadoo TV following the filing of this action."

24     Cloudstream Media Inc. made a $224,000 loan to JadooTV so JadooTV could set up its

25     new Canadian office. (¶ 9.)

26  DISH's allegations about JadooTV are just as baseless as its new allegations about Mr. Sohail.

27

28  7.  All citations in this list are to DISH's first amended complaint, Dkt. No. 194.

5

For instance, the company never promoted any of the channels DISH alleges it did (¶ 25), never promoted eMedia as a key feature (¶ 26), and never pre-configured any of its set-top boxes to add the channels DISH claims exclusive rights to (¶ 32). All told, DISH's attempt to prop up its deficient complaint with a smattering of new facts fails. Mr. Sohail requests the Court dismiss that complaint a second time and finally put his involvement in this lawsuit to rest.

## IV.  ARGUMENT

Federal Rule of Civil Procedure 12(b)(6) authorizes a motion to dismiss causes of action for "failure to state a claim upon which relief can be granted." A complaint may be dismissed under Federal Rule 12(b)(6) if it "fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corporation*, 824 F.3d 1156, 1159 (9th Cir. 2016). This requirement exists to ensure that every complaint "contain[s] sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Shroyer v. New Cingular Wireless Services, Inc.,* 622 F.3d 1035, 1041 (9th Cir. 2010) ("[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter to state a facially plausible claim to relief.").

Here, DISH has failed to state a claim that Mr. Sohail may be held individually liable. DISH's allegations provide no reason that the Court should ultimately disregard the JadooTV corporate entity or impose individual liability under the Copyright Act, and thus, Mr. Sohail is entitled to dismissal of the claims against him.

### A.  DISH fails to state a claim against Mr. Sohail.

Corporations are separate legal entities. They are distinct from the individuals who create them and distinct from their shareholders. *E.g.*, *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003); *Grosset v. Wenaas*, 42 Cal.4th 1100, 1108 (2008). As such, a corporation's shareholders, directors, and officers are generally not personally responsible for that corporation's obligations.

There are three exceptions to this general rule. First, individuals can personally guarantee corporate obligations if they so choose. *See* James F. Fotenos et al., California Practice Guide:

1 Corporations ¶ 2:48 (The Rutter Group 2020). Second, individuals can be personally liable if a

2 court finds the corporation to be their "alter ego." *Eleanor Licensing LLC v. Classic Recreations*

3 *LLC*, 21 Cal.App.5th 599, 615 (2018). Third, individuals can become personally liable for torts of

4 a corporation if they "directly ordered, authorized or participated in the tortious conduct." *Wyatt v.*

5 *Union Mortg. Co.*, 24 Cal. 3d 773, 785 (1979). None of these exceptions applies here.

6 **1. Mr. Sohail has not personally guaranteed any JadooTV obligations.**

7 DISH makes no allegations that Mr. Sohail has personally guaranteed any of JadooTV's

8 corporate obligations. This first exception is not relevant here.

9 **2. JadooTV is not Mr. Sohail's alter ego.**

10 "[T]he corporate form will be disregarded only in narrowly defined circumstances and only

11 when the ends of justice so require." *Mesler v. Bragg Management Co.*, 39 Cal.3d 290, 301

12 (1985). "To apply the alter ego doctrine, the court must determine (1) that there is such unity of

13 interest and ownership that the separate personalities of the corporation and the individuals no

14 longer exist and (2) that failure to disregard the corporation would result in fraud or injustice."

15 *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984). "The Ninth Circuit has found

16 this standard met when, for example, the individual defendants were 'the sole shareholders of the

17 corporations and the sole partners of the partnerships,' 'converted the assets of the various

18 corporations and partnerships for their own use and dealt with them as if they were one,' and left a

19 number of the corporations undercapitalized." *Cisco Sys. Inc. v. Link US, LLC*, No. 18-CV-07576-

20 CRB, 2019 WL 6682838, at *3 (N.D. Cal. Dec. 6, 2019) (quoting *Flynt Distribution*, 734 F.2d at

21 1393-94). This Court's application of the alter ego doctrine in *Cisco Systems v. Link US* is

22 instructive. There, Cisco sued a limited liability company named Link US and its president, Basem

23 Toma, in his personal capacity. Mr. Toma moved to dismiss Cisco's claims against him, arguing

24 that Cisco had pled no facts regarding the relationship between him and the company he worked

25 for. The Court agreed, noting that Cisco offered nothing more than "conclusory statements that

26 Toma control[led] Link's day-to-day operations and [was] the alter ego of Link[.]" *Id.* It granted

27 his motion and dismissed the claims against him as an individual.

28 The alter ego situation is even clearer here: DISH's complaint does not even contain the

7

1   words "alter ego." DISH's complaint lacks even the "conclusory allegations" that this Court found

2   insufficient to support an alter ego theory in *Cisco Systems*. Since DISH has failed to even raise

3   the issue, there is no reason to impose personal liability under an alter ego theory here.

4   **3.  All three of DISH's causes of action are for copyright infringement.**

5   It is not immediately obvious whether copyright infringement qualifies as the type of

6   "tortious conduct" that could give rise to individual liability. *See Perfect 10, Inc. v. Visa Int'l Serv.*

7   *Ass'n*, 494 F.3d 788, 794-95 (9th Cir. 2007) (copyright infringement has "roots" in certain "tort-

8   law concepts"). While interesting, this question is irrelevant because the Copyright Act comes

9   with its own specific individual liability framework, as more fully discussed below. Since all of

10  DISH's allegations are copyright-related, there is no reason to consider the traditional common

11  law "tortious conduct" exception as a separate basis of individual liability.

12  **B.  Mr. Sohail is not subject to individual liability under the Copyright Act.**

13  The Copyright Act imposes individual liability in certain situations. DISH has alleged that

14  JadooTV has infringed upon its copyrights in three ways:

15  • **directly**, by distributing protected programs to set-top box users;

16  • **contributorily**, by providing "material assistance" to users; and

17  • **vicariously**, by receiving "direct financial benefit[s]."

18  DISH has attempted to shoehorn Mr. Sohail into each of these claims by including conclusory

19  allegations about his connection to JadooTV's alleged misconduct. But DISH still offers no

20  insight into what it believes Mr. Sohail did wrong. The new introductory section of DISH's

21  complaint, for instance, adds a few additional conclusory allegations and irrelevant facts, but does

22  nothing to link Mr. Sohail to any act of infringement:

23  Defendant Sajid Sohail is an individual residing in Pleasanton, California. Sohail is
24  the founder, chief executive officer, president, and majority and controlling
    shareholder of Jadoo TV, Inc. Sohail has earned approximately $300,000 annually
25  from Jadoo TV, primarily from the sale of Jadoo set-top boxes and mobile app
    subscriptions. Sohail also received $224,000 in "loans" from Jadoo TV following the
26  filing of this action. As Jadoo TV's highest-ranking officer and controlling
27  shareholder, Sohail had the right and ability to, and did in fact, authorize, direct, or
28  participate in, and receive direct financial benefits from, the infringing activities of

8

Jadoo TV alleged herein. The acts Sohail engaged in as an agent of Jadoo TV were within the scope of such agency.

Complaint, ¶ 8. Later, DISH makes three matching sets of conclusory allegations regarding joint and several liability, one for each type of infringement:

Sohail is also jointly and severally liable for each act of infringement for which Jadoo TV is liable because he personally directed and participated in, and benefitted from, Jadoo TV's infringing conduct as alleged herein. Sohail was the technologist that developed or supervised the development of the Jadoo service, set-top boxes, and mobile apps, including the eMedia app, Live TV and VOD menus, and associated Jadootv.com website, and has been directly, actively and personally involved in Jadoo TV's infringing activities.

Complaint, ¶ 92; *see also id.*, ¶¶ 106, 114. DISH also now offers some additional photographs of Mr. Sohail with Haseeb Shah, a since-dismissed defendant that DISH initially named in this case. *Id.*, ¶¶ 71-72. But those additional photographs do nothing to suggest that Mr. Sohail should be held liable for any type of copyright infringement. DISH's rote allegations against Mr. Sohail remain insufficient to impose individual liability, and its claims against him should be dismissed.

**1.  DISH has not pled facts linking Mr. Sohail to any direct infringement.**

"Plaintiffs must satisfy two requirements to present a prima facie case of direct [copyright] infringement: (1) they must show ownership of the allegedly infringed material and (2) they must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). DISH's primary direct infringement claim is that Haseeb Shah, an individual based in Islamabad, Pakistan, transmitted "copyrighted programs" "from computer servers [he] controlled [] to Jadoo Users[.]" Complaint, ¶ 89. DISH does not specify what exactly this means or which of the 17 U.S.C. § 106 exclusive rights Mr. Shah's actions might have violated.

DISH's vague direct infringement theory is insufficient to impose personal liability on Mr. Sohail for at least four reasons. First and most obviously, Mr. Sohail is not Mr. Shah. Second, Mr. Shah is no longer a defendant in this case: the Central District court dismissed all claims against him in March as it transferred this case to the Northern District. Dkt. No. 150. Third, even if Mr. Shah were still an individual defendant here, DISH's complaint alleges nothing about the

9

1    causal relationship between Mr. Sohail's operations in California and Mr. Shah's faraway

2    activities in Pakistan. Without any showing that Mr. Sohail, for instance, specifically directed

3    Mr. Shah to take his allegedly infringing actions, it is not clear how Mr. Sohail could possibly

4    qualify as a direct infringer. *E.g.*, *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 (9th Cir. 2019)

5    ("[D]irect liability must be premised on conduct that can reasonably be described as the direct

6    cause of the infringement."). Fourth, even if DISH had pled a specific link between Mr. Sohail and

7    Mr. Shah, setting up a server that responds to user requests does not constitute direct copyright

8    infringement. *Id.*, at 732 ("[A]utomatic copying, storage, and transmission of copyrighted

9    materials, when instigated by others, do[ ] not render an [Internet service provider] strictly liable

10   for copyright infringement."). There is simply no link between Mr. Sohail and direct infringement.

11            **2.  DISH has not pled facts that support its contributory infringement claim.**

12            "Secondary liability for copyright infringement may be based on either 'a theory of

13   contributory or vicarious infringement.'" *Kevin Barry Fine Art Assocs. v. Ken Gangbar Studio*,

14   Inc., 391 F.Supp.3d 959, 968 (N.D. Cal. 2019) (quoting *MGM Studios Inc. v. Grokster, Ltd.*, 545

15   U.S. 913, 930 (2005)). But "[s]econdary liability for copyright infringement does not exist in the

16   absence of direct infringement by a third party." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d

17   1004, 1013 n.2 (9th Cir. 2001). Here, DISH's allegations of direct infringement are unconvincing.

18   Even if they were not, imposing secondary liability on Mr. Sohail would still be inappropriate.

19            Contributory copyright infringement is "a form of secondary liability with roots in the tort-

20   law concepts of enterprise liability and imputed intent." *Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*,

21   494 F.3d 788, 794-95 (9th Cir. 2007). This type of liability attaches to "one who, with knowledge

22   of the infringing activity, induces, causes or materially contributes to the infringing conduct of

23   another." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2007). "[O]ne

24   contributorily infringes when he [or she] (1) has knowledge of another's infringement and (2)

25   either (a) materially contributes to or (b) induces that infringement." *Perfect 10, Inc. v. Visa*, 494

26   F.3d 788 at 795. DISH has failed to suggest that Mr. Sohail was ever aware of any infringing

27   conduct, to say nothing of him "materially contributing" to or "inducing" any such infringement.

28   / /

**a. DISH alleges no "material contribution" by Mr. Sohail.**

*Perfect 10, Inc. v. Giganews, Inc.* is the authoritative Ninth Circuit case on contributory copyright infringement for operators of online services. 847 F.3d 657 (9th Cir. 2017). There, adult entertainment service and frequent copyright litigant Perfect 10 sued Giganews, a service that provided users access to a network called Usenet where they were free to upload and download content from one another. *Id.*, at 663. Some users chose to upload and download copyrighted images owned by Perfect 10, hence the lawsuit. Perfect 10 claimed that Giganews was liable for contributory copyright infringement because it had the ability to remove infringing content but did not do so. *Id.*, at 670-71. It also claimed that Giganews induced its users to access infringing content and that the company should be held secondarily liable on that basis. *Id.*

The Ninth Circuit disagreed and affirmed the district court's finding in favor of defendant Giganews. First, it reiterated that a "computer system operator" is only liable based on an alleged material contribution to infringement "if it has actual knowledge that specific infringing material is available using its system, and can take simple measures to prevent further damage to copyrighted works, yet continues to provide access to infringing works." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007). Here, DISH offers no facts suggesting that Mr. Sohail had actual knowledge of any particular infringing content and no facts suggesting that he had any power to take "simple measures to prevent further damage[.]" This case is even more extreme than Giganews: since Mr. Sohail is an individual rather than a corporation, he by definition does not have the power to unilaterally implement whatever "simple measures" he sees fit. There is no basis for secondary liability based on "material contribution" here.

**b. DISH pleads no facts that could show Mr. Sohail induced infringement.**

The Ninth Circuit also rejected Perfect 10's argument that Giganews had induced its users to infringe upon Perfect 10's copyrights. Under the doctrine of induced infringement, companies that "distribute[] a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, [are] liable for the resulting acts of infringement by third parties." *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-37 (2005). Inducement requires a showing of four elements: "(1) the distribution of a device

11

or product, (2) acts of infringement, (3) an object of promoting its use to infringe copyright, and (4) causation." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1032 (9th Cir. 2013). The court ruled that Perfect 10 had failed to show that Giganews either "clearly expressed" a desire to foster infringement or taken any "affirmative steps" to do so. The same is true here: Mr. Sohail has neither expressed such a desire nor taken any such steps. Since DISH alleges no facts that would support either a "material contribution" theory or an inducement theory, its contributory infringement claims against Mr. Sohail should be dismissed.

### 3. DISH has pled no facts to support its vicarious infringement claim.

"Vicarious copyright liability is an outgrowth of respondeat superior." *Keck v. Alibaba.com Hong Kong Ltd.*, 369 F.Supp.3d 932, 936 (N.D. Cal. 2019) (quoting *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262 (9th Cir. 1996)). To state a vicarious liability claim, a plaintiff must allege facts showing that a defendant benefitted "[1] by profiting from direct infringement while [2] declining to exercise a right to stop or limit it." *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). To meet the second part of this test, an individual defendant must have "ha[d] both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007). As with contributory infringement, vicarious infringement is a type of "[s]econdary liability for copyright infringement [that] does not exist in the absence of direct infringement by a third party." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001). Again, DISH's unconvincing allegations of direct infringement do not establish any type of secondary liability, and DISH has also not pled any facts sufficient to support a cause of action for vicarious infringement against Mr. Sohail.

### a. Mr. Sohail has no "direct financial interest" in infringement.

*UMG Recordings, Inc. v. Veoh Networks Inc.* provides helpful guidance on this point. No. 07-CV-5744-AHM, 2009 WL 334022, at *6 (C.D. Cal. Feb. 2, 2009). There, a district court considered the liability of investors in a technology company for vicarious copyright infringement. UMG argued that infringing conduct could "draw" more customers to the defendant platform and that the investors in that platform would benefit financially as a result. In UMG's view, it followed

12

1   that those investors should be held personally liable for any copyright infringement by the

2   company. *Id.*, at \*5. DISH's general legal theory is similar: since Mr. Sohail owns a portion of

3   Cloudstream Media Inc. and Cloudstream Media in turn owns a portion of JadooTV (Dkt. No. 91,

4   ¶¶ 5-6), Mr. Sohail could potentially benefit from infringing activities if those activities brought

5   more users to JadooTV.

6          The *Veoh* court quickly dismissed this argument. Emphasizing the "direct" in the Ninth

7   Circuit's "direct financial interest" requirement, *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d

8   1004, 1022 (9th Cir. 2001), the court observed that any "financial benefit that the Investor

9   Defendants might some day enjoy w[ould] not come directly from Veoh's users or from Veoh's

10  advertisers" *Veoh Networks Inc.*, 2009 WL 334022, at \*6. It contrasted investors in the

11  defendants' position with the operators of a flea market in *Fonovisa, Inc. v. Cherry Auction, Inc.*,

12  76 F.3d 259 (9th Cir. 1996). In the flea market situation, the *Fonovisa* court wrote, revenues "flow

13  [to operators] directly from customers who want to buy the counterfeit recordings at bargain

14  basement prices." *Id.* at 263. The *Veoh* court observed that investors in Veoh, on the other hand,

15  only stood to see a potential increase in the value of the company. It concluded that this type of

16  "financial benefit is too far removed from the alleged infringement to be considered a 'direct'

17  financial interest" and granted the investors' motion to dismiss the claims against them. *Veoh*

18  *Networks Inc.*, 2009 WL 334022, at \*6. The connection DISH has suggested here is even more

19  attenuated: unlike the investors in Veoh, Mr. Sohail is not even a shareholder (or an employee) of

20  JadooTV. Any alleged link between infringement by JadooTV and financial benefit to Mr. Sohail

21  is indirect at best, and the Court may dismiss DISH's vicarious infringement claims on that basis.

22                **b.  DISH pleads no specific facts about Mr. Sohail's control of JadooTV.**

23         The allegations in DISH's complaint that so discuss Mr. Sohail's relationship with

24  JadooTV as a corporate entity are mostly conclusory, boilerplate, or both. Other courts have

25  dismissed copyright claims against individual defendants where the plaintiff failed to plead facts

26  that could show the individual had "pervasive control" over the corporate entity. *E.g.*, *Wild v.*

27  *Preventive Pest Control, LLC*, No. 19-CV-01420-CJC, 2019 WL 2871155, at \*5 (C.D. Cal. May

28  29, 2019). Since DISH says virtually nothing about Mr. Sohail's control over JadooTV, the Court

13

1    is free to dismiss the vicarious infringement claims against him here.

2         **C.  Dismissal with prejudice is warranted, given DISH's previous amendment.**

3         Dismissal without leave to amend is appropriate when it is "clear" that the challenged

4    claims "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th

5    Cir. 2009); *see, e.g.*, *Greenberg v. Sunrun Inc.*, 233 F.Supp.3d 764, 775 (N.D. Cal. 2017)

6    (dismissing a party's claims when "leave to amend would be futile"); *In re Yahoo! Inc.*

7    *Shareholder Derivative Litig.*, 153 F.Supp.3d 1107, 1128 n.14 (N.D. Cal. 2015) (dismissing

8    claims without leave to amend where plaintiffs had "not identified any facts that indicate

9    amendment could cure the defects in the Complaint"). Here, DISH's complaint offers only

10   conclusory allegations unsupported by any relevant facts. Even though it has already amended its

11   complaint, DISH has still failed to plead that Mr. Sohail might be held personally liable for any

12   type of copyright infringement. Further amendment would not help.

13        Dismissing DISH's futile claims against Mr. Sohail at this point is also a necessity for the

14   sake of judicial economy. Since DISH filed its baseless complaint against Mr. Sohail a year and a

15   half ago in November 2018, the parties have engaged in wide-ranging discovery based the

16   company's conclusory allegations. That discovery has already included:

17        • two discovery dispute-resolution conferences in mid-2019 (Dkt. Nos. 62, 69);

18        • a fully-litigated motion to compel filed in May 2019 (Dkt. No. 75);

19        • a fully-litigated motion to quash a subpoena (Dkt. No. 94);

20        • an attorneys' fees motion based on the motion to compel (Dkt. No. 98);

21        • a second fully-litigated motion to compel, filed in January 2020 (Dkt. No. 132);

22        • a motion for reconsideration following that motion to compel (Dkt. No. 148);

23        • a second fee motion based on the second motion to compel (Dkt. No. 147); and

24        • three separate discovery letter briefs filed in this Court (Dkt. Nos. 181, 182, and 185).

25   DISH should not be allowed to start over from scratch now. If it is, the company will continue to

26   burden this Court's docket with unnecessary discovery motions just as it did the Central District's

27   and has already started doing here. Mr. Sohail requests that the Court put an end to DISH's

28   litigious conduct by dismissing its claims against him as an individual without leave to amend.

14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V.  **CONCLUSION**

DISH's entire complaint is about whether JadooTV's set-top box product infringes upon DISH's copyrights. There was no reason for DISH to name individual defendants in this case, and its continued crusade against Mr. Sohail has gone on for far too long already. As it resolves this motion, the Court has the power to finally clean up the unnecessary confusion DISH has created and turn this action into what it should have been in the first place: a straightforward copyright dispute between two companies. Mr. Sohail requests that it do so.

Dated:  August 7, 2020                                   CHAN PUNZALAN LLP

                                                                    */s/ Nicole Daryanani*

                                                                    Nicole Daryanani
                                                                    Mark Punzalan

                                                                    *Counsel for Defendants*
                                                                    *JadooTV, Inc. and Sajid Sohail*

MOTION TO DISMISS BY SAJID SOHAIL; MEMORANDUM IN SUPPORT
Case No. 3:20-cv-01891-CRB