1
2
3
4

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISH NETWORK L.L.C., | Case No.  20-cv-01891-CRB |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION TO DISMISS** |
| JADOO TV, INC., et al., | |
| Defendants. | |

In this copyright infringement case, Plaintiff DISH Network L.L.C. ("DISH") sued Defendants Sajid Sohail and JadooTV, Inc., a company that sells set-top boxes and mobile applications that consumers use to receive television channels.  DISH alleges that Defendants violated 17 U.S.C. § 501 by illegally transmitting television channels and content that DISH had exclusively licensed ("Protected Channels").  DISH alleges that JadooTV engaged in a multi-year effort to illegally transmit the Protected Channels to appeal to consumers but avoid paying licensing fees.  Sohail is the founder, CEO, and president of JadooTV.  DISH alleges that Sohail is personally liable either because he authorized, directed, or participated in JadooTV's infringement or, alternatively, because he individually satisfies each element of the offense.

JadooTV has not challenged the sufficiency of the complaint against it, but Sohail has filed a motion to dismiss for failure to state a claim.  Sohail argues that DISH has failed to plausibly allege that he controlled JadooTV's activities or was at all involved with any infringement. Because DISH has pled sufficient factual content to permit a reasonable inference that Sohail is personally liable for copyright infringement, this Court DENIES Sohail's motion to dismiss.

//

United States District Court
Northern District of California

## I.    BACKGROUND

On November 20, 2018, DISH filed a complaint that described a "wide-ranging, deliberate, multi-year effort by JadooTV" to illegally transmit DISH's exclusively licensed television channels and content. Compl. (dkt. 1) ¶¶ 1–2. Initially, the Defendants designed JadooTV branded set-top boxes to directly stream the unlicensed channels. Id. ¶ 2. Later, there was a change to the set-top boxes, requiring users to download to their set-top boxes or mobile apps the files necessary to view the content. Id. The most recent model of the set-top box automatically locates and downloads the necessary files as soon as the consumer has it turned on and connected to the Internet. Id. DISH asserts that Sohail is personally liable for JadooTV's conduct because he authorized, directed, or participated in JadooTV's infringement. Id. ¶¶ 3, 22.

On February 4, 2019, Sohail and JadooTV filed an answer, denying DISH's allegations. First Answer (dkt. 28). Since then, the parties have been engaged in a fitful discovery process. See Opp'n to Mot. for J. on Pleadings (dkt. 180) at 1. On April 17, 2020, Sohail filed a motion seeking judgment on the pleadings as to the claims against him. Mot. for J. on Pleadings (dkt. 167). The Court granted Sohail's motion for judgment on the pleadings and also granted DISH leave to amend. Min. Entry (dkt. 192).

DISH filed an amended complaint on July 16, 2020. FAC (dkt. 194). On July 30, 2020, Sohail filed a second motion for judgment on the pleadings in response to DISH's first amended complaint but subsequently withdrew the filing. Mot. for J. on Pleadings (dkt. 196); Notice of Withdrawal (dkt. 200). On August 7, 2020, Sohail filed both an answer to the first amended complaint and a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6). Answer (dkt. 203); Mot. (dkt. 201). In his motion to dismiss, Sohail argues that DISH has failed to remedy the deficiencies in its original complaint and that the allegations in the first amended complaint are insufficient to impose personal liability on him. Mot. at 1. DISH filed an opposition, which argues that Sohail's motion to dismiss is procedurally defective and fails on the merits. Opp'n (dkt. 204) at vii. Sohail filed a reply. Reply (dkt. 205).

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted.  Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting another source).  A complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

If a court does dismiss a complaint for failure to state a claim, it should "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A court nevertheless has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  Leadsinger, Inc. v. BMG Music Publ'g., 512 F.3d 522, 532 (9th Cir. 2008) (alteration in original) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

## III.    DISCUSSION

DISH argues that Sohail's motion to dismiss should be denied because it is both procedurally defective and meritless.  See Opp'n at vii.

### A.    Procedural Issues

DISH argues that Sohail's motion to dismiss is procedurally flawed and should be denied.

1  First, DISH argues that Sohail waived his right to file a 12(b)(6) motion.  Second, DISH argues

2  that Sohail filed his 12(b)(6) motion late.

### 1.       Whether Sohail waived his right to file a 12(b)(6) motion

DISH argues that because Sohail did not file a motion to dismiss DISH's original

complaint, he waived his right to file a motion to dismiss DISH's first amended complaint.  Opp'n

at 2.  Sohail responds that he preserved his right to move to dismiss DISH's first amended

complaint when he filed a motion for judgment on the pleadings in response to DISH's original

complaint.  Reply at 3.  Sohail's position is that motions for judgment on the pleadings and

motions to dismiss are interchangeable.  Id.  Additionally, Sohail argues that he asserted the

affirmative defense of failure to state a cause of action in his answer to the original complaint.  Id.

Pursuant to Rule 12(b), motions asserting the defense of failure to state a claim must be

made before pleading if a responsive pleading is allowed.  Fed. R. Civ. P. 12(b).  If a defendant

fails to file a motion asserting defenses that were available in response to the original complaint,

the defendant's right is not revived when the plaintiff files an amended complaint.  5C CHARLES

ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1388 (3D ED.

REVISED 2015).  The defense of failure to state a claim upon which relief can be granted may be

raised by a motion for judgment on the pleadings.  Fed. R. Civ. P. 12(h)(2).  Even if a party has

failed to timely file a motion to dismiss under Rule 12(b)(6), it may assert the defense of failure to

state a claim with a Rule 12(c) motion for judgment on the pleadings.  Northstar v. Schwab, 135 F.

Supp. 3d 1059, 1071 (N.D. Cal. Oct. 5, 2015).

In response to DISH's original complaint, Sohail moved for judgment on the pleadings,

asserting failure to state a claim.  Mot. for J. on Pleadings (dkt. 167).  Because Sohail previously

asserted the defense of failure to state a claim, this Court finds that he did not waive his right to

file the present 12(b)(6) motion.

### 2.       Whether Sohail's 12(b)(6) motion is untimely

Next, DISH argues that even if Sohail did not waive his right to file the motion to dismiss,

the motion is still procedurally flawed because it is late.  Opp'n at 2–3.

Required responses to an amended pleading must be made either within the time remaining

United States District Court
Northern District of California

1    to respond to the original pleading or within 14 days after the amended pleading was served.  Fed.

2    R. Civ. P. 15(a)(3).

3         DISH filed its first amended complaint on July 16, 2020 and therefore Sohail's response

4    was due on July 30, 2020.  Fed. R. Civ. P. 15(a)(3).  Sohail filed the pending motion on August 7,

5    2020.  Pursuant to Federal Rule of Civil Procedure 15, Sohail filed his motion late.

6         In his reply, Sohail explains why he missed the deadline.  On July 30, the day by which his

7    response was due, Sohail filed a motion for judgment on the pleadings.  See Mot. for J. on

8    Pleadings (dkt 196).  DISH's counsel requested via email that Sohail's counsel withdraw the

9    motion and argued that it was premature.  Decl. of Nicole Daryanani (dkt. 205-1) ¶ 2.  Because

10   motions for judgment on the pleadings are only available at the close of the pleadings, Sohail was

11   required to file an answer to the amended complaint before moving for judgment on the pleadings.

12   See Doe v. United States, 419 F.3d 1058, 1061 (9th Cir. 2005); 5C CHARLES ALAN WRIGHT &

13   ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367 (3D ED. 2004).  Sohail withdrew

14   his motion for judgment on the pleadings and "restyled it" as a motion to dismiss, which he filed

15   on August 7, 2020.  Reply at 2.  Sohail contends that he could have left his motion for judgment

16   on the pleadings on the docket and that this Court would have considered it as a motion to dismiss.

17   Id.  Sohail suggests that DISH's email requesting that the motion be withdrawn was "litigation

18   gamesmanship" and an attempt to set Sohail up and prompt him to file a motion after the deadline

19   had elapsed.  Id.

20        If Sohail had not withdrawn his motion for judgment on the pleadings, this Court could

21   have considered it as a motion to dismiss and there would be no timing problems.  See 5C

22   CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1368 (3D

23   ED. 2004).  While Sohail's motion to dismiss was filed late, it is no matter.  Moreover, the Ninth

24   Circuit favors resolving cases on the merits when appropriate.  See Eitel v. McCool, 782 F.2d

25   1470, 1472 (9th Cir. 1986).

26        Because this Court denies Sohail's motion to dismiss on the merits, the parties' procedural

27   arguments are not dispositive.

28

B.     **Theories of Liability for Copyright Infringement**

Corporate officers can be held liable for copyright infringement under two theories.

Under the first theory, set forth in the Copyright Act, a corporate officer can be held liable by personally satisfying each element for direct, contributory, or vicarious infringement.  See, e.g., Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc., 108 F. Supp. 3d 816, 827 (N.D. Cal. 2015) ("[Plaintiff] has adequately pled facts that demonstrate that [Defendant] himself . . . performed acts that make out each claim for relief.  The corporate veil cannot protect [Defendant] from liability for these claims.").  Sohail argues that this elemental approach is the only theory applicable to corporate officers for contributory and vicarious infringement.  See Mot. at 8.

The second theory is rooted in common law and is articulated in Comm. for Idaho's High Desert v. Yost, 92 F.3d 814 (9th Cir. 1996).  Under this theory, "[a] corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf."  Yost, 92 F.3d at 823.  Sohail argues that this theory does not apply to this case because the Yost case involved trademark infringement and it is unclear whether copyright infringement constitutes a "tort" governed by this standard. Mot. at 8.  DISH responds that courts within the Ninth Circuit have applied the Yost rule outside of the trademark context to various federal statutory violations, including copyright infringement.  Opp'n at 4 (citing Moseley v. United States Appliance Corp., 155 F.2d 25, 27 (9th Cir. 1946) (applying officer-liability rule to patent infringement claims); Bangkok Broad. & T.V. Co. v. IPTV Corp., 742 F. Supp. 2d 1101, 1114 (C.D. Cal. 2010) ("Courts have also applied this basic principle to trademark infringement, unfair competition, copyright infringement, and contributory infringement claims . . . "); MDY Indus., LLC v. Blizzard Entm't, Inc., 616 F. Supp. 2d 958, 972–73 (D. Ariz. 2009) (applying officer-liability rule to contributory infringement claims), rev'd on other grounds, 629 F.3d 928, 935 (9th Cir. 2010).

Because other courts within the Ninth Circuit have extended the Yost rule to cases involving violations of different federal statutes, this Court finds it appropriate to apply the Yost rule to this copyright infringement case.  There are no compelling reasons why the Yost rule

1    would apply to federal trademark claims but not copyright claims.  Moreover, applying the <u>Yost</u>

2    standard does not prejudice Sohail, as this Court ultimately finds that DISH's first amended

3    complaint survives Sohail's motion to dismiss under both the <u>Yost</u> rule and the elemental

4    approach.

5          **C.      Liability under the <u>Yost</u> Rule**

6          A corporate officer or director is, in general, personally liable for all torts which he

7    authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the

8    corporation and not on his own behalf.  <u>Yost</u>, 92 F.3d at 823.  While merely being an officer or

9    agent of the corporation does not alone warrant personal liability for the torts of a corporation, the

10   "specific direction or sanction of, or active participation or cooperation in," a tortious act does.

11   <u>Escude Cruz v. Ortho Pharm. Corp.</u>, 619 F.2d 902, 907 (1st Cir. 1980).

12         Courts that have applied the <u>Yost</u> standard in the context of copyright cases have found

13   that officers and directors are personally liable if they are the "guiding spirit" behind the

14   infringement.  <u>Bangkok Broad. & T.V. Co., v. IPTV Corp.</u>, 742 F. Supp. 2d 1101, 1114–15 (C.D.

15   Cal. 2010) (quoting <u>Davis v. Metro Prods.</u>, 885 F.2d 515, 524 n. 10 (9th Cir. 1989)).  At the

16   motion to dismiss stage, courts have found a plausible basis for personal liability when the

17   plaintiffs have alleged that the officer exercises sufficient control over the corporation with respect

18   to the challenged activity.  <u>See, e.g.</u>, <u>Adobe Sys. Inc. v. Software Speedy</u>, No. C-14-2152 EMC,

19   2014 WL 7186682, at *5 (N.D. Cal. Dec. 16, 2014) (plausible basis for individual liability for the

20   corporation's owner and lead sales and marketing representative); <u>Carson v. Verismart Software</u>,

21   No. C-11-03766 LB, 2012 WL 1038662, at *5 (N.D. Cal. Mar. 27, 2012) (plausible basis where

22   corporate officer controls company and has a financial stake in its actions).

23         DISH's first amended complaint includes new allegations regarding Sohail's control over

24   the corporation that create a plausible inference that he was the "guiding spirit" behind the

25   wrongful conduct.  <u>See</u> <u>Davis</u>, 885 F.2d at 524 n.10.  Sohail indirectly owns over 67% of

26   JadooTV's equity, and he and his wife together indirectly own about 80%.  FAC ¶ 8.  Sohail

27   personally assembled the JadooTV team, and the majority of employees  are Sohail's family

28   members.  <u>Id.</u>  In an interview describing JadooTV staff, Sohail stated that "… [he] wanted to

United States District Court
Northern District of California

build a team… [he] [could] control." Id.  Sohail's friend said, of Sohail, "Without him, I don't think there can be any Jadoo…" Id. ¶ 19.  DISH alleges that because of his experience in the telecom industry and familiarity with the South Asian immigrant community, "Sohail personally made the decision for JadooTV to transmit the Protected Channels based on their popularity among viewers…" Id. ¶ 18.  While these allegations alone do not warrant personal liability for JadooTV's torts, they make it more reasonable to infer that Sohail was the "guiding spirit" or "central figure" behind the infringement.  See Davis, 885 F.2d at 524 n.10.

DISH's first amended complaint also includes new allegations that tend to make Sohail's personal participation in the infringement more likely.  See Grover Prods. Co. v. Air Horns of Tex., LLC, No. 2:18-cv-00708 VAP (KSx), 2018 WL 6118435, at *3 (C.D. Cal. Oct. 17, 2018) (plausible basis for personal liability where the president of a company knew he was infringing on plaintiff's rights and was "the dominant influence" in the company).  Sohail is the "chief technologist" of JadooTV and said in an interview that he was also in charge of JadooTV's content.  FAC ¶¶ 19, 58.  Sohail's roles at JadooTV indicate that he participated in both the technical aspects of JadooTV and the content featured on JadooTV.  The challenged conduct involves both copyrighted content on JadooTV and the programming of JadooTV's set top boxes, making it plausible to infer that Sohail was involved in the infringing activities.  See Adobe Sys. Inc., 2014 WL 7186682, at *5 ("Insofar as [individual defendant] is alleged to be owner and lead marketing and lead sales representative of the company, there is a plausible basis for concluding that he participated, authorized or directed the challenged activity involved in this case.") Applying the Yost rule at the motion to dismiss stage, the court in Adobe Systems noted that because the sale of an electronic download copy of plaintiff's software was the conduct that amounted to infringement, there was a plausible basis for concluding that the lead sales representative was involved in the infringement.  Id.

Taking all allegations as true and viewed in a light most favorable to DISH, DISH's new allegations raise a plausible inference that Sohail authorized, directed, or participated in the alleged infringement under the Yost standard.

United States District Court
Northern District of California

**D.     Direct Infringement**

To establish a prima facie case of direct copyright infringement, plaintiffs must show: (1) ownership of the allegedly infringed material and (2) that the alleged infringers violated at least one exclusive right granted to copyright holders.  A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001).  In the Ninth Circuit, the plaintiff must also show that the defendant acted with "volition" such that the defendant's conduct is the direct cause of the infringement.  VHT, Inc. v. Zillow Grp., Inc., 918 F.3d 723, 731 (9th Cir. 2019).  Sohail's motion to dismiss does not challenge the sufficiency of allegations regarding DISH's ownership of the Protected Channels.

Sohail argues that DISH has not pled facts that plausibly allege his direct infringement.  Mot. at 9.  DISH's direct infringement claim is that Haseeb Shah, at Sohail's direction or with his authorization or ratification, transmitted the copyrighted programs from his computer servers in Pakistan to JadooTV users who accessed the programs using a set-top box or mobile app.  Id.  Sohail argues that this theory is insufficient for two reasons.  First, Sohail contends that DISH's direct infringement theory relies on Shah's actions, and DISH failed to allege a causal connection between Sohail and Shah's actions that would implicate Sohail's liability.  Id. at 9–10.  Second, Sohail argues that even if DISH had pled a connection between Sohail and Shah, "setting up a server that responds to user requests does not constitute direct copyright infringement."  Id. at 10.  This order addresses both arguments in turn.

First, DISH argues that its first amended complaint sufficiently pleads a causal relationship between Sohail and Shah's actions.  DISH alleges that Sohail engaged Shah to manage "Jadoo TV's servers and live channel streams" and that Sohail and Shah had a "close business relationship."  FAC ¶¶ 59, 71.  More compelling are the allegations that Sohail "personally made the decision for JadooTV to transmit the Protected Channels."  Id. ¶ 18.  DISH alleges that Sohail was the technologist that "developed or supervised the development of the Jadoo service, set-top boxes, and mobile apps" and that he designed the Jadoo service to directly stream the Protected Channels through the Jadoo set-top box.  Id. ¶¶ 2, 92, 106, 114.  After JadooTV disabled computer servers that had been transmitting content including the Protected Channels, Sohail sent an email

1   stating that he had discovered a "workaround that would allow [JadooTV] to again provide Jadoo

2   users with access to works airing on the Protected Channels in the VOD section of the Jadoo

3   service." Id. ¶ 74.  Sohail then asked the recipients, one of whom was Shah, to "please look into

4   this urgently."  Id.  These allegations, taken as true, make it plausible that Sohail specifically

5   directed Shah to engage in infringing activities.

6        DISH also addresses Sohail's argument that Sohail did not act with volition.  To

7   demonstrate volitional conduct where the defendant operates an automated, user-controlled

8   system, the plaintiff must show that the defendant exercised control by either "selecting material

9   for upload, download transmission or storage" or by "instigating any copying, storage or

10  distribution of. . ." the copyrighted material.  Zillow, 918 F.3d at 732 (quoting Perfect 10, Inc. v.

11  Giganews, Inc., 847 F.3d 657, 666, 670 (9th Cir. 2017)).  DISH argues that the infringing

12  transmissions here were not "instigated by" JadooTV users but instead were provided at Sohail's

13  direction.  Opp'n at 9.  DISH points to Sohail's "conscious decision" not to remove Protected

14  Channels from Jadoo set-top boxes after DISH sent infringement notices.  FAC ¶ 18.  In Zillow,

15  the court recognized that failure to remove infringing content from a website is a "conscious

16  choice that amounts to volitional conduct."  Zillow, 918 F.3d at 733–34.  DISH plausibly alleged

17  that Sohail's actions satisfy the volitional requirement of a direct infringement claim.

18       The new allegations in DISH's first amended complaint make it plausible to conclude that

19  Sohail engaged in direct infringement.

20       **E.    Contributory Infringement**

21       Contributory infringement is a form of secondary liability that is only available when

22  direct infringement by a third party has occurred.  A&M Records, 239 F.3d at 1013 n.2.  As a

23  threshold matter, Sohail argues that because DISH failed to plead direct infringement by any party,

24  DISH's contributory liability theory of copyright infringement fails.  Mot. at 10.  Because the

25  Court concludes that DISH plausibly alleged direct infringement of its Protected Channels, it will

26  also address DISH's allegations under the contributory infringement theory.

27       For contributory liability generally, the Ninth Circuit has adopted the rule from Gershwin

28  Publishing Corp. v. Columbia Artists Management, Inc., 443 F.2d 1159, 1162 (2d Cir. 1971).

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1  Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1171 (9th Cir. 2007).  The Gershwin rule

2  states: "one who, with knowledge of the infringing activity, induces, causes or materially

3  contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer[.]"

4  Id. (citing Gershwin, 443 F.2d at 1162).  The liability is "predicated upon 'the common law

5  doctrine that one who knowingly participates or furthers a tortious act is jointly and severally

6  liable with the prime tortfeasor.'"  Gershwin, 443 F.2d at 1162 (citation omitted).  DISH claims

7  that Sohail is liable for both material contribution and inducement of infringement.

### 1.      Material contribution

9       In Amazon, the Ninth Circuit applied the Gershwin rule in the context of cyberspace,

10  holding that a computer system operator can be held liable under a material contribution theory if

11  two elements are met: (1) actual knowledge that specific infringing material is available using its

12  system, and (2) the operator could take simple measures to prevent further infringement.  Amazon,

13  508 F.3d at 1172.  Sohail argues that DISH fails to satisfy either of these elements because it

14  offers no facts to suggest that Sohail had actual knowledge of the infringing content or that he

15  could take simple measures to prevent further damage.  Mot. at 11.  Sohail further contends that

16  because he is only an individual, "he by definition does not have the power to unilaterally

17  implement whatever 'simple measures' he sees fit."  Id.  However, Ninth Circuit cases that discuss

18  contributory infringement standards do not require the plaintiff to show that the "simple measures"

19  are those that can be unilaterally implemented.  See Amazon, 508 F.3d at 1172; Perfect 10, Inc. v.

20  Giganews, Inc., 847 F.3d 657, 671 (9th Cir. 2017).  Rather, to be considered "simple measures,"

21  the measures must be not "onerous" or "unreasonably complicated."  Giganews, 847 F.3d at 671.

22       To satisfy the first element of the Amazon test, DISH has alleged that Sohail had "actual

23  knowledge" that the Protected Channels were available on Jadoo set-top boxes and applications.

24  Sohail was the chief technologist "involved in the design and development of" the devices and

25  applications that provided access to the Protected Channels.  FAC ¶ 19.  DISH also alleges that, to

26  the extent he was not previously aware, DISH directly informed Sohail that the Protected

27  Channels were available on Jadoo products and services through notices of infringement.  Id. ¶¶

28  46, 47.  Sohail's internal communications with JadooTV employees suggest knowledge of

infringement.  In an email sent to employees, including Shah, Sohail discussed a "workaround" that would allow users to obtain access to programs on the Protected Channels and acknowledged that "[certain programs] [were] still not playing in the US as they [were] restricted by [DISH]." Id. ¶ 74.

The allegations in DISH's first amended complaint also satisfy the second element of the Amazon test.  Sohail directed a team of individuals who dealt with issues related to content filtering.  Id. ¶¶ 47–48.  In response to one of the notices of infringement sent by DISH, Sohail sent an email to a JadooTV employee, directing him to "use [eMedia] filter to remove the VOD content from [eMedia]."  Id. ¶ 47.  His employee responded that the eMedia could be removed and that the filter could be added to all devices in an estimated time of less than one month.  Id. ¶ 48. Based on these allegations, it is reasonable to infer that simple measures to prevent further infringement had been previously available to Sohail.  There is no evidence that it was "onerous" or "unreasonably complicated" for Sohail to direct an employee to install filters into the devices and remove infringing content.  DISH also argues that Sohail could have prevented further infringement had he simply refrained from taking certain actions entirely.  As an example, DISH cites an email to Shah and other employees, in which Sohail discussed a "workaround" that would allow the team to provide JadooTV users access to programs on the Protected Channels.  Id. ¶ 74. Additionally, DISH alleges that Sohail could have ensured that the set-top boxes were not preconfigured to access Protected Channels.  Id. ¶ 105.  DISH's allegations establish a plausible basis to conclude that Sohail's conduct satisfies both elements for material contribution.

### 2.    Inducement of infringement

DISH also claims Sohail is liable for inducing copyright infringement. Inducement of infringement has four elements: (1) distribution of a product or service, (2) acts of infringement, (3) object of promoting the product or service to infringe a copyright, and (4) causation. Columbia Pictures Indus., Inc. v. Fung, 710 F.3d 1020, 1032 (9th Cir. 2013).  The third element is at issue here, as Sohail argues that DISH failed to show that Sohail "clearly expressed" a desire to infringe or that he took any "affirmative steps" to do so.  See Mot. at 12.

In Grokster, the Court provided several examples of evidence that tend to satisfy the third

12

United States District Court
Northern District of California

element of an inducement of infringement theory.  MGM Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 938–41 (2005).  The "classic instance of inducement" occurs when a defendant advertises the product or service as a tool for infringement.  Id. at 937.  As support for its contention that Sohail promoted the JadooTV service as a tool for infringement, DISH points to the following:

- Sohail and Jadoo TV directly or through their agent Shah posted an instructional video on YouTube which showed users how to integrate Protected Channels.  FAC ¶ 44.

- Sohail and Jadoo TV placed paid ads on Google that referenced the Protected Channels.  Id. ¶ 52.  In order to trigger their paid ads, Sohail and Jadoo TV selected and purchased search terms which included names of Protected Channels.  Id. ¶ 53.

- Sohail and Jadoo TV advertise on the Jadoo TV website that "[JadooTV] make[s] available the largest selection of Pakistan, [Indian, and Bangla] content in [its] Live TV and VOD sections or through numerous 3rd [party] apps . . ."  Id. ¶¶ 54–56.

- The Jadoo TV website includes advertisements that contain images of several television series that air on Protected Channels.  Id. ¶¶ 55–57.

Second, in Grokster, the Court found that defendants communicated an "inducing message" to their users by responding affirmatively to user requests for help in locating copyrighted material.  Grokster, 545 U.S. at 938.  DISH alleges that Sohail authorized or directed JadooTV support agents to instruct customers to watch YouTube tutorial videos that showed users how to locate and install software files that were needed to integrate certain channels, including the Protected Channels, into JadooTV products and services.  FAC ¶¶ 40–42.

Third, in Grokster, the Court found proof of the purpose of inducing infringement where the defendant engaged in internal communications to that effect.  Grokster, 545 U.S. at 938.  DISH alleges the following internal communications:

- Sohail is believed to have provided Shah with information that allowed him to access Protected Channels and provide them to Jadoo TV users.  FAC ¶ 28.

- By Sohail's authorization or direction, a Jadoo TV regional sales manager instructed a retailer to "tell [customers] to call him directly" or search YouTube for instructions on how

United States District Court
Northern District of California

to access Protected Channels, adding that getting the instructions from YouTube "would be the safest thing to do."  Id. ¶ 82.

- Sohail sent an email to inform a team of employees, including Shah, that he had researched and discovered a way in which JadooTV could provide users access to Protected Channels through the VOD section of Jadoo.  Id. ¶ 74.

The last example from Grokster that is relevant to this case is where the defendant fails to "develop filtering tools or other mechanisms to diminish the infringing activity using their software."  Grokster, 545 U.S. at 939.  Eight months after this case was filed, Sohail personally directed an employee to filter out Protected Channels, which suggests that Sohail has always had the ability to do so but did not.  See FAC ¶¶ 18, 47, 50, 79.

Based on the allegations in their entirety, DISH has plausibly alleged that Sohail is liable for inducement of copyright infringement.

DISH has pled sufficient factual content to state a plausible claim for contributory copyright infringement against Sohail under both the material contribution and inducement of infringement theories.

### F.        Vicarious Infringement

DISH also argues that Sohail's conduct satisfies each element of vicarious infringement. Vicarious copyright liability requires a showing that the defendant (1) received a direct financial benefit from the infringement, while (2) declining to exercise a right and ability to control it. Amazon, 508 F.3d at 1173, 1176.

#### 1.        Direct financial benefit

Financial benefit exists where the availability of infringing material acts as a draw for customers.  Ellison v. Robertson, 357 F.3d 1072, 1078 (9th Cir. 2004).  The plaintiff need not show that a "substantial" proportion of a defendant's income is directly linked to infringing activities.  Id.  "The essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps." Id. at 1079; compare Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 263 (9th Cir. 2001) (causal relationship existed where revenues flowed directly from customers who purchased

copyrighted material to the defendant), with UMG Recordings, Inc. v. Veoh Networks, Inc., No. 07-CV-5744-AHM, 2009 WL 334022, at *6 (C.D. Cal. Feb. 2, 2009) (plaintiffs failed to satisfy the direct financial benefit element by alleging that the infringement attracted users and advertisers to the website, thereby increasing the value of the investor defendants' financial interests in the company).

Sohail analogizes his financial interests in JadooTV with those of the investors in Veoh Networks, and argues that there is no direct link between JadooTV's alleged infringement and any financial benefit to him. Mot. at 13. Unlike the investors in Veoh Networks, Sohail is JadooTV's majority and controlling shareholder. FAC ¶ 8. DISH alleges that Sohail has earned approximately $300,000 annually from JadooTV, primarily from the sale of set-top boxes and mobile app subscriptions. Id. ¶ 9. DISH argues that not only did Sohail's annual compensation flow directly from customers who paid for JadooTV's products and services, but that Sohail advertised those products and services as a means of accessing infringing content. Opp'n at 14–15. DISH alleges that "the availability of the Protected Channels attracted and drew consumers to JadooTV . . . resulting in an increase in [sales]." FAC ¶ 112. Accepting DISH's allegations as true, because the availability of the Protected Channels resulted in an increase in JadooTV's sales and Sohail's annual compensation flows directly to him from those sales, DISH has plausibly alleged a direct financial benefit.

### 2. Right to stop or limit infringement

To satisfy the second element of vicarious liability, the defendant must have the "legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." Amazon, 508 F.3d at 1173. DISH alleges that Sohail had the legal right and actual ability to control the infringing activities of both JadooTV's agent, Shah, and JadooTV users. FAC ¶ 111. DISH argues that Sohail's role in JadooTV alone satisfies this control element, citing to Symantec Corp v. CD Micro, Inc., 286 F. Supp. 2d 1265, 1275 (D. Or. 2003). Opp'n at 14. The court there found a CEO vicariously liable for copyright infringement because the evidence established that he personally inspected the products, controlled the products that the company sold, and was personally involved in the decision to infringe. Symantec., 286 F. Supp. 2d at 1275.

United States District Court
Northern District of California

1    DISH has made similar allegations to those of the plaintiffs in Symantec regarding Sohail's

2    control over Shah.  Sohail engaged Shah "as his agent and an agent of JadooTV."  FAC ¶ 59.

3    DISH alleges that Sohail and JadooTV gave Shah private information that allowed him to provide

4    content, including the Protected Channels, to JadooTV users.  Id. ¶ 28.  DISH also alleges that

5    Shah frequently used JadooTV's PayPal account, which was in Sohail's name, to make purchases

6    in his capacity as JadooTV's "technical contact" in charge of content delivery networks ("CDN").

7    Id. ¶¶ 37, 60, 66, 70.  These allegations suggest that Sohail had control over passwords and the

8    PayPal account, both of which were essential to the alleged infringement, and chose to provide

9    Shah with access to both.  Based on these allegations, it is reasonable to infer that Sohail had the

10   practical ability to prevent Shah from engaging in the alleged infringement.  Furthermore, Sohail

11   has not provided any evidence that he did not have the "legal right" to control Shah's actions.

12   With respect to the infringing activities of JadooTV users, DISH also alleged facts to

13   demonstrate that Sohail did have the ability to stop or limit the access of Protected Channels by

14   JadooTV users.  DISH alleges that Sohail could have directed employees to remove the Protected

15   Channels from eMedia, and ultimately did so.  Id. ¶ 47.  Additionally, DISH alleges that Sohail

16   could have directed employees to implement a software update with a filter that would prevent set-

17   top boxes from locating and installing copyrighted material.  Id.

18   DISH has plausibly alleged that Sohail had the legal right and practical ability to control

19   the infringing activity of Shah and JadooTV users.

20   Accordingly, DISH has stated a plausible claim against Sohail for vicarious copyright

21   infringement.

22   **IV.   CONCLUSION**

23   For the foregoing reasons, this Court DENIES Sohail's motion to dismiss.

24   **IT IS SO ORDERED.**

25   Dated: September _30_, 2020

CHARLES R. BREYER
United States District Judge

26

27

28

16