

Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Tel: 713.343.0478
Fax: 713.758.0146
www.hnbllc.com

November 3, 2022

**Via ECF**
Honorable Laurel Beeler
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom B

Re: *DISH Network L.L.C. v. JadooTV, Inc. et al.,* Case No. 3:20-cv-01891-CRB (LB)

Dear Judge Beeler:

Plaintiff DISH Network L.L.C. submits this letter brief in which DISH seeks an order requiring Defendants to (1) fully respond to DISH's discovery on the advice of counsel defense or be prohibited from asserting, raising, or implying the defense in any manner; (2) supplement and produce certain financial data; (3) make Sadia Sohail available for a deposition; (4) make Sonya Sohail available for a deposition; and (5) pay DISH's reasonable fees incurred in preparing the letter brief. The parties have met and conferred on these issues since at least July 28, 2022, Defendants did not have any other responses during the telephonic meet and confer, and Defendants' letter following that meet and confer similarly failed to resolve the issues. (Ferguson Decl. ¶¶ 9-12, Exs. 8-11.) Defendants simply disagree with their discovery obligations and are continuing their practice of foot dragging in advance of the November 11, 2022 fact discovery deadline. (*Id.*; *see* ECF 188, 209, 220, 223.)

Defendants Jadoo TV, Inc., and Sajid Sohail ("Defendants") believe this letter brief is premature. Plaintiff DISH Network, L.L.C., ("DISH") took two months to respond to Defendants August 19, 2022, meet and confer correspondence and has not responded to Defendants' most recent October 20, 2022, letter which attempts to resolve these issues. Rather than continue the meet and confer process as required by this Court's standing order, Fed. R. Civ. P. 37(a)(1), and Civil L. R. 37-1, DISH insists on seeking the Court's intervention unnecessarily.

Respectfully submitted,

By: */s/ Stephen M. Ferguson*
Stephen M. Ferguson (appearance *pro hac vice*)
stephen.ferguson@hnbllc.com
HAGAN NOLL & BOYLE LLC
820 Gessner, Suite 940
Houston, Texas 77024
Telephone: (713) 343-0478
*Attorney for Plaintiff*

By: */s/ Mark Punzalan*
Mark Punzalan (CA Bar No. 247599)
mark@chanpunzalan.com
CHAN PUNZALAN LLP
22 Battery Street, Suite 401
San Francisco, CA 94111
Telephone: (415) 839-0063
*Attorney for Defendants*

**DISH's Statement of Unresolved Issue No. 1:** Whether DISH is entitled to discovery on Defendants' advice of counsel defense.

**DISH's Position on Issue No. 1:** Defendants referred to relying upon the advice of their attorneys in (1) making the decision to distribute certain copyrighted programming that forms the basis of this lawsuit, and (2) after the lawsuit was filed, to create a software patch that ceased the distribution of the infringing content. Specifically, at deposition, DISH asked JadooTV's founder and CEO "Did Jadoo believe it was okay to distribute any content from Dailymotion?" and he responded "Yeah. We -- we had it come from attorneys, advice that it's --." (Ferguson Decl. ¶ 4; Ex. 3 at 69:15–23.) Later when questioned about how and why the infringement ceased, JadooTV's founder and CEO stated "at some point after our attorneys, you know, advised, we went ahead and created" the software patch. (*Id.* Ex. 3 at 201:3-4.) Defendants also produced documents from their attorneys to DISH's counsel in which Defendants' attorneys informed DISH they have no obligation under copyright law to reduce infringement taking place on the Jadoo service. (*Id.* ¶ 3, Ex. 2.) Defendants' testimony and exhibits relate to several issues including intent and willfulness, and if Defendants intend to argue to the Court or jury that they relied in good faith upon the advice of their counsel then DISH is entitled to discovery on this issue. (*Id.* ¶¶ 3-4, n.1.)

DISH made several requests that Defendants either respond to discovery into the advice of counsel, or unequivocally stipulate they will not be asserting the defense.[1] (*Id.* ¶¶ 6, 8, 9, 11; Ex. 5 at 2-5; Ex. 7; Ex. 8 at 2; Ex. 10 at 1-2); *see United States v. Bilzerian*, 926 F.2d 1285, 1291–92 (2d Cir. 1991) (finding defendant put attorney communications at issue where he previously discussed his "allegedly fraudulent transactions" with his attorney and then argued good faith compliance with the law); *Chevron Corp. v. Pennzoil, Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (holding that the defendant's argument that its "tax position" was "reasonable according to advice given by tax counsel" was an implicit waiver); *Olvera v. Cty. of Sacramento*, 2012 WL 273158, at *4 (E.D. Cal. Jan. 30, 2014) (affirming magistrate order compelling discovery of privileged communications because defendants' decision how to proceed which they made in consultation with counsel "necessarily incorporates what defendants learned from county counsel").

Defendants, however, refuse to make an unequivocal disclaimer of the defense and instead argue "Defendants do not intend on waiving that privilege and protections. If Defendants' position changes, we will notify you at that time" and Defendants "should not be prohibited from arguing good faith compliance with copyright law." (Ferguson Decl. ¶ 12, Ex. 11 at 1; Defs.' Position.)

**DISH's Final Proposed Compromise on Issue No. 1:** The Court should require Defendants to fully respond to DISH's Interrogatory Nos. 18-19 and Requests for Production Nos. 30 and 114 and respond to deposition questions about the advice of counsel defense. Alternatively, Defendants should unequivocally stipulate, or be ordered, that they shall not assert, raise or imply the advice of counsel defense in any manner, including "any evidence that [defendant's] investigation in response to the cease and desist letters included consultations with counsel." *See Volterra Semiconductor Corp. v. Primarion, Inc.*, 2013 WL 1366037, at *3 (N.D. Cal. Apr. 3, 2013); *United States v. Ormat Indus., Ltd.*, 2016 WL 4107682, at *5 (D. Nev. Aug. 1, 2016) (requiring defendants

---

[1] *See* (Ferguson Decl. ¶ 5, Ex. 4 at 5-6, 8-9, 12-13 (ROGs 18-19, RFPs 30, 114).)

to make a choice either to assert the defense and waive the privileges or abandon the defense and keep the privileges).

**Defendants' Position on Issue No. 1:** Defendants have not raised the advice of counsel defense and therefore have not waived the attorney–client privilege. Defendants recognize that relying on advice of counsel can impliedly waive attorney-client privilege.[2] However, implied waiver only occurs when the party asserting the privilege acts affirmatively to place a privileged communication in issue between the party seeking discovery and itself, such that denying access to the communication becomes manifestly unfair to the party seeking discovery. *Id.* Defendants have not acted affirmatively to place any privileged communications in issue with DISH. Defendants have not asserted any advice of counsel defense in its answers or any of its responses to DISH's discovery and have not attempted to prove any defense by disclosing such advice.[3] Defendants have consistently asserted attorney-client privilege.[4] Defendants should not be prohibited from arguing good faith compliance with copyright law using non-privileged materials.[5] As a result, Defendants should neither be required to supplement their discovery responses nor enter into an overly broad stipulation as DISH requests.

**Statement of Unresolved Issue No. 2:** Whether Defendants should supplement their production of documents concerning revenues, costs, and subscribers, and produce documents showing payments to Sohail family members and family businesses.

**DISH's Position on Issue No. 2:** Defendants produced some financial documents showing unit sales, subscribers, revenues, and costs from an early time period of their infringement. (Ferguson Decl. ¶ 11, Ex. 10 at 4.) However, Defendants refuse to produce documents showing the data for

---

[2] *Volterra*, 2013 WL 1366037, at *2 (N.D. Cal., Apr. 3, 2013) (citations omitted).

[3] It was DISH, not Defendants, that inserted advice of counsel into this matter through its Interrogatory No. 18. Defendants responded by preserving attorney-client client privilege and work-product protections. Similarly, DISH's citation to the deposition testimony of Jadoo TV's 30(b)(6) witness does not show Defendants' assertion of advice of counsel, it shows preservation of attorney-client privilege. DISH claims that waiver is also shown through correspondence that was sent to DISH from the law firm O'Melveny & Myers LLP, on Jadoo TV's behalf, in response to DISH's letter regarding its purportedly licensed material. This is not an attorney-client privileged communication as it was sent directly to DISH. *See, e.g.,* Exs. 1 & 2 to the Ferguson Decl.

[4] *Genentech, Inc. v. Insmed, Inc.*, 236 F.R.D. 466, 469 (N.D. Cal. 2006) ("Waiver is not likely to be found when the statements alleged to constitute waiver do not disclose the contents of a specific communication between client and attorney"). DISH's citations to *Bilzerian, Chevron,* and *Olvera* in support of waiver all involve parties that raised the advice of counsel defense and are therefore inapplicable here. DISH is not subject to any unfairness because Defendants are only using attorney-client privilege as a shield, not a sword. *Telephia, Inc. v. Cuppy*, No. C 04-03508 SI, 2006 WL 8460247, at *2 (N.D. Cal., Jan. 24, 2006) ("[P]laintiff has not used advice of counsel in any affirmative capacity").

[5] Although Defendants do not intend to use privileged materials in their defense, DISH indicates that using non-privileged materials, like the O'Melveny & Myers letter, to show good faith compliance with copyright law would waive privilege. "The mere denial of intent is insufficient to establish waiver of the privilege." *Genentech*, 236 F.R.D. at 469; *Volterra,* 2013 WL 1366037, at *2 (N.D. Cal., Apr. 3, 2013) (privilege not waived by merely denying that party acted willfully). Even when there is a waiver of attorney-client privilege, which is not the case here, it is narrow: "the court must impose a waiver no broader that needed to ensure the fairness of the proceedings before it." *In re LendingClub Sec. Litig.,* 2018 WL 9777558, at *2 (N.D. Cal. Feb. 20, 2018).

the time period after the infringement ceased. Financial information from the time period after the infringement stopped is needed to show that when they ceased infringing, they made less money and to draw other comparisons between their business operating under an infringement model and a non-infringing model.

Defendants must also produce documents showing payments they made to Sohail family members and family businesses as described in DISH's October 7, 2022 meet and confer letter, which is relevant to show how Sajid Sohail and his family personally profited from infringement, to identify Defendants' profits, and to challenge whether these payments are deductible costs. (*Id.* ¶¶ 10-12); *see Oracle Amer., Inc. v. Google Inc.*, 131 F. Supp. 3d 946, 953 (N.D. Cal. 2015); 17 U.S.C. § 504.

**DISH's Final Proposed Compromise on Issue No. 2:** The Court should require Defendants to supplement previously produced documents concerning Defendants' revenues, costs, and subscribers, and produce documents showing details of payments to Sohail family members and family businesses as requested by DISH during the meet and confer process.[6] (Ferguson Decl. ¶ 11, Ex. 10 at 2-3 (listing financial documents to be supplemented the documents to be produced showing payments to Sohail family members and family businesses)).

**Defendants' Position on Issue No. 2:** DISH's demand for documents through October 2022 was made for the first time in an October 7, 2022, meet and confer letter. Defendants substantively responded to DISH's requests for documents related to revenues and profits arising from the alleged infringement.[7] DISH has still not explained why a time period extending three years after the alleged infringement ceased is proportional and relevant to this case.[8] Rather than engage in the meet and confer process and respond to Defendants' request for more information, DISH insists on filing this letter brief instead.

**Statement of Unresolved Issue No. 3:** Whether Defendants should be required to make Sadia Sohail available for a deposition.

---

[6] *See* Ferguson Decl. ¶ 5, Ex. 4 at 2-3, 10, 15-21, 23-25 (ROGs 4-5, RFPs 49, 51-53, 55, 59-61, 63, 127-140).

[7] DISH's First Set of Requests for Production of Documents ("RFP") and First Set of Interrogatories ("ROG") were served in February 2019 and requested documents and information from 2015 to the present (this includes RFP Nos. 49, 51-53, 55, 59-61, 63 and ROG Nos. 4-5 cited in DISH's footnote). Defendants provided documents and information through the present, 2019, as requested. The remaining requests DISH cites to were in its Fourth Set of Requests for Production of Documents, Nos. 127-140, which were served in June 2021. Defendants responded that all relevant documents had either been produced previously or there were no responsive documents after a search was conducted. Defendants objected to overbroad requests, including RFP Nos. 135-136, 138-140. These include requests for "all disbursements" "from any entity, by any means" as well as "all transfers or payments of funds from any bank account from any entity." DISH is not entitled to sweeping discovery into financial records that are disconnected from revenues and profits related to the alleged infringement. To the extent these requests can be narrowed, they are encompassed in other requests and responsive documents were produced. On October 20, 2022, Defendants responded to DISH's demand for documents through October 2022. Ex. 11 to Ferguson Decl.

[8] DISH cites to *Oracle,* but that case merely states that "it is the copyright owner's burden to present proof of the infringer's gross revenue from the infringing product, and it is the infringer's burden to prove its 'deductible expenses' and the elements of its profits 'attributable to factors other than the copyrighted work.'" 131 F.Supp.3d at 949 (N.D. Cal. 2015). This proof is tied to the time period of infringement, so it remains unclear why DISH is demanding materials through October 2022, other than to create an unnecessary burden and expense for Defendants.

**DISH's Position on Issue No. 3:** Sadia Sohail was the Chief Operating Officer of JadooTV, a director, and a shareholder. (Ferguson Decl. ¶ 11, Ex. 10 at 4-6.) She oversaw JadooTV's customer support division, received customer complaints, and was the supervisor for JadooTV's content curation manager, Malik, who "reported directly" to her. (*Id.* ¶ 4; Ex. 3 at 144:5-9; Ex. 10 at 4.) Malik is a witness listed on Defendants' initial and supplemental disclosures as being located in "Islamabad, Pakistan" for "[t]he curation of TV content accessible" on the Jadoo service. (*Id.* ¶ 13, Ex. 12 at 3, 7.) Defendants prevented DISH from taking Malik's deposition by not producing him for deposition and withholding his address until October 31, 2022. (*Id.* ¶¶ 11-13; Ex 10 at 6; Ex. 11 at 2; Ex. 12.) Defendants paid Sadia Sohail approximately $149,773 per year as COO, despite Defendants' claim that her title was "largely ceremonial." (*Id.* ¶ 15; Ex. 14 at 16; Defs.' Position.) DISH should be permitted to depose Sadia Sohail, but Defendants object to producing her for deposition.

**DISH's Final Proposed Compromise on Issue No. 3:** The Court should require Defendants to make Sadia Sohail available for a deposition.

**Defendants' Position on Issue No. 3:** Defendants have repeatedly informed DISH that Defendant Sajid Sohail's wife, non-party Sadia Sohail, does not have knowledge regarding the allegations in this case, but DISH continues to insist on deposing her. As stated in her declaration, Sadia Sohail does not have knowledge about the technology, transmission, or sales of Jadoo TV channels which are the subject matters of this copyright infringement action. Ex. A to Poppler Declaration.[9] DISH's request to depose Sadia Sohail is not proportional to the needs of the case and the burden and expense far outweigh the benefit.[10] As stated in Defendants' October 20, 2022, meet and confer letter, Defendants were willing to have Mrs. Sohail sign a declaration attesting to the fact that she does not possess any relevant information regarding the allegations in the complaint. This is a cost-effective and efficient means to assure DISH that she does not have information pertinent to this matter.

---

[9] Mrs. Sohail was not involved in the design or development of Jadoo set-top boxes, mobile applications, or the eMedia application. Sadia Sohail Decl. at 7. She did not supervise, select, source, store, or transmit channels that were available on Jadoo TV. *Id.* at 8. She did not have control over computer servers that were used to transmit allegedly copyrighted programs. *Id.* She was not involved in sales of Jadoo TV set-top boxes, nor did she have a role in authorizing, instructing, or providing users with access to the channels available on Jadoo TV set-top boxes and mobile applications. *Id.* at 9. DISH cites to emails in its October 7, 2022, meet and confer letter that it claims is proof that Sadia Sohail was "intimately involved in the operation of the Jadoo TV" and therefore has relevant knowledge. Ex. 10 to Ferguson Decl. But none of these emails are directed to or from Sadia Sohail individually. Moreover, contrary to DISH's assertion, Awais Malik, who managed content curation, did not report to Sadia Sohail. He stated in an August 7, 2020, affidavit used as a deposition exhibit that he reported to Mr. Sohail, Mrs. Sohail, and "coordinated frequently with Fred Missaghi." Ex. B to Poppler Decl. Sadia Sohail makes clear that she and Mr. Malik would occasionally speak over the phone regarding popular on demand shows based on what her friends were watching, but that he did not report to her. Sadia Sohail Decl. at ¶ 6.

[10] Sadia Sohail's title at Jadoo TV was Chief Operating Officer, but this was a largely ceremonial title. Sadia Sohail Decl. at ¶ 4. Her duties included managing the office and handling operations of the company in the form of shipping, receiving, returns handling, and office administration. *Id.* She occasionally dealt with customer support issues if a customer asked to speak with a manager about a refund. *Id.* Two-full time employees assisted her with shipping, receiving, and returns. Sadia Sohail has a background in interior design, so she also provided feedback to her husband and the marketing department about the colors and aesthetics of promotional materials. *Id.* at ¶¶ 2, 5.

4

**Statement of Unresolved Issue No. 4:** Whether Defendants should be required to make Sonya Sohail available for a deposition.

**DISH's Position on Issue No. 4:** Sonya Sohail was Jadoo TV's Secretary, Director, and General Counsel that received and assisted in responding to DISH's notices of infringement. (Ferguson Decl. ¶¶ 2, 4, 14; Ex. 1; Ex. 3 at 15:18-16:6; Ex. 13.) She was 1 of 3 Directors who attended board meetings discussing company updates and approved a $200,000 loan to Mr. Sohail after this lawsuit was filed. (*Id.* Ex. 3 at 15:18-16:6; 98:9-99:19.) Mr. Sohail testified it would have been her, if anyone, who instructed Jadoo customer service to not provide search terms for Jadoo users to search YouTube for videos on instructions for adding eMedia files that provided the copyrighted content. (*Id.* Ex. 3 at 229:6-230:2; ECF 194 ¶¶ 40-42.) She has relevant information concerning these issues, the notices of infringement, and Defendants' advice of counsel defense. DISH should be permitted to depose Sonya Sohail, but Defendants object to producing her for deposition.

**DISH's Final Proposed Compromise on Issue No. 4:** The Court should require Defendants to make Sonya Sohail available for a deposition.

**Defendants' Position on Issue No. 4:** DISH's relentless pursuit of Defendant Sajid Sohail's family members continues with its request to depose Mr. Sohail's daughter, non-party Sonya Sohail, who served as Jadoo TV's general counsel for a limited period of time. Similar to Sadia, DISH's references to notices of and responses to infringement merely show that Sonya was copied on correspondence. Defendants made clear above that they are not asserting an advice of counsel defense and are not waiving attorney-client privilege and work product protections. Sonya Sohail does not have relevant information that falls outside of these privileges and protections and should not be subjected to sit for a deposition.

**Statement of Unresolved Issue No. 5:** Whether Defendants should be required to pay DISH's reasonable attorney's fees incurred in preparing the letter brief.

**DISH's Position on Issue No. 5:** The Court should find that an order awarding fees to DISH pursuant to Rule 37(a)(5)(A) and Local-Rule 37-4 is appropriate (*See id.* ¶¶ 9-12, 14, Exs. 7-10.))

**DISH's Final Proposed Compromise on Issue No. 5:** The Court should grant DISH's request for reasonable attorney's fees of $7,198.20. (*Id.* ¶ 16.)

**Defendants' Position on Issue No. 5:** Defendants should not be required to pay attorneys' fees associated with an unnecessary letter brief that is in violation of rules regarding engaging in a good faith meet and confer process as required by this Court's standing order, Fed. R. Civ. P. 37(a)(1), and Civil L. R. 37-1. Rather than respond to Defendants' October 20, 2022, meet and confer letter or schedule a phone call to discuss further, DISH insists on filing this letter brief instead.

## FILER'S ATTESTATION

Pursuant to Civil L.R. 5-1(i)(3) regarding signatures, I, Stephen M. Ferguson, attest that concurrence in the filing of this document has been obtained from each of the other signatories. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated November 3, 2022                HAGAN NOLL & BOYLE LLC

By: */s/ Stephen M. Ferguson*
    Stephen M. Ferguson