# EXHIBIT 1

| | |
|---|---|
| **From:** | Stephen Ferguson |
| **Sent:** | Thursday, June 28, 2018 2:38 PM |
| **To:** | 'Snyder, Darin (dsnyder@omm.com)' |
| **Cc:** | 'sonya.sohail@cloudstreaminc.com'; 'legal@jadootv.com' |
| **Subject:** | JadooTV / DISH, IBCAP |
| **Attachments:** | 06282018 Letter to Snyder re JadooTV (DISH, IBCAP).pdf |

Mr. Snyder,

Please see the attached letter.

Best regards,

Stephen M. Ferguson
Hagan Noll & Boyle LLC
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, TX 77024
713.343.0478 T (ext. 102)
713.758.0146 F
www.hnbllc.com

The information contained in this email may be confidential and/or legally privileged.  It has been sent for the sole use of the intended recipient(s).  If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents or attachments, is strictly prohibited.  If you have received this communication in error, please reply to the sender and destroy all copies of the message and its attachments.  To contact us directly, please email info@hnbllc.com.  Thank you.

DISH 000968



Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Tel: 713.343.0478
Fax: 713.758.0146
www.hnbllc.com

June 28, 2018

***VIA Email***

Darin Snyder
O'Melveny & Myers LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Email: dsnyder@omm.com

**Re:    Notice of JadooTV's Unauthorized Distribution of DISH and IBCAP Member Television Programming**

Dear Mr. Snyder:

I write on behalf of DISH Network L.L.C. ("DISH"), the International Broadcaster Coalition Against Piracy ("IBCAP") and IBCAP Members concerning JadooTV.

JadooTV is providing 48 television channels through its set-top box without authorization from DISH or the channel owners. A table listing each channel and their location in the Jadoo electronic programming guide is set forth below.

Certain unauthorized channels appear to be embedded directly by JadooTV into the service, and other channels appear to be distributed at JadooTV's direction and control through its eMedia application. Such infringement is continuing to occur via Jadoo4 and Jadoo5 set-top boxes preloaded with the eMedia app designed to run in conjunction with the "South Asian Super Pack" file.

We previously requested on behalf of DISH and IBCAP Members that JadooTV cease distributing set-top boxes preloaded with the eMedia app and remove or block the eMedia app and South Asian Super Pack file on devices it has already distributed in the United States.[1] JadooTV declined to do so, insinuating that some unknown benefactor was aggregating the infringing channels and providing the South Asian Super Pack file that appears to only work in connection with the JadooTV service.

---

[1] See letters dated September 12, 2016, September 16, 2016, and October 10, 2016.

However, when third party CDNs, ISPs and file hosting sites have removed the source streams of the channels or the software files, access to the unauthorized channels is quickly restored.

The unauthorized channels and their location in the JadooTV electronic programming guide are listed below:

| Channel | Location |
|---|---|
| Aaj Tak | LIVE TV / Hindi / AajTak |
| Aaj Tak | eMEDIA / South Asian Super Pack / Hindi / AajTak |
| Aapka Colors (Colors) | LIVE TV / Hindi / Colors HD, Colors Europe |
| Aapka Colors (Colors) | eMEDIA / South Asian Super Pack / Hindi / Colors HD, Colors Europe |
| Al Jazeera English | LIVE TV / English / Aljazeera English |
| Al Jazeera English | eMEDIA / South Asian Super Pack / English / Aljazeera English |
| ARY Digital | LIVE TV / Pakistani / ARY Digital, ARY Digital World |
| ARY Digital | eMEDIA / South Asian Super Pack / Pakistani / ARY Digital, ARY Digital World |
| ARY News | LIVE TV / Pakistani / ARY News, ARY News World |
| ARY News | eMEDIA / South Asian Super Pack / Pakistani / ARY News, ARY News World |
| ARY QTV | LIVE TV / Pakistani / ARY QTV |
| ARY QTV | eMEDIA / South Asian Super Pack / Pakistani / ARY QTV |
| ATN Bangla | LIVE TV / Bangla / ATN Bangla |
| ATN Bangla | eMEDIA / South Asian Super Pack / Bangla / ATN Bangla |
| ATN News | LIVE TV / Bangla / ATN News |
| ATN News | eMEDIA / South Asian Super Pack / Bangla / ATN News |
| B4U Movies | LIVE TV / Hindi / B4u Movie |
| B4U Movies | eMEDIA / South Asian Super Pack / Hindi / B4u Movie |
| B4U Music | LIVE TV / Hindi / B4U Music |
| B4U Music | eMEDIA / South Asian Super Pack / Hindi / B4U Music |
| Banglavision | LIVE TV / Bangla / Bangla Vision |
| Banglavision | eMEDIA / South Asian Super Pack / Bangla / Bangla Vision |
| beIN Sports 1 | LIVE TV / Sports / Bein Sports01 |
| beIN Sports 1 | eMEDIA / South Asian Super Pack / Sports / Bein Sports01 |
| beIN Sports 2 | LIVE TV / Sports / Bein Sports02 |
| beIN Sports 2 | eMEDIA / South Asian Super Pack / Sports / Bein Sports02 |
| beIN Sports 3 | LIVE TV / Sports / Bein Sports03 |
| beIN Sports 3 | eMEDIA / South Asian Super Pack / Sports / Bein Sports03 |
| beIN Sports 4 | LIVE TV / Sports / Bein Sports04 |
| beIN Sports 4 | eMEDIA / South Asian Super Pack / Sports / Bein Sports04 |
| beIN Sports 5 | LIVE TV / Sports / Bein Sports05 |
| beIN Sports 5 | eMEDIA / South Asian Super Pack / Sports / Bein Sports05 |
| beIN Sports 6 | LIVE TV / Sports / Bein Sports06 |
| beIN Sports 6 | eMEDIA / South Asian Super Pack / Sports / Bein Sports06 |
| beIN Sports 7 | LIVE TV / Sports / Bein Sports07 |
| beIN Sports 7 | eMEDIA / South Asian Super Pack / Sports / Bein Sports07 |
| beIN Sports 8 | LIVE TV / Sports / Bein Sports08 |

| beIN Sports 8 | eMEDIA / South Asian Super Pack / Sports / Bein Sports08 |
|---|---|
| beIN Sports 9 | LIVE TV / Sports / Bein Sports09 |
| beIN Sports 9 | eMEDIA / South Asian Super Pack / Sports / Bein Sports09 |
| beIN Sports 10 | LIVE TV / Sports / Bein Sports10 |
| beIN Sports 10 | eMEDIA / South Asian Super Pack / Sports / Bein Sports10 |
| beIN Sports 11 | LIVE TV / Sports / Bein Sports11 |
| beIN Sports 11 | eMEDIA / South Asian Super Pack / Sports / Bein Sports11 |
| beIN Sports 12 | LIVE TV / Sports / Bein Sports12 |
| beIN Sports 12 | eMEDIA / South Asian Super Pack / Sports / Bein Sports12 |
| Boishaki | LIVE TV / Bangla / Boishkai |
| Boishaki | eMEDIA / South Asian Super Pack / Bangla / Boishkai |
| Channel-i | LIVE TV / Bangla / Channel I |
| Channel-i | eMEDIA / South Asian Super Pack / Bangla / Channel I |
| Desh TV | LIVE TV / Bangla / Desh TV |
| Desh TV | eMEDIA / South Asian Super Pack / Bangla / Desh TV |
| Dunya TV | LIVE TV / Pakistani / Dunya |
| Dunya TV | eMEDIA / South Asian Super Pack / Pakistani / Dunya |
| Express Entertainment | LIVE TV / Pakistani / Express Entertainment |
| Express Entertainment | eMEDIA / South Asian Super Pack / Pakistani / Express Entertainment |
| Express News | LIVE TV / Pakistani / Express News |
| Express News | eMEDIA / South Asian Super Pack / Pakistani / Express News |
| Geo News | LIVE TV / Pakistani / Geo News International, Geo News |
| Geo News | eMEDIA / South Asian Super Pack / Pakistani / Geo News International, Geo News |
| Geo TV | LIVE TV / Pakistani / Geo Entertainment |
| Geo TV | eMEDIA / South Asian Super Pack / Pakistani / Geo Entertainment |
| Hum Masala | LIVE TV / Pakistani / Masala TV |
| Hum Masala | eMEDIA / South Asian Super Pack / Pakistani / Masala TV |
| Hum Sitaray | LIVE TV / Pakistani / Hum Sitaray |
| Hum Sitaray | eMEDIA / South Asian Super Pack / Pakistani / Hum Sitaray |
| Hum TV | LIVE TV / Pakistani / Hum TV, Hum Europe |
| Hum TV | eMEDIA / South Asian Super Pack / Pakistani / Hum TV, Hum Europe |
| Hum World | LIVE TV / Pakistani / Hum TV World |
| Hum World | eMEDIA / South Asian Super Pack / Pakistani / Hum TV World |
| Maasranga | LIVE TV / Bangla / Masranga |
| Maasranga | eMEDIA / South Asian Super Pack / Bangla / Masranga |
| Movies OK | LIVE TV / Hindi / Movies OK |
| Movies OK | eMEDIA / South Asian Super Pack / Hindi / Movies OK |
| MTV Hindi (MTV India) | LIVE TV / Hindi / MTV India |
| MTV Hindi (MTV India) | eMEDIA / South Asian Super Pack / Hindi / MTV India |
| NDTV 24x7 | LIVE TV / Hindi / NDTV |
| NDTV 24x7 | eMEDIA / South Asian Super Pack / Hindi / NDTV |
| NTV Bangla | LIVE TV / Bangla / NTV Bangla |
| NTV Bangla | eMEDIA / South Asian Super Pack / Bangla / NTV Bangla |
| SAB | LIVE TV / Hindi / Sony Sab UK, Sony Sab India |
| SAB | eMEDIA / South Asian Super Pack / Hindi / Sony Sab UK, Sony Sab India |
| SET Max | LIVE TV / Hindi / Sat Max |
| SET Max | eMEDIA / South Asian Super Pack / Hindi / Sat Max |

| Sony SET | LIVE TV / Hindi / Sony HD, Sony UK |
| Sony SET | eMEDIA / South Asian Super Pack / Hindi / Sony HD, Sony UK |
| Star India Plus | LIVE TV / Hindi / Star Plus HD, Star Plus |
| Star India Plus | eMEDIA / South Asian Super Pack / Hindi / Star Plus HD, Star Plus |
| Times Now | LIVE TV / Hindi / Times Now, Times Now HD |
| Times Now | eMEDIA / South Asian Super Pack / Hindi / Times Now, Times Now HD |
| Zee Aflam | LIVE TV / Hindi / Zee Aflam |
| Zee Aflam | eMEDIA / South Asian Super Pack / Hindi / Zee Aflam |
| Zee Cinema | LIVE TV / Hindi / Zee Cinema HD |
| Zee Cinema | eMEDIA / South Asian Super Pack / Hindi / Zee Cinema HD |
| Zee TV | LIVE TV / Hindi / Zee TV HD, Zee TV UK |
| Zee TV | eMEDIA / South Asian Super Pack / Hindi / |

We demand that JadooTV remove all of these channels from its devices (including in its EPG and apps) and prevent the channels from returning in any manner. In particular, JadooTV should take all available measures to remove and block the South Asian Super Pack file from its devices once and for all.

We are providing this notice based on our good faith belief that the use of television programs owned by DISH and IBCAP Members in the manner occurring via JadooTV set-top boxes, eMedia app, and South Asian Super Pack file is not authorized by the copyright owners, their agents, or the law. The information in this notification is accurate and, under penalty of perjury, we are authorized to act on behalf of DISH and IBCAP Members, which own or control exclusive rights under copyright that are being infringed in the manner described herein. This letter is without prejudice to the rights and remedies of DISH and IBCAP Members, all of which are expressly reserved.

We request the courtesy of a response by July 5, 2018. If you wish to discuss this matter further, do not hesitate to contact me.

Sincerely,

**HAGAN NOLL & BOYLE LLC**

Stephen M. Ferguson

cc:     Sonya A. Sohail
        sonya.sohail@cloudstreaminc.com
        legal@jadootv.com

| | |
|---|---|
| **From:** | Stephen Ferguson |
| **Sent:** | Friday, September 16, 2016 4:09 PM |
| **To:** | Snyder, Darin (dsnyder@omm.com) |
| **Cc:** | sonya.sohail@cloudstreaminc.com; legal@jadootv.com |
| **Subject:** | JadooTV / IBCAP |
| **Attachments:** | 9.16.2016 Letter to Snyder re JadooTV (IBCAP).pdf |

Mr. Snyder,

Please see the attached letter.

Best regards,

Stephen M. Ferguson
Hagan Noll & Boyle LLC
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, TX 77024
713.343.0478 T (ext. 102)
713.758.0146 F
www.hnbllc.com

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents or attachments, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message and its attachments. To contact us directly, please email info@hnbllc.com. Thank you.

DISH 000935

Case No. 2:18-cv-09768-FMO (KSx)



Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Tel: 713.343.0478
Fax: 713.758.0146
www.hnbllc.com

September 16, 2016

<u>**VIA Electronic Mail**</u>

Darin Snyder
O'Melveny & Myers LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Email: dsnyder@omm.com

> Re:     Forty-first Notice of JadooTV's Unauthorized Distribution of IBCAP
>         Members' Television Programming

Dear Mr. Snyder:

I write on behalf of the International Broadcaster Coalition Against Piracy ("IBCAP") and IBCAP members ARY Digital USA, B4U U.S., beIN Media Group, Bennett, Coleman and Company Limited, Geo USA Holdings, Hum Network Limited, Impress Telefilm, IndiaCast US, NDTV Limited, Soundview ATN, Soundview Broadcasting, Star India Private Limited, and TV Today Network ("Members"), which own or control exclusive rights under copyright to distribute the Aaj Tak, Aapka Colors (Colors), ARY Digital, ARY News, ATN Bangla, ATN News, B4U Movies, B4U Music, Banglavision, beIN Sports 1HD, beIN Sports 2HD, beIN Sports 3HD, beIN Sports 12HD, Boishakhi, Channel-i, Desh TV, Geo News, Geo TV, Hum Masala, Hum Sitaray, Hum TV, Hum World HD, India Today (Headlines Today), Life OK, Maasranga, Movies OK, MTV Hindi (MTV India), NDTV 24x7, QTV, Star India Plus, and Times Now ("Protected Content") in the United States.

JadooTV is again violating Members' exclusive rights by distributing the Protected Content in the United States via the Live TV and eMedia sections of the JadooTV service.[1]  The Protected Content can be found at the following locations on the Jadoo4 box:

> Aaj Tak – Live / Live TV / Hindi / AajTak
> Aaj Tak – Live / eMedia / Hindi / AajTak

---

[1] See letters dated October 1, 2014, October 31, 2014, November 4, 2014, November 24, 2014, December 4, 2014, December 5, 2014, January 8, 2015, January 27, 2015, February 4, 2015, February 24, 2015, February 27, 2015, March 10, 2015, March 17, 2015,, March 18, 2015, March 19, 2015, April 9, 2015 (2), April 13, 2015, April 16, 2015, April 20, 2015, April 21, 2015, May 19, 2015 (2), May 22, 2015, May 29, 2015, June 3, 2015, June 4, 2015, June 8, 2015, August 3, 2015, November 18, 2015, December 2, 2015, December 10, 2015, December 17, 2015, December 29, 2015, January 5, 2016, January 12, 2016, January 20, 2016, March 22, 2016, May 10, 2016, and September 12, 2016.

DISH 000936

Aapka Colors (Colors) – Live / Live TV / Hindi / Colors HD
Aapka Colors (Colors) – Live / Live TV / Hindi / Colors SD
Aapka Colors (Colors) – Live / Live TV / Hindi / Colors Europe
Aapka Colors (Colors) – Live / Live TV / Hindi / Colors UK
Aapka Colors (Colors) – Live / Live TV / Hindi / Colors Ind
Aapka Colors (Colors) – Live / eMedia / Hindi / Colors HD
Aapka Colors (Colors) – Live / eMedia / Hindi / Colors SD
Aapka Colors (Colors) – Live / eMedia / Hindi / Colors Europe
Aapka Colors (Colors) – Live / eMedia / Hindi / Colors UK
Aapka Colors (Colors) – Live / eMedia / Hindi / Colors Ind
ARY Digital – Live / Live TV / Pakistani / Ary Digital
ARY Digital – Live / Live TV / Pakistani / Ary Digital World
ARY Digital – Live / eMedia / Pakistani / Ary Digital
ARY Digital – Live / eMedia / Pakistani / Ary Digital World
ARY News – Live / Live TV / Pakistani / Ary News
ARY News – Live / Live TV / Pakistani / Ary News World
ARY News – Live / eMedia / Pakistani / Ary News
ARY News – Live / eMedia / Pakistani / Ary News World
ATN Bangla – Live / Live TV / Bangla / ATN Bangla
ATN Bangla – Live / eMedia / Bangla / ATN Bangla
ATN News – Live / Live TV / Bangla / ATN News
ATN News – Live / eMedia / Bangla / ATN News
B4U Movies – Live / Live TV / Hindi / B4u Movie
B4U Movies – Live / eMedia / Hindi / B4u Movie
B4U Music – Live / Live TV / Hindi / B4U Music
B4U Music – Live / eMedia / Hindi / B4U Music
Banglavision – Live / Live TV / Bangla / Bangla Vision
Banglavision – Live / eMedia / Bangla / Bangla Vision
beIN Sporst 1HD – Live / Live TV / Sports / Bein Sports 1
beIN Sporst 1HD – Live / eMedia / Sports / Bein Sports 1
beIN Sports 2HD – Live / Live TV / Sports / Bein Sports2
beIN Sports 2HD – Live / eMedia / Sports / Bein Sports2
beIN Sports 3HD – Live / Live TV / Sports / Bein Sports3
beIN Sports 3HD – Live / eMedia / Sports / Bein Sports3
beIN Sports 12HD – Live / Live TV / Sports / Bein Sports12
beIN Sports 12HD – Live / eMedia / Sports / Bein Sports12
Boishakhi – Live / Live TV / Bangla / Boishkai
Boishakhi – Live / eMedia / Bangla / Boishkai
Channel-i – Live / Live TV / Bangla / Channel I
Channel-i – Live / eMedia / Bangla / Channel I
Desh TV – Live / Live TV / Bangla / Desh TV
Desh TV – Live / eMedia / Bangla / Desh TV
Geo News – Live / Live TV / Pakistani / Geo News
Geo News – Live / eMedia / Pakistani / Geo News
Geo TV – Live / Live TV / Pakistani / Geo Entertainment
Geo TV – Live / eMedia / Pakistani / Geo Entertainment
Hum Masala – Live / Live TV / Pakistani / Masala TV
Hum Masala – Live / eMedia / Pakistani / Masala TV
Hum Sitaray – Live / Live TV / Pakistani / HUM Sitaray

      Hum Sitaray – Live / eMedia / Pakistani / HUM Sitaray
      Hum TV – Live / Live TV / Pakistani / HUM TV
      Hum TV – Live / eMedia / Pakistani / HUM TV
      Hum World HD – Live / Live TV / Pakistani / HUM TV World
      Hum World HD – Live / eMedia / Pakistani / HUM TV World
      India Today (Headlines Today) – Live / Live TV / Hindi / India Today
      India Today (Headlines Today) – Live / eMedia / Hindi / India Today
      Life OK – Live / Live TV / Hindi / Life Ok
      Life OK – Live / eMedia / Hindi / Life Ok
      Maasranga – Live / Live TV / Bangla / Masranga
      Maasranga – Live / eMedia / Bangla / Masranga
      Movies OK – Live / Live TV / Hindi / Movie Ok
      Movies OK – Live / eMedia / Hindi / Movie Ok
      MTV Hindi (MTV India) – Live / Live TV / Hindi / MTV India
      MTV Hindi (MTV India) – Live / eMedia / Hindi / MTV India
      NDTV 24x7 – Live / Live TV / Bangla / NDTV
      NDTV 24x7 – Live / eMedia / Bangla / NDTV
      QTV – Live / Live TV / Bangla / Ary QTV
      QTV – Live / eMedia / Bangla / Ary QTV
      Star India Plus – Live / Live TV / Hindi / Star Plus HD
      Star India Plus – Live / eMedia / Hindi / Star Plus HD
      Star India Plus – Live / Live TV / Hindi / Star Plus
      Star India Plus – Live / eMedia / Hindi / Star Plus
      Times Now – Live / Live TV / Hindi / Times Now
      Times Now – Live / eMedia / Hindi / Times Now

The Protected Content can also be found at the following locations on the Jadoo3 box:

      Hum Masala – Live TV / Pakistani / Masala TV
      Hum Sitaray – Live TV / Pakistani / Hum Sitaray
      Hum TV – Live TV / Pakistani / Hum TV
      Hum World HD –Live TV / Pakistani / Hum World

Enclosed are screenshots evidencing JadooTV's distribution of the Protected Content in the United States.

IBCAP demands that JadooTV immediately remove all Protected Content from all JadooTV services in the United States, regardless of device or method of distribution.

We are providing this notice based on our good faith belief that the use of television programs owned by the Members in the manner occurring via JadooTV's service is not authorized by the copyright owners, their agents, or the law. The information in this notification is accurate and, under penalty of perjury, we are authorized to act on behalf of the Members, which own or control exclusive rights under copyright that are being infringed in the manner described herein. This letter is without prejudice to the rights and remedies of the Members, all of which are expressly reserved.

If you wish to discuss this matter further, do not hesitate to contact me.

DISH 000938

Sincerely,

**HAGAN NOLL & BOYLE LLC**

Stephen M. Ferguson

cc:     Sonya A. Sohail
        sonya.sohail@cloudstreaminc.com
        legal@jadootv.com

DISH 000939

**Stephen Ferguson**

| | |
|---|---|
| **From:** | Stephen Ferguson |
| **Sent:** | Monday, October 10, 2016 7:40 PM |
| **To:** | Snyder, Darin (dsnyder@omm.com) |
| **Cc:** | sonya.sohail@cloudstreaminc.com; legal@jadootv.com |
| **Subject:** | JadooTV / IBCAP |
| **Attachments:** | 10 10 2016 Letter to Snyder re JadooTV (IBCAP).pdf |

Mr. Snyder,

Please see the attached letter.

Best regards,

Stephen M. Ferguson
Hagan Noll & Boyle LLC
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, TX 77024
713.343.0478 T (ext. 102)
713.758.0146 F
www.hnbllc.com

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents or attachments, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message and its attachments. To contact us directly, please email info@hnbllc.com. Thank you.

DISH 000940

Case No. 2:18-cv-09768-FMO (KSx)



Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Tel: 713.343.0478
Fax: 713.758.0146
www.hnbllc.com

October 10, 2016

**VIA Electronic Mail**

Darin Snyder
O'Melveny & Myers LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Email: dsnyder@omm.com

  Re: **Forty-second Notice of JadooTV's Unauthorized Distribution of IBCAP Members' Television Programming**

Dear Mr. Snyder:

  I write in furtherance of my September 12, 2016 and September 16, 2016 letters on behalf of the International Broadcaster Coalition Against Piracy ("IBCAP") and IBCAP Members,[1] and in response to your correspondence dated September 21, 2016. JadooTV is directly infringing Hum Network Limited's exclusive rights through its Live TV service and materially contributing to the infringement of IBCAP Members' exclusive rights through its eMedia app and video-on-demand ("VOD") service.

  **JadooTV's Direct Infringement**

  My letter dated September 16, 2016 contained screenshots showing the Hum Masala, Hum Sitaray, Hum TV, and Hum World HD channels (collectively, the "Hum Content") on the Jadoo3 box's EPG and Live TV service. The Hum Content remains available on the Jadoo3 box's Live TV service. This conduct directly infringes Hum Network's exclusive rights and must cease immediately.

  JadooTV maintains that the Hum Content should not be accessible on Jadoo3 devices as a result of geographic restrictions recently put in place. Those restrictions are not working. We tested two different Jadoo3 boxes via Internet Protocol addresses in two different states, and both boxes continue to distribute the Hum Content. Regardless, Hum Network informed us that it has

---

[1] IBCAP Members own or control exclusive rights over the works airing on Aaj Tak, Aapka Colors (Colors), ARY Digital, ARY News, ATN Bangla, ATN News, B4U Movies, B4U Music, Banglavision, beIN Sports 1HD, beIN Sports 2HD, beIN Sports 3HD, beIN Sports 12HD, Boishakhi, Channel-i, Desh TV, Geo News, Geo TV, Hum Masala, Hum Sitaray, Hum TV, Hum World HD, India Today (Headlines Today), Life OK, Maasranga, Movies OK, MTV Hindi (MTV India), NDTV 24x7, QTV, Star India Plus, and Times Now ("Protected Content") in the United States.

DISH 000941

not authorized JadooTV to distribute the Hum Content anywhere in the world. Accordingly, we demand that JadooTV completely remove the Hum Content from the JadooTV service.

### JadooTV's Secondary Infringement

JadooTV "can be held contributorily liable if it has actual knowledge that specific infringing material is available using its system and can take simple measures to prevent further damage to copyrighted works, yet continues to provide access to infringing works." *Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1172 (9th Cir. 2007). JadooTV has actual knowledge of specific acts of infringement on its eMedia App and VOD services through multiple cease and desist letters, including my September 12th and 16th letters. *See China Cent. Television v. Create New Tech. (HK) Ltd.,* No. CV 15-01869 MMM (MRWx), 2015 WL 3649187, at *11 (C.D. Cal. June 11, 2015) ("A defendant has actual notice of infringement when it receives a cease and desist letter."). JadooTV can also take simple steps to prevent this infringement.

"JadooTV's eMedia (External Media) app allows channel managers, content providers, and developers to add content to their JadooTV devices without having to integrate their system to JadooTV."[2] JadooTV is using its eMedia app to recruit content providers and developers to add infringing content to Jadoo4 boxes. *Id.* ("Calling Content Providers & Developers to Add Content to the Jadoo4 Box"). JadooTV recommends that content providers and developers "put your xml repository on GITHUB, and prefix the name with Jadoo-eMedia_XML_*." *Id.* JadooTV admits that its "eMedia app has a built in capability to search GitHub for any file that uses this prefix" and by "[u]sing the search feature in the app, users can now discover and add content with ease." *Id.* Despite these instructions on JadooTV's website, there are only four XML files available to Jadoo4 users on GitHub. One of these four files is named "jadoo-eMedia-xml---Entertainment-Channels", which is also called the South Asian Super Pack and contains all the Protected Content.[3] JadooTV has actual knowledge that that the Protected Content is available via this file using the Jadoo4 box and JadooTV's eMedia app because at a minimum our September 16 letter notified JadooTV that all the Protected Content could be received via the eMedia app. JadooTV has the ability to stop distributing Jadoo4 boxes containing the eMedia App and the South Asian Super Pack file and to remove or disable the eMedia App and the South Asian Super Pack file on previously distributed Jadoo4 boxes through software updates. Failure to immediately take these actions will expose JadooTV to additional claims of secondary liability. Our investigation is ongoing and we may determine that JadooTV has further involvement in creating or providing the South Asian Super Pack file or streaming the Protected Content.

JadooTV's VOD service also offers the Protected Content, including works airing on the ARY Digital, GEO TV, and Hum channels. You state that JadooTV's VOD service "simply provides bookmarks to the location of certain VOD content elsewhere on the internet." JadooTV erroneously relies on the Seventh Circuit's decision in *Flava Works, Inc. v. Gunter,* 689 F.3d 754 (7th Cir. 2012) to support its position that it is not required to disable bookmarks to the Protected Content hosted on servers controlled by third parties. *Flava Works,* however, is distinguishable.

---

[2] See enclosed screenshots from https://jadootv.com/emedia/.

[3] See enclosed screenshot from Github.com showing the search result for "jadoo_eMedia."

The *Flava Works* court refused to impose secondary liability on a limited preliminary injunction record where the defendant did not encourage the upload of infringing videos and the defendant had no financial incentive to encourage performance of the works. Ultimately, the court refused to impose secondary liability because there was not "admissible evidence that they're [the copyrighted videos] actually being accessed via myVidster, rather than via other websites," and therefore, "myVidster's service really does not contribute significantly to infringement." *Flava Works*, 689 F.3d at 762-763. This is not the case here. We used JadooTV's VOD service to view the Protected Content and are confident other JadooTV users do as well. In addition, the JadooTV service is not a free service and JadooTV has an incentive to encourage viewing of IBCAP members' copyrighted works through the JadooTV platform. Both JadooTV's subscriber-base and revenues increase with the availability of IBCAP Members' Protected Content on the JadooTV service. Thus, if JadooTV can provide its users with an easy place where links to IBCAP Members' Protected Content are indexed and easy to find, JadooTV can significantly bolster its bottom line. Accordingly, *Flava Works* does not insulate JadooTV from secondary liability or allow JadooTV to sit back and do nothing to stop the infringement on its VOD service. IBCAP Members therefore demand that JadooTV immediately remove the links or "bookmarks" to the Protected Content and terminate its relationship with its users providing those links.

In sum, IBCAP and its Members demand that JadooTV immediately: (1) cease distributing the Jadoo4 box containing the eMedia App and the South Asian Super Pack file and infringing VOD links in the United States; (2) remove or block the eMedia App and the South Asian Super Pack file from all Jadoo4 boxes in the United States; (3) remove the infringing VOD links and JadooTV users that provide infringing VOD links from the JadooTV service in the United States; (4) remove or block all eMedia channels from appearing in the Live TV service of all Jadoo4 boxes in the United States; and (5) remove the Hum Content from the Jadoo3 box.

Nothing in this letter is intended or shall be construed to constitute an express or implied waiver of any rights or remedies that IBCAP Members may possess in connection with this matter, all of which are hereby expressly reserved.

We request the courtesy of a response no later than October 17, 2016. If you wish to discuss this matter further, do not hesitate to contact me.

Sincerely,

**HAGAN NOLL & BOYLE LLC**

Stephen M. Ferguson

cc:    Sonya A. Sohail
       sonya.sohail@cloudstreaminc.com
       legal@jadootv.com

DISH 000943

**Stephen Ferguson**

| | |
|---|---|
| **From:** | Stephen Ferguson |
| **Sent:** | Friday, September 16, 2016 4:21 PM |
| **To:** | Snyder, Darin (dsnyder@omm.com) |
| **Cc:** | sonya.sohail@cloudstreaminc.com; legal@jadootv.com |
| **Subject:** | JadooTV / DISH |
| **Attachments:** | 9.16.16 Letter to Snyder re JadooTV (DISH).pdf |

Mr. Snyder,

Please see the attached letter.

Best regards,

Stephen M. Ferguson
Hagan Noll & Boyle LLC
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, TX 77024
713.343.0478 T (ext. 102)
713.758.0146 F
www.hnbllc.com

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents or attachments, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message and its attachments. To contact us directly, please email info@hnbllc.com. Thank you.

DISH 000757

Case No. 2:18-cv-09768-FMO (KSx)



Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Tel: 713.343.0478
Fax: 713.758.0146
www.hnbllc.com

September 16, 2016

**<u>VIA Electronic Mail</u>**

Darin Snyder
O'Melveny & Myers LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Email: dsnyder@omm.com

> **Re:     Sixth Notice of JadooTV's Unauthorized Distribution of DISH Network Television Programming**

Dear Mr. Snyder:

I write on behalf of DISH Network, which owns or controls exclusive rights under copyright to distribute the Express News and Express Entertainment television channels in the United States.

JadooTV is again violating DISH Network's exclusive rights by distributing the Express News and Express Entertainment channels in the United States via the Live TV and eMedia sections of the JadooTV service.[1] The Express News and Express Entertainment channels can be found at the following locations on the JadooTV service:

> Express News – Live / Live TV / Pakistani / Express News
> Express News – Live / eMedia / Pakistani / Express News
> Express Entertainment – Live / Live TV / Pakistani / Express Entertainment
> Express Entertainment – Live / eMedia / Pakistani / Express Entertainment

Enclosed are screenshots evidencing JadooTV's distribution of the Express News and Express Entertainment channels in the United States.

We demand that JadooTV immediately remove the Express News and Express Entertainment channels from all JadooTV services in the United States, regardless of device or method of distribution.

We are providing this notice based on our good faith belief that the use of television programs owned by DISH Network in the manner occurring via JadooTV's service is not authorized by the copyright owners, their agents, or the law. The information in this notification

---

[1] See letters dated April 17, 2015, June 4, 2015, June 9, 2015, December 29, 2015, and March 31, 2016.

is accurate and, under penalty of perjury, we are authorized to act on behalf of DISH Network, which owns or controls exclusive rights under copyright that are being infringed in the manner described herein. This letter is without prejudice to the rights and remedies of DISH Network, all of which are expressly reserved.

If you wish to discuss this matter further, do not hesitate to contact me.

Sincerely,

**HAGAN NOLL & BOYLE LLC**

Stephen M. Ferguson

cc:   Sonya A. Sohail
sonya.sohail@cloudstreaminc.com
legal@jadootv.com

DISH 000759

# Stephen Ferguson

**From:** Stephen Ferguson
**Sent:** Monday, October 10, 2016 7:41 PM
**To:** Snyder, Darin (dsnyder@omm.com)
**Cc:** sonya.sohail@cloudstreaminc.com; legal@jadootv.com
**Subject:** JadooTV / DISH
**Attachments:** 10.10.16 Letter to Snyder re JadooTV (DISH).pdf

Mr. Snyder,

Please see the attached letter.

Best regards,

Stephen M. Ferguson
Hagan Noll & Boyle LLC
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, TX 77024
713.343.0478 T (ext. 102)
713.758.0146 F
www.hnbllc.com

The information contained in this email may be confidential and/or legally privileged.  It has been sent for the sole use of the intended recipient(s).  If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents or attachments, is strictly prohibited.  If you have received this communication in error, please reply to the sender and destroy all copies of the message and its attachments.  To contact us directly, please email info@hnbllc.com.  Thank you.

DISH 000760

Case No. 2:18-cv-09768-FMO (KSx)



Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Tel: 713.343.0478
Fax: 713.758.0146
www.hnbllc.com

October 10, 2016

**VIA Electronic Mail**

Darin Snyder
O'Melveny & Myers LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Email: dsnyder@omm.com

  **Re:** **Seventh Notice of JadooTV's Unauthorized Distribution of DISH Network Television Programming**

Dear Mr. Snyder:

  I write in furtherance of my September 8, 2016 and September 16, 2016 letters on behalf of DISH Network,[1] and in response to your correspondence dated September 21, 2016. JadooTV is materially contributing to the infringement of DISH Network's exclusive rights through its eMedia app and video-on-demand ("VOD") service.

  **JadooTV's Secondary Infringement**

  JadooTV "can be held contributorily liable if it has actual knowledge that specific infringing material is available using its system and can take simple measures to prevent further damage to copyrighted works, yet continues to provide access to infringing works." *Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1172 (9th Cir. 2007). JadooTV has actual knowledge of specific acts of infringement on its eMedia App and VOD services through multiple cease and desist letters, including my September 8th and 16th letters. *See China Cent. Television v. Create New Tech. (HK) Ltd.,* No. CV 15-01869 MMM (MRWx), 2015 WL 3649187, at *11 (C.D. Cal. June 11, 2015) ("A defendant has actual notice of infringement when it receives a cease and desist letter."). JadooTV can also take simple steps to prevent this infringement.

  "JadooTV's eMedia (External Media) app allows channel managers, content providers, and developers to add content to their JadooTV devices without having to integrate their system to JadooTV."[2] JadooTV is using its eMedia app to recruit content providers and developers to add

---

[1] DISH Network owns or controls exclusive rights over the works airing on Express News, Express Entertainment, Hum World, Hum TV, Hum Sitaray, Hum Masala, and Hum Europe channels in the United States ("Protected Content").

[2] See enclosed screenshots from https://jadootv.com/emedia/.

infringing content to Jadoo4 boxes. *Id.* ("Calling Content Providers & Developers to Add Content to the Jadoo4 Box"). JadooTV recommends that content providers and developers "put your xml repository on GITHUB, and prefix the name with Jadoo-eMedia_XML_*." *Id.* JadooTV admits that its "eMedia app has a built in capability to search GitHub for any file that uses this prefix" and by "[u]sing the search feature in the app, users can now discover and add content with ease." *Id.* Despite these instructions on JadooTV's website, there are only four XML files available to Jadoo4 users on GitHub. One of these four files is named "jadoo-eMedia-xml---Entertainment-Channels", which is also called the South Asian Super Pack and contains all the Protected Content.[3] JadooTV has actual knowledge that that the Protected Content is available via this file using the Jadoo4 box and JadooTV's eMedia app because at a minimum our September 16 letter notified JadooTV that all the Protected Content could be received via the eMedia app. JadooTV has the ability to stop distributing Jadoo4 boxes containing the eMedia App and the South Asian Super Pack file and to remove or disable the eMedia App and the South Asian Super Pack file on previously distributed Jadoo4 boxes through software updates. Failure to immediately take these actions will expose JadooTV to additional claims of secondary liability. Our investigation is ongoing and we may determine that JadooTV has further involvement in creating or providing the South Asian Super Pack file or streaming the Protected Content.

JadooTV's VOD service also offers the Protected Content, including works airing on the Hum channels. You state that JadooTV's VOD service "simply provides bookmarks to the location of certain VOD content elsewhere on the internet." JadooTV erroneously relies on the Seventh Circuit's decision in *Flava Works, Inc. v. Gunter,* 689 F.3d 754 (7th Cir. 2012) to support its position that it is not required to disable bookmarks to the Protected Content hosted on servers controlled by third parties. *Flava Works,* however, is distinguishable.

The *Flava Works* court refused to impose secondary liability on a limited preliminary injunction record where the defendant did not encourage the upload of infringing videos and the defendant had no financial incentive to encourage performance of the works. Ultimately, the court refused to impose secondary liability because there was not "admissible evidence that they're [the copyrighted videos] actually being accessed via myVidster, rather than via other websites," and therefore, "myVidster's service really does not contribute significantly to infringement." *Flava Works,* 689 F.3d at 762-763. This is not the case here. We used JadooTV's VOD service to view the Protected Content and are confident other JadooTV users do as well. In addition, the JadooTV service is not a free service and JadooTV has an incentive to encourage viewing of DISH Network's copyrighted works through the JadooTV platform. Both JadooTV's subscriber-base and revenues increase with the availability of DISH Network's Protected Content on the JadooTV service. Thus, if JadooTV can provide its users with an easy place where links to DISH Network's Protected Content are indexed and easy to find, JadooTV can significantly bolster its bottom line. Accordingly, *Flava Works* does not insulate JadooTV from secondary liability or allow JadooTV to sit back and do nothing to stop the infringement on its VOD service. DISH Network therefore demands that JadooTV immediately remove the links or "bookmarks" to the Protected Content and terminate its relationship with its users providing those links.

In sum, DISH Network demands that JadooTV immediately: (1) cease distributing the Jadoo4 box containing the eMedia App and the South Asian Super Pack file and infringing VOD links in the United States; (2) remove or block the eMedia App and the South Asian Super Pack

---

[3] See enclosed screenshot from Github.com showing the search result for "jadoo_eMedia."

DISH 000762

file from all Jadoo4 boxes in the United States; (3) remove the infringing VOD links and JadooTV users that provide infringing VOD links from the JadooTV service in the United States; (4) remove or block all eMedia channels from appearing in the Live TV service of all Jadoo4 boxes in the United States; and (5) remove all Hum Content from the Jadoo3 box.

Nothing in this letter is intended or shall be construed to constitute an express or implied waiver of any rights or remedies that DISH Network may possess in connection with this matter, all of which are hereby expressly reserved.

We request the courtesy of a response no later than October 17, 2016. If you wish to discuss this matter further, do not hesitate to contact me.

Sincerely,

**HAGAN NOLL & BOYLE LLC**

Stephen M. Ferguson

cc:  Sonya A. Sohail
    sonya.sohail@cloudstreaminc.com
    legal@jadootv.com

## Stephen Ferguson

**From:** Stephen Ferguson
**Sent:** Wednesday, July 27, 2016 11:21 AM
**To:** 'sonya.sohail@cloudstreaminc.com'; legal@jadootv.com; Snyder, Darin (dsnyder@omm.com)
**Cc:** Joe Boyle
**Subject:** RE: JadooTV and Hum Channels
**Attachments:** 7.27.16 Letter to JadooTV (DISH).pdf

Ms. Sohail and Mr. Snyder,

Please see the attached letter.

Best regards,

Stephen M. Ferguson
Hagan Noll & Boyle LLC
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, TX 77024
713.343.0478 T (ext. 102)
713.758.0146 F
www.hnbllc.com

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents or attachments, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message and its attachments. To contact us directly, please email info@hnbllc.com. Thank you.

---

**From:** Joe Boyle
**Sent:** Wednesday, July 20, 2016 2:54 PM
**To:** 'sonya.sohail@cloudstreaminc.com' <sonya.sohail@cloudstreaminc.com>
**Cc:** Snyder, Darin (dsnyder@omm.com) <dsnyder@omm.com>; Stephen Ferguson <Stephen.Ferguson@hnbllc.com>
**Subject:** JadooTV and Hum Channels

Dear Ms. Sohail,

Please find a courtesy copy of the attached correspondence. After I sent the letter, a colleague brought to my attention that you may prefer us to send this type of correspondence directed to JadooTV directly to you at Cloud Stream. Please advise how I should direct such communication in the future.

Best regards,
Joe

Joseph H. Boyle
**Hagan Noll & Boyle LLC**
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, TX77024
713.343.0478 T

DISH 000674

Case No. 2:18-cv-09768-FMO (KSx)

713.758.0146 F
www.hnbllc.com

DISH 000675



Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Tel: 713.343.0478
Fax: 713.758.0146
www.hnbllc.com

July 27, 2016

**VIA Electronic Mail**

JadooTV, Inc.
Attn: Sonya A. Sohail
JadooTV, Inc.
5880 W. Las Positas Blvd., Suite 37
Pleasanton, CA 94588
sonya.sohail@cloudstreaminc.com
legal@jadootv.com

Darin Snyder
O'Melveny & Myers LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Email: dsnyder@omm.com

> **Re:    Second Notice of JadooTV's Unauthorized Distribution of DISH Network Television Programming**

Dear JadooTV, Ms. Sohail, and Mr. Snyder:

I write in furtherance of our letter dated July 20, 2016, concerning JadooTV Inc.'s ("JadooTV") carriage of Hum channels. We have not received any response and JadooTV continues to distribute Hum channels in violation of DISH Network's rights.

DISH Network is an authorized distributor for Hum channels in the United States, owning or controlling exclusive rights under copyright to distribute the following Hum channels and the content on those channels: Hum World, Hum TV, Hum Sitaray, and Hum Masala ("Protected Content").

Copyright infringement of DISH Network's Protected Content is occurring by virtue of your JadooTV service and the following Live TV / Pakistani channel numbers:

> Hum World – Channel 4
> Hum TV – Channel 5
> Hum Sitaray – Channel 6
> Hum Masala – Channel 8

DISH 000676

To the extent Hum Europe (Jadoo channel 7) contains any content also distributed on any of the other Hum channels, that also constitutes an infringement of DISH Network's exclusive rights. Enclosed are screenshots evidencing JadooTV's continued distribution of the Protected Content. Hum informed us that it has not licensed JadooTV to carry the Protected Content, and any prior distribution rights JadooTV may have had were terminated by written notice effective June 27, 2016.

We demand that JadooTV take immediate action to cease all infringement of DISH Network's rights in the Protected Content by removing or disabling access to the Protected Content and preventing the Protected Content from appearing anywhere on JadooTV's service.

We are providing this notice based on our good faith belief that the use of motion pictures and television programs owned by DISH Network in the manner occurring via JadooTV's service is not authorized by the copyright owners, their agents, or the law. The information in this notification is accurate and, under penalty of perjury, we are authorized to act on behalf of DISH Network, which owns or controls exclusive rights under copyright that are being infringed in the manner described herein. This letter is without prejudice to the rights and remedies of DISH Network, all of which are expressly reserved.

We request the courtesy of a response no later than August 1, 2016. If you wish to discuss this matter further, do not hesitate to contact me.

Sincerely,

**HAGAN NOLL & BOYLE LLC**

Stephen M. Ferguson

# EXHIBIT 2

BEIJING

BRUSSELS

CENTURY CITY

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823

TELEPHONE (415) 984-8700
FACSIMILE (415) 984-8701
www.omm.com

NEW YORK

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

November 3, 2016

OUR FILE NUMBER
418450-1

WRITER'S DIRECT DIAL
(415) 984-8846

WRITER'S E-MAIL ADDRESS
dsnyder@omm.com

**VIA EMAIL AND U.S. MAIL**

Stephen M. Ferguson
Hagan Noll & Boyle LLC
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
email: stephen.ferguson@hnbllc.com

Re: *DISH Network*

Dear Mr. Ferguson:

This responds on behalf of JadooTV Inc. ("JadooTV") to your October 10, 2016 letter regarding certain content purportedly licensed to DISH Network.

**Jadoo4 Devices - eMedia App**

Your October 10, 2016 letter mischaracterizes JadooTV's eMedia app and inappropriately seeks to burden JadooTV with copyright enforcement obligations that are not prescribed by federal law.

First, neither the search functionality or eMedia guide provided by JadooTV encourage infringement of the content you have identified as exclusively licensed by DISH Network. JadooTV's eMedia guide calls for channel managers, content providers, and developers to make their video content available in a format that integrates more seamlessly with the native functionality of the Jadoo4 devices. Rather than a user needing to access content from a separate video player app or through a separate set-top device, JadooTV's eMedia guide provides a process by which content providers and their partners can lower barriers to content and permit users to view their content alongside other content provided by JadooTV. The search functionality of the eMedia app and XML naming convention identified in the eMedia guide then allow those content providers and partners to make their content available to all Jadoo4 device users, should the content providers and partners choose to share their content in this manner. In addition to these lawful, non-infringing uses, the eMedia app also provides capabilities by which users can view their own content to their Jadoo4 devices from external media devices, such as a wedding video on an external hard drive. As the United States Supreme Court has noted, a device capable of substantial noninfringing uses will not support a finding of secondary

infringement "merely based on a failure to take affirmative steps to prevent infringement." *See MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 939 n.12 (2005).

Second, contrary to your assertions, JadooTV is not and has not distributed Jadoo4 boxes containing the "South Asian Super Pack file" identified in your October 10, 2016 letter. As we explained in our September 21, 2016 letter, the "Protected Content" identified in your letter are not part of JadooTV's Live TV offerings. The location pathways you provided confirmed that fact. Those channels do not appear on Jadoo4 devices as manufactured and distributed by JadooTV.

Third, JadooTV has no simple means by which it can prevent access to the "Protected Content" you identified. JadooTV has no control over which XML files appear on the GitHub website. Nor does JadooTV have any control over the URLs provided in any of the XML files that appear on the GitHub website. In fact, JadooTV has no control over the GitHub website. JadooTV's eMedia app simply runs a search query on the GitHub website for "jadoo_eMedia" and returns those results. JadooTV has no way of knowing which users, if any, have downloaded the XML file identified in your letters. Accordingly, the only software update that would remove the XML file from a user's Jadoo4 device would be an update restoring all Jadoo4 devices to their factory settings related to the eMedia app. JadooTV has no means of targeting a particular file on devices that may or may not have downloaded a file. Moreover, JadooTV has no practical means for blocking access to a particular search result returned by a search of the GitHub website.

Finally, even if JadooTV could develop a software update to restrict GitHub search results appearing in the eMedia app or an update to target a particular XML file on certain Jadoo4 devices, JadooTV should not be obligated to expend its time and resources beyond its legal obligations where DISH Network has other, far simpler means for accomplishing what DISH Network proposes JadooTV should expend its time and resources doing. DISH Network could, for instance, send a DMCA takedown notice to GitHub demanding removal of the purportedly infringing XML file. This would accomplish DISH Network's demand that JadooTV somehow control and modify the search results the GitHub website returns in the eMedia app. Further, DISH Network could send a DMCA takedown notice to the websites actually hosting the purportedly infringing content. Those websites are necessarily identified in the purportedly infringing XML file and removal of the content from the hosting websites would accomplish DISH Network's demand that JadooTV somehow disable access on Jadoo4 devices to content hosted by those websites (despite JadooTV's inability to determine to which devices, if any, the "Protected Content" has been downloaded by users).

In light of the foregoing, JadooTV is under no obligation to undertake any of DISH Network's demanded actions concerning the eMedia app.

### Jadoo4 Devices - VOD Content

Your October 10, 2016 letter misreads the Seventh Circuit's decision in *Flava Works*. As the *Flava Works* court explained, "[t]he facilitator of conduct that doesn't infringe copyright is

not a contributory infringer." *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 758 (7th Cir. 2012). JadooTV cannot be liable for secondary infringement where no direct infringement exists. DISH Network has not contended—nor can it—that any copies of the "Protected Content" are created by JadooTV providing bookmarks to certain VOD content elsewhere on the internet or by any user watching such content on the user's Jadoo4 device, as transmitted directly from the third-party server where the video is hosted. Further, contrary to your assertions, JadooTV has no incentive to encourage viewing of the "Protected Content" at the bookmarked links: JadooTV does not charge users for viewing this third-party content nor does JadooTV draw any advertising revenue from users viewing any bookmarked content. Any advertisements embedded in the content available at the bookmarked links are provided by the website hosting that content, not by JadooTV. If anything, JadooTV loses potential revenue when users view the bookmarked content as the users might otherwise be viewing a channel provided by JadooTV in the Live TV section of the Jadoo4 service. Your reliance on dicta in the *Flava Works* concerning evidence as to whether videos had been accessed through the defendant's service is similarly unavailing. That a user may have clicked on a bookmark link in the VOD section of the Jadoo4 service does not itself transform JadooTV's bookmarking conduct into secondary infringement.

Additionally, as with your demands concerning the eMedia app, DISH Network has again ignored its ability to directly address purported infringement by users viewing videos at bookmarked links by sending takedown notices to the hosts of the allegedly infringing content. JadooTV should not be obligated to expend its time and resources beyond its legal obligations where DISH Network has simple, direct options for addressing the purported underlying infringement resulting from content hosted on third-party websites.

Because JadooTV's bookmarking conduct has not violated the rights of DISH Network, JadooTV remains under no obligation to disable such bookmarks.

* * * *

Since the concerns raised in your October 10, 2016 letter have been addressed, we trust that matters raised in that letter—and those prior letters referenced therein—are now closed. As always, feel free to contact me if you would like to discuss these matters further.

Nothing in this letter is intended or shall be construed to constitute an express or implied admission or waiver of any rights or remedies that JadooTV may possess in connection with this matter, all of which are hereby expressly reserved. In addition, this letter is not intended to be a complete recitation of the facts on which the statements in this letter are based.

Sincerely,

Darin W. Snyder
of O'MELVENY & MYERS LLP

DWS

JAD000154



O'Melveny & Myers LLP
Two Embarcadero Center
28th Floor
San Francisco, CA 94111-3823

T: +1 415 984 8700
F: +1 415 984 8701
omm.com

File Number: 418450-1

July 5, 2018

**Darin Snyder**
D: +1 415 984 8846
dsnyder@omm.com

**VIA EMAIL AND U.S. MAIL**

Stephen M. Ferguson, Esq.
Hagan Noll & Boyle LLC
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
email: stephen.ferguson@hnbllc.com

**Re:     Dish Network and IBCAP**

Dear Mr. Ferguson:

This responds on behalf of JadooTV Inc. ("JadooTV") to your June 28, 2018 letter on behalf of the International Broadcaster Coalition Against Piracy ("IBCAP") and DISH Network L.L.C. ("DISH").

Your June 28, 2018 letter continues to mischaracterize JadooTV's eMedia app and seeks to burden JadooTV with copyright obligations not prescribed by federal law.

First, DISH and IBCAP allege that "[c]ertain unauthorized channels appear to be embedded directly by JadooTV into the service" and "other channels appear to be distributed at JadooTV's direction and control through its eMedia application. Your letter does not explain what you mean by "appear to be," but your description is incorrect. As we explained in our November 3, 2016 letters responding to your October 10, 2016 letters on behalf of DISH and IBCAP, JadooTV is not and has not distributed Jadoo4 boxes containing the "South Asian Super Pack file" identified in your June 28, 2018 or October 10, 2016 letters. The same remains true for Jadoo5 boxes. That the channels allegedly made available through the "South Asian Super Pack file" appear in the "Live TV" section of the JadooTV service in addition to the "eMedia" section is not an indicator that those channels are embedded by JadooTV in Jadoo4 or Jadoo5 boxes. Instead, as we explained in our September 21, 2016 letters, content added by a user to her JadooTV device via the eMedia app may also appear in the "Live TV" section of the device if the XML file labels the video as Live TV content. But unlike content preloaded on to the devices by JadooTV, the device-specific content added by the user through the eMedia app is demarcated with a stylized "e."

JadooTV likewise has not taken any part in encouraging or directing users of Jadoo4 and Jadoo5 boxes to access the "South Asian Super Pack file" or any television programs allegedly owned or exclusively controlled by DISH or any IBCAP member. To date, neither DISH nor IBCAP have provided any evidence to the contrary.



Second, as we explained in our November 3, 2016 letters, federal copyright law does not obligate JadooTV to take the proactive steps DISH and IBCAP demand of JadooTV with respect to the eMedia app or the alleged "South Asian Super Pack file." Nor does JadooTV have any means of targeting a particular file on devices that may or may not have downloaded a file. Indeed, the only software update that could remove an XML file from a user's JadooTV device would be an update restoring all JadooTV devices to their factory settings relating to the eMedia app. JadooTV is not obligated to take such an expansive action.

Finally, that DISH and IBCAP have apparently had difficulty removing the alleged "South Asian Super Pack file" from the third-party websites and services actually hosting the files has little to do with JadooTV. Contrary to your allegations and insinuations, JadooTV is not involved in the distribution or hosting of the XML file or its related streams. Moreover, we would expect that the third parties with whom DISH and IBCAP are corresponding have adopted repeat infringer policies that should address any concerns regarding allegedly infringing content being repeatedly shared or posted by the same user.

If you have evidence that DISH or IBCAP contend support their allegations of wrongdoing by JadooTV, we would be happy to review and respond to that alleged evidence. Otherwise, JadooTV is under no obligation to undertake any of the actions demanded by DISH and IBCAP in your June 28, 2018 letter concerning the eMedia app.

Since the concerns addressed in your June 28, 2018 letter have been addressed, we trust that the matters raised in that letter—and those prior letters it references—are now closed. As always, feel free to call me if you would like to discuss these matters further.

Nothing in this letter is intended or shall be construed to constitute an express or implied admission or waiver of any rights or remedies that JadooTV may possess in connection with this matter, all of which are hereby expressly reserved. In addition, this letter is not intended to be a complete recitation of the facts on which the statements in this letter are based.

Sincerely,

Darin Snyder
of O'MELVENY & MYERS LLP

DWS:jjk

# EXHIBIT 3

1                UNITED STATES DISTRICT COURT

2                NORTHERN DISTRICT OF CALIFORNIA

3                  SAN FRANCISCO DIVISION

4

5   DISH NETWORK L.L.C.,

6          PLAINTIFF,

7

8   V.                    CASE NO.  3:20-cv-01891-CRB (LB)

9

10  JADOOTV, INC., ET AL.,

11         DEFENDANTS.

12

13

14

15

16  DEPONENT:   30(B)(6) DEPOSITION OF JADOOTV, INC.

17             SAJID SOHAIL

18

19  TAKEN:      JANUARY 27, 2022

20

21  REPORTER: DANNIELLE COPELAND, REGISTERED DIPLOMATE
    REPORTER, CERTIFIED REALTIME REPORTER
22
    STENOGRAPHICALLY REPORTED REMOTELY VIA ZOOM
23  VIDEOCONFERENCE

24

25  JOB NUMBER 203710

```
1              I N D E X
2
   EXAMINATION:                              PAGE
3
4  BY MR. FERGUSON:                           6
5
   CERTIFICATE                               247
6
7          E X H I B I T S
8
   EXHIBIT 1   NOTICE OF DEPOSITION           14
9  EXHIBIT 2   EMAIL CALLED "DAILYMOTION VOD  67
               ISSUE"
10 EXHIBIT 3   EMAIL CALLED "COMPARISON       75
               TABLE-USE THIS VERSION"
11 EXHIBIT 4   EMAIL CALLED "PERSIAN CONTENT 157
               STATUS SUMMARY-LINKS-HARD"
12 EXHIBIT 5   EMAIL CALLED "FTP ACCOUNT     160
               ACQUIRED"
13 EXHIBIT 6   EMAIL CALLED "TOKEN           181
               AUTHENTICATION FOR NEW VOD
14             CDN"
15
16
17
18
19
20
21
22
23
24
25
```

```
1        THE VIDEOTAPED DEPOSITION OF SAJID SOHAIL, TAKEN
2  PURSUANT TO NOTICE HERETOFORE FILED, VIA ZOOM
3  VIDEOCONFERENCE, ON JANUARY 27, 2022, AT APPROXIMATELY
4  9:04 PACIFIC STANDARD TIME, UPON ORAL EXAMINATION, AND
5  TO BE USED IN ACCORDANCE WITH THE FEDERAL RULES OF
6  CIVIL PROCEDURE.
7
8          ***   ***   ***
9              APPEARANCES
10
11 FOR THE PLAINTIFF:
   STEPHEN FERGUSON, ESQ.
12 DAVID KORN, ESQ.
   Hagan Noll & Boyle LLC
13 820 GESSNER
   HOUSTON, TEXAS 77024
14
15 FOR THE DEFENDANTS:
   SHINHONG BYUN, ESQ.
16 LAWRENCE NG,  ESQ.
   Chan Punzalan LLP
17 2000 ALAMEDA DE LAS PULGAS
   SAN MATEO, CALIFORNIA 94403
18
19 ALSO PRESENT:
   VIKTOR BEZMEN, VIDEOGRAPHER
20
21
22
23
24
25
```

```
1        THE VIDEOGRAPHER:  Good afternoon,
2  Counselors.  My name is Viktor Bezmen.  I'm a legal
3  videographer in association with TSG Reporting, Inc.
4        Due to the severity of COVID-19 and following
5  the practice of social distancing, I will not be in the
6  same room with the witness.  Instead, I will record
7  this videotaped deposition remotely.
8        The reporter, Dannielle Copeland, also will not
9  be in the same room and will swear in the witness
10 remotely.
11       Do all parties stipulate to the validity of this
12 video recording and remote swearing and they will be
13 admissible in the courtroom as if it's being taken
14 following Rule 30 of Federal Rules of Civil Procedures
15 and the state's rules where this case is pending?
16       MR. FERGUSON:  Yes.  DISH agrees.
17       MS. BYUN:  Yes.  JadooTV agrees.
18       THE VIDEOGRAPHER:  Thank you.
19       This is the start of media labeled Number 1 of
20 the video-recorded deposition of Sajid Sohail as
21 30(b)(6) for JadooTV in the matter of DISH Network,
22 LLC, versus JadooTV, Inc., et al., in the United States
23 District Court, Northern District of California,
24 San Francisco Division, and the case number is
25 3:20-CV-01891-CRB.
```

```
1        This deposition is being held via Zoom with all
2  participants attending remotely on January 27th, 2022,
3  and time on the video monitor is 12:04 p.m. Eastern
4  time.
5        My name is Viktor Bezmen.  I'm the legal video
6  specialist from TSG Reporting, Inc., headquartered at
7  228 East 45th Street, Suite 810, New York, New York
8  10017.  And the court reporter is Dannielle Copeland,
9  in association with TSG Reporting.
10
11       Counsel, please introduce yourselves.
12       MR. FERGUSON:  Stephen Ferguson, counsel
13 for Plaintiff DISH Network, LLC.
14       And with me I have David Korn, also counsel for
15 DISH Network, LLC.  He'll be assisting with the
16 exhibits.
17       MS. BYUN:  Shinhong Byun from Chan Punzalan
18 representing JadooTV.
19       And also with me is Lawrence Ng.
20       THE VIDEOGRAPHER:  Will the court reporter
21 please swear in the witness at this time.
22
23
24
25
```

1  it wants to save.  Okay.
2      Q.     Okay.  So if you click -- click on the
3  document in the chat and -- I think it asks to save it
4  somewhere.  Save it to desktop, or wherever.  I think
5  once you do that, it will open it in -- open the
6  document.
7      A.     Yeah.  Okay.  Yeah.
8      I can see the document separately and open the
9  file.
10         MR. FERGUSON:  Okay.  And we'll -- we'll
11  mark this document as deposition Exhibit Number 1.
12         (EXHIBIT 1 WAS MARKED FOR IDENTIFICATION.)
13  BY MR. FERGUSON:
14     Q.     Mr. Sohail, do you recognize this document?
15     A.     Yes.
16     Q.     And you reviewed this document in advance
17  of today's deposition?
18     A.     Yes.
19     Q.     Okay.  And if you've scrolled through this
20  document, you'll see that there's 24 topics -- 24
21  numbered topics listed.
22     Do you see that?
23     A.     Yes.
24     Q.     Okay.  And I believe you testified that --
25  that you reviewed this document and understand that

1  we're going to ask questions based on these topics,
2  correct?
3      A.     Yes.
4      Q.     Okay.  And you're prepared to answer
5  questions on these topics today?
6      A.     I'm prepared as -- as I can be, given the
7  time that has lapsed.
8      Q.     Okay.  All right.  We can close out that
9  document.
10     Mr. Sohail, what is your title with Jadoo?
11     A.     Founder and CEO.
12     Q.     Are you Jadoo's president?
13     A.     I've never used that title.
14     Q.     You use the title CEO instead of president;
15  is that --
16     A.     Yes.
17     Q.     -- correct?
18     Are you a director of Jadoo?
19     A.     Yes.
20     Q.     Are there any other directors of Jadoo?
21     A.     Yes.
22     Q.     Who are the other directors of Jadoo?
23     A.     Sadia Sohail and Sonya Sohail.
24     Q.     And those are the current directors,
25  correct?

1      A.     Correct.
2      Q.     And how long have -- have the three of you
3  been directors of Jadoo?
4      A.     I believe since -- I mean, I've always been
5  the director, and so has Sadia.
6      And Sonya was added in 2017, if I'm not mistaken.
7      Q.     When -- when was Jadoo established?
8      A.     2009.
9      Q.     So -- so you and Sadia Sohail have been
10  directors of Jadoo since 2009?
11     A.     Yes.
12     Q.     Okay.  So you have approximately 30 years
13  of experience in the field of digital video compression
14  technology?
15     A.     Yes.
16     Q.     What is digital video compression
17  technology?
18     A.     It's -- it's technology that allows to
19  compress video, which at least until '80s or even early
20  '90s was in analog format.  So technology that allows
21  you to convert it to digital and then compress it for
22  easier transmission over satellite or internet.
23     Q.     How do you describe Jadoo -- how would you
24  describe the business of Jadoo?
25     A.     Well, Jadoo, we launched in 2009 timeframe,

1  primarily to bring video content from far away places
2  to customers within -- you know, where they are, for
3  instance, in U.S., primarily in U.S. -- that's where we
4  started -- bringing the digital content over from the
5  native country of Pakistan, which is where I was born.
6      Q.     Were you born and raised in Karachi,
7  Pakistan?
8      A.     I was born there.
9      Q.     And where were you raised?
10     A.     Different cities in -- in Pakistan.  Mostly
11  in Lahore, early parts in a -- in Quetta, another city.
12     Q.     Okay.  Are you a United States citizen?
13     A.     Yes.  I am.
14     Q.     Are you also a Pakistan citizen?
15     A.     Pakistan, yes, because Pakistan allows dual
16  citizenship.
17     Q.     For how long have you been an American
18  citizen?
19     A.     Over 30 years, I think.  Somewhere in the
20  '80s.
21     Q.     Would you describe Jadoo as a leading
22  worldwide provider of OTT TV service focusing on South
23  Asians?
24     A.     Yes.  That's probably what we have on our
25  website.

1  with Mr. Malik concerning content on the Jadoo service?
2      A.     There may have been some, yes, over the
3  years.
4      I just don't recall.
5      Q.     Did you test the eMedia software when there
6  were software updates?
7      A.     No.
8             MS. BYUN:  Objection, asked and answered.
9      Q.     Did you ever test the eMedia software?
10     A.     I did not.
11     Q.     Did you review the Jadoo website to make
12  sure it was working properly?
13            MS. BYUN:  Objection, vague.
14            THE WITNESS:  No.  It was not my
15  responsibility.
16     Q.     Did you identify issues or problems with
17  the Jadoo website?
18     A.     If I happen to see one, yes.
19     Q.     Can you recall any issues in which you
20  identified concerning the Jadoo website?
21     A.     No.  Not at this time.
22            MR. FERGUSON:  David, can you show the
23  document marked JAD010806.
24
25            MR. KORN:  010886?

1             MR. FERGUSON:  806.
2             MR. KORN:  Is this --
3             MR. FERGUSON:  Scroll up a little bit.
4      Q.     Can you identify -- we'll mark this
5  document as Deposition Exhibit Number 2.
6             (EXHIBIT 2 WAS MARKED FOR IDENTIFICATION.)
7  BY MR. FERGUSON:
8      Q.     Can you identify this document, Mr. Sohail?
9      A.     It's an email.
10     Q.     And the subject of this email is
11  "Dailymotion VOD Issue," correct?
12     A.     Yeah.  That's what it says.
13     Q.     And is this an email from you to Faisal
14  Abdullah, Adeel Haroon, Abdul Basit, and Awais Malik,
15  and Faisal Mehmood?
16     A.     Uh-huh.  Yes.
17     Q.     And do you see where it says, "I just found
18  out that DM content is working fine on Jgo app and not
19  on J3, J4, and JTab."
20     Do you see that?
21     A.     I do.
22     Q.     What does DM refer to?
23     A.     DM?
24     Q.     Yes.
25     A.     I believe Dailymotion.

1      Q.     Okay.  So did the Jadoo VOD service
2  distribute Dailymotion content?
3      A.     We linked to content from Dailymotion.
4      Q.     And you were reporting a problem here with
5  that content not working, correct?
6      A.     That's what it seems like.
7      I don't know what date this is.  I can't see the
8  date.
9             MR. KORN:  He just needs to move --
10            THE WITNESS:  It's blocked.
11            MR. KORN:  We can send it in the chat, too.
12     Q.     The date's October 23rd, 2016.
13     If you can't see that, you can move the -- the
14  video cameras or box --
15     A.     Yeah.  Yeah.  Now I see it.
16     2016.  Yeah.
17     Q.     So in October 2016, isn't it correct that
18  you were reviewing the VOD service on -- the VOD
19  section of the Jadoo service for issues?
20     A.     Yes.  That's what it seems like.
21     Q.     Was the Dailymotion content that Jadoo was
22  providing on its service coming from authorized
23  sources?
24            MS. BYUN:  Objection, vague.
25            THE WITNESS:  I'm not sure what you -- what

1  do you mean by "authorized sources"?
2      Q.     Did Jadoo do anything to investigate the
3  source of Dailymotion VOD content?
4             MS. BYUN:  Objection, vague.
5             THE WITNESS:  Yeah, and I'm not the one
6  doing it.
7      If there was anything, that would be done by the
8  team in Pakistan.
9      Q.     Did Jadoo have any policy to investigate
10  the source of any content before providing it on its
11  service?
12            MS. BYUN:  Objection, vague.
13            THE WITNESS:  There's no -- there's no
14  policy that I'm aware of.
15     Q.     Did Jadoo believe it was okay to distribute
16  any content from Dailymotion?
17            MS. BYUN:  Again, objection, vague.
18            THE WITNESS:  Yeah.  We -- we had it come
19  from attorneys, advice that it's --
20            MS. BYUN:  Objection.
21      That's attorney-client privileged communication.
22  Any communication you've had with attorneys is
23  privileged.
24     Q.     Are you refusing to answer whether or not
25  Jadoo -- Jadoo's policy -- or Jadoo believed it was

1    A.    We did not have any external board members
2  then, so all board meetings were just the three of us.
3    Q.    What major decisions were put to the Jadoo
4  board?
5    MS. BYUN:  Objection, vague.
6    THE WITNESS:  I don't -- I don't
7  understand.
8    What do you mean?
9    Q.    Well, when the board of directors met, what
10  issues were discussed?
11    MS. BYUN:  Objection, vague.
12    THE WITNESS:  I can give you vague
13  recollection.
14    Most of the time it was an update from the company
15  in regards to how we were doing.  And Intel was
16  involved in helping us raise additional funds.  It
17  would be update from them as to how that's going.
18    Q.    Do you recall there being a $200,000 loan
19  made to yourself following the filing -- following the
20  filing of this lawsuit?
21    MS. BYUN:  Objection, lack of foundation.
22    THE WITNESS:  Yes.  I do.
23    Q.    And did the board of directors approve that
24  $200,000 loan?
25    A.    Yes.

1    Q.    And who were the board members that
2  approved that loan?
3    A.    All three:  Sadia, Sonya, and myself.
4    Q.    And what was the purpose of that $200,000
5  loan?
6    A.    It was to establish an office in Canada.
7    Q.    And was the money used to establish that
8  office in Canada?
9    A.    No.
10    Q.    So what happened to that $200,000?
11    A.    It was returned back.
12    Q.    It was turned -- I'm sorry.  Go ahead.
13    A.    It was returned back to CloudStream.
14    Q.    So you didn't keep that $200,000?
15    A.    No.
16    Q.    When was that money returned back to
17  CloudStream?
18    A.    I don't recall the exact date.  Maybe it
19  was a year later.
20    Q.    And what would we look at to confirm that
21  that money was returned back to CloudStream?
22    MS. BYUN:  Objection, vague.
23    THE WITNESS:  You can look at CloudStream
24  bank statement.
25    Q.    Did you produce the CloudStream bank

1  statements in this case?
2    A.    I don't think so.
3    But when CloudStream was part of the bankruptcy
4  filing, yes, the statements were produced.
5    But later CloudStream was removed from bankruptcy,
6  so probably not then, not since then.
7    Q.    Okay.  So I'm not -- I'm not sure if -- if
8  those bank statements are available in the bankruptcy
9  or not.
10    Would you agree to produce the bank statements
11  showing that return of that $200,000 back to
12  CloudStream?
13    A.    Yeah.  I don't see any issue.
14    Q.    Did Jadoo start its business and service
15  offering primarily Pakistan content?
16    A.    Yes.
17    Q.    And were other language groups -- what were
18  the other language groups of programming that were
19  added after Pakistan content?
20    A.    Primarily, Afghan.
21    To a small extent, Bangla and Hindi.
22    Q.    Does Jadoo consider Pakistani, Hindi, and
23  Bangla content to be its primary language groups?
24    A.    No.
25    Q.    What does Jadoo consider to be its

1  primary -- the primary language group content on its
2  service?
3    A.    I mean, it's proprietary information.
4    But our -- our top is actually Afghan, and
5  Number 2 is Pakistan.
6    Q.    Is that today?
7    A.    Always been like that.
8    Q.    So from 2000 --
9    A.    Since in this timeframe, it's been like
10  that:  '15 through '19.
11    Q.    Okay.  So from 2015 to 2019, Jadoo's
12  primary language and content was Afghan?
13    A.    Yes.
14    Q.    And then the second primary language
15  content group would be Pakistani?
16    A.    Correct.
17    Q.    And then would be the third language group?
18    A.    I don't even know the numbers.
19    I think distant -- far distant would be probably
20  either Bangla or Hindi.
21    Q.    And the fourth would be the -- the other of
22  Hindi or Bangla, correct?
23    A.    Uh-huh.
24    MS. BYUN:  Stephen, I wanted to place an
25  objection for confidentiality regarding the -- the

1    object, and I -- the rules are specific that I have to
2    be specific as to the form.  They are not speaking
3    objections.
4              MR. FERGUSON:  Okay.  We'll take this up
5    after the deposition.
6              MS. BYUN:  Okay.
7        Q.    Was Haseeb Shah authorized -- or did he
8    have administrator access to the CDN servers hosting or
9    streaming Jadoo channels?
10       A.    Yes.
11       Q.    Was Haseeb Shah authorized to register
12   domain names for Jadoo?
13       A.    No, not that I know of.
14       Q.    Do you -- do you know whether or not Haseeb
15   Shah ever registered a domain name for Jadoo?
16       A.    I do not recall.  No.
17       Q.    Can you identify the CDNs that the -- the
18   various CDNs that the network operations team had
19   access to over the years for Jadoo content?
20       A.    It is very difficult for me to identify all
21   of them.
22       I can probably identify top two or three.
23       Q.    What are the top two or three?
24       A.    Highwinds is one them.  Akamai.  And
25   the -- the Edge -- EdgeCast.  Verizon.

1        Q.    What about FDC?
2        A.    I don't know FD -- well, I know FDC.
3        FDC is a company, I believe, that provides
4    servers, not CDN service.
5        Q.    Do you know whether or not the network
6    operations team had administrator access to FDC
7    servers?
8        A.    Yes.
9        If they were utilizing FDC servers, they would
10   have access for Jadoo, yes.
11       Q.    And Haseeb Shah had the ability to upload
12   content to these CDN servers?
13       A.    I believe the whole NOC group had that
14   ability.
15       Q.    But Haseeb Shah would have had the ability
16   to upload content to these CDN servers, correct?
17       A.    Among others, yes.
18       Q.    Did the IDC Recources network operations
19   group test eMedia?
20       A.    I don't know.
21       Q.    Did Haseeb Shah test eMedia?
22       A.    I have no idea.
23       Q.    Haseeb Shah never told you that he was
24   using eMedia?
25       A.    No.

1        Q.    Did Haseeb Shah ever say anything that made
2    you believe he was using eMedia?
3        A.    He was using eMedia?
4        No.
5        Q.    What was Sadia Sohail's role in regards to
6    Jadoo's customer support?
7        A.    She had some role in just overseeing the
8    service; making sure if there's any complaints, they
9    would get bubbled up to her.
10       Q.    Was Sadia Sohail in charge of training
11   customer support?
12       A.    Not in any way.
13       Q.    Is Sadia Sohail the COO of Jadoo?
14       A.    That's the title she has.
15       Q.    Is that the title she's always had?
16       A.    I'm not sure if that's how it started; but
17   at some point, yeah.
18       Q.    From 2015 to the present, has she been the
19   COO of Jadoo?
20       A.    I don't recall that.
21       Q.    What would you have to look at to determine
22   whether or not -- when she became the COO of Jadoo?
23       A.    I don't know.
24       I would have to consult with her, I guess.
25       Q.    When -- did -- to the best of your

1    knowledge, when do you believe she became the COO of
2    Jadoo?
3        A.    Maybe -- I mean, I'm not even sure it was
4    the official title.  It's just that she handled all of
5    our operations, so we just started call her COO.
6        Maybe 2012, '14.  I just don't know when.
7        Q.    Was Sadia Sohail the CFO of Jadoo at any
8    point in time?
9        A.    No.
10       Q.    Who is Ahsan Salahuddin?
11       A.    Former VP of sales.
12       Q.    During what period of time was he the VP of
13   sales?
14       A.    Probably -- I don't know when he started in
15   that role, but likely from 2015 until around 2019.
16       Q.    Is he related to you in any way?
17       A.    Yes.
18       Q.    How is he related to you?
19       A.    He's my brother-in-law.
20       Q.    Did he report to you?
21       A.    Yes.
22       Q.    And did -- you previously testified that
23   Haseeb Shah reported to you approximately weekly,
24   correct, concerning network operations?
25       A.    Yes.

1  service, it benefits Jadoo, correct?
2         MS. BYUN:  Objection, mischaracterization.
3         Go ahead.
4         THE WITNESS:  I mean, probably in some
5  indirect way.
6         But, again, that's not something that we are using
7  to increase our sales or to benefit from it.
8      Q.    But you advertised the -- the -- eMedia app
9  as a top reason for people to buy the box, correct?
10     A.    No.
11        MS. BYUN:  Objection, mischaracterization.
12        THE WITNESS:  One of the 15 reasons -- or
13 whatever, that list that you saw, it's one of the
14 reasons of whatever number of reasons we have.
15     Q.    What was -- where did eMedia fall in the
16 top reasons for buying the Jadoo service?
17        How popular was the eMedia feature for Jadoo
18 users?
19        MS. BYUN:  Objection, asked and answered.
20        THE WITNESS:  I have no -- I have no
21 knowledge of that.
22     Q.    Were you the visionary behind the eMedia --
23 eMedia app?
24        MS. BYUN:  Objection, vague.
25        THE WITNESS:  No.

1         I mean, I don't know what that means.
2      Q.    Who came up with the idea of creating
3  eMedia?
4      A.    It was a joint discussion between our sales
5  team, engineering, and mostly -- mostly those two
6  teams.
7         Some parts of it were feedback from people.
8      Q.    What safeguards were put in place to
9  prevent copyright infringement from users of eMedia?
10     A.    None that I'm aware of.
11     Q.    And isn't it true when you were notified of
12 copyright infringement by DISH, that Jadoo failed to
13 take any action to stop the infringement?
14        MS. BYUN:  Objection, mischaracterization,
15 lack of foundation, and argumentative.
16        THE WITNESS:  Our attorneys responded to
17 your complaints.
18     Q.    Did Jadoo take any action to stop the
19 copyright infringement when it was notified of the
20 infringement that was being done through the eMedia
21 app?
22     A.    We could not because there was no --
23 nothing we could do.
24     Q.    But after this lawsuit was file, Jadoo
25 created a patch to block the eMedia -- the protected

1  channels from being viewed through eMedia, correct?
2         MS. BYUN:  Objection, foundation.
3         THE WITNESS:  Yes.
4      Q.    And Jadoo could have created that patch
5  before the lawsuit was filed, correct?
6      A.    We didn't have the time or the resources to
7  do that.
8      Q.    But Jadoo could have created that patch
9  when it got DISH's letter, correct?
10     A.    We -- we could have.
11     Q.    But you made the decision not to; isn't
12 that true?
13        MS. BYUN:  Objection, mischaracterization,
14 lack of foundation, argumentative.
15        THE WITNESS:  I don't know that it was my
16 decision, but it was something I asked the developers,
17 if that can be done.
18        And their answer was, "No.  We don't have any such
19 mechanism."
20     Q.    What changed?
21        What changed from 2016 to 2019 that allowed them
22 to create the patch in 2019?
23        MS. BYUN:  Objection, vague, lack of
24 foundation as to "patch".
25        THE WITNESS:  Yeah.  Again, I don't know

1  exactly what changed, but this is something that was
2  asked of them, and they just didn't have the resources.
3         And at some point after our attorneys, you know,
4  advised, we went ahead and created it because, again,
5  it was offered to us as a way to settle the case.
6      Q.    From 2016 to 2019, Jadoo benefited from not
7  creating the patch, correct?
8         MS. BYUN:  Objection, asked and answered,
9  mischaracterization, vague.
10        THE WITNESS:  Jadoo benefited?
11        I don't know, as I already answered.
12        But let's assume that, yeah, we did benefit.  I
13 don't know how to characterize that.
14     Q.    Well, if Jadoo subscribers buy Jadoo to get
15 eMedia content, that would benefit Jadoo, correct?
16        MS. BYUN:  Objection, misleading and
17 mischaracterization.
18        THE WITNESS:  It depends on if they're
19 buying it because of eMedia.  We don't know, what --
20 what the reason is they are buying the box for.
21        One, we don't know what resellers are telling
22 them.  We don't know what content they are viewing.
23        I mean, we know that they're viewing -- most of
24 them are viewing Afghan content.
25     Q.    Could Jadoo have removed the eMedia app

1  con- -- additional content, correct?
2      A.     Yes.
3      Q.     Why would a Jadoo user need to access --
4  disregard that question.
5      Did Jadoo management have access to the same
6  content provided by eMedia as other users did?
7      A.     I'm sorry?
8      MS. BYUN:  Objection, characterization, and
9  vague.
10     Q.     Jadoo management could have accessed the
11  same content through eMedia as the users, correct?
12     MS. BYUN:  Objection, mischaracterization,
13  vague.
14     THE WITNESS:  You mean if we went and added
15  the link ourself?
16     Q.     Yes.
17     A.     Yes.
18     Q.     Did Jadoo management ever test eMedia to
19  determine whether or not the protected channels were
20  accessible?
21     MS. BYUN:  Objection, asked and answered,
22  legal conclusion.
23     THE WITNESS:  I believe we did after the --
24  the time when we were sent the letter.
25     Q.     Who at -- who at Jadoo tested to confirm

1  whether or not those channels were accessible?
2      A.     I don't -- again, I don't recall.
3      But most of the time, those types of complaints
4  would go to our NOC group.
5      Q.     Haseeb Shah was on the -- in the NOC group?
6      A.     Yes.
7      Q.     Did Haseeb Shah confirm whether or not
8  those channels were accessible through eMedia?
9      A.     He probably did, yeah.
10     Q.     Do you recall specifically what Haseeb Shah
11  said regarding those channels being available?
12     A.     No.
13     Q.     Are you aware that Jadoo received -- Jadoo
14  customer service received calls about eMedia?
15     A.     I'm not aware of specific calls, but I'm
16  sure they did receive calls.
17     Q.     Did Jadoo customer service provide
18  assistance to Jadoo users on how to find the URL?
19     A.     They were not supposed to.
20     Q.     Who told them they were not supposed to?
21     A.     The -- their managers.
22     Q.     Who were their managers?
23     A.     I believe the team there -- the customer
24  support team reported to Faisal Abdullah.
25     Q.     And who told Faisal Abdullah that they

1  weren't supposed to provide assistance to users on
2  finding the EM -- eMedia URL?
3      MS. BYUN:  Objection, assuming facts.
4      THE WITNESS:  I don't know.
5      Q.     Did you instruct Faisal Abdullah to
6  instruct him team not to provide --
7      A.     I don't know if I did or there was a
8  discussion in our group meeting, and maybe that was
9  discussed.
10     Q.     You don't recall?
11     A.     Not specifically.
12     Q.     What were Jadoo customer service reps
13  instructed to tell users that called inquiring about
14  eMedia?
15     MS. BYUN:  Objection, foundation, and
16  assuming facts.
17     THE WITNESS:  I don't know.
18     There were no instructions given by me or anyone I
19  know.
20     Q.     Jadoo users that asked about the protected
21  channels, how did customer service respond to those
22  inquiries?
23     MS. BYUN:  Objection, legal conclusion.
24     THE WITNESS:  Again, I don't know how they
25  would respond, but most of the time it would be that we

1  don't have those channels on our service.
2      Q.     Would customer service refer users to the
3  eMedia app?
4      MS. BYUN:  Objection, vague.
5      THE WITNESS:  Again, I don't know that.
6      Q.     Did customer service provide search terms
7  for users to search YouTube for videos on instructions
8  for adding eMedia files?
9      A.     We heard that later, yes, that some of them
10  were saying some things.
11     Q.     What did Jadoo do to address that issue?
12     A.     Again, I don't -- I don't recall exactly,
13  but I'm sure we instructed them to not do that.
14     Q.     Did you instruct them to not do that?
15     A.     I did not personally, no.
16     Q.     Who at Jadoo would have instructed them to
17  not do that?
18     A.     I don't recall.  I don't -- probably could
19  be our main counsel.
20     Q.     Who was that?
21     A.     Sonya.  Sonya Sohail.
22     Q.     But you don't know whether or not Sonya
23  instructed them to not do that, not provide search
24  terms for finding files on YouTube?
25     A.     I don't know that for fact, but I'm just

1  saying, if -- if anyone, it would be her who would
2  communicate that.
3      Q.    And when Jadoo user complained to customer
4  service about geo restrictions for popular channels,
5  are you aware that customer service reps suggested that
6  they use eMedia?
7          MS. BYUN:  Objection, lack of foundation,
8  mischaracterization.
9          THE WITNESS:  I'm not aware of that.
10     Q.    Did Jadoo ever tell customers that they
11 can't or shouldn't use Jadoo to access the protected
12 channels?
13     A.    Did we -- did we tell who, customers?
14     Q.    Did Jadoo ever tell its customers that they
15 shouldn't use eMedia to access the protected channels?
16     A.    I don't know that we did.
17     Q.    Who would know whether or not Jadoo
18 instructed users that they shouldn't use the eMedia app
19 to access protected channels?
20     A.    Again, I don't know.
21     I don't know whether this was ever discussed or
22 instructed to customer support.
23     Q.    And what is your understanding of what the
24 South Asian Super Pack is?
25     A.    I'm sorry?

1      Q.    What is your understanding of -- of what
2  the South Asian Super Pack is?
3          MS. BYUN:  Objection, lack of foundation.
4          THE WITNESS:  I think it's a set of
5  channels that were -- that were in that file.
6      Q.    Is it your understanding that that's the
7  set of channels at issue in this lawsuit that I've
8  identified as the protected channels?
9      A.    Yes.
10     Q.    And Jadoo didn't have a license to transmit
11 those channels in the United States correct?
12     A.    No, we did not.
13     Q.    Was Jadoo licensed to transmit those
14 channels in other parts of the world?
15     A.    It's possible, yes, some of those channels.
16     Q.    Can you identify any those channels that
17 Jadoo was providing in other parts of the world?
18     A.    The parts of the world or channels?
19     Q.    Can you identify any of the channels --
20 channels included in the South Asian Super Pack that
21 were being transmitted by Jadoo in areas outside of the
22 United States?
23     A.    Yeah.  ARY channels were.
24     Q.    Any other channels?
25     A.    Probably other channels as well.

1      Q.    But you don't recall what those other
2  channels are?
3      A.    I don't know all of them, but yeah, I think
4  some -- some of them, yes.
5      Q.    Do you know who Peter May was?
6      A.    Who?
7      Q.    Have you ever heard of the name Peter May?
8      A.    I don't know who Peter May is, but I've
9  heard the name from -- again, from the descriptions and
10 all the things that have been filed.
11     Q.    Did you use the name Peter May?
12     A.    No.
13     Q.    Are you aware of Haseeb Shah using the name
14 Peter May?
15     A.    No.
16     Q.    Are you aware that Peter May or the person
17 behind Peter May had access to the Jadoo PayPal
18 account?
19     A.    No.
20     Q.    But you know that Haseeb Shah had access to
21 the Jadoo PayPal account, correct?
22     A.    That I do.  Yes.
23     Q.    Can you think of any -- any reason as to
24 why Peter May or the person behind Peter May would have
25 access to the Jadoo PayPal account?

1          MS. BYUN:  Objection, speculation and lack
2  of foundation.
3          THE WITNESS:  I don't know.
4      Q.    Did you know that the same IP address was
5  used to log into the Peter May, Haseeb Shah, and Jadoo
6  PayPal accounts?
7      A.    I -- I don't know anything about that other
8  than what I -- other than what I have read in your
9  claims.
10     Q.    If you were to look at documents showing
11 that the same IP address was used to access the Peter
12 May, Haseeb Shah, and Jadoo PayPal accounts, how would
13 you explain that?
14         MS. BYUN:  Objection, speculation.
15         THE WITNESS:  I don't know.
16     People do a lot of things these days.  I have no
17 clue.
18     Q.    What would Peter May or the person behind
19 Peter May be doing accessing the Jadoo PayPal account?
20         MS. BYUN:  Objection, speculation.
21         THE WITNESS:  I have no idea.
22     Q.    How do you know Haseeb Shah was not Peter
23 May?
24         MS. BYUN:  Objection, speculation.
25         THE WITNESS:  Again, I have no idea.  I

# EXHIBIT 4

DARIN W. SNYDER (S.B. #136003)
dsnyder@omm.com
ALEXANDER B. PARKER (S.B. #264705)
aparker@omm.com
BILL TRAC (S.B. #281437)
btrac@omm.com
ASHISH SUDHAKARAN (S.B. # 312941)
asudhakaran@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone:    (415) 984-8700
Facsimile:    (415) 984-8701

Attorneys for Defendants
JADOOTV, INC. and SAJID SOHAIL

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> JADOOTV, INC., SAJID SOHAIL, HASEEB SHAH, EAST WEST AUDIO VIDEO, INC., and PUNIT BHATT, <br><br> Defendants. | Case No. 2:18-cv-09768-FMO-KS <br><br> **JADOO DEFENDANTS' AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF DISH NETWORK L.L.C.'S FIRST SET OF INTERROGATORIES TO DEFENDANTS JADOOTV, INC. AND SAJID SOHAIL (NOS. 1-17)** |

**PROPOUNDING PARTY:**    PLAINTIFF DISH NETWORK L.L.C.

**RESPONDING PARTY:**    DEFENDANTS JADOOTV, INC. AND SAJID SOHAIL

**SET NUMBER:**    ONE (NOS. 1-17)

Defendants JadooTV, Inc. ("JadooTV") and Sajid Sohail ("Sohail") (collectively, "Jadoo Defendants"), in accordance with Rules 26 and 33 of the Federal Rules of Civil Procedure, hereby submit their Amended Responses and Objections (the "Amended Responses") to Plaintiff DISH

1  **RESPONSE TO INTERROGATORY NO. 4**

2       Jadoo Defendants object to this Interrogatory on the basis of each and every General

3  Objection set forth above. Jadoo Defendants further object to this Interrogatory to the extent that

4  it seeks information concerning JadooTV's products that is not relevant to any party's claims or

5  defenses, not proportional to the needs of the case, and/or is overly broad and burdensome, for

6  example to the extent that it seeks financial information regarding any and all of JadooTV's

7  products and services, regardless of any relevance to the present litigation.

8       Subject to and without waiving any of their objections, Jadoo Defendants respond as

9  follows: Jadoo Defendants will meet and confer with DISH to address how this Interrogatory

10  may be limited and/or clarified to seek information that is relevant to the claims or defenses in

11  this litigation and proportional to the needs of this case.

12  **AMENDED RESPONSE TO INTERROGATORY NO. 4**

13       Subject to and without waiving any of their objections, Jadoo Defendants respond as

14  follows: pursuant to Federal Rule of Civil Procedure 33(d), Jadoo Defendants will produce

15  documents from which DISH may determine JadooTV's monthly and annual dollar sales and

16  advertising revenue in the United States for the Jadoo4, Jadoo5, and Jadoo5S set top boxes, and

17  JadooTV smart TV applications and the JadooGO mobile device applications. As discovery has

18  just commenced, Jadoo Defendants reserve the right to amend, modify, or supplement their

19  response to this Interrogatory.

20  **INTERROGATORY NO. 5:**

21       State JadooTV's monthly and annual advertising revenue separately for each person and

22  entity making payments to JadooTV concerning the Jadoo Box or Jadoo Service in the United

23  States or www.Jadootv.com.

24  **RESPONSE TO INTERROGATORY NO. 5**

25       Jadoo Defendants object to this Interrogatory on the basis of each and every General

26  Objection set forth above. Jadoo Defendants further object to this Interrogatory to the extent that

27  it seeks information concerning Jadoo Defendants that is not relevant to any party's claims or

28  defenses, not proportional to the needs of the case, and/or is overly broad and burdensome, for

1 example to the extent that it seeks information regarding each person and entity publishing

2 advertisements through JadooTV, regardless of any relevance to the present litigation.

3 Subject to and without waiving any of their objections, Jadoo Defendants respond as

4 follows: Jadoo Defendants will meet and confer with DISH to address how this Interrogatory

5 may be limited and/or clarified to seek information that is relevant to the claims or defenses in

6 this litigation and proportional to the needs of this case.

7 **AMENDED RESPONSE TO INTERROGATORY NO. 5**

8 Subject to and without waiving any of their objections, Jadoo Defendants respond as

9 follows: pursuant to Federal Rule of Civil Procedure 33(d), Jadoo Defendants will produce

10 documents from which DISH may determine JadooTV's monthly and annual dollar sales to

11 resellers in the United States for the Jadoo4, Jadoo5, and Jadoo5S set top boxes. As discovery

12 has just commenced, Jadoo Defendants reserve the right to amend, modify, or supplement their

13 response to this Interrogatory.

14 **INTERROGATORY NO. 6:**

15 Identify each meeting and verbal communication at which JadooTV was present or

16 participated, at any time, and at which there was any discussion concerning SASP, stating the

17 substance of such discussion as verbatim as possible.

18 **RESPONSE TO INTERROGATORY NO. 6**

19 Jadoo Defendants object to this Interrogatory on the basis of each and every General

20 Objection set forth above. Jadoo Defendants further object to this Interrogatory to the extent that

21 it seeks information concerning Jadoo Defendants that is not relevant to any party's claims or

22 defenses, and not proportional to the needs of the case, and/or is overly broad and burdensome,

23 for example to the extent that it asks to identify any "meeting and verbal communication" in

24 which anyone employed by JadooTV was somehow "present or participated in" at any time.

25 Jadoo Defendants further object to this Interrogatory to the extent it seeks information protected

26 by privilege, including the attorney-client privilege or work product doctrine.

27 Subject to and without waiving any of their objections, Jadoo Defendants respond as

28 follows: Jadoo Defendants will meet and confer with DISH to address how this Interrogatory

Mark Punzalan (CA Bar No. 247599)
Email: mark@chanpunzalan.com
Nicole Daryanani (CA Bar No. 328068)
Email: nicole@chanpunzalan.com
Shinhong Byun (CA Bar No. 264129)
Email: shinhong@chanpunzalan.com
CHAN PUNZALAN LLP
22 Battery Street, Suite 401
San Francisco, CA 94111

*Counsel for Defendants*
*JadooTV, Inc. and Sajid Sohail*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C., | Case No. 3:20-cv-01891-CRB |
| Plaintiff, | **DEFENDANTS' JADOOTV, INC. AND SAJID SOHAIL RESPONSES AND OBJECTIONS TO PLAINTIFF DISH NETWORK L.L.C.'S SECOND SET OF INTERROGATORIES (NOS. 18-19)** |
| vs. | |
| JADOOTV, INC. and SAJID SOHAIL, | |
| Defendants. | |

**PROPOUNDING PARTY:**     PLAINTIFF DISH NETWORK L.L.C.

**RESPONDING PARTY:**     DEFENDANTS JADOOTV, INC. AND

SAJID SOHAIL

**SET NUMBER:**     TWO (NOS. 18 – 19)

Defendants JadooTV, Inc. ("JadooTV") and Sajid Sohail ("Sohail") (collectively, "Jadoo Defendants"), in accordance with Rules 26 and 33 of the Federal Rules of Civil Procedure, hereby submit their Responses and Objections to Plaintiff DISH Network, L.L.C.'s ("DISH") Second Set of Interrogatories to Defendants JadooTV, Inc. and Sajid Sohail.

1  and vexatious, goes beyond any legitimate need of DISH for discovery, and exceeds the scope of

2  permissible discovery under the Federal Rules of Civil Procedure.

3       5.       Jadoo Defendants object to each Interrogatory to the extent that it contains terms or

4  phrases that are vague, ambiguous, or capable of various interpretations.

5       6.       Jadoo Defendants object to each Interrogatory to the extent that it seeks

6  information comprising trade secrets or other confidential information. Jadoo Defendants further

7  object to each and every Interrogatory to the extent that it seeks information falling within the

8  scope of a confidentiality agreement, protective order or settlement agreement, or that otherwise

9  requires consent of any third party prior to production. No such information will be provided

10 unless DISH secures the required consent from the appropriate third parties. In addition, no

11 confidential, proprietary, or trade secret information will be produced except pursuant to the terms

12 of a protective order.

13       7.       Jadoo Defendants object to each Interrogatory to the extent it calls for production

14 of the same information called for by one or more of DISH's other requests. To the extent Jadoo

15 Defendant have agreed to provide specific information, Jadoo Defendants will do so only once,

16 irrespective of the number of Interrogatories to which the information is responsive.

17       8.       Jadoo Defendants object to each Interrogatory to the extent that it assumes the

18 admissibility, truth, accuracy, or relevance of any interrogatory response, or seeks an admission

19 from Jadoo Defendants concerning such matters.

## RESPONSES TO SECOND SET OF INTERROGATORIES

### INTERROGATORY NO. 18:

If Jadoo TV asserts or intends to assert advice of counsel as a defense to DISH's claims of
willful copyright infringement, identify all advice and opinions of counsel concerning the defense,
and the legal and factual basis for the defense.

4

DEFENDANTS' JADOOTV, INC. AND SAJID SOHAIL RESPONSES AND OBJECTIONS TO
PLAINTIFF DISH NETWORK L.L.C.'S SECOND SET OF INTERROGATORIES (NOS. 18-19)
Case No. 3:20-cv-01891-CRB

1   **RESPONSE TO INTERROGATORY NO. 18**

2       Jadoo Defendants object to this Interrogatory on the basis of each and every General

3   Objection set forth above. Jadoo Defendants object to this Interrogatory as it seeks information

4   protected by privilege, including the attorney-client privilege or work product doctrine. Jadoo

5   Defendants further object to this Interrogatory as vague, overbroad, oppressive, and unduly

6   burdensome on the grounds that the Interrogatory seeks "all advice and opinions of counsel."

7   **INTERROGATORY NO. 19:**

8       Do you contend that, at the time you made the eMedia feature available to consumers, or at

9   any time thereafter, you had a good faith and reasonable belief that you were not infringing, either

10   directly or secondarily, upon DISH's copyrights in the Protected Channels? If so, please (i) state

11   the basis for such belief, (ii) state whether you relied in any way upon the advice of counsel in

12   forming such belief, (iii) identify every communication to or from any counsel concerning such

13   belief, and (iv) identify every communication to or form any counsel concerning such belief, and

14   (iv) identify every document you reviewed, considered, or relied upon in forming such belief.

15   **RESPONSE TO INTERROGATORY NO. 18**

16       Jadoo Defendants object to this Interrogatory on the basis of each and every General

17   Objection set forth above. Jadoo Defendants further object to this Interrogatory as it seeks

18   information protected by privilege, including the attorney-client privilege or work product

19   doctrine. Jadoo Defendants also object to this Interrogatory as vague, overbroad, oppressive, and

20   unduly burdensome.

21

22   Dated: August 10, 2020               CHAN PUNZALAN LLP

23                                       */s/Shinhong Byun*

24                                         Shinhong Byun

25

26                                         *Counsel for Defendants*
                                            *JadooTV, Inc. and Sajid Sohail*

27

28

1 | DARIN W. SNYDER (S.B. #136003)
dsnyder@omm.com
2 | BILL TRAC (S.B. #281437)
btrac@omm.com
3 | ASHISH SUDHAKARAN (S.B. # 312941)
asudhakaran@omm.com
4 | O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
5 | San Francisco, California 94111-3823
Telephone: (415) 984-8700
6 | Facsimile: (415) 984-8701

7 | Attorneys for Defendants
JADOOTV, INC. and SAJID SOHAIL
8

9 | **UNITED STATES DISTRICT COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 | **WESTERN DIVISION**

12

13 | DISH NETWORK L.L.C.,                          Case No. 2:18-cv-09768-FMO-KS

14 |              Plaintiff,              **JADOO DEFENDANTS' RESPONSES
                                          AND OBJECTIONS TO PLAINTIFF
15 |        v.                            DISH NETWORK L.L.C.'S FIRST
                                          SET OF REQUESTS FOR
16 | JADOOTV, INC., SAJID SOHAIL, HASEEB  PRODUCTION TO DEFENDANTS
      SHAH, EAST WEST AUDIO VIDEO, INC.,  JADOOTV, INC. AND SAJID SOHAIL
17 |  and PUNIT BHATT,                     (NOS. 1-103)**

18 |              Defendants.

19

20

21 | **PROPOUNDING PARTY:**        PLAINTIFF DISH NETWORK L.L.C.

22 | **RESPONDING PARTY:**         DEFENDANTS JADOOTV, INC. AND SAJID SOHAIL

23 | **SET NUMBER:**               ONE (NOS. 1-103)

24 |        Pursuant to Federal Rule of Civil Procedure 34, Defendants JadooTV, Inc. ("JadooTV")

25 | and Sajid Sohail ("Sohail") (collectively, "Jadoo Defendants"), hereby submit the following

26 | Responses and Objections to Plaintiff DISH Network, L.L.C.'s ("DISH") First Set of Requests

27 | for Production to Defendants JadooTV, Inc. and Sajid Sohail (the "Requests") as follows:

28

1  Jadoo Defendants incorporate by reference each of the General Objections set forth above.

2  Jadoo Defendants object to the request on the grounds that it seeks documents beyond the scope

3  of permissible discovery, not relevant to any party's claims or defenses, and not proportional to

4  the needs of the case. Jadoo Defendants further object to the request to the extent it seeks

5  documents protected from disclosure by the attorney-client privilege, the attorney work product

6  doctrine, the accountant-client privilege, common-interest privilege, or similar privileges or

7  protections.

8  Subject to and without waiving any of their objections, Jadoo Defendants will produce

9  non-privileged documents responsive to this request that are discovered after a reasonable search

10  and diligent inquiry and that are within the permissible scope of discovery, to the extent any exist

11  within their possession, custody or control, once a valid protective order has been entered by the

12  Court.

13  **REQUEST NO. 29:**

14  All cease and desist correspondence, notices of claimed infringement, and other

15  documents and communications requesting that JadooTV stop transmitting or providing access to

16  a channel or program.

17  **RESPONSE TO REQUEST NO. 29**

18  Jadoo Defendants incorporate by reference each of the General Objections set forth above.

19  Jadoo Defendants object to the request on the grounds that it seeks documents beyond the scope

20  of permissible discovery, not relevant to any party's claims or defenses, and not proportional to

21  the needs of the case. For example, this request purports to seek documents relating to channels

22  and programs that are not at issue in the litigation.

23  Subject to and without waiving any of their objections, Jadoo Defendants respond as

24  follows: Jadoo Defendants will meet and confer with DISH to address how this Request may be

25  limited and/or clarified to (i) seek documents that are relevant to the claims or defenses in this

26  litigation and proportional to the needs of this case; and (ii) avoid placing an undue burden on

27  Jadoo Defendants.

28  **REQUEST NO. 30:**

1      All responses and documents concerning each cease and desist correspondence, notices of

2  claimed infringement, and other documents and communications requesting that JadooTV stop

3  transmitting or providing access to a channel or program.

4  **RESPONSE TO REQUEST NO. 30**

5      Jadoo Defendants incorporate by reference each of the General Objections set forth above.

6  Jadoo Defendants object to the request on the grounds that it seeks documents beyond the scope

7  of permissible discovery, not relevant to any party's claims or defenses, and not proportional to

8  the needs of the case.  For example, this request purports to seek documents relating to channels

9  and programs that are not at issue in the litigation.  Jadoo Defendants further object to the request

10  to the extent it seeks documents protected from disclosure by the attorney-client privilege, the

11  attorney work product doctrine, the accountant-client privilege, common-interest privilege, or

12  similar privileges or protections.

13      Subject to and without waiving any of their objections, Jadoo Defendants respond as

14  follows:  Jadoo Defendants will meet and confer with DISH to address how this Request may be

15  limited and/or clarified to (i) seek documents that are relevant to the claims or defenses in this

16  litigation and proportional to the needs of this case; and (ii) avoid placing an undue burden on

17  Jadoo Defendants.

18  **REQUEST NO. 31:**

19      Documents sufficient to identify each advertisement for the Jadoo Service or Jadoo Box

20  that was made by JadooTV, or for which JadooTV paid, either in whole or in part.

21  **RESPONSE TO REQUEST NO. 31**

22      Jadoo Defendants incorporate by reference each of the General Objections set forth above.

23  Jadoo Defendants object to the request on the grounds that it seeks documents beyond the scope

24  of permissible discovery, not relevant to any party's claims or defenses, and not proportional to

25  the needs of the case.  For example, this request purports to seek documents regarding every

26  single advertisement for the Jadoo Service or Jadoo Box, regardless of any relevance to the

27  present litigation.  In addition, Jadoo Defendants object to the request as duplicative, unduly

28  burdensome, expensive, and oppressive on the ground that it seeks documents currently in

1   follows: Jadoo Defendants will meet and confer with DISH to address how this Request may be

2   limited and/or clarified to (i) seek documents that are relevant to the claims or defenses in this

3   litigation and proportional to the needs of this case; and (ii) avoid placing an undue burden on

4   Jadoo Defendants.

5   **REQUEST NO. 49:**

6       Documents sufficient to identify JadooTV's revenues, costs, and gross profits, including

7   advertising revenue, relating to the Jadoo Service and Jadoo Box.

8   **RESPONSE TO REQUEST NO. 49**

9       Jadoo Defendants incorporate by reference each of the General Objections set forth above.

10   Jadoo Defendants object to the request on the grounds that it seeks documents beyond the scope

11   of permissible discovery, not relevant to any party's claims or defenses, and not proportional to

12   the needs of the case. For example, the request purports to seek financial information regarding

13   any Jadoo Service and Jadoo Box, regardless of any relevance to the present litigation. Jadoo

14   Defendants further object to the request to the extent it seeks confidential business information,

15   trade secrets, or competitively or technically sensitive information.

16       Subject to and without waiving any of their objections, Jadoo Defendants respond as

17   follows: Jadoo Defendants will meet and confer with DISH to address how this Request may be

18   limited and/or clarified to (i) seek documents that are relevant to the claims or defenses in this

19   litigation and proportional to the needs of this case; and (ii) avoid placing an undue burden on

20   Jadoo Defendants.

21   **REQUEST NO. 50:**

22       Documents sufficient to identify each type of Jadoo Box that JadooTV acquired or

23   distributed.

24   **RESPONSE TO REQUEST NO. 50**

25       Jadoo Defendants incorporate by reference each of the General Objections set forth above.

26   Jadoo Defendants object to the request on the grounds that it seeks documents beyond the scope

27   of permissible discovery, not relevant to any party's claims or defenses, and not proportional to

28   the needs of the case. For example, the request purports to seek information regarding any Jadoo

Mark Punzalan (CA Bar No. 247599)
Email: mark@chanpunzalan.com
Nicole Daryanani (CA Bar No. 328068)
Email: nicole@chanpunzalan.com
Shinhong Byun (CA Bar No. 264129)
Email: shinhong@chanpunzalan.com
CHAN PUNZALAN LLP
22 Battery Street, Suite 401
San Francisco, CA 94111

*Counsel for Defendants*
*JadooTV, Inc. and Sajid Sohail*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C.,<br><br>Plaintiff,<br><br>vs.<br><br>JADOOTV, INC. and SAJID SOHAIL,<br><br>Defendants. | Case No. 3:20-cv-01891-CRB<br><br>**DEFENDANTS' JADOOTV, INC. AND SAJID SOHAIL RESPONSES AND OBJECTIONS TO PLAINTIFF DISH NETWORK L.L.C.'S THIRD SET OF REQUESTS FOR PRODUCTION (NOS. 114-122)** |

**PROPOUNDING PARTY:**    PLAINTIFF DISH NETWORK L.L.C.

**RESPONDING PARTY:**    DEFENDANTS JADOOTV, INC. AND

SAJID SOHAIL

**SET NUMBER:**    THREE (NOS. 114 - 122)

Defendants JadooTV, Inc. ("JadooTV") and Sajid Sohail ("Sohail") (collectively, "Jadoo Defendants"), in accordance with Rule 34 of the Federal Rules of Civil Procedure, hereby submit their Responses and Objections to Plaintiff DISH Network, L.L.C.'s ("DISH") Third Set of Requests for Production to Defendants JadooTV, Inc. and Sajid Sohail.

party or not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

18.     Jadoo Defendants object to each and every request for production to the extent that they seek the production of documents or things without any limitation as to time period and are therefore overbroad, unduly burdensome, and, consequently, call for the production of documents and things not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

19.     As used in each objection and response made herein, "and" or "or" shall be construed both conjunctively and disjunctively, and each will include the other whenever such a dual construction would serve to bring within a category documents or information that would not otherwise be within its scope; "each" means "each and every."

20.     As used in each objection and response made herein, "produce" shall mean either to make available for inspection and copying or to produce copies.

21.     Any objection Jadoo Defendants make to any particular Request in no way limits the application of the foregoing objections to each Request. Jadoo Defendants expressly assert the objections set forth above with respect to each Request that follows.

## RESPONSES TO REQUESTS FOR PRODUCTION (SET THREE)

**REQUEST FOR PRODUCTION NO. 114**

All documents identified in response to Interrogatories 18 and 19.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 114**

Jadoo Defendants incorporate by reference each of the General Objections set forth above. Further, Jadoo Defendants object to the request on the grounds that it seeks documents beyond the scope of permissible discovery, not relevant to any party's claims or defenses, and not

6

1  proportional to the needs of the case.   Jadoo Defendants object to the request on the grounds that

2  it seeks documents protected by privilege, including the attorney-client privilege or work product

3  doctrine.

4  **REQUEST FOR PRODUCTION NO. 115**

5     Documents sufficient to identify the total number of JadooTV's active United States users

6  on a daily, weekly, or monthly basis.

7  **RESPONSE TO REQUEST FOR PRODUCTION NO. 115**

8     Jadoo Defendants incorporate by reference each of the General Objections set forth above.

9  Jadoo Defendants object to the request on the grounds that it seeks documents beyond the scope of

10  permissible discovery, not relevant to any party's claims or defenses, and not proportional to the

11  needs of the case.  For example, the request purports to seek information about all United States

12  users regardless of any relevance to the present litigation.  Subject to and without waiving any

13  objections, Jadoo Defendants respond that any documents that may be relevant to this Request

14  have already been produced.

15  **REQUEST FOR PRODUCTION NO. 116**

16     Documents sufficient to identify the relative popularity among JadooTV's users of the

17  Protected Channels.

18  **RESPONSE TO REQUEST FOR PRODUCTION NO. 116**

19     Jadoo Defendants incorporate by reference each of the General Objections set forth above.

20  Jadoo Defendants object to the request on the grounds that it seeks documents beyond the scope of

21  permissible discovery, not relevant to any party's claims or defenses, and not proportional to the

22  needs of the case.  Jadoo Defendants further object to this request as unclear, vague and

23  ambiguous with respect to the term "relative popularity."  Jadoo Defendants also object that the

24  request is redundant, overly broad, and burdensome.  Subject to and without waiving any

25  objections, Jadoo Defendants respond that any documents that may be relevant to this Request

26  have already been produced.

27

28

7

DEFENDANTS' JADOOTV, INC. AND SAJID SOHAIL RESPONSES AND OBJECTIONS TO PLAINTIFF
DISH NETWORK L.L.C.'S THIRD SET OF REQUESTS FOR PRODUCTION
(NOS. 114-122)
Case No. 3:20-cv-01891-CRB

Mark Punzalan (CA Bar No. 247599)
Email: mark@chanpunzalan.com
Nicole Daryanani (CA Bar No. 328068)
Email: nicole@chanpunzalan.com
Shinhong Byun (CA Bar No. 264129)
Email: shinhong@chanpunzalan.com
CHAN PUNZALAN LLP
22 Battery Street, Suite 401
San Francisco, CA 94111

*Counsel for Defendants*
*JadooTV, Inc. and Sajid Sohail*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| DISH NETWORK L.L.C.,<br><br>          Plaintiff,<br><br>     vs.<br><br>JADOOTV, INC. and SAJID SOHAIL,<br><br>          Defendants. | Case No. 3:20-cv-01891-CRB<br><br>**DEFENDANTS' JADOOTV, INC. AND SAJID SOHAIL RESPONSES AND OBJECTIONS TO PLAINTIFF DISH NETWORK L.L.C.'S FOURTH SET OF REQUESTS FOR PRODUCTION (NOS. 123-149)** |

**PROPOUNDING PARTY:**   PLAINTIFF DISH NETWORK L.L.C.

**RESPONDING PARTY:**    DEFENDANTS JADOOTV, INC. AND

                         SAJID SOHAIL

**SET NUMBER:**          FOUR (NOS. 123 - 149)

Defendants JadooTV, Inc. ("JadooTV") and Sajid Sohail ("Sohail") (collectively, "Defendants"), in accordance with Rule 34 of the Federal Rules of Civil Procedure, hereby submit their Responses and Objections to Plaintiff DISH Network, L.L.C.'s ("DISH") Fourth Set of Requests for Production to Defendants JadooTV, Inc. and Sajid Sohail.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 127**

Defendants incorporate by reference each of the General Objections set forth above. Further, Defendants object to the request on the grounds that it seeks documents beyond the scope of permissible discovery, not relevant to any party's claims or defenses, and not proportional to the needs of the case. Defendants object to the request on the grounds that it seeks documents protected by privilege. Defendants further object to the request on the grounds it seeks private financial information in violation of Haseeb Shah's financial privacy rights protected by the United States and California Constitutions. Subject to and without waiving the foregoing objections, Defendants respond : after diligent search and reasonable inquiry, Defendants do not have response documents in their custody, control, or possession.

**REQUEST FOR PRODUCTION NO. 128**

All of Cloudstream Media, Inc.'s tax returns and forms, including Jadoo TV.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 128**

Defendants incorporate by reference each of the General Objections set forth above. Defendants object to the request on the grounds that it seeks documents beyond the scope of permissible discovery, not relevant to any party's claims or defenses, and not proportional to the needs of the case. Defendants also object that the request is redundant, overly broad, and burdensome. For example, the request purports to seek information about all of Cloudstream Media, Inc.'s tax returns and forms at any time and regardless of any relevance to the present litigation. Subject to and without waiving any objections, Defendants respond that any documents that may be relevant to this Request have already been produced.

**REQUEST FOR PRODUCTION NO. 129**

Complete electronic copies of Jadoo TV's Quickbooks files including backup files with the .QBB file extension and company files with the .QBW file extension.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 129**

Defendants incorporate by reference each of the General Objections set forth above. Defendants object to the request on the grounds that it seeks documents beyond the scope of

8

permissible discovery, not relevant to any party's claims or defenses, and not proportional to the needs of the case. Defendants also object that the request is redundant, overly broad, and burdensome. For example, the request purports to seek information about all of Jadoo TV's Quickbooks files including backup files at any time and regardless of any relevance to the present litigation. Subject to and without waiving any objections, Defendants respond that any documents that may be relevant to this Request have already been produced.

**REQUEST FOR PRODUCTION NO. 130**

All of Jadoo TV's bank records including statements, copies of checks, and wire transfer records.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 130**

Defendants incorporate by reference each of the General Objections set forth above. Defendants object to the request on the grounds that it seeks documents beyond the scope of permissible discovery, not relevant to any party's claims or defenses, and not proportional to the needs of the case. Defendants also object that the request is redundant, overly broad, and burdensome. For example, the request purports to seek all of Jadoo TV's bank records including statements, copies of checks, and wire transfer records, files at any time and regardless of any relevance to the present litigation. Subject to and without waiving any objections, Defendants respond that any documents that may be relevant to this Request have already been produced.

**REQUEST FOR PRODUCTION NO. 131**

All of Cloudstream Media, Inc.'s bank records including statements, copies of checks, and wire transfer records.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 131**

Defendants incorporate by reference each of the General Objections set forth above. Defendants object to the request on the grounds that it seeks documents beyond the scope of permissible discovery, not relevant to any party's claims or defenses, and not proportional to the needs of the case. Defendants also object that the request is overly broad, and burdensome. For example, the request purports to seek all of Cloudstream Media, Inc.'s bank records including

9

statements, copies of checks, and wire transfer records at any time and regardless of any relevance to the present litigation.  Subject to and without waiving any objections, Defendants respond that any documents that may be relevant to this Request have already been produced.

**REQUEST FOR PRODUCTION NO. 132**

All of Pearl Technologies International Limited's bank records, including statements, copies of checks, and wire transfer records.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 132**

Defendants incorporate by reference each of the General Objections set forth above. Defendants object to the request on the grounds that it seeks documents beyond the scope of permissible discovery, not relevant to any party's claims or defenses, and not proportional to the needs of the case.  Defendants also object that the request is overly broad, and burdensome. For example, the request purports to seek all of Pearl Technologies International Limited's bank records including statements, copies of checks, and wire transfer records at any time and regardless of any relevance to the present litigation.  Subject to and without waiving the foregoing objections, Defendants respond : after diligent search and reasonable inquiry, Defendants do not have response documents in their custody, control, or possession.

**REQUEST FOR PRODUCTION NO. 133**

All of Altair Technologies Private Limited's bank records, including statements, copies of checks, and wire transfer records.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 133**

Defendants incorporate by reference each of the General Objections set forth above. Defendants object to the request on the grounds that it seeks documents beyond the scope of permissible discovery, not relevant to any party's claims or defenses, and not proportional to the needs of the case.  Defendants also object that the request is overly broad, and burdensome. For example, the request purports to seek all of Altair Technologies Private Limited's bank records including statements, copies of checks, and wire transfer records at any time and regardless of any relevance to the present litigation.  Subject to and without waiving the foregoing objections,

1    Defendants respond : after diligent search and reasonable inquiry, Defendants do not have

2    response documents in their custody, control, or possession.

3    **REQUEST FOR PRODUCTION NO. 134**

4         All of Pearl Media Group's bank records, including statements, copies of checks, and

5    wire transfer records.

6    **RESPONSE TO REQUEST FOR PRODUCTION NO. 134**

7         Defendants incorporate by reference each of the General Objections set forth above.

8    Defendants object to the request on the grounds that it seeks documents beyond the scope of

9    permissible discovery, not relevant to any party's claims or defenses, and not proportional to the

10   needs of the case.  Defendants also object that the request is overly broad, and burdensome. For

11   example, the request purports to seek all of Pearl Media Group's bank records including

12   statements, copies of checks, and wire transfer records at any time and regardless of any relevance

13   to the present litigation.  Subject to and without waiving the foregoing objections, Defendants

14   respond : after diligent search and reasonable inquiry, Defendants do not have response documents

15   in their custody, control, or possession.

16   **REQUEST FOR PRODUCTION NO. 135**

17        Documents sufficient to identify all disbursements to Sajid Sohail from any entity, by any

18   means, including those from Jadoo TV, Cloudstream Media, Inc., Pearl Technologies

19   International Limited, Altair Technologies Private Limited, and Pearl Media Group.

20   **RESPONSE TO REQUEST FOR PRODUCTION NO. 135**

21        Defendants incorporate by reference each of the General Objections set forth above.

22   Further, Defendants object to the request on the grounds that it seeks documents beyond the scope

23   of permissible discovery, not relevant to any party's claims or defenses, and not proportional to

24   the needs of the case.   Defendants object to the request on the grounds that it seeks documents

25   protected by privilege, including the attorney-client privilege or work product doctrine.

26   Defendants also object that the request is overly broad, and burdensome.  Defendants further

27

28

1 object to the request on the grounds it seeks private financial information in violation of Sajid

2 Sohail's financial privacy rights protected by the United States and California Constitutions.

3 **REQUEST FOR PRODUCTION NO. 136**

4       Documents sufficient to identify all disbursements to Sadia Sohail from any entity, by

5 any means, including those from Jadoo TV, Cloudstream Media, Inc., Pearl Technologies

6 International Limited, Altair Technologies Private Limited, and Pearl Media Group.

7 **RESPONSE TO REQUEST FOR PRODUCTION NO. 136**

8       Defendants incorporate by reference each of the General Objections set forth above.

9 Further, Defendants object to the request on the grounds that it seeks documents beyond the scope

10 of permissible discovery, not relevant to any party's claims or defenses, and not proportional to

11 the needs of the case. Defendants object to the request on the grounds that it seeks documents

12 protected by privilege, including the attorney-client privilege or work product doctrine.

13 Defendants also object that the request is overly broad, and burdensome. Defendants further

14 object to the request on the grounds it seeks private financial information in violation of Sadia

15 Sohail's financial privacy rights protected by the United States and California Constitutions.

16 **REQUEST FOR PRODUCTION NO. 137**

17       Documents sufficient to identify details of all disbursements noted in Jadoo TV's Chapter

18 11 Monthly operating Report; Statement of Operations as "Compensation to Owner(s)/Officer(s)

19 including Name of Payee, date of payment, amount of payment, entity that made the payment,

20 origin of the funds and how payment was made such as check, wire transfer, bank transfer, or

21 intercompany transfer.

22 **RESPONSE TO REQUEST FOR PRODUCTION NO. 137**

23       Defendants incorporate by reference each of the General Objections set forth above.

24 Further, Defendants object to the request on the grounds that it seeks documents beyond the scope

25 of permissible discovery, not relevant to any party's claims or defenses, and not proportional to

26 the needs of the case. Defendants object to the request on the grounds that it seeks documents

27 protected by privilege, including the attorney-client privilege or work product doctrine.

28

Defendants further object to the request on the grounds it seeks private financial information in violation of parties and third-parties' financial privacy rights protected by the United States and California Constitutions.  Subject to and without waiving the foregoing objections, Defendants respond that any documents that may be relevant to this Request are already in Plaintiff's possession and are publicly available in JadooTV's Chapter 11 monthly operating reports.

**REQUEST FOR PRODUCTION NO. 138**

For all transfers or payments of funds from any bank account from any entity, whether domestic or foreign, provide documents sufficient to identify the name of payee, amount, date of payment and business purpose, including all transfers or payments to Altair Technologies Ptil LLC, T.C. Ziraat Bankasi A.S., Xumax, Intelligrape Software Private Ltd., Tolo Tv Limited, Pear Technologies Inter Ltd. Dubai, Aspiring Minds Software Service Mumbai, and Cloudstream Media.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 138**

Defendants incorporate by reference each of the General Objections set forth above. Further, Defendants object to the request on the grounds that it seeks documents beyond the scope of permissible discovery, not relevant to any party's claims or defenses, and not proportional to the needs of the case.   For example, the request purports to seek documents identifying the name of payees, amount, date of payment and business purpose for all transfers or payments of funds from any bank account from any entity, at any time, regardless of any relevance to the present litigation. Defendants further object to the request on the grounds that it seeks documents protected by privilege, including the attorney-client privilege or work product doctrine. Defendants further object to the request on the grounds it is overbroad, burdensome, and vague and ambiguous as to time and scope.

**REQUEST FOR PRODUCTION NO. 139**

Documents sufficient to identify whether the payees identified in Request No. 138 are relatives, personal friends, or business associates beyond the transaction noted (for example, partners in other entities not related to this matter).

1 **RESPONSE TO REQUEST FOR PRODUCTION NO. 139**

2      Defendants incorporate by reference each of the General Objections set forth above.

3 Further, Defendants object to the request on the grounds that it seeks documents beyond the scope

4 of permissible discovery, not relevant to any party's claims or defenses, and not proportional to

5 the needs of the case.   Defendants further object to the request on the grounds that it seeks

6 documents protected by privilege.    Defendants further object to the request on the grounds it is

7 overbroad, burdensome, vague and ambiguous, and intelligible as written as to the payees'

8 relationship with or to whom.

9 **REQUEST FOR PRODUCTION NO. 140**

10      Documents sufficient to identify details of all disbursements noted in Chapter 11 Monthly

11 Operating Report; Statement of Operations as "Salaries" including Name of Payee, date of

12 payment, amount of payment, entity that made the payment, origin of the funds and how

13 payment was made such as check, wire transfer, bank transfer, or intercompany transfer.

14 **RESPONSE TO REQUEST FOR PRODUCTION NO. 140**

15      Defendants incorporate by reference each of the General Objections set forth above.

16 Further, Defendants object to the request on the grounds that it seeks documents beyond the

17 scope of permissible discovery, not relevant to any party's claims or defenses, and not

18 proportional to the needs of the case.   Defendants further object to the request on the grounds

19 that it seeks documents protected by privilege, including the attorney-client privilege or work

20 product doctrine.  Defendants further object to the request on the grounds it seeks private

21 financial information in violation of parties and third-parties' financial privacy rights protected

22 by the United States and California Constitutions.

23 **REQUEST FOR PRODUCTION NO. 141**

24      All agreements between Jadoo TV and IDC Resources (Pvt.) Limited.

25 **RESPONSE TO REQUEST FOR PRODUCTION NO. 141**

26      Defendants incorporate by reference each of the General Objections set forth above.

27 Further, Defendants object to the request on the grounds that it seeks documents beyond the

28

14

DEFENDANTS' JADOOTV, INC. AND SAJID SOHAIL RESPONSES AND OBJECTIONS TO PLAINTIFF
DISH NETWORK L.L.C.'S FOURTH SET OF REQUESTS FOR PRODUCTION
(NOS. 123-149)
Case No. 3:20-cv-01891-CRB

Mark Punzalan (State Bar No. 247599)
Email: mark@chanpunzalan.com
Nicole Daryanani (State Bar No. 328068)
Email: nicole@chanpunzalan.com
CHAN PUNZALAN LLP
2000 Alameda de las Pulgas, Suite 154
San Mateo, CA 94403
Telephone: 650.362.4150
Facsimile: 650.362.4151

*Attorneys for Defendants*
*JADOOTV, INC. and SAJID SOHAIL*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> JADOOTV, INC., SAJID SOHAIL, HASEEB SHAH, EAST WEST AUDIO VIDEO, INC., and PUNIT BHATT, <br><br> Defendants. | Case No. 2:18-cv-09768-FMO-KS <br><br> **DEFENDANT JADOOTV, INC'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF DISH NETWORK L.L.C.'S FIRST AND SECOND SET OF REQUESTS FOR PRODUCTION TO DEFENDANTS JADOOTV, INC. AND SAJID SOHAIL (NOS. 1-3, 6-7, 14-21, 23-28, 32, 34-41, 44-46, 48, 50-53, 55, 57-65, 68-70, 72, 74-81, 83, 85-86, 89-103, 105, and 111-112)** |

**PROPOUNDING PARTY:**     PLAINTIFF DISH NETWORK L.L.C.

**RESPONDING PARTY:**      DEFENDANT JADOOTV, INC.

**SET NUMBER:**      ONE AND TWO (NOS. 1-3, 6-7, 14-21, 23-28, 32, 34-41, 44-46, 48, 50-53, 55, 57-65, 68-70, 72, 74-81, 83, 85-86, 89-103, 105, and 111-11)

1  Documents sufficient to identify each type of Jadoo Box that JadooTV acquired or

2  distributed.

3  **SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 50**

4  JadooTV incorporates by reference each of the General Objections set forth above. Subject to and

5  without waiving any of his objections, please see documents produced with JadooTV's

6  Supplemental Response. JadooTV has produced all documents in response to this request.

7  **REQUEST FOR PRODUCTION NO. 51**

8  Documents sufficient to identify the total number of each type of Jadoo Box that

9  JadooTV acquired or distributed.

10  **SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 51**

11  JadooTV incorporates by reference each of the General Objections set forth above. Subject to and

12  without waiving any of his objections, please see documents produced with JadooTV's

13  Supplemental Response. JadooTV has produced all documents in response to this request.

14  **REQUEST FOR PRODUCTION NO. 52**

15  Documents sufficient to identify all costs that JadooTV incurred to acquire and distribute

16  each type of Jadoo Box.

17  **SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 52**

18  JadooTV incorporates by reference each of the General Objections set forth above. Subject to and

19  without waiving any of his objections, please see documents produced with JadooTV's

20  Supplemental Response. JadooTV has produced all documents in response to this request.

21  **REQUEST FOR PRODUCTION NO. 53**

22  Documents sufficient to identify each payment that JadooTV received from its sale of

23  each type of Jadoo Box.

24  **SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 53**

25  JadooTV incorporates by reference each of the General Objections set forth above. Subject to and

26  without waiving any of his objections, please see documents produced with JadooTV's

27  Supplemental Response. JadooTV has produced all documents in response to this request.

28

**DEFENDANT JADOOTV SUPPLEMENTAL RESPONSES TO PLAINTIFF DISH'S
FIRST AND SECOND SET OF REQUESTS FOR PRODUCTION
CASE NO. 2:18-CV-09768-FMO-KS**

**REQUEST FOR PRODUCTION NO. 55**

Documents sufficient to identify each payment that JadooTV made to each source or supplier from which JadooTV acquired each type of Jadoo Box.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 55**

JadooTV incorporates by reference each of the General Objections set forth above. Subject to and without waiving any of his objections, please see documents produced with JadooTV's Supplemental Response. JadooTV has produced all documents in response to this request.

**REQUEST FOR PRODUCTION NO. 57**

All documents that JadooTV exchanged with each supplier or source from whom JadooTV acquired each type of Jadoo Box.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 57**

JadooTV incorporates by reference each of the General Objections set forth above. Subject to and without waiving any of his objections, please see documents produced with JadooTV's Supplemental Response. JadooTV has produced all documents in response to this request.

**REQUEST FOR PRODUCTION NO. 58**

Documents sufficient to identify each iteration of the JadooTV App and JadooGO App that JadooTV acquired or distributed.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 58**

JadooTV incorporates by reference each of the General Objections set forth above. Subject to and without waiving any of his objections, please see documents produced with JadooTV's Supplemental Response. JadooTV has produced all documents in response to this request.

**REQUEST FOR PRODUCTION NO. 59**

Documents sufficient to identify the total number of each iteration of the JadooTV App and JadooGO App that JadooTV acquired or distributed.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 59**

1  JadooTV incorporates by reference each of the General Objections set forth above. Subject to and

2  without waiving any of his objections, please see documents produced with JadooTV's

3  Supplemental Response.  JadooTV has produced all documents in response to this request.

4  **REQUEST FOR PRODUCTION NO. 60**

5       Documents sufficient to identify all costs that JadooTV incurred to acquire and distribute

6  each iteration of the JadooTV App and JadooGO App.

7  **SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 60**

8  JadooTV incorporates by reference each of the General Objections set forth above. Subject to and

9  without waiving any of his objections, please see documents produced with JadooTV's

10  Supplemental Response.  JadooTV has produced all documents in response to this request.

11  **REQUEST FOR PRODUCTION NO. 61**

12       Documents sufficient to identify each payment that JadooTV received from its sale of

13  each iteration of the JadooTV App and JadooGO App.

14  **SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 61**

15  JadooTV incorporates by reference each of the General Objections set forth above. Subject to and

16  without waiving any of his objections, please see documents produced with JadooTV's

17  Supplemental Response.  JadooTV has produced all documents in response to this request.

18  **REQUEST FOR PRODUCTION NO. 62**

19       Documents sufficient to identify each source or supplier of each iteration of the JadooTV

20  App and JadooGO App that JadooTV acquired or distributed.

21  **SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 62**

22  JadooTV incorporates by reference each of the General Objections set forth above. Subject to and

23  without waiving any of his objections, please see documents produced with JadooTV's

24  Supplemental Response.  JadooTV has produced all documents in response to this request.

25  **REQUEST FOR PRODUCTION NO. 63**

26       Documents sufficient to identify each payment that JadooTV made to each source or

27  supplier from which JadooTV acquired each iteration of the JadooTV App or JadooGO App.

28

18

**DEFENDANT JADOOTV SUPPLEMENTAL RESPONSES TO PLAINTIFF DISH'S
FIRST AND SECOND SET OF REQUESTS FOR PRODUCTION
CASE NO. 2:18-CV-09768-FMO-KS**

# EXHIBIT 5



Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Tel: 713.343.0478
Fax: 713.758.0146
www.hnbllc.com

October 15, 2020

<u>**VIA Email**</u>

Mark Punzalan
Shinhong Byun
Nicole Daryanani
Chan Punzalan LLP
22 Battery Street, Suite 401
San Francisco, CA 94111
mark@chanpunzalan.com
shinhong@chanpunzalan.com
nicole@chanpunzalan.com

     Re:    *DISH Network L.L.C. v. Jadoo TV, Inc. et al.,* No. 3:20-cv-01891-CRB (LB)
             (N.D. Cal.)

Counsel:

       I write on behalf of Plaintiff DISH Network L.L.C. ("DISH") concerning Defendants Jadoo TV, Inc. and Sajid Sohail's responses to DISH's Requests for Production ("Requests") and Interrogatories. For the reasons explained below, Defendants' responses are not adequate and their objections not sustainable.

**I.**     <u>**Defendants' General Objections are Improper and Responsive Documents Must be Specifically Identified.**</u>

       First, all of Defendants' responses are made subject to a litany of "general objections." This is improper. "The familiar litany of general objections, including overly broad, burdensome, or oppressive, will not alone constitute a successful objection…nor will a general objection fulfill the objecting party's burden to explain its objections." *Allianz Ins. Co. v. Surface Specialties, Inc.*, No. Civ.A.03–2470–CM–DJW, 2005 WL 44534, at \*2 (D. Kan. Jan. 7, 2005); *see Springer v. Gen. Atomics Aeronautical Sys. Inc.*, No. 16-CV-2331-BTM (KSC), 2018 WL 490745, at \*2 (S.D. Cal. Jan. 18, 2018) (overruling and striking party's "General Objections" section); *DeJarlais v. King*, No. 15-CV-1005 BEN (MDD), 2015 WL 8180582, at \*1 (S.D. Cal. Dec. 7, 2015) ("A general objection is tantamount to no objection at all.").

       Second, even Defendants' purportedly more specific objections are themselves pure boilerplate and therefore not sustainable. Indeed, Defendants' objections are mere conclusions

devoid of any attempt to explain "why" they should apply, let alone be sustained. This, too, is improper. *See Sherwin-Williams Co. v. JB Collision Servs., Inc.*, No. 13–CV-1946–LAB (WVG), 2014 WL 3388871, at *2 (S.D. Cal. July 9, 2014) ("The responding party must clarify, explain, and support its objections.").

Third, all of Defendants' responses are made "subject to" their objections. Such "conditional responses" are not permitted. *See id.* ("The responses are confusing and misleading because, for example, when a party responds to an interrogatory that is 'subject to' and 'without waiving its objections,' the propounder of the interrogatory is left guessing as to whether the responding party has fully or only partially responded to the interrogatory.") (citations and quotations omitted).

Fourth, separate from their objections, Defendants' responses are also inadequate. For example, Defendants' oft-repeated response that "[a]ny documents that may be relevant to [a Request] have already been produced" fails to satisfy "[Defendants'] obligation to clearly state that responsive documents do not exist, have already been produced, or exist *but* are being withheld…due to other objections." *Rodriguez v. Simmons*, No. 2:09-CV-2195 KJN, 2011 WL 1322003, at *7–8 (E.D. Cal. Apr. 4, 2011). If it is Defendants' contention that all responsive documents have already been produced for a particular request, they must identify the documents by Bates number that are responsive to these requests. *Sandifor v. Cty. of Los Angeles*, No. CV 18-7650-DMG (PLAx), 2019 WL 4137415, at *2 (C.D. Cal. May 28, 2019); *see Walker v. N. Las Vegas Police Dept.*, No 214CV01475JADNJK, 2016 WL 8732300, at *4 (D. Nev. May 13, 2016) (reasoning that identification of documents by Bates number may be required to permit the discovering party to identify and locate which documents are responsive to which requests).

Accordingly, Defendants must supplement their written responses as explained further below. Defendants' failure to supplement their responses within a reasonably expedient amount of time may result in DISH seeking court intervention pursuant to Judge Beeler's Standing Order. *See* ECF 176-1 § III.4.

## II.  Knowledge, Willfulness, and the Advice of Counsel Defense

### Interrogatory No. 14

*DISH's Request.*
Identify each communication that JadooTV received asking JadooTV to stop transmitting or to stop providing access to a channel or program, specifying any inquiry or investigation undertaken by JadooTV and any response taken by JadooTV.

*Defendants' Response*
Jadoo Defendants object to this Interrogatory on the basis of each and every General Objection set forth above. Jadoo Defendants further object to this Interrogatory to the extent that it seeks information concerning Jadoo Defendants that is not relevant to any party's claims or defenses, and not proportional to the needs of the case, and/or is overly broad and burdensome. For example, the Interrogatory purports to require information about every request to stop transmitting or

providing access to a channel or program, regardless of the reason or whether the channel or program bears any relation to the present litigation. Jadoo Defendants further object to this Interrogatory to the extent it seeks information protected by privilege, including the attorney client privilege or work product doctrine. Jadoo Defendants further object to this Interrogatory as compound; it comprises at least two separate interrogatories.

Subject to and without waiving any of their objections, Jadoo Defendants respond as follows: Jadoo Defendants will meet and confer with DISH to address how this Interrogatory may be limited and/or clarified to seek information that is relevant to the claims or defenses in this litigation and proportional to the needs of this case.

### Interrogatory No. 18

*DISH'S Request.*
If Jadoo TV asserts or intends to assert advice of counsel as a defense to DISH's claims of willful copyright infringement, identify all advice and opinions of counsel concerning the defense, and the legal and factual basis for the defense.

*Defendants' Response.*
Jadoo Defendants object to this Interrogatory on the basis of each and every General Objection set forth above. Jadoo Defendants object to this Interrogatory as it seeks information protected by privilege, including the attorney-client privilege or work product doctrine. Jadoo Defendants further object to this Interrogatory as vague, overbroad, oppressive, and unduly burdensome on the grounds that the Interrogatory seeks "all advice and opinions of counsel."

### Interrogatory No. 19

*DISH's Request.*
Do you contend that, at the time you made the eMedia feature available to consumers, or at any time thereafter, you had a good faith and reasonable belief that you were not infringing, either directly or secondarily, upon DISH's copyrights in the Protected Channels? If so, please (i) state the basis for such belief, (ii) state whether you relied in any way upon the advice of counsel in forming such belief, (iii) identify every communication to or from any counsel concerning such belief, and (iv) identify every communication to or form any counsel concerning such belief, and (iv) identify every document you reviewed, considered, or relied upon in forming such belief.

*Defendants' Response.*
Jadoo Defendants object to this Interrogatory on the basis of each and every General Objection set forth above. Jadoo Defendants further object to this Interrogatory as it seeks information protected by privilege, including the attorney-client privilege or work product doctrine. Jadoo Defendants also object to this Interrogatory as vague, overbroad, oppressive, and unduly burdensome.

//
//
//

**Request No. 30**

*DISH's Request.*
All responses and documents concerning each cease and desist correspondence, notices of claimed infringement, and other documents and communications requesting that JadooTV stop transmitting or providing access to a channel or program.

*Defendants' Response.*
Jadoo Defendants incorporate by reference each of the General Objections set forth above. Jadoo Defendants object to the request on the grounds that it seeks documents beyond the scope of permissible discovery, not relevant to any party's claims or defenses, and not proportional to the needs of the case. For example, this request purports to seek documents relating to channels and programs that are not at issue in the litigation. Jadoo Defendants further object to the request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the accountant-client privilege, common-interest privilege, or similar privileges or protections.

Subject to and without waiving any of their objections, Jadoo Defendants respond as follows: Jadoo Defendants will meet and confer with DISH to address how this Request may be limited and/or clarified to (i) seek documents that are relevant to the claims or defenses in this litigation and proportional to the needs of this case; and (ii) avoid placing an undue burden on Jadoo Defendants.

**Request No. 114**

*DISH's Request.*
All documents identified in response to Interrogatories 18 and 19.

*Defendants' Response.*
Jadoo Defendants incorporate by reference each of the General Objections set forth above. Further, Jadoo Defendants object to the request on the grounds that it seeks documents beyond the scope of permissible discovery, not relevant to any party's claims or defenses, and not proportional to the needs of the case. Jadoo Defendants object to the request on the grounds that it seeks documents protected by privilege, including the attorney-client privilege or work product doctrine.

********

These Interrogatories and Requests explore, among other things, the factual and legal bases underlying Defendants' denial that they willfully infringed DISH's copyrights. To the extent Defendants claim not to have acted willfully, they must explain the legal and factual bases of their claim. To the extent Defendants plan to assert advice of counsel as a defense to the charge of willfulness, that assertion waives the attorney-client and work product privileges, as concerns advice and materials relied on in forming the belief that their actions were not infringing. *See, e.g., Mushroom Assocs. v. Monterey Mushrooms, Inc.*, No. C–91–1092 THE (PJH), 1992 WL 442892, at *3–5 (N.D. Cal. May 19, 1992) (granting plaintiff's motion to compel defendants to produce

documents and other communications previously withheld under the attorney-client or work product privileges where defendants asserted advice of counsel as a defense to willful infringement).

Based on Defendants' continued assertion of the attorney-client and work product privileges in response to the above discovery requests, combined with Defendants' failure to plead advice of counsel as an affirmative defense, DISH has no choice but to conclude that Defendants do *not* intend to assert advice of counsel as a defense to the charge of willfulness. If indeed Defendants do *not* intend to assert advice of counsel as a defense, they still must identify all documents or communications on their privilege log that, although allegedly privileged, are nevertheless responsive to the above discovery requests. This includes communications and materials created by, or disseminated to, Defendants' in-house and/or outside counsel. The failure to identify materials on a privilege log may waive the privilege. *Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 237 (N.D. Cal. 2015).

If instead Defendants do plan to assert advice of counsel as a defense, Defendants must so state, and identify and produce all communications and materials, attorney-client and work product privileges notwithstanding, that are responsive to the above requests. That said, if Defendants have relied on any documents or communications that are not privileged, they must so state and immediately identify and produce those materials and communications. Based on Defendants' current response, DISH has no choice but to conclude that all materials Defendants have relied on in allegedly forming the belief that their actions were not infringing were materials Defendants claim are privileged, namely attorney-client communications and attorney work product materials under Fed. R. Civ. P. 26(b)(3). If this is incorrect, and Defendants did in fact rely on unprivileged materials in allegedly forming the belief their actions were not infringing, Defendants must so state.

## III. Sales, Advertising Revenue, and Number of Active Jadoo Users

### Interrogatory No. 4

*DISH's Request.*
State JadooTV's monthly and annual unit and dollar sales in the United States separately for each type or line of product or service that JadooTV sold.

*Defendants' Amended Response.*
Subject to and without waiving any of their objections, Jadoo Defendants respond as follows: pursuant to Federal Rule of Civil Procedure 33(d), Jadoo Defendants will produce documents from which DISH may determine JadooTV's monthly and annual dollar sales and advertising revenue in the United States for the Jadoo4, Jadoo5, and Jadoo5S set top boxes, and JadooTV smart TV applications and the JadooGO mobile device applications. As discovery has just commenced, Jadoo Defendants reserve the right to amend, modify, or supplement their response to this Interrogatory.

//

### Request No. 47

*DISH's Request.*
Documents sufficient to identify JadooTV's monthly and annual unit and dollar sales separately for each type or line of product or service that JadooTV sold.

Defendants' *Response.*
Jadoo Defendants incorporate by reference each of the General Objections set forth above. Jadoo Defendants object to the request on the grounds that it seeks documents beyond the scope of permissible discovery, not relevant to any party's claims or defenses, and not proportional to the needs of the case. For example, the request purports to seek information regarding JadooTV's sales of any product or service, regardless of any relevance to the present litigation. Jadoo Defendants further object to the request to the extent it seeks confidential business information, trade secrets, or competitively or technically sensitive information.

Subject to and without waiving any of their objections, Jadoo Defendants respond as follows: Jadoo Defendants will meet and confer with DISH to address how this Request may be limited and/or clarified to (i) seek documents that are relevant to the claims or defenses in this litigation and proportional to the needs of this case; and (ii) avoid placing an undue burden on Jadoo Defendants.

### Request No. 115

*DISH's Request*
Documents sufficient to identify the total number of JadooTV's active United States users on a daily, weekly, or monthly basis.

*Defendants' Response*
Jadoo Defendants incorporate by reference each of the General Objections set forth above. Jadoo Defendants object to the request on the grounds that it seeks documents beyond the scope of permissible discovery, not relevant to any party's claims or defenses, and not proportional to the needs of the case. For example, the request purports to seek information about all United States users regardless of any relevance to the present litigation. Subject to and without waiving any objections, Jadoo Defendants respond that any documents that may be relevant to this Request have already been produced.

### Interrogatory No. 5

*DISH's Request*
State JadooTV's monthly and annual advertising revenue separately for each person and entity making payments to JadooTV concerning the Jadoo Box or Jadoo Service in the United States or www.Jadootv.com.

//
//

*Defendants' Amended Response*
Subject to and without waiving any of their objections, Jadoo Defendants respond as follows: pursuant to Federal Rule of Civil Procedure 33(d), Jadoo Defendants will produce documents from which DISH may determine JadooTV's monthly and annual dollar sales to resellers in the United States for the Jadoo4, Jadoo5, and Jadoo5S set top boxes. As discovery has just commenced, Jadoo Defendants reserve the right to amend, modify, or supplement their response to this Interrogatory.

\*\*\*\*\*\*\*\*

Defendants failed to identify the total number of unit sales for each Jadoo product or service in response to Interrogatory No. 4 and failed to identify their advertising revenue in response to Interrogatory No. 5, instead referring DISH to, but not specifically identifying, documents purportedly containing such figures. When DISH in Request No. 115 asked for documents sufficient to identify the total number of active Jadoo users in the United States on a daily, weekly, or monthly basis, Defendants inexplicably responded that "[d]ocuments that may be relevant to this Request have already been produced." Defendants may not hide the ball on these topics by vaguely referring DISH to its document production and stating that the answer "may" be there. Rather, Defendants must clearly state that their response as to unit sales, dollar figures, and advertising revenue in the United States is contained within their document production and specifically identify the documents to which they are referring. *See Palladini v. City of Milpitas*, No. CV 06–00779 JW (HRL), 2008 WL 1774090, at \*2 (N.D. Cal. Apr.16, 2008) ("If [defendant] prefers to produce documents as his "answer" to interrogatories, then he must specifically identify such documents and clearly state that they contain all of the [defendant's] relevant and responsive information on that topic. If the documents do not tell the complete story, then he must tell it in the interrogatory answer.").

## IV.   Defendants' Discussions Concerning SASP

### Interrogatory No. 6

*DISH's Request.*
Identify each meeting and verbal communication at which JadooTV was present or participated, at any time, and at which there was any discussion concerning SASP, stating the substance of such discussion as verbatim as possible.

*Defendants' Amended Response.*
Subject to and without waiving any of their objections, Jadoo Defendants respond as follows: pursuant to Federal Rule of Civil Procedure 33(d), Jadoo Defendants will produce relevant and responsive non-privileged documents dated between January 1, 2015 and the present, to the extent a reasonable search and diligent inquiry in proportion to the needs of the case locates any such documents, relating to the South Asian Super Pack. As discovery has just commenced, Jadoo Defendants reserve the right to amend, modify, or supplement their response to this Interrogatory.

//

**Interrogatory No. 7**

*DISH's Request.*
Identify each meeting and verbal communication at which JadooTV was present or participated and at which there was any discussion concerning making the Protected Channels available on the Jadoo Box or Jadoo Service in the United States, stating the substance of such discussion as verbatim as possible.

*Defendants' Response.*
Jadoo Defendants object to this Interrogatory on the basis of each and every General Objection set forth above. Jadoo Defendants further object to this Interrogatory to the extent that it seeks information concerning Jadoo Defendants that is not relevant to any party's claims or defenses, and not proportional to the needs of the case, and/or is overly broad and burdensome, for example to the extent that it asks to identify any "meeting and verbal communication" in which anyone employed by JadooTV was somehow "present or participated in" at any time. Jadoo Defendants further object to this Interrogatory to the extent it seeks information protected by privilege, including the attorney-client privilege or work product doctrine.

Subject to and without waiving any of their objections, Jadoo Defendants respond as follows: Jadoo Defendants will meet and confer with DISH to address how this Interrogatory may be limited and/or clarified to seek information that is relevant to the claims or defenses in this litigation and proportional to the needs of this case.

********

Defendants in response to Interrogatory No. 6 already agreed to produce documents as their answer. Thus, as explained above, at minimum, Defendants must specifically identify the documents produced as their answer to Interrogatory No. 6 and state whether those documents tell the "complete story." *See Palladini*, 2008 WL 1774090, at *2. As for Interrogatory No. 7, although it is understandable that Defendants may not recall the substance of each and every verbal communication regarding "making the Protected Channels available on the Jadoo Box or Jadoo Service in the United States," Defendants must supplement their answer to state everything that they do remember from each such communication and what they did to obtain that information. *See Electracash, Inc. v. Kahn*, No. CV 05-1135 RSWL (FMOx), 2006 WL 8434675, at *2 (C.D. Cal. July 10, 2006) ("If a party lacks information necessary to provide a complete response, it should state so under oath, disclose the information it does have, and set forth in detail the efforts it made to obtain the rest of the information.").

//
//
//
//
//
//
//

## V.  Defendants' Servers

### Interrogatory No. 11

*DISH's Request*
Describe each server that JadooTV leased, held ownership in, paid for, operated, used, or connected to, specifying the IP addresses, location, dates, and purpose, including the relationship between the server and the Jadoo Service or Jadoo Box.

*Defendants' Response*
Jadoo Defendants object to this Interrogatory on the basis of each and every General Objection set forth above. Jadoo Defendants further object to this Interrogatory to the extent that it seeks information concerning Jadoo Defendants that is not relevant to any party's claims or defenses, not proportional to the needs of the case, and/or is overly broad and burdensome. For example, the Interrogatory purports to require the identification of each server ever used or connected to in any way by JadooTV, regardless of any relevance to the present litigation.

Subject to and without waiving any of their objections, Jadoo Defendants respond as follows: Jadoo Defendants will meet and confer with DISH to address how this Interrogatory may be limited and/or clarified to seek information that is relevant to the claims or defenses in this litigation and proportional to the needs of this case.

### Request No. 10

*DISH's Request*
Documents sufficient to identify each server that JadooTV leased, held ownership in, paid for, operated, or used.

*Defendants Response*
Jadoo Defendants incorporate by reference each of the General Objections set forth above. Jadoo Defendants object to the request on the grounds that it seeks documents beyond the scope of permissible discovery, not relevant to any party's claims or defenses, and not proportional to the needs of the case. For example, the request purports to seek information about every server ever used in any way by JadooTV, regardless of any relevance to the present litigation. Jadoo Defendants further object to the term "used" as vague and ambiguous. Jadoo Defendants further object to the request to the extent it seeks documents protected from disclosure by the attorney client privilege, the attorney work product doctrine, the accountant-client privilege, common interest privilege, or similar privileges or protections.

Subject to and without waiving any of their objections, Jadoo Defendants respond as follows: Jadoo Defendants will meet and confer with DISH to address how this Request may be limited and/or clarified to (i) seek documents that are relevant to the claims or defenses in this litigation and proportional to the needs of this case; and (ii) avoid placing an undue burden on Jadoo Defendants.

### Request No. 11

*DISH's Request*
Documents sufficient to identify each Content Delivery Network ("CDN") that JadooTV uses or has used.

*Defendants' Response*
Jadoo Defendants incorporate by reference each of the General Objections set forth above. Jadoo Defendants object to the request on the grounds that it seeks documents beyond the scope of permissible discovery, not relevant to any party's claims or defenses, and not proportional to the needs of the case. For example, the request purports to seek information about every CDN ever used in any way by JadooTV, regardless of any relevance to the present litigation. Jadoo Defendants further object to the request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the accountant client privilege, common-interest privilege, or similar privileges or protections.

Subject to and without waiving any of their objections, Jadoo Defendants respond as follows: Jadoo Defendants will meet and confer with DISH to address how this Request may be limited and/or clarified to (i) seek documents that are relevant to the claims or defenses in this litigation and proportional to the needs of this case; and (ii) avoid placing an undue burden on Jadoo Defendants.

### Request No. 12

*DISH's Request*
All documents, including emails, that JadooTV exchanged with Verizon Trademark Services, LLC; Verizon Digital Media Services; Verizon Business Services; MCI Communications Services, Inc.; EdgeCast Networks, Inc.; INXY Ltd.; Highwinds Network Group, Inc.; StackPath, LLC; LeaseWeb CDN B.V.; Akamai Technologies, Inc.; Fishnet Communications; WorldStream B.V.; CDN.tm; or any other CDN concerning the Protected Channels, eMedia, SASP, alleged copyright infringement, or Haseeb Shah.

*Defendants' Response*
Jadoo Defendants incorporate by reference each of the General Objections set forth above.
Jadoo Defendants object to the request on the grounds that it seeks documents beyond the scope of permissible discovery, not relevant to any party's claims or defenses, and not proportional to the needs of the case. For example, the request purports to seek information about any communications with a CDN regarding eMedia, without any limitation rendering the request relevant to the present litigation. Jadoo Defendants further object to the request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the accountant-client privilege, common-interest privilege, or similar privileges or protections.

Subject to and without waiving any of their objections, Jadoo Defendants respond as follows: Jadoo Defendants will meet and confer with DISH to address how this Request may be limited

and/or clarified to (i) seek documents that are relevant to the claims or defenses in this litigation and proportional to the needs of this case; and (ii) avoid placing an undue burden on Jadoo Defendants.

\*\*\*\*\*\*\*\*

Pursuant to a prior meet and confer, DISH has already agreed to limit Interrogatory No. 11 and Request No. 10 to "boot-up, authentication, playlist, update, and LiveTV and VOD streaming servers." *See Meet and Confer Letter from Stephen Ferguson to O'Melveny & Myers LLP*, April 12, 2019, at 6. For Request No. 12, DISH affirmed the relevance of the request based on these servers being used to host SASP Protected Channels or Protected Channel VOD and agreed to exclude documents concerning Haseeb Shah if they were exchanged at the time JadooTV utilized the services of the CDN. *Id*. Defendants must supplement their response to identify and clearly describe all servers involved in the "boot-up, authentication, playlist, update, and LiveTV and VOD streaming servers." Alternatively, Defendants may produce documents sufficient to identify and clearly describe these servers and then supplement their response to Interrogatory No. 11 to clearly identify the documents produced as their answer to this question. *See Palladini*, 2008 WL 1774090, at \*2.

## VI.    Relative Popularity of Defendants' Channel Offerings

### Interrogatory No. 12

*DISH's Request.*
For each Protected Channel, identify the dates on which the channel or any program or content was transmitted or otherwise made available for viewing on the Jadoo Service or Jadoo Box, whether as SASP or through the Live TV, eMedia, or VOD menus and features.

*Defendants' Response.*
Jadoo Defendants object to this Interrogatory on the basis of each and every General Objection set forth above. Jadoo Defendants further object to this Interrogatory as unduly burdensome, expensive, and oppressive to the extent it seeks information that is currently in DISH's possession, custody or control, or can be obtained from some other source that is more convenient, less burdensome, or less expensive than Jadoo Defendants. Jadoo Defendants further object to this Interrogatory to the extent that it seeks information concerning Jadoo Defendants that is not relevant to any party's claims or defenses, and not proportional to the needs of the case. Subject to and without waiving any of their objections, Jadoo Defendants respond as follows: Jadoo Defendants do not control whether users of JadooTV set top boxes and the eMedia application use their JadooTV set top boxes to access allegedly copyrighted content comprising SASP or the Protected Channels. Jadoo Defendants also do not control or have knowledge of what content appears on third party websites such as GitHub, where XML files compatible with JadooTV's user interface allegedly can be found.. Jadoo Defendants do not have information regarding the dates on which the Protected Channels or any associated programs or content were allegedly transmitted or viewed on any Jadoo4, Jadoo5, and Jadoo5S set top box. As discovery has just commenced,

Jadoo Defendants reserve the right to amend, modify, or supplement their response to this Interrogatory.

### Request No. 24

*DISH's Request.*
Documents sufficient to identify the dates on which each Protected Channel was transmitted or otherwise made available for viewing on the Jadoo Service or Jadoo Box.

*Defendants' Supplemental Response.*
JadooTV incorporates by reference each of the General Objections set forth above. Subject to and without waiving any of his objections, JadooTV responds that there are no documents in his possession, custody, or control that responsive to this request.

### Request No. 116

*DISH's Request.*
Documents sufficient to identify the relative popularity among JadooTV's users of the Protected Channels.

*Defendants' Response.*
Jadoo Defendants incorporate by reference each of the General Objections set forth above. Jadoo Defendants object to the request on the grounds that it seeks documents beyond the scope of permissible discovery, not relevant to any party's claims or defenses, and not proportional to the needs of the case. Jadoo Defendants further object to this request as unclear, vague and ambiguous with respect to the term "relative popularity." Jadoo Defendants also object that the request is redundant, overly broad, and burdensome. Subject to and without waiving any objections, Jadoo Defendants respond that any documents that may be relevant to this Request have already been produced.

### Request No. 117

*DISH's Request.*
Documents sufficient to identify the relative popularity among JadooTV's users of channels not including the Protected Channels.

*Defendants' Response.*
Jadoo Defendants incorporate by reference each of the General Objections set forth above. Jadoo Defendants object to the request on the grounds that it seeks documents beyond the scope of permissible discovery, not relevant to any party's claims or defenses, and not proportional to the needs of the case. Jadoo Defendants further object to this request as unclear, vague, and ambiguous with respect to the term "relative popularity." Jadoo Defendants also object that the request is redundant, overly broad, and burdensome. Subject to and without waiving any objections, Jadoo Defendants respond that any documents that may be relevant to this Request have already been produced.

### Request No. 118

*DISH's Request.*
All documents concerning JadooTV's ability or practice of monitoring, identifying, or otherwise determining the particular channels, programs, or VOD JadooTV's United States users were watching or tuning into on a daily, weekly, or monthly basis.

*Defendants' Response.*
Jadoo Defendants incorporate by reference each of the General Objections set forth above. Jadoo Defendants object to the request on the grounds that it seeks documents beyond the scope of permissible discovery, not relevant to any party's claims or defenses, and not proportional to the needs of the case. Jadoo Defendants also object that the request is redundant, overly broad, and burdensome. Subject to and without waiving any objections, Jadoo Defendants respond that any documents that may be relevant to this Request have already been produced.

### Request No. 119

*DISH's Request.*
Documents sufficient to identify the total number or percentage of JadooTV's United States users who accessed the eMedia menu on a daily, weekly, or monthly basis.

*Defendants' Response.*
Jadoo Defendants incorporate by reference each of the General Objections set forth above. Jadoo Defendants object to the request on the grounds that it seeks documents beyond the scope of permissible discovery, not relevant to any party's claims or defenses, and not proportional to the needs of the case. Jadoo Defendants also object that the request is redundant, overly broad, and burdensome. Subject to and without waiving any objections, Jadoo Defendants respond that any documents that may be relevant to this Request have already been produced.

### Request No. 120

*DISH's Request.*
Documents sufficient to identify the total number or percentage of JadooTV's United States users who accessed SASP on a daily, weekly, or monthly basis.

*Defendants' Response.*
Jadoo Defendants incorporate by reference each of the General Objections set forth above. Jadoo Defendants object to the request on the grounds that it seeks documents beyond the scope of permissible discovery, not relevant to any party's claims or defenses, and not proportional to the needs of the case. Jadoo Defendants also object that the request is redundant, overly broad, and burdensome.

//
//

**Request No. 121**

*DISH's Request.*
Documents sufficient to identify the total number or percentage of JadooTV's United States users who accessed the Protected Channels on a daily, weekly, or monthly basis.

*Defendants' Response.*
Jadoo Defendants incorporate by reference each of the General Objections set forth above. Jadoo Defendants object to the request on the grounds that it seeks documents beyond the scope of permissible discovery, not relevant to any party's claims or defenses, and not proportional to the needs of the case. Jadoo Defendants also object that the request is redundant, overly broad, and burdensome.

********

Defendants' responses are confusing, contradictory, and inadequate. In response to Interrogatory No. 12 and Request No. 24, which sought information and documents regarding "dates" on which the Protected Channels were transmitted through the Jadoo service, Defendants responded, "Jadoo Defendants do not have information regarding the dates on which the Protected Channels or any associated programs or content were allegedly transmitted or viewed…" and that "there are no documents…responsive to this request." However, in response to Request Nos. 116–21, which sought information regarding the popularity among Jadoo users of the Protected Channels, eMedia menu, and SASP, relative to other channel offerings whose copyrights are not implicated in this case, Defendants either put forth an inappropriate boilerplate objection or responded that "any documents that may be relevant…have already been produced." These responses are not consistent.

The underlying question of these requests is whether Defendants currently have, or previously had, the ability to know what channel offerings its users were tuning into during the relevant time period. Defendants' responses to Interrogatory No. 12 and Request No. 24 suggest that Defendants did not, while Defendants' responses to Requests Nos. 116–21 seem to suggest they did. The answer to this question is central to the issue of Defendants' liability for inducement of copyright infringement, of which one element turns, at least to some degree, on the "high-volume use, which the record shows is infringing." *See Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1035 (9th Cir. 2013). If Defendants had the ability to know the relative popularity of their channel offerings based on the frequency and amount of time their users were tuning to the Protected Channels, Defendants must so state.

## VII. Indemnification Agreements

**Interrogatory No. 16**

*DISH's Request.*
Identify each communication between JadooTV and any person concerning indemnification related to, or payment of attorneys' fees related to, the claims in DISH's complaint, stating the substance of such communication as verbatim as possible.

*Defendants' Amended Response.*
Subject to and without waiving any of their objections, Jadoo Defendants respond as follows: DISH subpoenaed over fifty resellers of JadooTV's set top boxes. These resellers are entirely or primarily small, family-owned companies without many resources. Hiring attorneys to respond to DISH's overly broad and indiscriminate subpoenas would be a relatively large and burdensome expense for these resellers. Accordingly, JadooTV offered to pay for a law firm, Byron Raphael, to represent the resellers in responding to DISH's subpoenas. Two JadooTV employees, Ahsan Salahuddin and Anwar Farooqi, visited many of the subpoenaed resellers to explain JadooTV's offer to pay for an attorney to represent the resellers. Pursuant to Federal Rule of Civil Procedure 33(d), Jadoo Defendants will produce relevant and responsive non-privileged documents dated between November 20, 2018 (the date of the filing of this litigation) and the present, to the extent a reasonable search and diligent inquiry in proportion to the needs of the case locates any documents, constituting communications concerning indemnification or payment of attorneys' fees related to DISH's claims in this action.

## Request No. 86

*DISH's Request.*
All documents concerning communications between JadooTV and any person about indemnification related to, or payment of attorneys' fees related to, the claims in DISH's complaint.

*Defendants' Response.*
Jadoo Defendants incorporate by reference each of the General Objections set forth above. Jadoo Defendants object to the request on the grounds that it seeks documents beyond the scope of permissible discovery, not relevant to any party's claims or defenses, and not proportional to the needs of the case. For example, communications between Jadoo Defendants' counsel and Jadoo Defendants regarding payment of attorneys' fees is irrelevant (in addition to being privileged). Jadoo Defendants further object to the request to the extent it seeks confidential business information, trade secrets, or competitively or technically sensitive information. Jadoo Defendants further object to the term "the claims in DISH's complaint" as vague and ambiguous. Jadoo Defendants further object to the request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the accountant client privilege, common-interest privilege, or similar privileges or protections.

Subject to and without waiving any of their objections, Jadoo Defendants respond as follows: Jadoo Defendants will meet and confer with DISH to address how this Request may be limited and/or clarified to (i) seek documents that are relevant to the claims or defenses in this litigation and proportional to the needs of this case; and (ii) avoid placing an undue burden on Jadoo Defendants.

********

Defendants must supplement their response to Interrogatory No. 16 to identify and clearly describe their indemnification and attorney fees agreements with their resellers. Alternatively, Defendants may produce documents sufficient to identify and clearly describe these agreements and then supplement their response to Interrogatory No. 16 to clearly identify the documents produced as their answer to this question. *See Palladini*, 2008 WL 1774090, at *2.

## VIII. <u>Instructions to Technical and Customer Support Agents</u>

### Request No. 82

*DISH's Request.*
All documents concerning training and instructions provided to Jadoo technical support and customer service agents.

*Defendants' Response.*
Jadoo Defendants incorporate by reference each of the General Objections set forth above. Jadoo Defendants object to the request on the grounds that it seeks documents beyond the scope of permissible discovery, not relevant to any party's claims or defenses, and not proportional to the needs of the case. For example, the request seeks all training materials, regardless of any relevance to the litigation. Jadoo Defendants further object to the request to the extent it seeks confidential business information, trade secrets, or competitively or technically sensitive information. Jadoo Defendants further object to the request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the accountant-client privilege, common-interest privilege, or similar privileges or protections.

Subject to and without waiving any of their objections, Jadoo Defendants respond as follows: Jadoo Defendants will meet and confer with DISH to address how this Request may be limited and/or clarified to (i) seek documents that are relevant to the claims or defenses in this litigation and proportional to the needs of this case; and (ii) avoid placing an undue burden on Jadoo Defendants.

\*\*\*\*\*\*
Request No. 82 seeks materials regarding Defendants' instruction and training of Jadoo technical support and customer service agents. These materials are central to the question of whether Defendants instructed or trained their agents to promote the Jadoo service as a tool of infringement, and thus are liable for inducement of copyright infringement. *See Fung*, 710 F.3d at 1034–35 (stating that defendant's "clear expression or other affirmative steps taken to foster infringement" can be shown through, among other ways, "responding affirmatively to [user] requests for help in locating and playing copyrighted materials" and through "explicit internal communications" to that effect). Defendants must produce all instruction and training materials and all related internal communications. Once these materials have been produced, Defendants must then supplement their response to confirm that all such responsive materials have been produced.

//

Pursuant to Judge Beeler's Standing Order, we request a telephonic meet and confer within the next 10 days to discuss Defendants' positon regarding supplementing their responses to the above requests and interrogatories. I look forward to speaking with you.

Nothing in this letter is intended or shall be construed to constitute an express or implied admission or waiver of any rights or remedies that DISH may possess in connection with this matter, all of which are hereby expressly reserved.

Sincerely,

**HAGAN NOLL & BOYLE LLC**

Stephen M. Ferguson

# EXHIBIT 6



Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Tel: 713.343.0478
Fax: 713.758.0146
www.hnbllc.com

February 2, 2021

**VIA Email**

Mark Punzalan
Shinhong Byun
Chan Punzalan LLP
22 Battery Street, Suite 401
San Francisco, CA 94111
mark@chanpunzalan.com
shinhong@chanpunzalan.com

Re:     *DISH Network L.L.C. v. Jadoo TV, Inc. et al.,* No. 3:20-cv-01891-CRB (LB)
        (N.D. Cal.)

Dear Mr. Punzalan:

We have made several requests to have a telephonic meet and confer with you as lead counsel to discuss open issues and when we appeared for the call you have not attended. Although Ms. Byun has appeared in your place, she is not lead counsel and the issues remain unresolved. This is our final request that you, as lead counsel, participate in a meet and confer call with us within the next ten days pursuant to Judge Beeler's standing order and procedures. For your convenience, we set forth the timeline of our most recent communications and the requests at issue below:

On October 15, 2020, we sent you a letter identifying deficiencies in Jadoo TV, Inc. and Sajid Sohail's (collectively, "Jadoo") written discovery responses and requested that you supplement Jadoo's responses. We sent a separate letter on October 16, 2020, addressing issues with Jadoo's affirmative defenses and requested that Jadoo remove the inapplicable defenses and replead the defenses it intends to keep so that they conform to the prevailing pleading standard. We did not receive a response from you.

On October 27, 2020, we requested that you provide dates and times for a meet and confer on these issues concerning Jadoo's discovery responses and affirmative defenses. And on October 28, 2020, we had a meet and confer with Ms. Byun concerning discovery issues and affirmative defenses, but you did not attend. Ms. Byun informed us that Jadoo would soon provide an update on its outstanding document production and a proposal for amending and supplementing Jadoo's affirmative defenses. We did not receive your proposal regarding affirmative defenses or any update on document production.

On December 8, 2020, we requested that you provide dates and times for a meet and confer within the next ten days on these issues concerning Jadoo's discovery responses and affirmative defenses.

On December 17, 2020, we had another meet and confer with Ms. Byun concerning Jadoo's discovery responses and affirmative defenses, but again you did not attend. Ms. Byun informed us that you would update us in two weeks as to your proposal for addressing Jadoo's affirmative defenses and supplementing Jadoo's written discovery responses. We did not receive the proposal or supplementation.

On January 7, 2021, we emailed you stating we had not received any update regarding Jadoo's written discovery responses, affirmative defenses, and outstanding document production, and requested that you update us in accordance with our prior discussions. You did not respond.

On January 20, 2021, we called and emailed you to again request a meet and confer within ten days pursuant to Judge Beeler's Standing Order and asked you to provide a few days and times you were available to conduct the meet and confer. And on January 21, 2021, Ms. Byun emailed stating that Jadoo expected to provide its response to these outstanding matters by the week ending on January 30th. However, you did not provide us with any days and times that you were available to meet and confer. You did not provide a proposal, did not supplement your discovery responses, and have not followed up on these issues.

Accordingly, we again request pursuant to Judge Beeler's Standing Order that you, as Jadoo's lead counsel, provide a day and time within the next ten days that you are available to meet and confer on these outstanding matters. If we do not hear from you by tomorrow, February 3, 2021, we will file a letter brief with Judge Beeler requesting an order compelling you to meet and confer similar to the order issued by Judge Beeler on October 2, 2020 (ECF 209).

Sincerely,

**HAGAN NOLL & BOYLE LLC**

Stephen M. Ferguson

# EXHIBIT 7



Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Tel: 713.343.0478
Fax: 713.758.0146
www.hnbllc.com

March 25, 2022

**VIA Email**

Shinhong Byun
Chan Punzalan LLP
22 Battery Street, Suite 401
San Francisco, CA 94111
shinhong@chanpunzalan.com

   Re: *DISH Network L.L.C. v. Jadoo TV, Inc. et al.,* Case No. 3:20-cv-01891-CRB (LB)
   (N.D. Cal.)

Ms. Byun:

   I write in follow up to our previous discussions on the matter of the JadooTV Defendants' assertion of "advice of counsel" as a defense to DISH's claims of willful copyright infringement. As we've mentioned before, to the extent Defendants wish to assert advice of counsel, that assertion waives the attorney-client and work-product privileges, as concerns advice and materials relied on in forming the belief that their actions were not infringing. *See, e.g., Mushroom Assocs. v. Monterey Mushrooms, Inc.*, No. C–91–1092 THE (PJH), 1992 WL 442892, at *3–5 (N.D. Cal. May 19, 1992) (granting plaintiff's motion to compel defendants to produce documents and other communications previously withheld under the attorney-client or work-product privileges where defendants asserted advice of counsel as a defense to willful infringement).

   Advice of counsel is "[g]enerally considered to be an affirmative defense" that must be timely pleaded. *Ashby v. Farmers Ins. Co. of Or.*, 2006 WL6036462, at *4 (D. Or. Feb. 28, 2006). Failure to timely assert advice of counsel waives the defense. *Id*.

   It is still unclear, however, whether Defendants wish to assert the defense of advice of counsel. On one hand, Defendants objected based on the attorney-client and work-product privileges to written discovery requests seeking information and materials they relied on in forming the belief that their actions were not infringing. (*See* Defs. Resps. to Interrogs. Nos. 18-19 & Reqs. for Prod. 30 & 114.) Such objections suggest Defendants don't wish to assert advice of counsel because, as mentioned above, the defense waives those privileges. On the other hand, during the Jadoo 30(b)(6) deposition, Mr. Sohail was asked whether JadooTV "believe[d] it was okay to distribute any content from Dailymotion," and he testified, "Yeah. We – we had it come from attorneys, advice…." (*See* 30(b)(6) Depo. at 69:15–19.) Such testimony suggests Defendants wish to argue they formed the belief their actions were not infringing based, at least in part, on advice of counsel, thus negating the previously asserted privileges.

After Mr. Sohail testified that the JadooTV Defendants formed the belief that their actions were not infringing based on advice of counsel, you objected that the substance of such communications was "privileged" and may not be disclosed. (*Id.* at 69:20–23.) Defendants may not assert advice of counsel as a defense and also continue to shield such attorney advice from discovery. *See Mushroom Assocs.* 1992 WL 442892, at *3–5.

If Defendants wish to assert advice of counsel, Defendants must produce and be prepared to testify in depositions or in writing about the substance of all documents created by, or disseminated to, Defendants' in-house and/or outside counsel and all attorney communications Defendants relied on in forming the belief their actions were not infringing. In the event Defendants wish to assert advice of counsel, the documents Defendants are required to produce and testify about include but are not limited to the documents listed on Defendants' November 2, 2020 privilege log. It should also be noted that the failure to identify materials on a privilege log that, while privileged, are otherwise responsive to discovery requests may also waive the privilege, and as such DISH reserves the right to compel the production of otherwise privileged materials that Jadoo failed to identify on its privilege log.

In sum, Defendants are obliged to clarify their position on the advice of counsel defense, such as by requesting leave to amend their answer or confirming their position in writing. If Defendants will not clarify their position or otherwise continue to assert the defense while also shielding attorney advice from discovery, DISH will have no choice but to file a motion to compel. Please clarify Defendants' position on advice of counsel by April 1, 2022.

Sincerely,

**HAGAN NOLL & BOYLE LLC**

Stephen M. Ferguson

# EXHIBIT 8



Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Tel: 713.343.0478
Fax: 713.758.0146
www.hnbllc.com

July 28, 2022

**<u>VIA Email</u>**

Nicole Daryanani
Chan Punzalan LLP
22 Battery Street, Suite 401
San Francisco, CA 94111
Nicole@chanpunzalan.com

      Re: *DISH Network L.L.C. v. Jadoo TV, Inc. et al.,* Case No. 3:20-cv-01891-CRB (LB)
      (N.D. Cal.)

Ms. Daryanani:

      I write to address a number of outstanding discovery issues described below. According to Judge Beeler's Standing order § III(4), any party wishing to resolve a discovery dispute "[m]ay demand…a meeting with ten days' notice." We respectfully request a telephone meet and confer with Defendants' lead counsel.

      As an initial matter, Defendants have been sanctioned twice for failing to produce documents, but they still have not produced documents as set forth below. Mr. Sohail paid $12,046.12 in expenses for his refusal to produce documents. (Dkt. 118 at 13:1-3.) Jadoo TV still owes expenses from its refusal to produce documents. (Dkt. 145 at 7.) We propose that Jadoo TV pay $12,000 by August 5, 2022 to resolve this outstanding issue without a hearing.

      <u>First</u>, Defendants' responses to DISH's interrogatories and requests for production are inadequate.

      Defendants improperly responded to Interrogatory Nos. 4-6 by referring DISH to Defendants' document production, but without specifically identifying the documents. *See Palladini v. City of Milpitas*, 2008 WL 1774090, at *2 (N.D. Cal. Apr.16, 2008) ("If [responding party] prefers to produce documents as his 'answer' to interrogatories, then he must specifically identify such documents and clearly state that they contain all of the [responding party's] relevant and responsive information on that topic."). Defendants must supplement their responses to answer these interrogatories or specifically identify the documents that contain all of the relevant and responsive information.

      Defendants' responses to DISH's requests for production likewise fail to reasonably identify the responsive documents produced. While parties are generally not required to identify

responsive documents by Bates number, this is only true "[a]s long as the response is adequate to permit the discover[ing] party to identify and locate which documents are responsive to which requests." *Walker v. N. Las Vegas Police Dep't*, 2016 WL 8732300, at *4 (D. Nev. May 13, 2016). Defendants' production is voluminous, consisting of thousands of pages. Yet for many of the requests for which Defendants say responsive documents were produced, they either say that "JadooTV has produced all documents in response to this request"[1] or that "any documents that may be relevant to this Request have already been produced."[2] These words do nothing to identify the specific request with which any of the thousands of pages of production correspond. We reviewed these documents and many are irrelevant and do not appear to be responsive to a number of requests, and it appears that Defendants did not produce documents for a number of requests. As a result, Defendants' obligation "to identify and locate which documents are responsive to which requests" is unfairly shifted to DISH. Defendants must identify which documents correspond with Requests for Production Nos. 6, 15, 18, 21, 32, 34-36, 46, 48, 70, 79, 81, 115-119, 137, and 140 because it is unclear what documents Defendants produced that they allege are responsive to these requests.

Second, Defendants continue to assert the defense of advice of counsel while at the same time shielding from discovery the very communications and documents constituting the advice.[3] As we've said previously, this is improper. If Defendants wish to assert advice of counsel, they must produce and be prepared to testify in depositions and in writing about the substance of all documents created by, or disseminated to, Defendants' in-house and/or outside counsel and all attorney communications Defendants relied on in allegedly forming the belief their actions were not infringing. *Mushroom Assocs. v. Monterey Mushrooms, Inc.*, 1992 WL 442892, at *3–5 (N.D. Cal. May 19, 1992). In the event Defendants wish to continue to assert advice of counsel, the documents Defendants must produce and testify about include but are not limited to the documents listed on Defendants' privilege log, and documents sent to and from Defendants' former counsel, Darin Snyder, concerning DISH's notices of infringement and Defendants' responses.

Third, Defendants' responses and document production with regard to set-top box, app, and ad sales; revenues; costs; subscribers; and payments to the Sohail family and family-connected businesses are incomplete.[4] This information is relevant to prepare a damages model. The Copyright Act permits statutory damages or actual damages plus the defendants' profits as remedies for infringement, among other things. 17 U.S.C. § 504. The plaintiff's lost revenue and defendant's profits are two factors courts may use in assessing the proper amount of statutory damages. *Controversy Music v. Shiferaw*, 2003 WL 22048519, at *2 (N.D. Cal. July 7, 2003).

---

[1] *See* Defs.' Resps. to Req. for Prod. Nos. 1-3, 6-7, 14-15, 17-19, 21-23, 32, 34-41, 44-46, 48, 50-53, 55, 57-65, 68-70, 72, 74-79, 81, 83, 85-86, 89-102, 105, and 111-112.

[2] *See* Defs.' Resps. to Req. for Prod. Nos. 115-119, 128-131, and 137.

[3] *Compare* Defs.' Resps. to Interrog. Nos. 18-19 & Req. for Prod. Nos. 30 & 114 (asserting attorney-client and work-product privileges without answering the questions) *with* the 30(b)(6) Depo. of Jadoo TV at 69:15–19 (stating that "Yeah. We – we had it come from attorneys, advice…" when asked whether Jadoo TV "believe[d] it was okay to distribute any content from Dailymotion.").

[4] *See* Defs.' Resps. to Interrog. Nos. 4-5; Req. for Prod. Nos. 128-140.

Defendants must provide the detailed information about their revenues and profits from 2015 to the present DISH has requested. To the extent any of this information has already been produced, Defendants must identify which documents correspond with Interrogatory Nos. 4-5 and Requests for Production Nos. 128-140, and update the information to cover the present time. *See Walker*, 2016 WL 8732300, at *4.

Fourth, Defendants failed to provide any discovery regarding their customers' viewership of and the relative popularity of the Protected Channels. DISH asked Defendants to identify the dates the Protected Channels were made available or viewed on the Jadoo service in Interrogatory No. 12; to produce documents as to these dates in Request for Production No. 24; and to produce documents concerning the "relative popularity" of the Protected Channels, eMedia, and SASP in Request for Production Nos. 116-121. This information is relevant to, among other things, whether there was a "high-volume use" of the Jadoo service to view the Protected Channels, which is one factor used to determine whether the defendant intended that their service be used to infringe copyrights, for purposes of an inducement claim. *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1035 (9th Cir. 2013).

Defendants' responses to these discovery requests are contradictory. To Interrogatory No. 12 and Request for Production No. 24 Defendants responded that they "do not have information" as to the dates the channels were transmitted; but for Request for Production Nos. 116-121 Defendants either put forth a boilerplate objection or responded that "any documents that may be relevant…have already been produced." Defendants' document production also references an application Defendants failed to disclose in Interrogatory No. 12 called "Ferrari," which Defendants apparently used to "collect playback logs,"[5] to view "reports on number of impressions/views (on both Live TV and VOD content),"[6] and "to know the channels by their viewership."[7] Moreover, Mr. Aftab confirmed in his deposition that Defendants provided him with the very information DISH has requested, testifying that Defendants provided "data" from their "back panel" about their customers' "content consumption behavior." (Aftab Depo. 283:8-9, 17-19.) Defendants must produce documents about and explain in detail in response to Interrogatory No. 12 what Ferrari is, the data it shows, and provide reports from Ferrari regarding viewership of the Protected Channels. Defendants must also identify the documents that have already been produced that they allege are responsive to Request for Production Nos. 116-121. *See Walker*, 2016 WL 8732300, at *4.

Fifth, Defendants still have not produced documents identified during the January 27, 2022, Jadoo TV 30(b)(6) deposition and that they agreed to produce, including (1) a CloudStream bank statement that allegedly shows the repayment of a $200,000 loan that Mr. Sohail received from Jadoo TV (Jadoo TV 30(b)(6) Depo. 100:7-13); (2) a written agreement between Jadoo TV and Altair concerning the development of software for Jadoo TV (*Id.* 120:15-121:3); (3) a written agreement between Jadoo TV and IDC about providing VOD and live streaming monitoring services (*Id.* Depo. 126:19-127:8), and (4) Jadoo TV's programming license agreements or other

---

[5] *See* JAD012889.
[6] *See* JAD000347.
[7] *See* JAD012770 - JAD012771.

documentation evidencing Jadoo TV's distribution rights (*Id*. 104:4, 14-17). Defendants must produce these documents that should have already been produced in response to Requests for Production Nos. 5, 17, 19, 23, 26-28, 73, 75, 85, 104, 131, 141, and 144.

Sixth, Defendants continue to refuse to make Mr. and Mrs. Sohail available for depositions. As we explained in our May 9, 2022 letter, Mr. Sohail can be deposed separately as Jadoo TV's corporate representative and as an individual. *Wesley v. Gates,* 2009 WL 1955997, at *1 (N.D. Cal. July 2, 2009). And the marital communications privilege doesn't apply here because Mrs. Sohail is not being asked to testify as to intimate conversations between her and her husband, but rather as a shareholder, director, and chief operating officer of Jadoo TV. *Perez v. Sauson,* 2016 WL 10587197, at *3 (E.D. Wash. Sept. 15, 2016).

Seventh, Defendants responded to a number of Requests for Production stating they have no documents, but discovery has shown many of these responses are incorrect.

Request for Production No. 20 seeks "All documents, including diagrams, charts, maps, and schematics, concerning the process by which SASP is added to the Jadoo Box at any time." Defendants admitted that regional sales managers sold Jadoo boxes preloaded with SASP and assisted Jadoo retailers and users in adding SASP through YouTube videos. (Jadoo TV 30(b)(6) Depo. 177:11-178:21; Farooqi Depo. at 58:17-60:16.) Defendants also admitted that customer service representatives assisted Jadoo users in adding SASP through YouTube videos. (Jadoo TV 30(b)(6) Depo. 229:6-10.)

Requests for Production Nos. 24-28 seek documents regarding the dates the Protected Channels were transmitted, rights, and payments for the Protected Channels. Mr. Aftab testified that Jadoo licensed and transmitted most of the Protected Channels outside the United States and there were discussions about licensing them in the United States. (Aftab Depo. 39:13-40:4; 67:13-69:17; 306:1-340:2; 360:24-376:5.)

Request for Production No. 80 seeks "All documents concerning the provision of information or instructions to customers, potential customers, and resellers about how to add channels to the Jadoo Service or Jadoo Box." Jadoo produced customer service call logs and a customer service training manual that show Jadoo's customer service representatives assisted customers to add SASP through YouTube videos.

Request for Production Nos. 132-134 seek bank records of Pearl Technologies International Limited, Altair Technologies Private Limited, and Pearl Media Group. Mr. Sohail owns and manages these companies and therefore the bank records are in his possession, custody, or control. (Jadoo TV 30(b)(6) Depo. 91:15-92:11; 93:6-94:16; 95:21-23; 110:17-111:19; 117:6-118:2.; 118:9-18; 119:4-18.)

Defendants must supplement their responses to Requests for Production Nos. 20, 24-28, 80, and 132-134, to state they will produce these responsive documents.

Eighth, there are several requests that Defendants improperly objected to and did not agree to produce relevant and responsive documents.

Requests for Production Nos. 106-107 and 112 seek documents concerning Peter May, pmay360, pmay360@gmail.com, rayred@gmail.com, ali85one, ali85one@gmail.com, and documents sufficient to identify all email addresses of Mr. Shah. Defendants must supplement their responses to these requests to state they will produce all responsive documents and confirm whether Defendants ever asked Mr. Shah to preserve his personal email accounts to review for responsive documents. If these documents were deleted then Defendants must so explain.

Requests for Production Nos. 120-121 seek "Documents sufficient to identify the total number or percentage of Jadoo TV's United States users who accessed SASP on a daily, weekly, or monthly basis" and "Documents sufficient to identify the total number or percentage of Jadoo TV's United States users who accessed the Protected Channels on a daily, weekly, or monthly basis."

Request for Production No. 122 seeks "All documents relating to the arrest, prosecution, or investigation of the four individuals in India described in paragraph 54 of DISH's Complaint" concerning the Hyderabad raid on Jadoo employees for piracy of content.

Defendants must supplement their responses to these requests to withdraw their objections and produce all responsive documents.

Ninth, Defendants did not provide responsive information for a number of interrogatories. For Interrogatory No. 1 (identities of responsible individuals) Defendants did not identify persons responsible for "manufacturing," "marketing," or "customer support." Nor did Defendants provide responses to Interrogatory No. 7 (verbal communications concerning the Protected Channels); No. 11 (Defendants' servers); or No. 14 (Defendants' responses to infringement notices). Defendants must supplement their responses to these interrogatories.

Tenth, Defendants did not produce any emails from Mr. Shah's haseeb.shah@jadootv.com email account.

DISH filed its Complaint on November 20, 2018, alleging Mr. Shah was the Jadoo employee or agent transmitting the Protected Channels and Protected Channel VOD to users of the Jadoo service. Jadoo TV was served on November 28, 2018. The parties held a Rule 26(f) conference on February 21, 2019 and filed a Rule 26(f) Report on February 28, 2019, in which Defendants identified Mr. Shah as a witness. (Dkt. 41 at 2, 8.) Mr. Shah reported to Mr. Sohail weekly as an employee or agent of Jadoo TV until June 19, 2019 when he was "temporarily suspended" until this lawsuit could be resolved. (Aftab Depo. 44:11-46:4; 109:12-110:20; 222:4-14; 224:13-225:4; 235:9-237:24; Jadoo TV 30(b)(6) Depo. 130:21-131:4; 131:19-23; 132:21-133:1; 151:14-24; 153:25-155:19.)

Mr. Shah used the haseeb.shah@jadootv.com email account. (Jadoo TV 30(b)(6) Depo. 131:8-10.) Documents produced from other Jadoo TV email accounts show that Mr. Shah sent and received relevant and responsive documents from his haseeb.shah@jadootv.com account after Jadoo TV was served with DISH's Complaint, after the parties Rule 26(f) conference, and after the parties filed their Rule 26(f) report, including:

- JAD000467 – Email to Mr. Shah dated January 30, 2019 produced from Mr. Sohail's email account responsive to Request for Production No. 12;
- JAD000467-JAD000468 – Email to Mr. Shah dated February 6, 2019 produced from Mr. Sohail's email account responsive to Request for Production Nos. 12, 29;
- JAD000468 – Email copying Mr. Shah dated February 25, 2019 produced from Mr. Sohail's email account responsive to Request for Production Nos. 12, 13;
- JAD000469 – Email copying Mr. Shah dated February 25, 2019 produced from Mr. Sohail's email account responsive to Request for Production Nos. 12, 29;
- JAD000470-JAD000474 – Email to Mr. Shah dated February 7, 2019 produced from Mr. Sohail's email account responsive to Request for Production Nos. 12, 29.)
- JAD000474-JAD000477 – Email to Mr. Shah dated February 12, 2019 produced from Mr. Sohail's email account responsive to Request for Production Nos. 12, 29.)
- JAD009236 – Email to Mr. Shah dated May 1, 2019 produced from the nocoperations@jadootv.com account responsive to Request for Production No. 17
- JAD009270 – Email to Mr. Shah dated March 31, 2019 produced from the nocoperations@jadootv.com account responsive to Request for Production No. 17
- JAD009293 – Email copying Mr. Shah dated June 5, 2019 produced from the nocoperations@jadootv.com account responsive to Request for Production No. 17
- JAD009328 – Email to Mr. Shah dated May 9, 2019 produced from the nocoperations@jadootv.com account responsive to Request for Production No. 17
- JAD009354 – Email copying Mr. Shah dated December 27, 2018 produced from the nocoperations@jadootv.com account responsive to Request for Production Nos. 19, 37, 41, 66, 72-75;
- JAD009355-JAD009356 – Email copying Mr. Shah dated December 28, 2018 produced from the nocoperations@jadootv.com account responsive to Request for Production Nos. 19, 37, 41, 66, 72-75;
- JAD009547 – Email from Mr. Shah dated December 17, 2018 produced from Mr. Malik's email account responsive to Request for Production Nos. 23, 37, 41, 84
- JAD016198 – Email copying Mr. Shah dated March 3, 2019 produced from the roya@jadootv.com account responsive to Request for Production Nos. 23, 83-84; and
- JAD016198-JAD015199 – Emails copying Mr. Shah dated March 12, 2019 produced from the roya@jadootv.com account responsive to DISH's Request for Production Nos. 23, 83-84.

During prior meet and confers, Ms. Byun stated, "Haseeb Shah's account did not have many emails because they were being forwarded to the NOCoperations email account." Although Jadoo produced a couple hundred pages of emails from the NOCoperations email account, no emails dated prior to the filing of the lawsuit were produced, most were irrelevant ads received by the account, and many were from the time period after Mr. Shah's suspension on June 19, 2019. Even if Mr. Shah's emails were being forwarded to the NOCoperations email account, they should be in the NOCoperations email account and they should still be in Mr. Shah's haseeb.shah@jadootv.com email account unless Jadoo failed to timely preserve documents in this account or they were lost or deleted. Accordingly, it appears that Defendants did not preserve or obtain access to Mr. Shah's email account for emails prior to his suspension. (*See* Aftab Depo.

51:19-22 (Mr. Aftab, who was responsible for collecting documents for this case, did not ever request access to Mr. Shah's email account, whether through Mr. Shah or Jadoo).)

Defendants must produce all documents sent and received from the haseeb.shah@jadootv.com account that are responsive to DISH's requests for production. Defendants must fully explain any failure to preserve and any loss or deletion of emails from this account so DISH may seek the appropriate remedy with the Court.

<u>Finally</u>, these issues highlight the need for Defendants to comply with the Joint Rule 26(f) Report where Defendants agreed to produce ESI with metadata and load files. (Dkt. 41 at 9:22-10:4.) Defendants must confirm they will produce the ESI in the format they agreed, including the 30 metadata fields and the load files.

Please provide a time that Defendants' lead counsel, Mr. Punzalan, is available to meet and confer on these issues during the week of August 1st through August 5th.

Sincerely,

**HAGAN NOLL & BOYLE LLC**

Stephen M. Ferguson

CC:    Shinhong Byun
       Mark Punzalan

# EXHIBIT 9

# CHAN + PUNZALAN

Nicole Daryanani
Email: nicole@chanpunzalan.com
Direct:650.250.1117

August 19, 2022

**<u>VIA EMAIL ONLY</u>**
Stephen M. Ferguson
stephen.ferguson@hnbllc.com
Hagan Noll & Boyle, LLC
820 Gessner, Suite 940
Houston, Texas 77024

**Re:** DISH Network L.L.C. v. Jadoo TV, Inc. et al., Case No. 3:20-cv-01891-CRB (LB) (N.D. Cal.)

Mr. Ferguson:

This letter serves as JadooTV's response to DISH's July 28, 2022, letter ("July 28 Letter") containing a myriad of alleged discovery issues dating back to 2018. As an initial matter, DISH has been aware of most of these "issues" for years now. DISH cannot sit on its hands and then suddenly belabor JadooTV, forcing it, and its counsel to analyze four years of discovery at its command. Indeed, it is apparent that DISH is not actually concerned with resolving the alleged issues in good faith. Rather, the July 28 Letter signifies gamesmanship and is merely an attempt to increase JadooTV's fees unnecessarily, a recurring theme throughout this litigation.

Further, your request for a call with lead counsel ignores Judge Beeler's Standing Order requiring parties to confer initially by email, letter, or telephone to try to narrow the disputes. Only *after* those alternative means are exhausted, must lead counsel meet and confer by telephone. (*See* Judge Beeler's Standing Order p. 3.) Accordingly, if the parties are unable to come to an agreement on the issues below by other means, only then is JadooTV's lead counsel, Mark Punzalan, required to make himself available to discuss over the phone.

It should also be noted that Shinhong Byun, the attorney with whom you primarily discussed these discovery issues, recently left our firm. Thus, as you'll see below, we are still investigating some issues outlined in the July 28 Letter, particularly since DISH appears to be rehashing all discovery issues from the past four years. Nevertheless, after receiving the July 28 Letter, we reviewed JadooTV's previous discovery responses and records. While JadooTV reserves all rights to supplement upon further investigation, we believe that we can address most of the concerns raised in the July 28 Letter, while the other concerns you raise lack merit and require no action on our part.

1.      **DISH's Request that JadooTV Pay DISH $12,000.**

Your letter proposes that JadooTV pay DISH $12,000 in connection with DISH's Motion to Compel Production of Documents without justification. JadooTV will not pay DISH $12,000, as no Court order compels this payment.

2.      **Interrogatory Nos. 4-6**

The July 28 Letter requests that JadooTV supplement its responses to Interrogatory Nos. 4-6 to identify which documents are responsive to these interrogatories.

JadooTV agrees to supplement its responses to these interrogatories.

3.      **Requests for Production Nos. 6, 15, 18, 21, 32, 34-36, 46, 48, 70, 79, 81, 115-119, 137, and 140**

The July 28 Letter requests that JadooTV identify, by Bates numbers, which documents correspond with each request for production of documents. However, "[g]enerally, parties are not required to identify responsive documents by Bates number…" (*Queensridge Towers, LLC v. Allianz Glob. Risks US Ins. Co.*, 2014 WL 496952, *6 (D. Nev. Feb. 4, 2014).) As such, JadooTV will not supplement its responses to these requests.

DISH's reliance on *Walker v. N. Las Vegas Police Dep't*, 2016 WL 8732300, at *4 (D. Nev. May 13, 2016) in support of its argument is misplaced. There, the Court only ordered the responding party to specify Bates pages because the responding party had stipulated to do so - a "more exacting" procedure that is not required under the rules. JadooTV did not enter into any such stipulation.

DISH then proceeds to complain that the "obligation to identify and locate which documents are responsive to which requests" is unfairly shifted to DISH." However, it was DISH that propounded hundreds of overbroad discovery requests. DISH cannot now complain about the burden of "sifting through" the documents it requested. (*See SolarCity Corp. v. Doria*, No. 16CV3085-JAH (RBB), 2018 WL 467898 at *7 (S.D. Cal. Jan. 18, 2018).) JadooTV will not supplement its responses to these requests.

4.      **Advice of Counsel Defense**

As you are aware, JadooTV was represented by different counsel prior to and at the start of this litigation. As such, we are still investigating the applicability and extent of this defense. We will provide a more complete response after we complete our investigation.

5.      **JadooTV's Responses and Document Production Regarding Set-Top Box, App, and Ad Sales; Revenues; Costs; Subscribers; and Payments to the Sohail Family**

The July 28 Letter broadly states, without explanation, that JadooTV's responses and document production "with regard to set-top box, app, and ad sales; revenues; costs; subscribers; and payments to the Sohail family and family-connected businesses" are "incomplete". It is unclear what DISH is requesting here. JadooTV has provided all responsive documents in its possession, custody, and control. Nevertheless, as stated above, JadooTV will supplement its responses to Interrogatory Nos. 4-6 to identify which documents are responsive to those interrogatories. JadooTV will not supplement its responses to Requests for Production Nos. 128-140, as JadooTV is not required to identify responsive documents by Bates number. (*Queensridge Towers, LLC v. Allianz Glob. Risks US Ins. Co.*, 2014 WL 496952, *6 (D. Nev. Feb. 4, 2014).)

**6.     Discovery Regarding Viewership of and the Relative Popularity of the "Protected Channels"**

The July 28 Letter states that JadooTV did not provide discovery regarding customer viewership and the relative popularity of the Protected Channels. However, this data does not exist. Specifically, JadooTV does not control whether users of JadooTV set top boxes and the eMedia application use their JadooTV set top boxes to access allegedly copyrighted content comprising "SASP" or the "Protected Channels." Actually, "SASP" is a concept DISH came up with, not JadooTV. JadooTV also does not control nor possess knowledge of what content appears on third party websites such as GitHub, where XML files compatible with JadooTV's user interface allegedly can be found. Similarly, JadooTV does not have information regarding the dates on which the Protected Channels or any associated programs or content were allegedly transmitted or viewed on any Jadoo4, Jadoo5, and Jadoo5S set top box.

The July 28 Letter also demands that JadooTV produce documents regarding the Ferrari application, but the Ferrari application does not track data regarding the alleged viewership of the Protected Channels. JadooTV will not produce these documents.

**7.     Documents Identified During JadooTV's 30(b)(b) Deposition.**

The July 28 Letter requests "(1) a CloudStream bank statement that allegedly shows the repayment of a $200,000 loan that Mr. Sohail received from Jadoo TV (Jadoo TV 30(b)(6) Depo. 100:7-13); (2) a written agreement between Jadoo TV and Altair concerning the development of software for Jadoo TV (Id. 120:15-121:3); (3) a written agreement between Jadoo TV and IDC about providing VOD and live streaming monitoring services (Id. Depo. 126:19-127:8), and (4) Jadoo TV's programming license agreements or other documentation evidencing JadooTV's distribution rights."

JadooTV will produce the CloudStream bank statement and the written agreement between Jadoo TV and Altair concerning the development of software for JadooTV. We are working to locate the written agreement between JadooTV and IDC regarding VOD and live streaming monitoring services.

DISH's request that JadooTV produce "JadooTV's programming license agreements or other documentation evidencing JadooTV's distribution rights" is extremely overbroad and encompasses agreements that are not relevant to the allegations in this lawsuit. Accordingly, JadooTV will not produce these documents.

## 8. Depositions of Mr. and Mrs. Sohail

Your previous letters request to depose Mr. Sohail for the second time, as a continuation of the 30(b)(6) deposition. As stated in our May 23, 2020 letter, without a showing of good cause, we cannot agree to a continuance of the 30(b)(6) deposition. However, if it is an individual deposition of Mr. Sohail that DISH seeks, Mr. Sohail is available on the following dates: September 8, September 13, and September 15.

We maintain our position regarding Mrs. Sohail's deposition. Mrs. Sohail does not possess any relevant information regarding the allegations in the complaint. Actually, Mrs. Sohail's only responsibilities in relation to the JadooTV boxes were packing and shipping the boxes. DISH has already deposed (or plans on deposing) individuals that are much better suited to provide relevant testimony. In this regard, DISH's only goal in deposing Mrs. Sohail is to further harass Mr. Sohail and once again increase fees unnecessarily. Accordingly, we will not agree to a deposition of Mrs. Sohail.

## 9. Requests for Production Nos. 20, 24-28, 80, 132-134

The July 28 Letter demands that JadooTV supplement its responses to Requests for Production Nos. 20, 24-28, 80, 132-134.

JadooTV maintains its responses to these requests, as JadooTV does not have responsive documents in its possession, custody, or control.

## 10. Requests for Production Nos. 106-107 and 112

The July 28 Letter demands that JadooTV supplement its responses to Requests for Production Nos. 106-107 and 112 which seek documents concerning Peter May, pmay360, pmay360@gmail.com, rayred@gmail.com, ali85one, ali85one@gmail.com.

JadooTV has no knowledge of these email addresses/usernames, as they do not belong to JadooTV. As such, JadooTV will supplement its responses to these requests to confirm that it does not have responsive documents to produce.

## 11. Requests for Production Nos. 120 and 121

The July 28 Letter demands that JadooTV supplement its responses to Requests for Production Nos. 120-121 which seek "[d]ocuments sufficient to identify the total number or percentage of Jadoo TV's United States users who accessed SASP on a daily, weekly, or monthly basis" and "[d]ocuments sufficient to identify the total number or percentage of Jadoo

TV's United States users who accessed the Protected Channels on a daily, weekly, or monthly basis."

The SASP does not exist. As stated above, DISH created this term, not JadooTV. As such, JadooTV will supplement its response to Request for Production No. 120 to confirm that it does not have responsive documents to produce.

Similarly, JadooTV does not have documents "sufficient to identify the total number or percentage of Jadoo TV's United States users who accessed the Protected Channels on a daily, weekly, or monthly basis", as JadooTV did not air the Protected Channels on its set-top boxes. Accordingly, JadooTV will supplement its response to Request for Production No. 121 to confirm that it does not have responsive documents to produce.

### 13.    Request for Production No. 122

The July 28 Letter demands that JadooTV supplement its responses to Request for Production No. 122 which seeks "[a]ll documents relating to the arrest, prosecution, or investigation of the four individuals in India described in paragraph 54 of DISH's Complaint" concerning the Hyderabad raid on Jadoo employees for alleged piracy of content.

To the extent that this Hyderabad raid occurred, it was not at all connected to JadooTV. Therefore, JadooTV will supplement its response to Request for Production No. 122 to confirm that it does not have responsive documents to produce.

### 14.    Interrogatory Nos. 1, 7, 11, and 14

The July 28 Letter demands that JadooTV supplement its responses to Interrogatory Nos. 1, 7, 11, and 14. These responses were served in 2019 by different counsel. As such, we need additional time to review the responses and determine whether JadooTV has further information to provide. If it is determined that JadooTV has further information to provide, JadooTV will supplement its responses to these interrogatories.

### 15.    Shah's Email Account

The July 28 Letter alleges that JadooTV did not produce all emails from Haseeb Shah's JadooTV email account. This is incorrect. As Ms. Byun previously informed you, Shah's emails were being forwarded to the NOCoperations email account, and JadooTV took immediate steps to preserve these emails. JadooTV produced all emails in its possession, custody, and control. To the extent that Haseeb Shah deleted emails on his own accord, JadooTV played no part in this.

If you would like to discuss these issues further, please feel free to call my direct line at 650-250-1117.

# CHAN +
# PUNZALAN

Sincerely,

Nicole Daryanani

# EXHIBIT 10



Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Tel: 713.343.0478
Fax: 713.758.0146
www.hnbllc.com

October 7, 2022

**VIA Email**

Mark Punzalan
Chan Punzalan LLP
22 Battery Street, Suite 401
San Francisco, CA 94111
Mark@chanpunzalan.com

   Re: *DISH Network L.L.C. v. Jadoo TV, Inc. et al.,* Case No. 3:20-cv-01891-CRB (LB)
   (N.D. Cal.)

Mr. Punzalan:

   I write in response to Defendants' August 19, 2022 letter concerning some of the outstanding discovery issues raised in DISH's July 28, 2022 meet and confer letter. These issues still have not been resolved and we demand a telephonic meet and confer with you in the next ten days pursuant to Judge Beeler's Standing Order § III(4).

   **1. Defendants' Improper Assertion of the Defense of Advice of Counsel.**

   Defendants continue to improperly assert the defense of advice of counsel while at the same time shielding from discovery the very communications and documents constituting the advice.[1] DISH's July 28, 2022 letter attempted to resolve this issue stating:

> If Defendants wish to assert advice of counsel, they must produce and be prepared to testify in depositions and in writing about the substance of all documents created by, or disseminated to, Defendants' in-house and/or outside counsel and all attorney communications Defendants relied on in allegedly forming the belief their actions

---

[1] *Compare* Defs.' Resps. to Interrog. Nos. 18-19 & Req. for Prod. Nos. 30 & 114 (asserting attorney-client and work-product privileges without answering the questions concerning advice of counsel) *with* the 30(b)(6) Depo. of Jadoo TV at 69:15–19 (stating that "Yeah. We – we had it come from attorneys, advice…" when asked whether Jadoo TV "believe[d] it was okay to distribute any content from Dailymotion."). Defendants failed to produce any communications with Defendants' former counsel at O'Melveny & Myers concerning DISH's notices of infringement and Defendants' responses. (*See* Defs.' Privilege Log at 5-16.)

were not infringing. *Mushroom Assocs. v. Monterey Mushrooms, Inc.*, 1992 WL 442892, at *3–5 (N.D. Cal. May 19, 1992)." In the event Defendants wish to continue to assert advice of counsel, the documents Defendants must produce and testify about include but are not limited to the documents listed on Defendants' privilege log, and documents sent to and from Defendants' former counsel, Darin Snyder, concerning DISH's notices of infringement and Defendants' responses.

In addition to our July 28, 2022 letter, DISH previously sent you meet and confer correspondence concerning Defendants' improper assertion of the defense of advice of counsel on October 15, 2020 and March 25, 2022. Despite raising this issue several times during the past two years, Defendants continue improperly to assert the defense of advice of counsel without producing or testifying about the communications relied on. Your August 19, 2022 correspondence states "we are still investigating the applicability and extent of this defense. We will provide a more complete response after we complete our investigation." The fact discovery deadline is November 11, 2022 (ECF 218), and Defendants' refusal to testify and their withholding of documents about the communications relied on is prejudicing DISH.

Please confirm that (1) Defendants will not be asserting the defense of advice of counsel for any elements of DISH's claims; or (2) Defendants will produce all documents concerning the communications they relied on (including the documents listed in Defendants' privilege log at lines 5-16) and will make Sonya Sohail and a JadooTV 30(b)(6) witness available for depositions during the week of November 7th concerning such documents and communications. Otherwise, DISH will have no choice but to bring this issue before the Court in a discovery letter brief.

## 2. Defendants' Failure to Produce Documents Concerning Revenues, Costs, Subscribers, and Payments to the Sohail Family and Family Connected Businesses.

Defendants failed to supplement their previously produced documents concerning Defendants' revenues, costs, and subscribers, and have not produced documents showing payments to the Sohail family and family connected businesses.[2] DISH's July 28, 2022 letter attempted to resolve this issue stating:

This information is relevant to prepare a damages model. The Copyright Act permits statutory damages or actual damages plus the defendants' profits as remedies for infringement, among other things. 17 U.S.C. § 504. The plaintiff's lost revenue and defendant's profits are two factors courts may use in assessing the proper amount of statutory damages. *Controversy Music v. Shiferaw*, 2003 WL 22048519, at *2 (N.D. Cal. July 7, 2003). Defendants must provide the detailed information about their revenues and profits from 2015 to the present DISH has requested. To the extent any of this information has already been produced, Defendants must identify which documents correspond with Interrogatory Nos. 4-

---

[2] *See* Defs.' Resps. to Interrog. Nos. 4-5; Req. for Prod. Nos. 128-140.

5 and Requests for Production Nos. 128-140, and update the information to cover the present time. *See Walker*, 2016 WL 8732300, at *4.

Your August 19, 2022 correspondence states "it is unclear what DISH is requesting here" indicating you have no idea what Defendants produced in response to these discovery requests. Defendants must supplement their production for the following documents to include subscriber and financial data through October 2022:

- JAD001655 – Purporting to show Defendants' revenue from the sale of JadooTV units worldwide from January 2016 through October 2019. Defendants must also produce a similar report from January 2016 through October 2022 showing Defendants' revenue from JadooTV mobile app subscriptions;
- JAD001656 – Purporting to show Defendants' costs for purchasing JadooTV units from January 2016 through May 2019;
- JAD002541 – Purporting to show Defendants' US revenue from the sale of JadooTV units from January 2016 through October 2019. Defendants must also produce a similar report from January 2016 through October 2022 showing Defendants' US revenue from JadooTV mobile app subscriptions;
- JAD002322 – Purporting to show the registrations of all JadooTV units in the USA by year from 2015 through 2018. Defendants must also produce similar reports from 2015 through 2022 identifying (1) the registrations of all JadooTV units worldwide for the purpose of identifying the percentage of units in the USA compared to units worldwide; and (2) the number of active JadooTV mobile app subscriptions per month from 2015 to the present, comparing those in the USA to the total number worldwide; and
- JAD009057 – Purporting to show Defendants' year-end Balance Sheet from 2014 through 2020 and Income Statement from 2014 through 2020.

Defendants must also produce documents showing (1) the wages, bonuses, dividends, distributions, and commission payments to each Sohail family member from January 2016 through October 22, including Sajid Sohail, Sadia Sohail, Sonya Sohail, Samir Sohail, Ahsan Salahuddin, Mohsin Salahuddin, and Arsalan Salahuddin, and (2) all detail concerning money sent from JadooTV to Mr. Sohail's other businesses including Altair Technologies Pvt. Ltd., Pearl Technologies International Ltd., Pearl Media Group, and Cloudstream Media, Inc. For example, Defendants must produce the detail and underlying entries for the following costs and expenses in its Income Statement: (1) "Payroll Expenses" including "Wages" and "Bonus"; (2) "Sales and Marketing" including "Sales Commission"; (3) "Interco Content Billing Expense"; and (4) "Content & Media Expense," and the following liabilities and equity in its Balance Sheet: (5) "Payroll Liabilities" including "Accrued Bonus," "Accrued payroll," and "Accrued Vacation"; and (6) "Dividends Paid." (*See* JAD009057). Please also provide an available date during the weeks of October 31st or November 7th for the deposition of Rick Bottomley.

Please confirm that Defendants will be supplementing and producing all the foregoing documents concerning Defendants' revenues, costs, subscribers, and payments to the Sohail family and family connected businesses. Otherwise, DISH will be bringing this issue before the Court in a discovery letter brief.

### 3. Defendants' Refusal to Make Mrs. Sohail Available for Deposition.

Defendants continue to refuse to make Mrs. Sohail available for deposition. DISH's July 28, 2022 letter attempted to resolve this issue by informing you that "the marital communications privilege doesn't apply here because Mrs. Sohail is not being asked to testify as to intimate conversations between her and her husband, but rather as a shareholder, director, and chief operating officer of Jadoo TV. *Perez v. Sauson*, 2016 WL 10587197, at *3 (E.D. Wash. Sept. 15, 2016)."

My correspondence of May 9, 2022 provided additional support for the deposition of Mrs. Sohail:

> Mrs. Sohail was a shareholder, director, and the chief operating officer of Jadoo TV during the relevant time. The marital communications privilege, which is "[n]arrowly construe[d]…because it obstructs the truth-seeking process," doesn't apply simply because Mrs. Sohail got the job through her husband. *United States v. Marashi*, 913 F.2d 724, 730 (9th Cir. 1990). Moreover, Mr. Sohail testified, "She had some role in…overseeing the service; making sure if there's any complaints, they would get bubbled up to her." Depo. at 144:5-9. And Awais Malik, who was the content curation manager for Jadoo TV, testified that he "reported directly" to Mrs. Sohail. *See* Malik affidavit. Simply put, Mrs. Sohail's knowledge of Jadoo TV operations is not privileged because it is "not the equivalent of an intimate letter between a husband and wife" since "numerous parties could be expected to have access…including but not limited to other employees, corporate owners…, and state or federal agencies that oversee business operation…." *Perez v. Sauson*, 2016 WL 10587197, at *3 (E.D. Wash. Sept. 15, 2016) (denying husband's motion to block deposition of his spouse where husband in his deposition identified her as responsible for bookkeeping).

Defendants' document production and testimony also shows that Mrs. Sohail was intimately involved in the operation of JadooTV and that she has relevant knowledge that DISH is entitled to obtain through her deposition:

- Mrs. Sohail was Jadoo TV's CFO (1 of 3 officers as reported to the California Secretary of State) and 1 of 2 Directors (JAD000033);
- Mrs. Sohail is an indirect owner of 12.8% of Jadoo TV and its COO and former Secretary;
- Mrs. Sohail is an Altair Technologies Director, Member, and debenture holder (JAD000792-JAD000793);
- Mrs. Sohail oversaw JadooTV's customer support and received any complaints (JadooTV 30(b)(6) Depo. at 144:5-14);
- Mrs. Sohail received communications concerning numerous Jadoo TV promos and advertisements including those stating the Jadoo service has "1,500 TV Channels," "Millions hours of VOD," and one that lists Protected Channels HumTV, Hum Masala, Dunya TV and says "Mark Your Favorite Channels & VOD Content"

(JAD000212, JAD000305-JAD000306, JAD000839-JAD000843, JAD001153-JAD001154, JAD001155-JAD001158, JAD001164-JAD001168, JAD002625-JAD002639, JAD002642-JAD002644, JAD002991-JAD002996);

- Mrs. Sohail received a comparison of Jadoo TV content to content of a competitor (JAD001174-JAD001177);
- Mrs. Sohail received communications concerning technical support voice messages, call charts, and scripts (JAD001501-JAD001556);
- Mrs. Sohail received PayPal account statements for the account of Jadoo TV and Mr. Sohail (JAD001659-JAD001749);
- Mrs. Sohail adopted a resolution (with Mr. Sohail and Sonya Sohail) including a $200,000 loan to Mr. Sohail 18 days after DISH filed this action (JAD002189-JAD002190);
- Mrs. Sohail received an email from Mr. Sohail in November 2016 stating "We have more than 1000 channels now with Arabic, which is not in US but we may consider adding them" and "VOD should be 750,000+ hours as we will be adding Arabic" (JAD002729-JAD002743);
- Mrs. Sohail received an email concerning the release of Jadoo software that says, "I need a Whats app Support Number and NOC number to be added . . .this is basically to let Support and NOC know what problems we face on field . . . right now I have Haseeb on this group and it helps a lot (JAD002800-JAD002807);
- Mrs. Sohail received an email stating "Our main source of revenue is the box sales at this time. Revenue through the App is very small: so far over the last few years we only have approximate 9,000 paying APP customers" and "we should market in the brochure the following features that are the most popular and the most viewed as per our Jem portal: VOD Dramas, Talk Shows, Political" (JAD002929-JAD002930);
- Mrs. Sohail received an email concerning testing of the Jadoo app and stating "The videos which have embedded restrictions from the owner, can now be played in YT app by just clicking on the message we get in our app." (JAD002936-JAD002938);
- Mrs. Sohail received a content comparison table (JAD002997-JAD003001);
- Mrs. Sohail received an email attaching a video to be broadcast on channel networks and stating "The idea is for TV channel Partners to inform their viewers who access their content through satellite dishes and have difficulties with quality and reception to use JadooTVbox or app as a great alternative" and "The aim of this video is to target people who are not JadooTV customers and hopefully attract them to our network" (JAD008487);
- Mrs. Sohail received an email stating "I love this reviewer. he says GOOD BYE Dish!" and *"All Chanel's reception is better than DISH Network."* (JAD008696-JAD008697);
- Mrs. Sohail received an email stating the Jadoo App is now available in the App Store and "Here is the link explaining how to market your app." (JAD008698);
- Mrs. Sohail received emails with attachments providing Jadoo App stats including the number of paid subscriptions and installs in the United States (JAD008699-JAD008719, JAD008835-JAD008848); and

- Mrs. Sohail received an email concerning the development and options for Jadoo5 set-top boxes (JAD008882).

Nevertheless, your August 19, 2022 correspondence states "[w]e maintain our position regarding Mrs. Sohail's deposition. Mrs. Sohail does not possess any relevant information regarding the allegations in the complaint" and "we will not agree to a deposition of Mrs. Sohail."

DISH is entitled to depose Mrs. Sohail and Defendants' reasons for refusing to make her available are contrary to the facts and law. Please provide an available date during the weeks of October 31st or November 7th for the deposition of Mrs. Sohail. Otherwise, DISH will be bringing this issue before the Court in a discovery letter brief.

### 4. Defendants' Refusal to Make Haseeb Shah, Awais Malik, or Faisal Abdullah Available for Depositions or to Provide Their Contact Information.

On March 31, 2022, I sent you correspondence requesting deposition dates for Haseeb Shah, Awais Malik, and Faisal Abdullah. You responded on April 21, 2022 stating Messrs. Malik, Shah, and Abdullah reside in Pakistan, no longer work for Jadoo TV, and likely will not sit for a deposition. On May 9, 2022, I sent you a letter stating we would be willing to take these depositions remotely and I requested the most recent contact information for them so that we could contact them ourselves to inquire about scheduling their depositions. You failed to cooperate in the scheduling of their depositions and failed to provide their contact information, despite an obligation to do so since Defendants list each of them as witnesses in their Rule 26 initial disclosures. As a result, DISH will be moving to exclude Defendants from providing any testimony from Shah, Malik, or Abdullah.

### 5. Defendants' Failure to Supplement Their Discovery Responses as Agreed.

Your letter of August 19, 2022 included the following agreements that Defendants have not followed through with:

- Defendants agreed to supplement their responses to Interrogatory Nos. 4-6 to identify which documents are responsive to these interrogatories;
- Defendants agreed to produce the written agreement between JadooTV and IDC regarding VOD and live streaming monitoring services;
- Defendants agreed to supplement their responses to Requests for Production Nos. 106-107, 112, and 120-122 to confirm that they do not have responsive documents to produce; and
- Defendants agreed to review their responses to Interrogatory Nos. 1, 7, 11, and 14 to determine whether they have further information to provide, and if so Defendants agreed to supplement their responses.

Please confirm that Defendants will be providing these supplemental responses and documents by October 14, 2022.

**6.  Scheduling of the Deposition of Sajid Sohail.**

Your letter of August 19, 2022, agreed that Defendants would make Mr. Sohail available for an individual deposition.  Please provide an available date during the week of November 7th for the deposition of Mr. Sohail.

The parties have been unable to resolve these long outstanding discovery disputes despite the above referenced meet and confer correspondence. Accordingly, we demand a telephonic meet and confer with you in the next ten days pursuant to Judge Beeler's Standing Order § III(4).  Please provide a day and time that you are available for a telephonic meet and confer on these issues.

Sincerely,

**HAGAN NOLL & BOYLE LLC**

Stephen M. Ferguson

cc:     Lawrence Ng
         Chowning Poppler

# EXHIBIT 11

# CHAN + PUNZALAN

A. Chowning Poppler
Email: chowning@chanpunalan.com
Direct: 415.287.3305

October 20, 2022

**VIA EMAIL ONLY**

Stephen M. Ferguson
Hagan Noll & Boyle, LLC
820 Gessner, Suite 940
Houston, Texas 77024
Email: Stephen.Ferguson@hnbllc.com

**Re:** *DISH Network L.L.C. v. Jadoo TV, Inc. et al.*, Case No. 3:20-cv-01891-CRB (LB)
(N.D. Cal.)

Dear Mr. Ferguson:

We write to follow up to Monday's meet and confer call and to respond to your October 7, 2022,
letter regarding outstanding discovery issues. We spoke with our client on Tuesday and are now
able to provide several updates.

**Advice of Counsel**

Based on my review of this matter, your characterization that Defendants have asserted the
advice of counsel defense is incorrect. DISH inserted this issue into the case by raising it in its
Interrogatory No. 18. Defendants have consistently preserved attorney-client privilege and work
product protections. Defendants do not intend on waiving that privilege and protections. If
Defendants' position changes, we will notify you at that time.

**Defendants Have Searched for and Produced Relevant Documents**

Defendants substantively responded to your requests for documents related to revenues and
profits arising from the alleged infringement. *See, e.g.,* Defendants' Responses to DISH's Fourth
Set of Request for Production of Documents Nos. 128-134, 137. Defendants made clear in those
responses that all relevant documents had either been produced previously or there were no
responsive documents after a search was conducted. Similarly, Defendants' Amended
Responses and Objections to DISH's First Set of Interrogatories Nos. 4 and 5 stated that
Defendants would produce documents showing sales and advertising revenue. Your October 7

22 Battery Street
Suite 401
San Francisco, CA 94111
415.839.0063

letter lists Bates numbers of documents that are responsive to these requests. Defendants only need to supplement responses if they are incomplete or incorrect. Fed. R. Civ. Proc. 26(e)(1)(a)). That does not appear to be the situation here as DISH has responsive documents.

Defendants will not supplement their production with documents through October 2022 as that time period is disconnected from any allegations of infringement. According to the First Amended Complaint, DISH's allegations of infringement ceased on August 6, 2019 (ECF No. 194 at ¶50). Please explain why DISH believes it is entitled to documents covering a three-year period after the alleged infringement stopped.

## Overbroad Requests

Objections were made to overbroad requests, including DISH's Fourth Set of Request for Production of Documents Nos. 135-136, 138-140. These include requests for "all disbursements" "from any entity, by any means" as well as "all transfers or payments of funds from any bank account from any entity." DISH is not entitled to sweeping discovery into financial records that are disconnected from revenues and profits related to the alleged infringement. To the extent these requests can be narrowed, they are encompassed in other requests and responsive documents have been produced as discussed in the section above.

## Depositions

We are willing to meet and confer to discuss scheduling Mr. Sohail's individual deposition as well as the deposition of Mr. Bottomley.

Mrs. Sohail is a non-party and her role as an executive of Jadoo TV does not mean she has personal knowledge of the facts involved in this case. Your request to depose her is not proportional to the needs of the case and the burden and expense far outweigh the benefit. Defendants are willing to have Mrs. Sohail sign a declaration attesting to the fact that she does not possess any relevant information regarding the allegations in the complaint.

Regarding your desire to depose non-parties Messrs. Shah, Malik, and Abdullah, Defendants cannot be blamed for jurisdictional limits on discovery. As residents of Pakistan who are not associated with Jadoo TV, Defendants cannot override international discovery rules and cross-border discovery procedures in order to make them available for a deposition. DISH is welcome to pursue deposing these non-parties through international mechanisms like the Hague Convention, letters rogatory, or through Pakistan's legal process.

Following up on our correspondence to you from last week regarding serving deposition subpoenas on Ms. Slowikowska and Mr. Kuelling, we are seeking their testimony because we believe they have information about DISH negotiating rights related to the international content

that is the subject matter of this action. DISH listed Ms. Slowikowska in its Initial Disclosures as potentially having "discoverable information concerning (i) DISH's exclusive rights in the programs that aired on the Protected Channels at issue in this case; (ii) Defendants' violation of those exclusive rights; (iii) cease and desist letters sent to Defendants; (iv) the harm to and damages suffered by DISH; and (v) the value of the Protected Channels in relation to other channels in which the Jadoo service provides access." Defendants would like to explore these issues further with these witnesses. Ms. Slowikowska has been served with a deposition subpoena, and we are in the process of serving Mr. Kuelling. Please let us know when you are available for these depositions to go forward.

**<u>Supplementing Discovery Responses</u>**

We are in the process of reviewing the discovery requests you have asked Defendants to supplement and will provide an update soon. The firm has been in transition with several attorneys leaving and a new attorney joining, so we appreciate your understanding as the new team gets up to speed.

In an effort to resolve these issues without the Court's intervention, please let us know when you are available for another meet and confer call.

Sincerely,

A. Chowning Poppler

# EXHIBIT 12

1 DARIN W. SNYDER (S.B. #136003)
dsnyder@omm.com
2 BILL TRAC (S.B. #281437)
btrac@omm.com
3 ASHISH SUDHAKARAN (S.B. # 312941)
asudhakaran@omm.com
4 O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
5 San Francisco, California 94111-3823
Telephone: (415) 984-8700
6 Facsimile: (415) 984-8701

7 Attorneys for Defendants
JADOOTV, INC. and SAJID SOHAIL
8

9 **UNITED STATES DISTRICT COURT**

10 **CENTRAL DISTRICT OF CALIFORNIA**

11 **WESTERN DIVISION**

12

13 DISH NETWORK L.L.C.,                    Case No. 2:18-cv-09768-FMO-KS

14              Plaintiff,                 **JADOO DEFENDANTS' INITIAL
                                           DISCLOSURES**
15       v.

16 JADOOTV, INC., SAJID SOHAIL, HASEEB
   SHAH, EAST WEST AUDIO VIDEO, INC.,
17 and PUNIT BHATT,

18              Defendants.

19

20

21

22

23

24

25

26

27

28

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Defendants JadooTV, Inc. ("JadooTV") and Sajid Sohail ("Sohail") (collectively, "Jadoo Defendants") make the following initial disclosures of information. These initial disclosures are based on a reasonable investigation conducted in the time available. This investigation is ongoing, however, and Jadoo Defendants expressly reserve the right to supplement these disclosures as additional information becomes known to it. Jadoo Defendants' disclosures are made without waiver of, or prejudice to, any objections that Jadoo Defendants may have regarding the subject matter of these disclosures or any documents or individuals identified herein.

## I.     **IDENTIFICATION OF PERSONS**

Jadoo Defendants identify the following persons as individuals who may have discoverable information that Jadoo Defendants may use to support their claims or defenses pursuant to Rule 26(a)(1)(A)(i). All JadooTV employees can be reached through Jadoo Defendants' undersigned counsel. Jadoo Defendants do not consent to any communication between counsel for Plaintiff and employees of JadooTV. Jadoo Defendants reserve the right to supplement this list of potential witnesses. Jadoo Defendants have in good faith listed the general subject matter of these witnesses' knowledge, but this general description does not limit the subject area of information that each witness may provide.

| Name | Subject Matter |
|---|---|
| **Sajid Sohail** <br> **Faisal Abdullah** <br><br> Contact through counsel for Jadoo Defendants | Design, development, and distribution of Jadoo4, Jadoo5, Jadoo5S, and the eMedia application. |
| **Rick Bottomley** <br><br> Contact through counsel for Jadoo Defendants | Revenues, costs, profits, and other financial information associated with Jadoo4, Jadoo5, Jadoo5S, and the eMedia application. |
| **Ahsan Salahuddin** <br><br> Contact through counsel for Jadoo Defendants | Sales and marketing of Jadoo4, Jadoo5, and Jadoo5S. |

The following additional individuals are likely to have discoverable information that Jadoo Defendants may use to support their claims or defenses. The below identified persons are

not employed by JadooTV.

| Name | Subject Matter |
|------|----------------|
| **Haseeb Shah**, Islamabad, Pakistan | The hosting and transmission of TV content, accessible on Jadoo4, Jadoo5, and Jadoo5S. |
| **Awais Malik**, Islamabad, Pakistan | The curation of TV content accessible on Jadoo4, Jadoo5, and Jadoo5S. |
| **GitHub**<br><br>88 Colin P Kelly Jr St<br>San Francisco, CA 94107 | The alleged uploading, hosting, and removal of XML files allegedly enabling access to Protected Channels and South Asian Super Pack. |
| **Unidentified "investigator" identified in Paragraph 59 of Plaintiff's Complaint** | Alleged demonstration of using Jadoo4, Jadoo5, Jadoo5S, and the eMedia application to access Protected Channels and South Asian Super Pack. |
| **Others having knowledge of Protected Channels and South Asian Super Pack** | Alleged creation and hosting of files allegedly enabling access to Protected Channels and South Asian Super Pack on Jadoo4, Jadoo5, and Jadoo5S. |

    Jadoo Defendants may also rely on persons identified by Plaintiff, or other persons who may be identified in documents produced by any party or non-party in connection with this action, to support their claims or defenses.

    Jadoo Defendants also expect to rely on expert testimony and will disclose any such experts as required by Rule 26(a)(2).

## II.    DOCUMENTS, DATA COMPILATIONS, AND TANGIBLE THINGS

    Pursuant to Rule 26(a)(1)(A)(ii), and subject to the limitations set forth above, Jadoo Defendants identify the following categories of documents that are in their possession, custody, or control and that Jadoo Defendants may use to support their claims or defenses in this case:

1.   Documents related to the design, operation, and development of Jadoo4, Jadoo5, Jadoo5S, and the eMedia application;

2.   Documents related to the distribution of Jadoo4, Jadoo5, Jadoo5S, and the eMedia application;

3.   Documents related to Jadoo Defendants' non-infringement of the Protected

1 Channels and South Asian Super Pack;

2 4. Documents related to revenues, costs, and profits associated with Jadoo4, Jadoo5,

3 Jadoo5S, and the eMedia application; and

4 5. Correspondence between Jadoo Defendants and Plaintiff.

5 The foregoing documents are located at JadooTV's facilities and/or at the offices of Jadoo

6 Defendants' undersigned counsel of record. Jadoo Defendants reserve the right to supplement

7 these categories as their investigation and discovery in this lawsuit progress.

8 **III.** **COMPUTATION OF DAMAGES**

9 Jadoo Defendants are not currently seeking any damages in this case. Jadoo Defendants,

10 however, seek an award of attorneys' fees and costs as allowed. Jadoo Defendants cannot

11 compute their total attorneys' fees and costs at this juncture because the litigation is currently

12 ongoing.

13 **IV.** **FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1)(A)(iv)**

14 Jadoo Defendants are presently not aware of any insurance agreement applicable to this

15 litigation.

16

17 Dated: March 7, 2019   DARIN W. SNYDER
             BILL TRAC

18          ASHISH SUDHAKARAN
           O'MELVENY & MYERS LLP

19

20         By: */s/ Darin W. Snyder*

21           Darin W. Snyder

22         Attorneys for Defendants
         JadooTV, Inc. and Sajid Sohail

23

24

25

26

27

28

**PROOF OF SERVICE**

I, Jillisia Santillana, declare:

I am a resident of the State of California and over the age of eighteen, and not a party to the within action; my business address is Two Embarcadero Center, 28th Floor, San Francisco, California, 94111-3344. On March 7, 2019, I served the following document(s):

**JADOO DEFENDANTS' INITIAL DISCLOSURES**

| | |
|---|---|
| Timothy M. Frank<br>timothy.frank@hnbllc.com<br>Joseph H. Boyle (*pro hac vice*)<br>joe.boyle@hnbllc.com<br>Stephen M. Ferguson (*pro hac vice*)<br>stephen.ferguson@hnbllc.com<br>**HAGAN NOLL & BOYLE LLC**<br>820 Gessner, Suite 940<br>Houston, Texas 77024<br>Telephone: (713) 343-0478<br>Facsimile: (713) 758-0146<br><br>David A. Van Riper<br>dave@vanriperlaw.com<br>**VAN RIPER LAW**<br>1254 Irvine Blvd., Suite 200<br>Tustin, California 92780-3571<br>Telephone: (714) 731-1800<br>Facsimile: (714) 731-1811<br><br>*Counsel for Plaintiff* | *Via Email and Overnight Mail* |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 7, 2019 at San Francisco, California.

*/s/ Jillisia Santillana*

Jillisia Santillana

1   Mark Punzalan (CA Bar No. 247599)
    Email: mark@chanpunzalan.com
2   A. Chowning Poppler (CA Bar No. 272870)
    Email: chowning@chanpunzalan.com
3   Lawrence Ng (CA Bar No. 328082)
    Email: lawrence@chanpunzalan.com
4   CHAN PUNZALAN LLP
    22 Battery Street, Suite 401
5   San Francisco, CA 94111

6
    *Counsel for Defendants*
7   *JadooTV, Inc. and Sajid Sohail*

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11  DISH NETWORK L.L.C.,                    Case No. 3:20-cv-01891-CRB (LB)

12              Plaintiff,
13      vs.                                 **SUPPLEMENTAL DISCLOSURES OF
                                            DEFENDANTS JADOO TV, INC. AND
14  JADOO TV, INC., and SAJID SOHAIL,       SAJID SOHAIL**

15              Defendants.

16

17

18      Pursuant to Fed. R. Civ. P. 26(a)(1)(A) and (e)(1)(A) Defendants Jadoo TV, Inc. and Sajid

19  Sohail (collectively, "Defendants") make the following supplemental disclosures. These disclosures

20  are based on a reasonable investigation. As the investigation is ongoing, Defendants expressly reserve

21  the right to supplement these disclosures as additional information becomes known to it. Defendants'

22  disclosures are made without waiver of, or prejudice to, any objections that the Defendants may have

23  regarding the subject matter of these disclosures or any documents or individuals identified herein.

24  **I.      IDENTIFICATION OF PERSONS**

25      Defendants identify the following persons as individuals who may have discoverable

26  information that Defendants may use to support their claims or defenses pursuant to Rule

27  26(a)(1)(A)(i). Jadoo TV employees can be reached through Defendants' counsel. Defendants

28  do not consent to any communication between counsel for Plaintiff and employees of Jadoo TV.

---

Defendants reserve the right supplement this list of potential witnesses. Defendants have in good

faith listed the general subject matter of knowledge these witnesses have, but this general

description does not limit the subject matter area of information that each witness may provide.

| Name | Subject Matter | Contact / Last Known Address |
|------|----------------|------------------------------|
| Sajid Sohail | Design, development, distribution of Jadoo4, Jadoo5, Jadoo5S, and the eMedia application | Counsel for Defendants |
| Rick Bottomley | Revenues, costs, profits, and other financial information associated with Jadoo4, Jadoo5, Jadoo5S, and the eMedia application | Counsel for Defendants |
| Ahsan Salahuddin | Sales and marketing of Jadoo4, Jadoo5, and Jadoo5S | 6976 Lassen Street Pleasanton, CA (925) 895-5411 |
| Faisal Abdullah | Design, development, distribution of Jadoo4, Jadoo5, Jadoo5S, and the eMedia application | Islamabad, Pakistan |
| Awais Malik | The curation of TV content accessible on Jadoo4, Jadoo5, and Jadoo5S | I-10/2 Islamabad, Pakistan |
| Haseeb Shah | The hosting and transmission of TV content, accessible on Jadoo4, Jadoo5, and Jadoo5S | IDC Resources ETC Building, 1st Flr Sector F-5/1 Agha Khan Road Islamabad, Pakistan |
| GitHub | The alleged uploading, hosting, and removal of XML files allegedly enabling access to Protected Channels and South Asian Super Pack | 88 Colin P Kelly Jr Street San Francisco, CA 94107 |
| Unidentified "investigator" from the First Amended Complaint | Alleged demonstration of using Jadoo4, Jadoo5, Jadoo5S, and the eMedia application to access Protected Channels and South Asian Super Pack | DISH Network LLC |
| Others with knowledge of the Protected Channels and South Asian Super Pack | Alleged creation and hosting of files allegedly enabling access to Protected Channels and South Asian Super Pack | Unknown |

| | on Jadoo4, Jadoo5, and Jadoo5S. | |
|---|---|---|

Defendants may also rely on persons identified by Plaintiff, or other persons who may be identified in documents produced by any party or non-party in connection with this action, to support their claims and defenses.

Jadoo Defendants also expect to rely on expert testimony and will disclose any such experts as required by Rule 26(a)(2).

## II.     DOCUMENTS, DATA COMPILATIONS, AND TANGIBLE THINGS

Pursuant to Rule 26(a)(1)(A)(ii), and subject to the limitations set forth above, Defendants identify the following categories of documents that are in their possession, custody, or control that Defendants may use to support their claims and defenses in this case:

1.  Documents related to the design, operation, and development of Jadoo4, Jadoo5, Jadoo5S, and the eMedia application;

2.  Documents related to the distribution of Jadoo4, Jadoo5, Jadoo5S, and the eMedia application;

3.  Documents related to Defendants' non-infringement of the Protected Channels and the South Asian Super Pack;

4.  Documents related to revenues, costs, and profits associated with Jadoo4, Jadoo5, Jadoo5S, and the eMedia application; and

5.  Correspondence between Defendants and Plaintiff.

Defendants reserve the right to further supplement these categories.

## III.     COMPUTATION OF DAMAGES

Defendants are not currently seeking any damages in this case.  Defendants, however, seek an award of attorneys' fees and costs as allowed.  Defendants cannot compute their total attorneys' fees and costs at this juncture because the litigation is currently ongoing.

## IV.     INSURANCE

Defendants are presently not aware of any insurance agreement applicable to this litigation.

1    Dated: October 31, 2022            CHAN PUNZALAN LLP

2

3                                       A. Chowning Poppler

4                                       *Counsel for Defendants*
                                      *Jadoo TV, Inc. and Sajid Sohail*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---
4

1  **CERTIFICATE OF SERVICE**

2      The undersigned declares that: I am over the age of 18 and not a party to this action.  My

3  business address is 22 Battery Street, Suite 401, San Francisco, CA 94111.

4      On the date set forth below, I served the following documents:

5  **DEFENDANTS JADOO TV, INC. AND SAJID SOHAIL'S SUPPLEMENTAL**
   **DISCLOSURES**

6

7  on the following parties:

8      Timothy M. Frank (California Bar No. 263245)      David A. Van Riper

9      timothy.frank@hnbllc.com      dave@vanriperlaw.com
       Joseph H. Boyle (pro hac vice)      VAN RIPER LAW

10     joe.boyle@hnbllc.com      1254 Irvine Blvd., Suite 200
        Tustin, CA 92780-3571

11     Stephen M. Ferguson (pro hac vice)
       stephen.ferguson@hnbllc.com

12     HAGAN NOLL & BOYLE LLC
       820 Gessner, Suite 940

13     Houston, Texas 77024

14     *Attorneys for Plaintiff DISH Network*
       *L.L.C.*

15

16 ☒     **BY EMAIL:**  Pursuant to the parties' stipulation for email service, I will serve the above documents to the email listed in the service caption above. A true and correct copy of transmittal will be produced if requested by any party or the court.

17     I declare under penalty of perjury under the laws of the State of California that the

18 foregoing is true and correct.

19

20 Dated: October 31, 2022      CHAN PUNZALAN LLP

21

22      A. Chowning Poppler

23

24

25

26

27

28

# EXHIBIT 13

# State of California
## Secretary of State

**S**

## Statement of Information
**(Domestic Stock and Agricultural Cooperative Corporations)**
**FEES (Filing and Disclosure): $25.00.**
**If this is an amendment, see instructions.**
**IMPORTANT – READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

1. **CORPORATE NAME**

2. **CALIFORNIA CORPORATE NUMBER**

This Space for Filing Use Only

---

**No Change Statement** (Not applicable if agent address of record is a P.O. Box address. See instructions.)

3. If there have been any changes to the information contained in the last Statement of Information filed with the California Secretary of State, or no statement of information has been previously filed, this form must be completed in its entirety.

☐ If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed **to Item 17**.

---

**Complete Addresses for the Following** (Do not abbreviate the name of the city. Items 4 and 5 cannot be P.O. Boxes.)

| | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 4. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | | | |
| 5. STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | | | |
| 6. MAILING ADDRESS OF CORPORATION, IF DIFFERENT THAN ITEM 4 | | | |

---

**Names and Complete Addresses of the Following Officers** (The corporation must list these three officers. A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 7. CHIEF EXECUTIVE OFFICER/ | | | | |
| 8. SECRETARY | | | | |
| 9. CHIEF FINANCIAL OFFICER/ | | | | |

---

**Names and Complete Addresses of All Directors, Including Directors Who are Also Officers** (The corporation must have at least one director. Attach additional pages, if necessary.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 10. NAME | | | | |
| 11. NAME | | | | |
| 12. NAME | | | | |

13. NUMBER OF VACANCIES ON THE BOARD OF DIRECTORS, IF ANY:

---

**Agent for Service of Process** If the agent is an individual, the agent must reside in California and Item 15 must be completed with a California street address, a P.O. Box address is not acceptable. If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 15 must be left blank.

14. NAME OF AGENT FOR SERVICE OF PROCESS

| | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 15. STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, **IF AN INDIVIDUAL** | | | |

---

**Type of Business**

16. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION

---

17. BY SUBMITTING THIS STATEMENT OF INFORMATION TO THE CALIFORNIA SECRETARY OF STATE, THE CORPORATION CERTIFIES THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT.

**JAD000033**

| DATE | TYPE/PRINT NAME OF PERSON COMPLETING FORM | TITLE | SIGNATURE |
|---|---|---|---|

# EXHIBIT 14

☐ Check if this is an
amended filing

## Official Form 207

# Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy    04/19

**The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).**

| Part 1: | Income |
| --- | --- |

**1. Gross revenue from business**

☐ None

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | | | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
| --- | --- | --- | --- | --- |
| **From the beginning of the fiscal year to filing date:** | From 01/01/2019<br>MM / DD / YYYY   to | Filing date | ☑ Operating a business<br>☐ Other | $ _____ 1,431,711.00 |
| **For prior year:** | From 01/01/2018<br>MM / DD / YYYY   to | 12/31/2018<br>MM / DD / YYYY | ☑ Operating a business<br>☐ Other | $ _____ 9,140,748.00 |
| **For the year before that:** | From 01/01/2017<br>MM / DD / YYYY   to | 12/31/2017<br>MM / DD / YYYY | ☑ Operating a business<br>☐ Other | $ _____ 9,107,586.00 |

**2. Non-business revenue**

Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☐ None

| | | | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
| --- | --- | --- | --- | --- |
| **From the beginning of the fiscal year to filing date:** | From 01/01/2019<br>MM / DD / YYYY   to | Filing date | Interest from Savings Accounts | $ _____ 853.00 |
| **For prior year:** | From 01/01/2018<br>MM / DD / YYYY   to | 12/31/2018<br>MM / DD / YYYY | Interest from Savings Accounts | $ _____ 5,054.00 |
| **For the year before that:** | From 01/01/2017<br>MM / DD / YYYY   to | 12/31/2017<br>MM / DD / YYYY | Interest from Savings Accounts | $ _____ 2,712.00 |

Case: 19-41283    Doc# 45    Filed: 06/14/19    Entered: 06/14/19 19:22:30    Page 1 of 17

| **Part 2:** | **List Certain Transfers Made Before Filing for Bankruptcy** |
|---|---|

**3. Certain payments or transfers to creditors within 90 days before filing this case**

List payments or transfers—including expense reimbursements—to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☐ None

| | Creditor's name and address | Dates | Total amount or value | Reasons for payment or transfer |
|---|---|---|---|---|
| | | | | Check all that apply |
| 3.1. | Akamai | _____ | $ 75,000.00 | ☐ Secured debt |
| | Creditor's name | | | ☐ Unsecured loan repayments |
| | 150 Broadway | _____ | | ☐ Suppliers or vendors |
| | Cambridge, MA 02142 | | | ☐ Services |
| | | _____ | | ☑ Other CDN Internet Database |
| 3.2. | Ali Abedi | _____ | $ 14,700.00 | ☐ Secured debt |
| | Creditor's name | | | ☐ Unsecured loan repayments |
| | 2018 Sokak | _____ | | ☐ Suppliers or vendors |
| | Antalya, TURKEY 07230, | | | ☐ Services |
| | | _____ | | ☑ Other Consulting |

**4. Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☐ None

| | Insider's name and address | Dates | Total amount or value | Reasons for payment or transfer |
|---|---|---|---|---|
| 4.1. | Window Trends | _____ | $ 35,845.00 | Monthly Commissions |
| | Insider's name | | | |
| | 611 E. 20th Street | _____ | | |
| | Merced, CA 95340 | | | |
| | | _____ | | |
| | Relationship to debtor | | | |
| | Company owned by brother of CEO | | | |
| 4.2. | Ahsan Salahuddin | _____ | $ 162,136.00 | Salary and 401(k) |
| | Insider's name | | | |
| | 6976 Lassen Ct. | _____ | | |
| | Pleasanton, CA 94588 | | | |
| | | _____ | | |
| | Relationship to debtor | | | |
| | Brother-in-law of CEO | | | |

Case: 19-41283    Doc# 45    Filed: 06/14/19    Entered: 06/14/19 19:22:30    Page 2 of 17

**5. Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

☑ None

| | Creditor's name and address | Description of the property | Date | Value of property |
|---|---|---|---|---|
| 5.1. | _____ Creditor's name | | _____ | $_____ |
| 5.2. | _____ Creditor's name | | _____ | $_____ |

**6. Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|
| _____ Creditor's name | | _____ | $_____ |
| | Last 4 digits of account number: XXXX– _____ | | |

---

| Part 3: | Legal Actions or Assignments |
|---|---|

**7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

☐ None

| | Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| 7.1. | DISH Technologies L.L.C. et al v. Jadoo TV, Inc. | Patent Infringement | U.S. District Court for the Northern District of California | ☑ Pending ☐ On appeal ☐ Concluded |
| | **Case number** 5:18-cv-05214-EJD | | San Jose Courthouse, Courtroom 1 - 5th Floor 280 South 1st Street San Jose, CA 95113 | |
| 7.2. | **Case title** Dish Network LLC. v. Jadoo TV, Inc. et al | Copyright Infringement | **Court or agency's name and address** U.S. District Court for the Central District of California | ☑ Pending ☐ On appeal ☐ Concluded |
| | **Case number** 2:18-cv-09768-FMO-KS | | 350 W. 1st Street, 6th Floor, Courtroom 6D Los Angeles, CA 90012 | |

Case: 19-41283    Doc# 45    Filed: 06/14/19    Entered: 06/14/19 19:22:30    Page 3 of 17

**8.  Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

| Custodian's name and address | Description of the property | Value |
|---|---|---|
| | _____ | $_____ |
| Custodian's name | **Case title** | **Court name and address** |
| | _____ | _____ |
| | | Name |
| | **Case number** | |
| | _____ | |
| | **Date of order or assignment** | |
| | _____ | |

---

**Part 4:**  **Certain Gifts and Charitable Contributions**

**9.  List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☑ None

| | Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|---|
| 9.1. | _____ | | _____ | $_____ |
| | Recipient's name | | | |
| | **Recipient's relationship to debtor** | | | |
| | _____ | | | |
| 9.2. | _____ | | _____ | $_____ |
| | Recipient's name | | | |
| | **Recipient's relationship to debtor** | | | |
| | _____ | | | |

---

**Part 5:**  **Certain Losses**

**10. All losses from fire, theft, or other casualty within 1 year before filing this case.**

☑ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss | Date of loss | Value of property lost |
|---|---|---|---|
| | If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received. | | |
| | List unpaid claims on Official Form 106A/B (*Schedule A/B: Assets – Real and Personal Property*). | | |
| | _____ | _____ | $_____ |

Case: 19-41283    Doc# 45    Filed: 06/14/19    Entered: 06/14/19 19:22:30    Page 4 of 17

| Part 6: | Certain Payments or Transfers |
|---------|-------------------------------|

**11. Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☐ None

|      | Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
|------|--------------------------------------------|-------------------------------------------------|-------|-----------------------|
| 11.1. | Keller & Benvenutti LLP | | 05/15/2019 05/30/2019 05/31/2019 | $ 45,000.00 |
| | **Address** | | | |
| | 650 California Street, Suite 1900 San Francisco, CA 94108 | | | |
| | **Email or website address** | | | |
| | kellerbenvenutti.com | | | |
| | **Who made the payment, if not debtor?** | | | |
| | | | | |

|      | Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
|------|--------------------------------------------|-------------------------------------------------|-------|-----------------------|
| 11.2. | | | | $_____ |
| | **Address** | | | |
| | | | | |
| | **Email or website address** | | | |
| | | | | |
| | **Who made the payment, if not debtor?** | | | |
| | | | | |

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

☑ None

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|-------------------------|-----------------------------------|---------------------------|-----------------------|
| | | | $_____ |
| **Trustee** | | | |
| | | | |

Case: 19-41283    Doc# 45    Filed: 06/14/19    Entered: 06/14/19 19:22:30    Page 5 of 17

**13. Transfers not already listed on this statement**

List any transfers of money or other property—by sale, trade, or any other means—made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☑ None

| Who received transfer? | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|
| 13.1. _____ | | _____ | $_____ |
| Address | | | |
| Relationship to debtor | | | |
| _____ | | | |
| Who received transfer? | | _____ | $_____ |
| 13.2. _____ | | | |
| Address | | | |
| Relationship to debtor | | | |
| _____ | | | |

## Part 7:   Previous Locations

**14. Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☑ Does not apply

| Address | Dates of occupancy |
|---|---|
| 14.1. | From _____  To _____ |
| 14.2. | From _____  To _____ |

Case: 19-41283    Doc# 45    Filed: 06/14/19    Entered: 06/14/19 19:22:30    Page 6 of 17

| Part 8: | Health Care Bankruptcies |
| --- | --- |

**15. Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:

— diagnosing or treating injury, deformity, or disease, or

— providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to Part 9.

☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
| --- | --- | --- |
| 15.1. _____ Facility name | | _____ |
| | **Location where patient records are maintained** (if different from facility address). If electronic, identify any service provider. | **How are records kept?** *Check all that apply:* ☐ Electronically ☐ Paper |

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
| --- | --- | --- |
| 15.2. _____ Facility name | | _____ |
| | **Location where patient records are maintained** (if different from facility address). If electronic, identify any service provider. | **How are records kept?** *Check all that apply:* ☐ Electronically ☐ Paper |

| Part 9: | Personally Identifiable Information |
| --- | --- |

**16. Does the debtor collect and retain personally identifiable information of customers?**

☐ No.

☑ Yes. State the nature of the information collected and retained. _Name, Mailing Address, telephone number, email address, or other information to identify custom_er

Does the debtor have a privacy policy about that information?

☐ No

☑ Yes  Available at: https://jadootv.com/privacypolicy

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☐ No. Go to Part 10.

Yes. Does the debtor serve as plan administrator?

☑ No. Go to Part 10.

☐ Yes. Fill in below:

| Name of plan | Employer identification number of the plan |
| --- | --- |
| _____ | EIN: _____ |

Has the plan been terminated?

☐ No

☐ Yes

Case: 19-41283    Doc# 45    Filed: 06/14/19    Entered: 06/14/19 19:22:30    Page 7 of 17

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |

**18. Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?

Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

| | Financial institution name and address | Last 4 digits of account number | Type of account | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|---|
| 18.1. | _____ Name | XXXX–_____ | ☐ Checking<br>☐ Savings<br>☐ Money market<br>☐ Brokerage<br>☐ Other_____ | _____ | $_____ |
| 18.2. | _____ Name | XXXX–_____ | ☐ Checking<br>☐ Savings<br>☐ Money market<br>☐ Brokerage<br>☐ Other_____ | _____ | $_____ |

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| Depository institution name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| _____ Name | | | ☐ No<br>☐ Yes |
| Address | | | |

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| Computronics International Name | Ontario, Canada | 4200 Jadoo Units | ☐ No<br>☒ Yes |
| NSC Worldwide | Hong Kong, China | 5000 Jadoo Units | |
| Address | | | |

Case: 19-41283    Doc# 45    Filed: 06/14/19    Entered: 06/14/19 19:22:30    Page 8 of 17

---

| Part 11: | Property the Debtor Holds or Controls That the Debtor Does Not Own |
|---|---|

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☑ None

| Owner's name and address | Location of the property | Description of the property | Value |
|---|---|---|---|
| _____ <br> Name | | | $_____ |

---

| Part 12: | Details About Environmental Information |
|---|---|

For the purpose of Part 12, the following definitions apply:

- *Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).
- *Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.
- *Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22. Has the debtor been a party in any judicial or administrative proceeding under any environmental law?** Include settlements and orders.

☑ No
☐ Yes. Provide details below.

| Case title | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|
| _____ | | | ☐ Pending |
| **Case number** | _____ <br> Name | | ☐ On appeal |
| _____ | | | ☐ Concluded |

**23. Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☑ No
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| _____ <br> Name | _____ <br> Name | | _____ |

---

Case: 19-41283    Doc# 45    Filed: 06/14/19    Entered: 06/14/19 19:22:30    Page 9 of 17

---

24. **Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No

☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| _____ Name | _____ Name | | _____ |

---

| **Part 13:** | **Details About the Debtor's Business or Connections to Any Business** |
|---|---|

25. **Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☑ None

| | Business name and address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN. |
|---|---|---|---|
| 25.1. | _____<br>Name | | EIN: _____<br>**Dates business existed**<br><br>From _____  To _____ |
| 25.2. | _____<br>Name | | EIN: _____<br>**Dates business existed**<br><br>From _____  To _____ |
| 25.3. | _____<br>Name | | EIN: _____<br>**Dates business existed**<br><br>From _____  To _____ |

Case: 19-41283    Doc# 45    Filed: 06/14/19    Entered: 06/14/19 19:22:30    Page 10 of 17

---

**26. Books, records, and financial statements**

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| Name and address | Dates of service |
|---|---|
| 26a.1. Rick Bottomley<br>_____<br>Name<br>10741 Green Valley Drive, Gilroy, CA 95020 | From 2013<br>To Present |
| 26a.2. _____<br>Name | From _____<br>To _____ |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and address | Dates of service |
|---|---|
| 26b.1. Armanino LLP<br>_____<br>Name<br>50 West San Fernando Street, Suite 500, San Jose, CA 95113 | From 2013<br>To Present |
| 26b.2. _____<br>Name | From _____<br>To _____ |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☑ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| 26c.1. _____<br>Name | |

---

Case: 19-41283    Doc# 45    Filed: 06/14/19    Entered: 06/14/19 19:22:30    Page 11 of
17

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|

26c.2.  _____
        Name

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☑ None

| Name and address |
|---|

26d.1.  _____
        Name

| Name and address |
|---|

26d.2.  _____
        Name

27. **Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No

☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|
| _____ | _____ | $_____ |

| Name and address of the person who has possession of inventory records |
|---|

27.1.  _____
       Name

Case: 19-41283    Doc# 45    Filed: 06/14/19    Entered: 06/14/19 19:22:30    Page 12 of 17

| Name of the person who supervised the taking of the inventory | | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|---|
| _____ | | _____ | $ _____ |
| **Name and address of the person who has possession of inventory records** | | | |
| 27.2. _____ | | | |
| Name | | | |

28. **List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Sonya Sohail | 7977 Foothill Knolls Dr., Pleasanton, CA 94558 | Director | |
| Sadia Sohail | 7977 Foothill Knolls Dr., Pleasanton, CA 94588 | Director and COO | |
| Sajid Sohail | 7977 Foothill Knolls Dr., Pleasanton, CA 94588 | Director and CEO | |

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☑ No
☐ Yes. Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| | | | _____ To _____ |
| | | | _____ To _____ |
| | | | _____ To _____ |
| | | | _____ To _____ |

30. **Payments, distributions, or withdrawals credited or given to insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ No
☑ Yes. Identify below.

| | Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|---|
| 30.1. | Sajid Sohail | 200,000.00 | 12/2018 | Loan to Fund Canadian Operations |
| | Name | | | |
| | 7977 Foothill Knolls Drive Pleasanton, CA 94588 | 24,000 | 04/2019 | Shareholder Loan |
| | | _____ | _____ | |
| | **Relationship to debtor** | | | |
| | Director and CEO | | _____ | |

Case: 19-41283    Doc# 45    Filed: 06/14/19    Entered: 06/14/19 19:22:30    Page 13 of 17

**Name and address of recipient**

30.2

Name

**Relationship to debtor**

31. **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ No

☑ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|
| CloudStream Media, Inc. | EIN: 46-2726031 |

32. **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☐ No

☑ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the pension fund |
|---|---|
| TriNet 401(k) Plan | EIN: Contract number 932003-04168 |

---

**Part 14:**    **Signature and Declaration**

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    06/14/2019
               MM / DD / YYYY

✗ /s/ _____    Printed name  Sajid Sohail
Signature of individual signing on behalf of the debtor

Position or relationship to debtor  Director and CEO

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**

☐ No

☑ Yes

## Continuation Sheet for Official Form 207

**3) Certain payments or transfers to creditors within 90 days before filing this case**

| | | |
| --- | --- | --- |
| **Alive ProStudios, 126 Upper Post Road, Vaughan, ON L6A-4J9 CANADA,** | $10,822.46 | Marketing |
| **Altair Technologies, Office 16, 1st Floor, Plot 14 Executive Complex G-8, Markaz, PAKISTAN,** | $125,000.00 | Research Team |
| **American Express, PO Box 981535, El Paso, TX 79998** | $138,962.63 | General Spending |
| **Aryana Sayeed, 7 Song Bird Dr., Markham, ON L3S-3X7 CANADA,** | $8,000.00 | Marketing |
| **ARY, 76 North Broadway, Suite 3012, Hicksville, NY 11801** | $80,000.00 | Content Payment |
| **Byron Raphael,** | $40,000.00 | Legal Expenses |
| **Chamberlin Properties I LP, 5860 W. Las Positas Blvd. #21, Pleasanton, CA 94588** | $22,722.19 | Office Rent |
| **Dunya Holdings, 8/A Abbot Rd., Lahore, PAKISTAN,** | $10,000.00 | Content and Media Expense |
| **Fed Ex, PO Box 7221, Pasadena, CA 91109** | $15,674.22 | Postage, Freight and Delivery |
| **Highwinds, 20201 McKinney Ave. Suite 1100, Dallas, TX 75201** | $67,051.47 | CDN Internet Database |
| **Keller & Benvenutti, 650 California Street Suite 1900, San Francisco, CA 94108** | $45,000.00 | Legal Expenses |
| **NSC Worldwide Limited, RM 11-12 Block B, the 3rd Industrial Park Huangtian, Hourui, Baoan District, Shenzhen, CHINA,** | $25,167.72 | Postage, Freight, and Delivery |
| **O'Melveny & Meyers, Two Embarcadero Center 28th Floor, San Francisco, CA 94111** | $95,308.54 | Legal Expenses |
| **Pankaj Bhushan, 9015** | $19,000.00 | Marketing |

Official Form 207     Statement of Financial Affairs for Non-Individuals

## Continuation Sheet for Official Form 207

Cynthia Street, Apt. #14,
West Hollywood, CA 90069

| | | |
|---|---|---|
| ShenZhen Geniatech, 18F, GDC Building, No. 9 GaoXin Centre 3rd Avenue, Nanshan District, Shenzhen, CHINA 518057, | $185,115.00 | Inventory |
| Sherzaad Entertainment, 7 Song Bird Drive, Markham, ON, L3S-3X7 CANADA, | $16,000.00 | Marketing |
| SocialHi5, Inc., 4701 Patrick Henry Drive #25, Santa Clara, CA 95054 | $27,619.85 | Marketing |
| Target CW, 181 Bay Street Suite 4400, Toronto, ON, MJ2T3 CANADA, | $92,757.64 | Consulting |
| Tolo, Mick Mall, #6 Wickham Cay PO Box 3085, Road Town, Tortola, BRITISH VIRGIN ISLANDS, | $80,000.00 | Content and Media Expense |
| Unisoft Services, 5536 Sunny Oaks Dr., San Jose, CA 95123 | $23,111.09 | Telecommunication Expense |
| Xumax Inc., 122 Frini Court, Woodbridge, ON L4H2V6 CANADA, | $68,711.19 | Marketing Consulting |

**4) Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

| | | |
|---|---|---|
| Mohsin Salahuddin | 6976 Lassen Ct., Pleasanton, CA 94588 | $73,646.00 |
| Arsalan Salahuddin | 6976 Lassen Ct., Pleasanton, CA 94588 | $51,749.00 |
| Samir Sohail | 152 Arabian Way, Scotts Valley, CA 95066 | $188,500.00 |
| Sonya Sohail | 7797 Foothill Knolls Drive, Pleasanton, CA 94588 | $114,154.00 |
| Rick Bottomley | 10741 Green Valley Drive, Gilroy, CA 95020 | $198,258.00 |
| Sadia Sohail | 7977 Foothill Knolls Drive, Pleasanton, CA 94588 | $149,773.00 |
| Sajid Sohail | 7977 Foothill Knolls | $307,500.00 |

## Continuation Sheet for Official Form 207

**Drive, Pleasanton, CA**

               **94588**

**17) Pension Contributions**

**TriNet 401(k) Plan**       **Contract number**
                                   **932003−04168**