Mark Punzalan (State Bar No. 247599)
Email: mark@chanpunzalan.com
Jin Im-Saeteurn (State Bar No. 266810)
Email: jin@chanpunzalan.com
A. Chowning Poppler (State Bar No. 272870)
Email: chowning@chanpunzalan.com
Lawrence Ng (State Bar No. 328082)
Email: lawrence@chanpunzalan.com
CHAN PUNZALAN LLP
22 Battery Street, Suite 401
San Francisco, CA 94111
Telephone: 650.362.4150

*Counsel for Defendants*
*JadooTV, Inc. and Sajid Sohail*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C., | Case No. 3:20-cv-01891-CRB |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DISH NETWORK L.L.C.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION** |
| vs. | |
| JADOOTV, INC. and SAJID SOHAIL, | |
| Defendants. | |

Date: June 9, 2023
Time: 10:00 am
Dept: 6
Judge: Hon. Charles R. Breyer

# TABLE OF CONTENTS

I.     INTRODUCTION & SUMMARY OF ARGUMENT ........................................................... 1

II.    STATEMENT OF ISSUES TO BE DECIDED ................................................................. 3

III.   STATEMENT OF DISPUTED FACTS ............................................................................. 3

   A.   JADOOTV WAS NOT CREATED TO TRANSMIT UNLICENSED MATERIAL ................................... 3

      1.   JadooTV Did Not Generate Advertising Revenue from eMedia or VOD Content added
      by Third Parties ............................................................................................................... 6

      2.   JadooTV Has Robust Copyright Infringement and Digital Millennium Copyright Act
      ("DMCA") Policies ......................................................................................................... 6

      3.   JadooTV Responded to DISH's Notices of Infringement ................................................. 7

IV.    LEGAL STANDARD ......................................................................................................... 8

V.     ARGUMENT ...................................................................................................................... 8

   A.   DEFENDANTS ARE ENTITLED TO SAFE HARBOR UNDER THE DIGITAL MILLENNIUM
   COPYRIGHT ACT ("DMCA"), 17 U.S.C. § 512 ............................................................................. 8

      1.   JadooTV Meets DMCA's Threshold Requirements ......................................................... 9

      2.   JadooTV is Entitled to Safe Harbor Under 17 U.S.C. § 512(a), (c), (d) .......................... 10

   B.   JADOOTV DID NOT DIRECTLY INFRINGE DISH'S PURPORTED COPYRIGHTED MATERIAL .... 14

      1.   DISH's Copyrights & Protected Content .......................................................................... 14

      2.   JadooTV Did Not Distribute DISH's Content Through its e-Media and Video-on-
      Demand (VOD) Features ............................................................................................... 14

      3.   E-Media was not Preconfigured to Add E-Media Content ............................................. 15

      4.   JadooTV Did Not Directly Infringe DISH's Works Because Its Role Was Entirely
      Passive ......................................................................................................................... 15

      5.   Defendants Were Not the Direct Cause of the Infringement .......................................... 16

      6.   Third Parties, not JadooTV, Created the "South Asian Super Pack" (SASP) for eMedia
      16

   C.   JADOOTV DID NOT SECONDARILY INFRINGE DISH'S PURPORTED COPYRIGHTED MATERIAL
   19

      1.   JadooTV did not Induce Infringement and is not Contributorily Liable ......................... 19

---

i

2.    JadooTV Took Extraordinary Efforts to Prevent Infringement and Cannot be Liable for Materially Contributing to it ................................................................................. 22

3.    JadooTV is not Vicariously Liable because it Neither Controlled Content Added by Third Parties Nor did it Receive a Direct Financial Benefit from eMedia and VOD ............. 22

D.    SOHAIL IS NOT PERSONALLY LIABLE FOR JADOOTV'S INFRINGEMENT ................................ 23

E.    DISH IS NOT ENTITLED TO STATUTORY DAMAGES, JADOOTV'S PROFITS, ATTORNEYS' FEES OR AN INJUNCTION ........................................................................................................... 24

1.    Profits ........................................................................................................... 24

2.    Statutory Damages ........................................................................................ 24

3.    Attorneys' Fees and Costs ............................................................................ 25

4.    Permanent Injunction .................................................................................... 25

**VI.   CONCLUSION** ........................................................................................................ **25**

**TABLE OF AUTHORITIES**

CASES

*American Broadcasting Companies, Inc. v. Aereo, Inc.*,
573 U.S. 431 (2014)..........................................................................................15

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 255 (1986) .....................................................................................8

*Bangkok Broad. & T.V. Co. v. IPTV Corp.*,
742 F.Supp.2d 1101, 1114-15 (C.D. Cal. 2010) ..........................................2, 23

*Broad. Music, Inc. v. Benchley Ventures, Inc.*,
131 F. Supp. 3d 1097, 1105 (W.D. Wash. 2015) ..........................................2, 25

*Carson v. Verismart Software*,
2012 WL 1038662, at *5 (N.D. Cal. Mar. 27, 2012)....................................2, 23

*Celotex Corp. v. Catrett*,
477 U.S. 377, 322-23 (1986)................................................................................8

*Columbia Pictures Industries, Inc. v. Fung*,
710 F.3d 1020, 1037 (9th Cir. 2013)..........................................................1, 19, 22

*Corbis Corp. v. Amazon.com, Inc.*,
351 F. Supp. 2d  1090, 1110-11 (W.D. Wash. 2004)........................................12

*Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*,
606 F.3d 612 (9th Cir. 2010)..............................................................................12

*Desire, LLC v. Manna Textiles, Inc.*,
986 F.3d 1253, 1271 (9th Cir. 2021)...............................................................2, 24

*Ellison v. Robertson*,
357 F.3d 1072, 1076 (9th Cir. 2004).............................................................14, 23

*Fabian Perez Art Publishing LLC v. Las Brujas Inc.*,
No. CV15-1847, 2015 WL 11430871, at *4 (C.D. Cal. 2015) ........................10

*Flava Works, Inc. v. Gunter*,
689 F.3d 754 (7th Cir. 2012)..............................................................................13

*Hitek Software LLC v. Timios, Inc.*,
No. CV 12-709, 2012 WL 2366368 (C.D. Cal. June 18, 2012)......................19

*Io Group, Inc. v. Veoh Networks, Inc.*,
586 F.Supp.2d 1132, 1142 (N.D. Cal. 2008) .......................................... passim

iii

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
545 U.S. 913, 930 (2005) ................................................................................................ 19

*MGM Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913, 937 (2005) ....................................................................................... 2, 19, 20

*Nintendo of America, Inc. v. Dragon Pacific Intern.*,
40 F.3d 1007, 1010 (9th Cir. 1994) ................................................................................ 24

*Obodai v. Demand Media, Inc.*,
No. 11 Civ. 2503, 2012 WL 2189740, at *6 (S.D.N.Y. June 13, 2012) ........................ 12

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146,1172 (9th Cir. 2007) ........................................................................ passim

*Perfect 10, Inc. v. CCBill LLC*,
340 F. Supp. 2d 1077, 1094 n.12 (C.D. Cal. 2004)
*aff'd in part*, 488 F.3d 1102, 1111 (9th Cir. 2007) ...................................................... 10

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
213 F. Supp. 2d 1146, 1174 n.18 (C.D. Cal. 2002) ...................................................... 10

*Perfect 10, Inc. v. Giganews*, Inc.,
847 F.3d 657, 666, 668, 670 (9th Cir.2017) ................................................... 1, 14, 16, 22

*Perfect 10, Inc. v. Visa Int'l Service Ass'n*,
494 F.3d 788, 806 (9th Cir. 2007) ................................................................................. 13

*Sony Corp. of America v. Universal City Studios, Inc.*,
464 U.S. 417, 442 (1984) ............................................................................................... 20

*Spanski Enterprises, Inc. v. Telewizja Polska, S.A.*,
883 F.3d 904, 910-11 (D.C. Cir. 2018) ......................................................................... 15

*UMG Recordings, Inc. v. Veoh Networks, Inc.*,
620 F. Supp. 2d 1081, 1088 (C.D. Cal. 2008) ................................................................ 9

*UMG Recordings, Inc. v. Veoh Networks, Inc.*,
665 F. Supp. 2d 1099, 1108 (C.D. Cal. 2009) .............................................................. 12

*VHT, Inc. v. Zillow Grp., Inc.*,
918 F.3d 723, 731 (9th Cir. 2019) ............................................................................ 14, 16

*Viacom Int'l, Inc. v. YouTube, Inc.*,
676 F.3d 19, 41 (2d Cir. 2012) ........................................................................................ 9

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DISH'S MOTION FOR SUMMARY JUDGMENT

S<small>TATUTES</small>

17 U.S.C. § 505 ......................................................................................................... 25
17 U.S.C. § 504 ......................................................................................................... 24
17 U.S.C. § 512 ................................................................................................... passim

R<small>ULES</small>

Federal Rule of Civil Procedure 56 .............................................................................. 3

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DISH'S MOTION FOR SUMMARY JUDGMENT

1

## I.   INTRODUCTION & SUMMARY OF ARGUMENT

2

"Copyright law attempts to strike a balance amongst three competing interests: those of

3  the copyright holders in benefiting from their labor; those of entrepreneurs in having the latitude

4  to invent new technologies without fear of being held liable if their innovations are used by

5  others in unintended infringing ways; and those of the public in having access both to

6  entertainment options protected by copyright and to new technologies that enhance productivity

7  and quality of life." *Columbia Pictures Industries, Inc. v. Fung*, 710 F.3d 1020, 1037 (9th Cir.

8  2013).

9

Defendants JadooTV, Inc., and its founder and CEO, Mr. Sajid Sohail, fall into the

10  second category as an innovative company that was created in 2008 to bring South Asian and

11  multicultural television, movies, and music to audiences from India, Pakistan, Bangladesh,

12  Afghanistan and the Middle East. Defendants set out to benefit the third category, the public, by

13  reaching multicultural audiences through Internet-based platforms and applications, and by

14  offering its services at affordable prices.

15

Plaintiff DISH Network L.L.C., on the other hand, does not fall into any of the categories

16  as it is neither a creator, nor an innovator, nor a consumer.  Instead, DISH attempts to pervert the

17  purposes of copyright law for its own monopolistic goals by eliminating competitors like

18  JadooTV in order to obtain market share to drive up costs to consumers and pocket the profits.

19  DISH's motion for summary judgment should be denied in its entirety because:

20

JadooTV's qualification for safe harbor under the Digital Millennium Copyright Act

21  ("DMCA"), 17 U.S.C. § 512, precludes any monetary liability for all forms of direct or

22  secondary copyright infringement claims, including all claims DISH has asserted in this action.

23  *Io Group, Inc. v. Veoh Networks, Inc.,* 586 F.Supp.2d 1132, 1142 (N.D. Cal. 2008).

24

Defendants are not liable for direct infringement of DISH's copyrights because their role

25  was entirely passive: the infringing file the "South Asian Super Pack" ("SASP") was created and

26  transmitted by third parties, and there is insufficient evidence connecting those third parties to

27  Defendants. *Perfect 10, Inc. v. Giganews,* Inc., 847 F.3d 657, 666, 668, 670 (9th Cir.2017) (no

28

<hr>

1

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DISH'S MOTION FOR SUMMARY
JUDGMENT

1   liability for defendant whose "actions were akin to passively storing material at the direction of

2   users in order to make that material available to other users upon request").

3         Even if DISH is able to establish direct infringement, its secondary liability claims

4   against Defendants for inducement, material contribution, and vicarious liability fail. JadooTV

5   did not take any affirmative steps to foster infringement by third parties for inducement liability.

6   *MGM Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 937 (2005) (the court was "mindful of the

7   need to keep from trenching on regular commerce or the development of technologies with

8   lawful and unlawful potential"). For material contribution, once JadooTV was made aware of the

9   specific infringing material available through eMedia and VOD, JadooTV immediately took

10  action to prevent further infringement, making liability wholly inappropriate. *Perfect 10, Inc. v.

11  Amazon.com, Inc.*, 508 F.3d 1146,1172 (9th Cir. 2007). For vicarious liability, JadooTV neither

12  had the right nor ability to control the direct infringement nor received a direct financial benefit

13  from it. *Perfect10 v. Amazon*, 508 F.3d at 1176.

14        Mr. Sohail's was not the guiding spirit or central figure of the infringement and therefore

15  cannot be personally liable. *Bangkok Broad. & T.V. Co. v. IPTV Corp.,* 742 F.Supp.2d 1101,

16  1114-15 (C.D. Cal. 2010)(quoting *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 524 (9th Cir. 1989);

17  *Carson v. Verismart Software*, 2012 WL 1038662, at *5 (N.D. Cal. Mar. 27, 2012).

18        DISH is not entitled to monetary damages because of Defendants safe harbor under

19  DMCA. Even if DMCA safe harbor is not available to JadooTV, DISH's demand for statutory

20  damages and profits constitutes an improper windfall.  *Desire, LLC v. Manna Textiles, Inc*., 986

21  F.3d 1253, 1271 (9th Cir. 2021) ("statutory damages are intended as a substitute for profits or

22  actual damage and should not provide copyright owners a windfall").

23        It is undisputed the alleged infringement stopped in August 2019 when JadooTV removed

24  eMedia from all devices.  As there is no threat of continuing harm, DISH's request for a

25  permanent injunction is unwarranted. *Broad. Music, Inc. v. Benchley Ventures, Inc.*, 131 F. Supp.

26  3d 1097, 1105 (W.D. Wash. 2015).[1]

27  _____

28  [1] It is Defendants' understanding that DISH no longer holder exclusive broadcasting rights to the channels
    in the U.S. Sohail Decl. ¶¶56, 69.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DISH'S MOTION FOR SUMMARY
JUDGMENT

## II.     STATEMENT OF ISSUES TO BE DECIDED

Whether DISH has met its burden under Federal Rule of Civil Procedure 56 that there is no genuine dispute as to any material fact regarding: (1) Defendants' qualification for safe harbor under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512; (2) Defendants' liability for direct copyright infringement; (3) Defendants' liability for secondary copyright infringement; (4) Defendant Sajid Sohail's personal liability for infringement; (5) DISH's demand for statutory damages and JadooTV's profits as well as attorneys' fees and a permanent injunction.

## III.     STATEMENT OF DISPUTED FACTS

### A.  JadooTV Was Not Created to Transmit Unlicensed Material

JadooTV, Inc. ("JadooTV") was created in 2008 to bring South Asian and multicultural television, movies, and music to audiences from India, Pakistan, Bangladesh, Afghanistan and the Middle East. Declaration of Sajid Sohail ("Sohail Decl.") at ¶7. JadooTV set out to reach its multicultural audiences through Internet-based platforms and applications and offered its services at affordable prices. *Id.* This was a paradigm shift away from cumbersome satellite systems toward a more nimble and cost-effective system: all a customer needed was a good internet connection to upload content and a good network to download and play content inexpensively using a JadooTV set-top box ("STB"). *Id.* at ¶8.  JadooTV's founder and CEO, Sajid Sohail, was inspired to start the company because there was a lack of viable media options for the South Asian community who wanted to stay connected with their culture. *Id.* at ¶7.

JadooTV sells set-top-boxes[2] to consumers which offer linear live-stream broadcasts, video-on-demand ("VOD") programming. Starting in 2015, JadooTV launched eMedia ("External Media") which allowed third party channel managers, content providers, and developers to add content through XML files added to a third party website, GitHub. Sohail Decl. ¶27. EMedia was available on JadooTV's STB and on JadooTV's mobile Android and iOS

---

[2] A set top box is a computing device that is able to receive video signals and translate them for viewing onto a television screen. JadooTV's STB runs on an Android operating system ("OS"). Report of Elizabeth Groves, Ph.D. ("Groves Report") at ¶18, attached as **Ex. A** to the Declaration of Elizabeth Groves ("Groves Decl.").

(Apple) applications as well as applications available through AppleTV and SonyTV.[3]  JadooTV licensed content on a long-term basis from studios and broadcast channels based primarily in Pakistan and India.[4]

**Development and Purpose of E-Media.** EMedia was an application that JadooTV released in 2015 and it allowed users to add content to their STBs and mobile devices from the Internet or from external media devices.  Sohail Decl. ¶27. The head of engineering in Pakistan, Faisal Abdullah, developed and implemented all software applications, including eMedia, with a team of approximately 20 software engineers. *Id.* at ¶28. Implementation of eMedia was completely in the hands of the engineering team in Pakistan and they determined that XML files would be used to add content to JadooTV and that it would be hosted on GitHub, a website and cloud-based service.[5] *Id.* JadooTV believed eMedia would be a useful feature to add to Jadoo4 and Jadoo5 boxes because the company received many requests to add content to the platform, but as a small company, there were not enough people to manage all of the requests to add content. Sohail Decl. ¶28. The concept behind eMedia was to allow content owners to create and add content to JadooTV's platform worldwide. *Id.* Providing eMedia made the platform open, meaning that people outside of JadooTV could add to it. Indeed, JadooTV made its guide to add eMedia publicly available on its website.[6] JadooTV did not and could not identify who was adding content to eMedia through GitHub, nor did it have the resources and people power to review every video and file uploaded by third parties to eMedia.  Sohail Decl. ¶¶32, 47.

**JadooTV's Set-Top-Boxes (STB).** JadooTV's set-top boxes were manufactured by a third party that determined the features of the hardware and the Android operating system.  The STBs were sold without content in the eMedia application.  Sohail Decl. ¶24. After purchase,

---

[3] Sohail Decl. ¶28; March 2016 JadooTV Confidential Information Memorandum at JAD001044 attached as **Ex. 1** to the Declaration of A. Chowning Poppler ("Poppler Decl.").
[4] **Ex. 1** at JAD001044 to the Poppler Decl.
[5] There are many benefits to using a third-party service rather than a company hosting and managing its own site, which is why third-party services such as DropBox, Box, Google Drive, and Microsoft OneDrive are so common. Groves Report at ¶24, attached as **Ex. A** to the Groves Decl.
[6] *See, e.g.,* https://jadootv.com/wp-content/themes/twentyseventeen/assets/emedia/eMedia_Features_XMLInterface_V1.3.pdf (attached as **Ex. B** to Sohail Decl. (JAD000004-JAD000032)).

4

when a customer turned on the set-top box for the first time the operating system would check for software updates, but content would not be loaded on to eMedia. *Id.*

**Video-on-Demand (VOD).** JadooTV's VOD feature had content from several sources. First, JadooTV maintained VOD content on its servers. Second, some VOD content was added through eMedia by third parties. Third, most of the VOD content was bookmarked from publicly available sources on the internet, like YouTube and Daily Motion. For the latter two categories, JadooTV neither hosted that material on its servers nor copied it to its servers. Sohail Decl. ¶25.

**Content Delivery Networks (CDN).** A content delivery network (CDN) is a geographically distributed group of servers that caches content close to end users which allows for the quick transfer of content. Sohail Decl. ¶37. JadooTV paid CDNs for the content that it controlled and maintained, which included LiveTV, some VOD content, and movies. *Id.* ¶38. JadooTV used Highwinds as its CDN for content in the United States. *Id.* at ¶39. For other parts of the world, including New Zealand and Australia, JadooTV had CDN accounts with Akamai Technologies and Verizon Digital Media Services. *Id.* JadooTV's CDN bills were based on users downloading material JadooTV maintained, had rights to, and was within JadooTV's control. *Id.*

Contrary to DISH's assertions, JadooTV did not have CDN accounts for content added by third parties to eMedia, because that content was not on JadooTV's servers, it was stored on GitHub. *Id.* at ¶40. Similarly, JadooTV did not have CDN accounts for VOD content that came from publicly available online sources like YouTube and DailyMotion because that content was not maintained on JadooTV's servers, and it was added by third parties. *Id.* Most notably, the CDNs DISH asserts were used to transmit their copyrighted material which they refer to as the South Asian Super Pack ("SASP"), were not JadooTV's CDN accounts.[7]

//

//

---

[7] JadooTV's Verizon FC2A account was primarily used for traffic outside the United States, which does not implicate U.S. distribution rights DISH is asserting in this matter.  Sohail Decl. ¶41. DISH claims that several channels in the South Asian Super Pack ("SASP") were transmitted from JadooTV's FC2A account (DISH's MSJ at 7:25-8:1 (ECF No.242)). If there was such a link it was likely hacked, which frequently happened and that is why JadooTV implemented encryption tools.  Sohail Decl. ¶41.

### 1. JadooTV Did Not Generate Advertising Revenue from eMedia or VOD Content added by Third Parties

JadooTV generated revenue through sales of STBs, advertising on its linear live-stream broadcasts, and through monthly and annual subscription rates on its mobile Android and Apple applications. Sohail Decl. ¶42. The majority of JadooTVs revenues came from the sale of its STBs through retail stores in densely populated South Asian communities and through its website. *Id.* Customers made purchases through JadooTV's online shop through the company's PayPal account.[8] *Id.* JadooTV generated its advertising revenue by embedding advertisements in its linear channels available through the LiveTV part of its service. The advertising partner would replace international advertisements with ads to its viewers by serving precisely targeted ads based on demographic profiles, considering the nature of the content, device, profile, geography, history, language, and context.[9] Advertising was not placed on content from eMedia or from online sources from YouTube because JadooTV did not have control over that third party content. JadooTV had no incentive to encourage consumers to view what DISH calls "protected" content, because JadooTV did not generate any advertising revenue from users viewing the bookmarked VOD content. Sohail Decl. ¶41. Moreover, any advertisement that was embedded in the bookmarked VOD content was provided by the website hosting the content, not by JadooTV. Sohail Decl. *Id.*

### 2. JadooTV Has Robust Copyright Infringement and Digital Millennium Copyright Act ("DMCA") Policies

As stated in its Copyright Policy that has been in place throughout the 2016-2019 time period, "JadooTV takes copyright and other intellectual property rights very seriously. It is JadooTV's policy to (1) expeditiously block access to or remove content that it believes in good faith may contain material that infringes the copyrights of third parties and (2) remove and discontinue service to repeat offenders."[10] JadooTV also maintained a Terms of Use and

---

[8] As part of his role as the network operations manager overseeing livestreams, Haseeb Shah, was given limited access to JadooTV's PayPal account. DISH Apx. at 1008 (ECF No. 242-6 at 88). Attached as **Ex. 6** to Poppler Decl.; Sohail Decl. ¶17. Mr. Shah could make payments to server companies he needed to use for JadooTV's service. *Id.*

[9] Sohail Decl. ¶43; **Ex. 1** at JAD001045 to Poppler Decl.

[10] Copyright Policy. **Ex. C** to Sohail Decl. (https://jadootv.com/copyright/)

Purchase Policy[11] which includes a provision regarding "Acceptable Use," requiring users to agree that they will not use the service to "infringe on our or any third party's copyright." The policy goes on to state that "[i]mproper use of the Services and/or Content may result in termination of your access to and use of the Services, and/or civil or criminal liabilities." The policy references JadooTV's Repeat Infringer Policy, which is posted in JadooTVs' Copyright Policy,[12] and provides for the termination of accounts who are determined to be repeat infringers.

The Copyright Policy provides the procedure for responding to complaints from copyright holders pursuant to the DMCA. Specifically, JadooTV (1) has appointed an agent[13] for receiving notifications of claimed infringement; (2) publishes on its website the information needed to process a DMCA notice; and (3) informs complainants how and where to submit DMCA notices (providing multiple means of doing so). Upon receipt of a notice, JadooTV's practice was to (1) review the notice to determine if it contained the required information, (2) request more information if needed, (3) if the notice had adequate information, JadooTV investigated and tried to identify the content, (4) if the content was maintained on JadooTV's servers and was within its control, it removed the content, (5) notify the complainant of the results of its investigation, (6) notify the person who posted the content if that person can be identified and give them an opportunity to send a counter-notice. Sohail Decl. ¶50. Defendants followed these steps upon receipt of DISH's notices.

### 3. JadooTV Responded to DISH's Notices of Infringement

DISH contacted JadooTV in or around 2016 claiming that it had exclusive rights to South Asian content that was available through JadooTV's eMedia application and video-on-demand ("VOD") features. Sohail Decl. ¶58. Between 2016 and 2019, JadooTV engaged in numerous communications with DISH explaining its eMedia and VOD features.[14] In 2016, Mr. Sohail inquired with JadooTV's engineering team in Pakistan if eMedia content could be blocked but

---

[11] Terms of Use Policy. **Ex. D** to Sohail Decl. (https://jadootv.com/terms-of-use-purchase/)
[12] Copyright Policy. **Ex. C** to Sohail Decl.
[13] JadooTV registered its agent with the U.S. Copyright Office in accordance with DMCA. Sohail Decl. ¶49.
[14] JadooTV's responses to DISH between 2016 and 2019 are attached as **Exhibits E, F, G, and H** to the Sohail Decl.

1  was informed it would be practically impossible because JadooTV had no control over the

2  content customers added to their boxes and the company did not track that information. Sohail

3  Decl. ¶¶59-60; **Ex. F** to Sohail Decl. After DISH's complaint was filed in November 2018,

4  JadooTV's engineering team revisited the task of trying to design a software patch that would

5  filter out content from eMedia if content names were provided by content owners. Sohail Decl.

6  ¶63. The engineering team spent four month designing software to filter the content because it

7  could not be removed. *Id.* By April 2019 the filter was in place, but it had still had flaws. *Id.*

8  ¶¶63-66. Without a viable filter solution, in August of 2019, JadooTV made the difficult decision

9  to completely remove the eMedia app from its set-top boxes and apps. Sohail Decl. ¶65. This

10  was a last resort because eMedia was well-liked and used by customers and content providers for

11  purposes completely unrelated to DISH's content. *Id.*

12      As for VOD content, JadooTV spent countless hours investigating each title and ultimately

13  removed bookmarks from unofficial channels and blocked that content on eMedia through the

14  filter. Sohail Decl. ¶66. Nearly half of the 1000 titles DISH complained about was available on

15  YouTube through the channel's official YouTube channel and JadooTV did not remove those

16  bookmarks as the content creator had made that material publicly available to the public and there

17  was no reason for JadooTV to second guess the rights those channels had in their own content. *Id.*

18  ¶67. Defendants complied with all of DISH's demands.

19      **IV.    LEGAL STANDARD**

20      Summary judgment is appropriate if DISH can show that there is no genuine issue of material

21  fact and is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 377, 322-23

22  (1986). The court must view the evidence in the light most favorable to Defendants, as the non-

23  moving party, and it must credit the evidence tendered by Defendants and draw all justifiable

24  inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

25      **V.     ARGUMENT**

26          **A. Defendants are Entitled to Safe Harbor Under the Digital Millennium
              Copyright Act ("DMCA"), 17 U.S.C. § 512**

27

28

As an online service provider that respects the rights of copyright holders, JadooTV is shielded from all of DISH's copyright infringement claims by the safe harbor provisions of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512. JadooTV enables users to upload videos and share them with others through eMedia and adds bookmarks to publicly available content added by third parties on YouTube and DailyMotion. Sohail Decl. ¶¶25-34. JadooTV does not and cannot view every video uploaded by users to determine whether it infringes copyrights. *Id.* ¶47. JadooTV relies on copyright holders to inform it if a user has uploaded infringing content. *Id.* Recognizing that online entities such as JadooTV would not be able to survive if they were exposed to liability for every claim of copyright infringement arising from material posted by third parties, DMCA provides a detailed and balanced framework that immunizes from copyright infringement liability online businesses that comply with the requirements of that framework.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007). JadooTV's qualification for DMCA safe harbor precludes any monetary liability for all forms of direct or secondary copyright infringement claims, including all claims DISH has asserted in this action. 17 U.S.C. § 512(c)(1); *Viacom Int'l, Inc. v. YouTube, Inc.,* 676 F.3d 19, 41 (2d Cir. 2012); *Io Group, Inc. v. Veoh Networks, Inc.,* 586 F.Supp.2d 1132, 1142 (N.D. Cal. 2008). Defendants have complied with DMCA's requirements and as a result, DISH's motion for summary judgment should be denied in its entirety.

### 1.   JadooTV Meets DMCA's Threshold Requirements

To be eligible for DMCA safe harbor, a party must meet the following threshold conditions: (1) qualify as a "service provider" (17 U.S.C. § 512(k)); (2) adopt and reasonably implement and inform users of a policy that it may in appropriate circumstances terminate accounts of repeat infringers (17 U.S.C. § 512(i)(1)(A)), and (3) does not interfere with "standard technical measures" used by copyright owners to identify or protect their works (17 U.S.C. § 512(k)(1)(B)). *Io Group, Inc.,* 586 F.Supp.2d at 1142-43.  JadooTV satisfies these requirements.

First, JadooTV is a service provider as falls within the broad statutory definition: it offers the transmission/provides connections for digital online communications, between points specified by a user of material of the user's choosing without modification to the content of the

9

material sent or received.  Specifically, eMedia allows third parties to add content through XML files on GitHub, which is available to JadooTV's customers who have a JadooTV set top box or mobile application. *See* Section III(A). Similarly, some of JadooTV's VOD content was made available to users through bookmarks to content added by third parties to publicly available websites like YouTube and DailyMotion. *See* Section III(A).  Users select the content and JadooTV does not have the ability to modify any of the material sent or received.

Second, JadooTV adopted, reasonably implemented, and informed users of its policy that it may terminate repeat infringers. JadooTV publishes its copyright and repeat-infringer policy on its website, identifies a copyright agent, provides multiple forms of contact including by mail, fax, and email, tracks DMCA notices it receives, and terminates user accounts when it receives three notices of infringement.  *Perfect 10, Inc. v. CCBill LLC,* 340 F. Supp. 2d 1077, 1094 n.12 (C.D. Cal. 2004) (a policy that terminates accounts that have received three DMCA notices is reasonable) *aff'd in part*, 488 F.3d 1102, 1111 (9th Cir. 2007) ("A service provider reasonably implements its repeat infringer policy if it terminates users when 'appropriate'"). Indeed, JadooTV identified users who had added copyrighted material and frequently removed them. Sohail Decl. ¶53.

Third, JadooTV accommodates and does not interfere with any "standard technical measures" used by copyright owners to identify or protect their works. 17 U.S.C. § 512(k)(1)(B). This required standard-setting process has never occurred, and thus, as a matter of law, there are currently no relevant "standard technical measures" with which JadooTV could have interfered. See *Perfect 10, Inc. v. Cybernet Ventures, Inc.,* 213 F. Supp. 2d 1146, 1174 n.18 (C.D. Cal. 2002) ("It … appears to be an open question if any conduct or policy could interfere with 'standard technical measures.'"), *abrogated on other grounds*, as noted in *Fabian Perez Art Publishing LLC v. Las Brujas Inc.*, No. CV15-1847, 2015 WL 11430871, at \*4 (C.D. Cal. 2015). There is no dispute that JadooTV does not interfere with any such measures. Having satisfied the threshold conditions for eligibility, JadooTV is entitled to seek safe harbor under the DMCA.

**2.  JadooTV is Entitled to Safe Harbor Under 17 U.S.C. § 512(a), (c), (d)**

1    JadooTV is entitled to safe harbor under Sections 512(a) for transitory digital network

2    communications related to content available through eMedia, 512(c) for the VOD content that

3    was stored on its servers, and 512(d)[15] for the "information location tool" it utilized by

4    bookmarking YouTube and DailyMotion content for some of it VOD content.

5    Under Section 512(a),  a service provider that acts a data conduit at the request of a third

6    party by transmitting, routing, or providing connections for material through a system controlled

7    or operated by the service provider it will be shielded from liability for copyright infringement if

8    (1) transmission of content is initiated by someone other than the service provider (2) the

9    transmission is carried out through an automated technical process without selection by the

10   service provider; (3) the service provider does not select the recipients of the material except as

11   an automatic response to the user's request; (4) intermediate or transient copies are not stored or

12   retained on the service provider's system or network longer than necessary; and (5) the service

13   provider must not modify the content of the transmitted material. 17 U.S.C. § 512(a).

14   JadooTV satisfies these requirements. First, users download eMedia and select the

15   content they want to watch. Sohail Decl. ¶34. Second, this is an automated process and JadooTV

16   does not select the material for users.  Indeed, the content is provided by third parties through

17   XML files on GitHub. *Id*. JadooTV does not have control over that material. *Id*. Third, JadooTV

18   has no role in determining who receives the content as users make the content selections on

19   eMedia. *Id*. Fourth, eMedia material is not stored on JadooTV's servers, it is stored on third party

20   websites. *Id*. Fifth, JadooTV does not modify the content of the transmitted material eMedia, nor

21   does it have the ability to do so. *Id.*

22   Under Section 512(c)[16] safe harbor is not strictly limited to entities that offer mere

23   storage of material. *E.g., Io*, 586 F. Supp. 2d at 1147. Rather, the statute covers all "software

24

---

25   [15] Under Section 512(d), a service provider referring or linking users to an online location containing

26   infringing material or infringing activity, by using information location tools, including a directory, index, reference, pointer, or hypertext link is entitled to safe harbor protection if the service provider meets the

27   requirements that mirror 512(c). JadooTV fits within this definition because it provided links to users to online locations where third parties added content. See Section III(A).  JadooTV is entitled to safe harbor

28   for the same reasons articulated in the section related to Section 512(c), *infra*.
     [16] (A)(i) does not have actual knowledge that the material … is infringing;

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DISH'S MOTION FOR SUMMARY JUDGMENT

functions" that are "directed toward facilitating access to materials stored at the direction of users." *See*, *UMG Recordings, Inc. v. Veoh Networks, Inc.*, 620 F. Supp. 2d 1081, 1088 (C.D. Cal. 2008) ("UMG I"). As a result, entities that make user-uploaded material more readily accessible, like JadooTV, have been accorded safe harbor protection. *See*, e.g., *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1110-11 (W.D. Wash. 2004), *rejected on other grounds by Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612 (9th Cir. 2010). The automated, user-directed nature of JadooTV's operations plainly qualifies for safe harbor under § 512(c). See Sections III(A) and V(A)(2).

Having satisfied these requirements for § 512 (c) safe harbor, JadooTV is shielded from liability as to the content on eMedia and VOD unless DISH proves that JadooTV had knowledge[17] of the infringement alleged in the complaint and failed to expeditiously remove the allegedly infringing material from the JadooTV's website. DISH cannot satisfy this burden, because JadooTV expeditiously responded to DISH's notices and removed material it had control over and explored whether it was feasible to block other content. See Section III(A).

JadooTV does not have the right and ability to control the alleged infringements at issue here, and in any event does not receive a financial benefit directly attributable to the purported infringement. See 17 U.S.C.§ 512(c)(1)(B). "Both elements must be met for the safe harbor to be denied." *Io*, 586 F. Supp. 2d at 1150. The pertinent inquiry is not whether JadooTV has the right and ability to control its system, but rather, whether it has the right and ability to control the infringing activity. *Id.* at 1151.

---

(ii) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or
(iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;
(B) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and
(C) upon notification of claimed infringement [via a valid DMCA notice], responds expeditiously to remove, or disable access to, the material that is claimed to be infringing.

[17] A service provider's generalized understanding that material—even a great deal of material—containing copyrighted content is stored on its system is not enough to establish awareness of specific infringing activity. See, e.g., *Obodai v. Demand Media, Inc.*, No. 11 Civ. 2503, 2012 WL 2189740, at *6 (S.D.N.Y. June 13, 2012); *UMG Recordings, Inc. v. Veoh Networks, Inc.*, 665 F. Supp. 2d 1099, 1108 (C.D. Cal. 2009) ("UMG II") (rejecting the argument that a service provider's awareness that it was "hosting user-contributed material capable of copyright protection" creates disqualifying knowledge).

1       JadooTV's users added and accessed content through eMedia.[18] JadooTV does not have

2  access to, control over, or knowledge of what content a user adds to their device through eMedia.

3  Sohail Decl. ¶¶34, 60. Similarly, JadooTV's VOD content was sourced from publicly available

4  online locations from YouTube and DailyMotion. *Id.* ¶¶25, 35, 61. JadooTV did not place that

5  content on YouTube or DailyMotion, it simply bookmarked the location on the internet. *Id*. That

6  content was not hosted on JadooTV's servers, nor was it copied to JadooTV's servers if a user

7  clicks on a bookmarked link in the VOD section of JadooTV's service. [19]

8       Because JadooTV lacks the right and ability to control the allegedly infringing activity, it

9  is unnecessary to demonstrate that it does not receive a financial benefit directly attributable to it.

10  See *Perfect 10, Inc. v. Visa Int'l Service Ass'n*, 494 F.3d 788, 806 (9th Cir. 2007) (declining to

11  address issue of direct financial benefit because there was no right and ability to control).

12  Nonetheless, JadooTV did not receive a financial benefit directly attributable to the alleged

13  infringement because advertising was not placed on content from eMedia or from online sources.

14  Sohail Decl. ¶44. JadooTV had no incentive to encourage consumers to view what DISH calls

15  "protected" content, because JadooTV did not generate any advertising revenue from users

16  viewing the bookmarked VOD content. *Id*.

17       Once JadooTV was made aware of the specific infringing material available through

18  eMedia and VOD in 2016, Defendants immediately took action to prevent further infringement

19  including investigating whether it had control over the content DISH complained about,

20  inquiring with the engineering team[20] whether it was possible to block certain channels from

21  appearing in eMedia, removing content it had control over, keeping DISH apprised of its efforts,

22  and ultimately developing and implementing a filter, and when that was not entirely effective

23

24

25

---

26  [18] **Ex. A** to Sohail Decl. (https://jadootv.com/emedia/).

27  [19] No direct or contributory copyright infringement where company provides bookmarking links to
    allegedly infringing content. *Flava Works, Inc. v. Gunter*, 689 F.3d 754 (7th Cir. 2012).

28  [20] The team consisted of approximately 20 engineers, not over 100 as DISH states (DISH MSJ 17:17-18
    (ECF No.242).  Sohail Decl. ¶28.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DISH'S MOTION FOR SUMMARY
JUDGMENT

removing the eMedia application.[21] *See* **Ex. E, F, G, and H** to the Sohail Decl. and Section III(A). JadooTV satisfies the requirements for safe harbor under Section 12(c).

### B. JadooTV did not Directly Infringe DISH's Purported Copyrighted Material

DISH seeks summary judgment on its direct infringement claim against Defendants.  DISH MSJ 3:8-11:6 (ECF No. 242)). To prove a claim of direct copyright infringement, DISH must show that it owns the copyright and that JadooTV and Sajid Sohail violated one or more of the DISH exclusive rights under the Copyright Act.  *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). DISH must also show that Defendants were the direct cause of the infringement. *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 (9th Cir. 2019); *Perfect 10, Inc. v. Giganews, Inc.,* 847 F.3d 657, 666 (9th Cir. 2017).

### 1. DISH's Copyrights & Protected Content

There are several disputed facts regarding DISH's copyrighted works.  First, DISH claims ownership and validity of 97 registered works (DISH MSJ at 4:14-19 (ECF No.242)), but Defendants have only been given notice of 91 registered works listed in DISH's First Amended Complaint ("FAC") (ECF 194 at 37:22). Second, DISH's expert Gregory Duval ("Duval") states that "NagraStar periodically monitored the VOD section of JadooTV's service from January 23, 2018 through October 8, 2018" (Duval Decl. at ¶17, Apx. 1459 (ECF No. 242-8 at 7)). It is unclear how DISH can claim that its protected VOD content was available on JadooTV through April 1, 2019 (DISH MSJ 6:23-27 (ECF No. 242)) if no one was monitoring VOD content between October 9, 2018 through April 1, 2019.  Third, certain evidence of protected content being transmitted appears unreliable. For example, in Duval's report a screenshot of B4U Music Channel being purportedly transmitted on the JadooTV service appears to be a Colgate toothpaste commercial, not protected content.[22]

### 2. JadooTV Did Not Distribute DISH's Content Through its e-Media and Video-on-Demand (VOD) Features

---

[21] JadooTV spent significant time and resources developing and launching eMedia and none of DISH's suggestions for "not installing eMedia, blocking eMedia, hosting eMedia XML files on JadooTV's servers, providing conditional access to eMedia XML files, removing token protection, and filtering our SASP from eMedia" would be simple. (DISH MSJ 17:14-17 (ECF No.242)).

[22] NagraStar Analysis (DISH Apx. 1481 (ECF No. 242-8 at 29)).

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DISH'S MOTION FOR SUMMARY JUDGMENT

1    JadooTV did not violate any of DISH's exclusive rights under the Copyright Act, because

2    JadooTV did not "distribute" DISH's works.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d

3    1146 (9th Cir. 2007) (company that simply provides users with HTML instructions about where

4    to find copyrighted material online did not distribute copyrighted material in violation of the

5    Copyright Act). Defendants did not distribute DISH's material because they did not have control

6    over it. *See* control discussion related to Defendants' DMCA safe harbor, Section V(A)(2).

### 3.   E-Media was not Preconfigured to Add E-Media Content

8    DISH asserts JadooTV's 5S STB was pre-configured to automatically install copyrighted

9    works to eMedia.[23] All of JadooTV's STB models 4, 5, and 5S were manufactured and sold

10   without content in the eMedia application. Sohail Decl. ¶24. Indeed, JadooTV's customer

11   support logs show that customers regularly contacted the company about how to find eMedia and

12   how to add channels to STB 4, 5 and 5S indicating that it was not automatically on users STB.[24]

13   This disputed fact regarding whether 5S STB were preconfigured to add content precludes

14   summary judgment.

### 4.   JadooTV Did Not Directly Infringe DISH's Works Because Its Role Was Entirely Passive

16   Any direct infringement for distribution and transmission falls to the persons who added

17   DISH's content to eMedia, YouTube, DailyMotion, and other locations on the internet. DISH

18   relies on two cases that found companies were liable for violating public performance rights.

19   These cases are factually distinguishable because both involved active involvement transmitting

20   copyrighted material to viewers. In *Spanski Enterprises, Inc. v. Telewizja Polska, S.A.,* 883 F.3d

21   904, 910-11 (D.C. Cir. 2018), a Polish television broadcaster uploaded its own programs to its

22   website for U.S. audiences to watch on the VOD section of its website in violation of its

23   agreement with plaintiff to exclusively show those programs in the U.S. *Id.* at 906-907.  In

24   *American Broadcasting Companies, Inc. v. Aereo, Inc.*, 573 U.S. 431 (2014), a company used

25   antennas and a server to intercept television programs and rebroadcast them to subscribers on the

---

[23] Duval Decl. at ¶7, Apx. 1456 (ECF No. 242-8 at 4).

[24] Excerpt of JadooTV's call logs that DISH compiled. DISH Appendix of Exhibits ("Apx.") 1035 (ECF No. 242-6 at 115).  Attached as **Ex. 5** to Poppler Decl.

internet which was saved on the company's hard drive.  In contrast, here, when users accessed DISH's content through eMedia and VOD sections of JadooTV, that content was not uploaded to JadooTV's website nor was it stored on JadooTV's servers.  The material was stored on third party servers – GitHub, YouTube, and DailyMotion – and available through user's individual devices.  While the companies in *Spanski* and *ABC* had control over the content, JadooTV does not.

### 5.  Defendants Were Not the Direct Cause of the Infringement

For direct infringement, in addition to violating DISH's exclusive rights, DISH must also show that JadooTV acted with "volition" such that JadooTV was the direct cause of the infringement. *VHT, Inc. v. Zillow Grp.,Inc.*, 918 F.3d 723, 731 (9th Cir. 2019).  DISH must show Defendants had control over content by "selecting material for upload, download transmission or storage" or by "instigating any copying, storage or distribution of. . ." the copyrighted material. *Zillow,* 918 F.3d at 732; *see also Perfect 10, Inc. v. Giganews,* Inc., 847 F.3d 657, 666, 668, 670 (9th Cir.2017) (no liability for defendant whose "actions were akin to passively storing material at the direction of users in order to make that material available to other users upon request").  Defendant JadooTV is not the cause of the alleged infringement because it had no role in adding DISH's content to eMedia, adding content to YouTube, or selecting the content to play. Third parties added content to e-Media and to VOD through YouTube, and JadooTV's users selected what content to play. To the extent there was direct infringement, third-parties were the cause of it.[25]

### 6.  Third Parties, not JadooTV, Created the "South Asian Super Pack" (SASP)[26] for eMedia

DISH states that "[o]nly JadooTV had the intimate knowledge of JadooTV's accounts and STBs, including JadooTV's eMedia source code" and only JadooTV could have created the SASP file. DISH MSJ at 7:19-22 (ECF No. 242). This conclusion is based on assumptions that are not supported by the evidence. DISH's IPTV expert Nigel Jones ("Jones") states that creating

---

[25] For any content that DISH identified and that was maintained and controlled by JadooTV, that content was removed. Sohail Decl. ¶¶50, 62; **Ex. E, F, G, and H** attached to the Sohail Decl.

[26] The South Asian Super Pack is a file that was added to eMedia that contained, among other content, DISH's protected content. SASP included Hindi, Pakistani, Bangla Punjabi, Tamil, Telugu, Malayalem channels, some of which was not subject to DISH's exclusive licensing agreements in the U.S.

1  XML files to add to GitHub is beyond the ability of a layperson or content creator, and that the

2  "average user" could not properly configure a usable XML file.[27] While the process of creating

3  such an XML file may be difficult, that does not mean that only a JadooTV software engineer

4  would be capable of creating such a file.[28] DISH also claims that "JadooTV did not provide

5  enough information for users to add content to eMedia" (DISH MSJ at 7:14 (ECF No. 242)).[29]

6  However, this is contradicted by the Jones Report that shows albertjohn6012 successfully added

7  content to eMedia.[30] DISH attempts to connect some other individuals to network operations

8  manager for JadooTV, Haseeb Shah, as discussed below, but DISH fails to explain how Albert

9  John, who according to DISH uploaded the SASP to eMedia, is in any way connected to

10  JadooTV.[31]

11       Moreover, there is insufficient evidence connecting the third parties to JadooTV. DISH

12  claims that there are nine undisputed facts that show the third parties who uploaded DISH's

13  protected material - Peter May, Ali85one, and Rayred  - are aliases for former IDC employee and

14  network operations manager for JadooTV, Haseeb Shah. DISH MSJ at 8:4-9:2 (ECF No. 242).

15  All of the facts DISH relies on are disputed. DISH replaces the name Shah with Peter May, but the

16  evidence used to support those "facts" do not reference Shah at all. Peter May created the CDN

17  Verizon account 401DA, which DISH asserts transmitted protected materials, and the only

18  evidence indicating Peter May is associated with Haseeb Shah relies on the baseless speculation of

19  Mr. Rafa Abdul, who discussed CDNs with Mr. Shah at a conference, and then assumes an

20  account opened by Peter May the following month is Mr. Shah.[32] A CDN invoice shows Peter

21  May used his own credit card to pay for the account, provided a New York Address, and an Ohio

22

23

24  _____

25  [27] Jones Report at ¶¶62, 95, 121-122 (DISH Apx. 1316-1317; 1327-1328 (ECF No. 272-7 at 48-49, 59-60).

26  [28] Groves Report at ¶¶25, 29 attached as **Ex. A** to Groves Decl.
   [29] There are many innocuous reasons why the eMedia Guide may not have complete information. Groves
   Report at ¶25 attached as **Ex. A** to Groves Decl.

27  [30] Jones Report ¶63 (DISH Apx. 1302 (ECF No. 272-7 at 34)).

28  [31] Groves Report at ¶¶29-30 attached as **Ex. A** to Groves Decl.
   [32] Rafa Decl. at ¶¶12-16 (DISH Apx. 5287-5289 (ECF No. 242-32 at 6-8)).

17

phone number.[33]  Peter May emailed Verizon about content related to JadooTV's FC2A account.[34] Verizon confirmed the customer responsible for transmitting DISH's protected content from CDN 401DA was Peter May with an email address pmay360@gmail.com.[35] Peter May also had a PayPal account and provided a social security number,[36] date of birth, and addresses in New York and Hong Kong.[37] Taken together, Peter May has all the characteristics of being a person with a social security number, date of birth, physical and email addresses, phone number and credit card, and not an alias.[38]

Furthermore, third parties, not JadooTV, instructed users on how to add SASP.  JadooTV tech support directed people to publicly available sources on YouTube to add channels to eMedia but did not reference SASP or DISH content.[39] Indeed, YouTubers with the name "Roben Hod" and "Raza Ali" and "EMEDIA URL" provided instructions about adding content to eMedia including the SASP URL, http://doip.su.[40] In addition, there is insufficient evidence connecting

---

[33] Jones Report at ¶239 (DISH Apx. 1390 (ECF No. 272-7 at 122)).

[34] Ex. 2 to Rafa Decl. (DISH Apx. 5307 (ECF No. 242-32 at 26)). JadooTV's Verizon FC2A account was primarily used for traffic outside the United States, which does not implicate U.S. distribution rights DISH is asserting in this matter.  Sohail Decl. at ¶39, 41.

[35] Duval Decl. ¶15 (DISH Apx. 1458 (ECF No. 242-8 at 6)); Ex. 10 to Duval Report (DISH Apx. 1817 (ECF No. 242-8 at 365)).

[36] Mr. Shah is a citizen of Pakistan and does not have a U.S. social security number. Sohail Decl. ¶16.

[37] Ex. 32 to the Declaration of Stephen Ferguson which are PayPal business records (DISH Apx. 1002 (ECF No. 242-6 at 82)).

[38] Jones Report at ¶239 (DISH Apx. 1390 (ECF No. 272-7 at 122)). DISH's attempt to connect third parties Ali85one, Peter May, and Rayred to Mr. Shah through IP addresses is also flawed.  DISH asserts that "IP analysis also reveals that Shah used the aliases Ali85one, Peter May, and Rayred. Access to accounts in these names was traced to the same IP addresses that accessed Shah's accounts and Defendants' PayPal and Verizon accounts."  DISH MSJ at 9:12-14 (ECF No. 242). DISH's expert Jones does not adequately discuss the limitations associated an IP address investigation in that a single IP address can represent multiple devices or users.  IP address analysis cannot indicate aliases, representation, authorization, or that certain individuals are representatives of Jadoo. Groves Report at ¶¶26-28 attached as **Ex. A** to Groves Decl. Without providing information about how the networks were assigning IP addresses, there are disputed material facts as to whether the IP addresses represent the same or different people or the same or different devices.

[39] NagraStar Analysis at Figure 7 (DISH Apx. 1470 (ECF No. 242-8 at 18)); DISH Apx. 355 (ECF No. 242-2 at 349); FAC ¶¶40-41 (ECF No. 194).

[40] NagraStar Analysis at parts c-d and fns. 9, 11 (DISH Apx. 1469-70 (ECF No. 242-8 at 17-18)) YouTube video "Jadoo TV emedia" posted by Roben hod, available at https://www.youtube.com/watch?v=NwpvrAb8cEk; YouTube video "How to add Pakistani, Indian, Bangladeshi and other Channels on Jadoo TV 5" posted by Raza Ali, available at https://www.youtube.com/watch?v=yLEFL6WvSlY; YouTube video "Emedia URL 2018" posted by E-MEDIA URL 2018, available at https://www.youtube.com/watch?v=5dzhnzARlYo.

1    third party conduct to Mr. Shah. Even if Mr. Shah had an agency relationship with JadooTV as

2    the manager of network operations of the livestreams worldwide, DISH has failed to establish

3    undisputed facts that show Mr. Shah is responsible for the content that was added to eMedia by

4    third parties, including Albert John, Peter May, Ali85one, and Rayred.  Defendants can only be

5    liable for an agent's acts if they had the ability to control and supervise them.  *Metro-Goldwyn-*

6    *Mayer Studios, Inc. v. Grokster, Ltd*., 545 U.S. 913, 930 (2005).  Defendants did not have the

7    ability to control or supervise the third parties who added content to eMedia. In addition, DISH

8    presents no evidence that Defendants paid for the CDNs associated with the channels added by

9    third parties.[41]

10       **C.  JadooTV did not Secondarily Infringe DISH's Purported Copyrighted Material**

11           Secondary liability is only available if DISH can prove direct infringement. *Perfect 10,*

12   *Inc.,* 508 F.3d at 1169.  Even if DISH is able to establish direct infringement, its secondary

13   liability claims against Defendants for inducement, material contribution, and vicarious liability

14   also fail.

15           **1.  JadooTV did not Induce Infringement and is not Contributorily Liable**

16           The elements of an inducement claim for contributory inducement requires specific acts

17   showing (1) distribution of a product or service, (2) acts of infringement, (3) object of promoting

18   the product or service to infringe a copyright, and (4) causation. *Columbia Pictures Indus., Inc.*

19   *v. Fung,* 710 F.3d 1020, 1032 (9th Cir. 2013).  "One who distributes a device with the object of

20   promoting its use to infringe copyright as shown by ***clear expression or other affirmative steps***

21   taken to foster infringement, is liable for the resulting acts of infringement by third parties."

22   *MGM Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 937 (2005) (emphasis added). Mere

23   knowledge of infringing potential or of actual infringing uses is not enough to subject a

---

24   [41] Rafa Decl. at ¶21 (DISH Apx. 5290-5291 (ECF No. 242-32 at 9-10)); Sohail Decl. ¶¶38-41.
     Furthermore, there are disputed facts as to whether the email Haseeb110@gmail belongs to the Haseeb

25   Shah who was an IDC employee. DISH presents no evidence that Defendants controlled, are responsible
     for, or endorsed ***any*** acts by the person who owns the email address Haseeb110@gmail.com.  If

26   Haseeb110 is Haseeb Shah, the fact he did not use his work email address indicates that he was not acting
     within the scope of his work with JadooTV. *Hitek Software LLC v. Timios, Inc.***,** No. CV 12-709, 2012

27   WL 2366368 (C.D. Cal. June 18, 2012) (motion for summary judgment denied as there was a triable issue
     of fact as to whether company could be vicariously liable for acts of independent contractor).

28

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DISH'S MOTION FOR SUMMARY
JUDGMENT

1  distributor to liability.  Ordinary acts incident to product distribution, such as offering technical

2  support or product updates, does not support liability.

3      Jadoo TV was used for legitimate purposes.  Indeed, JadooTV sold STBs and application

4  subscriptions which gave users the option of adding eMedia.  In 2016, JadooTV offered 200,000

5  hours of VOD content over 500 channels were available on LiveTV from India, Pakistan,

6  Bangladesh, Afghanistan, Sri Lanka, Nepal, and Iran and that number grew to over 800 channels

7  in subsequent years.[42] Half of JadooTV's customers lived outside the U.S. in Canada, Europe,

8  Australia, and New Zealand.[43] DISH's allegations involve 22 channels that users watched in the

9  U.S. that were made available by third parties through eMedia and VOD. A very small

10 percentage of content available through JadooTV's STB and application involved DISH's

11 material.[44] When a product, like JadooTV's STB and applications, are widely used for

12 legitimate, unobjectionable purposes, that does not constitute contributory infringement. *Sony*

13 *Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 442 (1984).

14     JadooTV's purpose did not promote infringement as it: (1) did not advertise its STB as a

15 tool for infringement; (2) did not respond affirmatively to requests for help in locating and

16 playing copyrighted material; (3) did not engage in internal communications promoting

17 infringement; (4) did not use a business model that relied on high-volume infringement.

18 *Grokster*, 545 U.S. at 937-940.

19     First, JadooTV's advertising was not a tool for infringement. DISH claims that JadooTV

20 used its website to advertise DISH's protected works with images of works not licensed to

21 JadooTV in the U.S. (DISH MSJ 13:8-13 (ECF No. 242)). DISH relies on undated ads from

22 JadooTV's website (ECF No. 1 ¶44-46). JadooTV was not advertising its STB as a tool of

23 infringement – JadooTV had one website that was available to viewers worldwide.[45] The content

24 shown on the website was content that JadooTV had licensing rights to show in various parts of

25

26 [42] **Ex. 1** to Poppler Decl.; Sohail Decl. ¶35.
   [43] Sohail Decl. ¶36.

27 [44] *Id.* ¶68.
   [45] For example, ARY was advertised on the site because although JadooTV could not show that material

28 to U.S. audiences, it could show that material to audiences in Canada, Europe, New Zealand and
   Australia, which made up half of JadooTV's business. *Id.* ¶45.

the world.[46] Similarly, JadooTV's search terms on Google were to attract customers who were interested in similar South Asian programming, not to infringe DISH's copyrights (DISH MSJ 13:18-20 (ECF No. 242).[47]

Second, JadooTV's responses to customers were innocuous. DISH claims that JadooTV's responses to requests for additional VOD and channels airing content DISH asserts exclusive rights to, shows intent to promote infringement (DISH MSJ 13:26-14:1 (ECF No. 242)). However, the evidence shows that DISH's attempts to entrap JadooTV through its years-long investigation through NagraStar actually failed to show that JadooTV's customer support instructed people on how to add the SASP to eMedia. Instead, the evidence shows that JadooTV's customer representatives sent general messages to DISH's investigators and advised them to access publicly available third-party videos on YouTube that showed how to add channels to eMedia. There is no discussion of the SASP or DISH's protected channels.[48] JadooTV's customer support logs also show representative providing general advice unrelated to SASP or DISH's channels (Geo Restriction refers to location restriction, not the channel Geo).[49]

Third, internal communications show compliance with copyright law. DISH claims that JadooTV's internal communications about eMedia shows that it was promoting SASP. DISH MSJ 14:20-15:3 (ECF No. 242). As eMedia contained more than DISH's channels, discussion of it internally did not promote infringement, it promoted JadooTV's eMedia application.[50] Contrary to DISH's assertion that JadooTV directed customers to the SASP YouTube video posted by an unknown third party (DISH MSJ 14:25-15:1 (ECF No. 242)), JadooTV's training

---

[46]*Id.*

[47]Sohail Decl. ¶46; Deposition of Shankar Kuppuswamy (SocialHi5) at 53:5-54:10 (search term optimization); 80:13-82:15 (key words were unrelated to paid ads "these are the keywords for organically showing up on the search engine"); 83:8-21 (ARY term simply reflected general "areas we want to focus on") attached as **Ex. 7** to Poppler Decl.

[48]See fn. 33.

[49]**Ex. 5** to Poppler Decl.

[50] A Jadoo training document (DISH Apx. 343 (ECF No. 242-2 at 337) includes a glimpse of the "South Asian Super Pack" on eMedia which shows that the majority of the channels do not involve channels DISH claims rights to, including Star, Colors, Rishtey TV, 9xJahakaas, AndTV. It also shows that JadooTV informed customers about what channels were available in what countries based on licensing which shows compliance with copyright laws. Channels availability" heading (DISH Apx. 340 (ECF No. 242-2 at 334)

1   manual is not specific, advising customers to "simply go to YouTube and search for key words

2   such as EMedia jadootv etc. Users of EMedia keep posting videos on new regarding issues they

3   have faced with the application and possible solutions."[51]

4          The final prong of liability under the inducement theory is causation. "Where there is

5   sufficient evidence of fault – that is an unlawful objective – distributors are liable for causing the

6   infringement that resulted from use of their products." *Fung,* 710 F.3d at 1038.  Here, there is

7   insufficient evidence of fault for the reasons discussed in the Sections above. Furthermore, the

8   purported infringement would have occurred in the absence of JadooTV because the VOD

9   material was publicly available on YouTube.

10          **2.  JadooTV Took Extraordinary Efforts to Prevent Infringement and
             Cannot be Liable for Materially Contributing to it**

11          Material contribution of infringement requires (1) actual knowledge that specific

12   infringing material is available through its system, and (2) simple measures could be taken to

13   prevent further infringement.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146,1172 (9th Cir.

14   2007). Simple measures must not be onerous or unreasonably complicated.  *Perfect 10, Inc. v.*

15   *Giganews, Inc.*,847 F.3d 657, 671 (9th Cir. 2017). Once JadooTV was made aware of the

16   specific infringing material available through eMedia and VOD, JadooTV immediately took

17   action to prevent further infringement and those measures were time-consuming and complex,

18   making liability for material contribution wholly inappropriate. Sections III(A) and V(A)(2).

19          **3.  JadooTV is not Vicariously Liable because it Neither Controlled Content
             Added by Third Parties Nor did it Receive a Direct Financial Benefit
             from eMedia and VOD**

20

21

22

---

23   [51] *Id.* at (DISH Apx. 346 (ECF No. 242-2 at 340). DISH also misrepresents the content of an email Mr.
     Sohail wrote, by stating that Jadoo's management instructed JadooTV to "urgently" play DISH's content.

24   DISH MSJ 15:5-8 (ECF No. 242). The email actually states that certain channels had official YouTube
     pages and Mr. Sohail asked the team to "Please look into this urgently and try to verify from content

25   partners as well as seeing if they will play on our platforms." July 24, 2018, email from Sajid Sohail to
     Faisal Aftab, et al. re: YouTube VOD Content (DISH Apx. 319-321 (ECF No. 242-2 at 313-315). The

26   exchange shows JadooTV reaching out to the channels (the creators of the content) to confirm the content
     on YouTube was official. JadooTV had no way of knowing which copyright owners had rights in which

27   works; which aspects of those works those rights holders had licensed to which third parties; and which
     materials copyright owners or licensees chose to put on the Internet for promotional reasons.

28

---

1       Liability for vicarious infringement requires DISH to show that JadooTV had the right

2   and ability to control the direct infringement and received a direct financial benefit from it.

3   *Perfect10 v. Amazon*, 508 F.3d at 1173, 1176 (9th Cir. 2007).  See Section V(A)(2) on control

4   and Section III(A) on direct financial benefit. Contrary to DISH's assertion, JadooTV did not

5   rely heavily on DISH's content (MSJ 18:2).  The content DISH claims were infringed constitutes

6   a small percentage of the content available through JadooTV. Sohail Decl. ¶68. Without any

7   evidence indicating that JadooTV's customers subscribed because of the SASP or cancelled

8   subscriptions because the SASP was no longer available, DISH has failed to show JadooTV

9   received a direct financial benefit. *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004).

10       **D.  Sohail is not Personally Liable for JadooTV's Infringement**

11       In order to hold a corporate officer liable for the company's actions, the plaintiff must

12   show that the corporate officer was the "guiding spirit" or "central figure" behind the wrongful

13   conduct. ECF No. 207 at 7:12-15 citing *Bangkok Broad. & T.V. Co. v. IPTV Corp.,* 742 F.Supp.2d

14   1101, 1114-15 (C.D. Cal. 2010) (quoting *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 524 (9th Cir.

15   1989)).  If a corporate officer is not the "active conscious force behind the corporation's

16   infringement" the officer is not liable for copyright infringement. *Carson v. Verismart Software*,

17   2012 WL 1038662, at *5 (N.D. Cal. Mar. 27, 2012). Mr. Sohail was not an active force behind

18   DISH's alleged infringement and the facts DISH presents about his role are disputed. Sohail Decl.

19   ¶¶7,11-14, 28, 59-63; *see also* Sohail's MSJ (ECF No. 243).

20       Mr. Sohail did not oversee Haseeb Shah.[52] As discussed above, DISH's facts attempting to

21   tie the conduct of third parties who created and provided access to DISH's material through

22   eMedia to Shah are disputed.  Even if such facts can be reconciled and established, DISH has

23   failed to connect Mr. Sohail to the direct infringement through third parties or Shah's personal

24   conduct.  Sohail Decl. ¶¶40-41. Although he did not have the ability to stop the alleged

25   infringement by third parties, Mr. Sohail actively tried to address it. Sohail Decl. ¶¶58-67; Section

26   III(A).

---

27   [52] Sohail Decl. ¶14; JadooTV 30(b)(6) Deposition of Sajid Sohail ("30(b)(6) Depo.") at 137:5-20 attached
as **Ex. 8** to the Poppler Decl.; Aftab Depo. I at 44:11-25 ("I asked him [Shah] not to continue here…")

28   (**Ex. 2** to Poppler Decl.); Aftab Depo. II at 233:2-6; 236:6-17 attached as **Ex. 3** to Poppler Decl.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DISH'S MOTION FOR SUMMARY
JUDGMENT

**E.  DISH is not entitled to Statutory Damages, JadooTV's Profits, Attorneys' Fees or an Injunction**

JadooTV's qualification for DMCA safe harbor precludes any monetary liability for all forms of direct or secondary copyright infringement claims, including all claims DISH has asserted in this action.  17 U.S.C. § 512(c)(1); *Io,* 586 F.Supp.2d at 1142 (N.D. Cal. 2008).  Even if DMCA safe harbor is not available to JadooTV, DISH's demand for statutory damages **and** profits constitutes an improper windfall.  *Desire, LLC v. Manna Textiles, Inc*., 986 F.3d 1253, 1271 (9th Cir. 2021) ("statutory damages are intended as a substitute for profits or actual damage and should not provide copyright owners a windfall"). Once a copyright owner elects to recover statutory damages, he may not recover actual damages as well under the Copyright Act. 17 U.S.C. § 504. *Nintendo of America, Inc. v. Dragon Pacific Intern.,* 40 F.3d 1007, 1010 (9th Cir. 1994).

**1.  Profits**

Under 17 U.S.C. § 504(b), a copyright owner can recover "any profits of the infringer that are attributable to the infringement," but JadooTV had no profits attributable to the protected channels between 2016 and 2019.[53]

**2.  Statutory Damages**

Under § 504(c), statutory damages may be awarded for "all infringements involved in the action, with respect of one work ... in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1).  Section 504(c)(2) permits the court to reduce the award to a sum of not less than $200. DISH seeks the maximum sum of $150,000 under Section 504(c)(2), claiming that JadooTV's conduct was willful (DISH MSJ 21:28-22 (ECF No. 242)). This is not supported by the record.  When JadooTV became aware of the infringing material on eMedia through DISH's notices[54] it investigated, responded, and went to extraordinary lengths to appease DISH. See Section III(A). In addition, DISH is now seeking statutory damages for 97 registered works (MSJ at 21:8-9) while JadooTV has only been on notice of 91 registered works that were listed in DISH's First Amended Complaint (FAC at 37:22 (ECF 194)). JadooTV

---

[53] Rebuttal to the Expert Report of Susan K. Thompson, CPA/CFF Memorandum at Summary of Findings table at 2, attached as **Ex. A** to the Declaration of Petra Loer.
[54] DISH attempts to lump in IBCAP notices as well, but IBCAP is not a party to this action.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DISH'S MOTION FOR SUMMARY JUDGMENT

should not be subject to any statutory damages, but if it is, the Court should exercise its discretion to award the minimum sum. In any event, there are disputed facts regarding willfulness and the number of registered works, and the Court should deny summary judgment on this issue.

### 3.  Attorneys' Fees and Costs

As there is no evidence of willfulness, the Court should exercise its discretion and deny DISH's request for attorneys' fees and costs under 17 U.S.C. § 505. DISH has taken a scorched-earth litigation approach as evidenced, most recently, by this MSJ with nearly 5,400 pages of exhibits. Summary judgment should be denied.

### 4.  Permanent Injunction

It is undisputed that when JadooTV removed the eMedia application from its STBs and mobile applications on August 19, 2019, the alleged infringement ceased.  Permanent injunctions under Section 502 are typically granted when liability has been established and there is a threat of continuing violations. *Broad. Music, Inc. v. Benchley Ventures, Inc.*, 131 F. Supp. 3d 1097, 1105 (W.D. Wash. 2015).  Neither is present here – liability has not been established and there is no threat of continuing violations. In addition, it is Defendants understanding that DISH no longer holds exclusive rights to many of the channels that are the subject of this lawsuit.[55] Summary judgment should be denied.

## VI.   CONCLUSION

Based on the foregoing, DISH's motion for summary judgment should be denied.


Dated: April 13, 2023                           Respectfully submitted,

                                                */s/ Chowning Poppler*
                                                CHAN PUNZALAN LLP

                                                *Counsel for Defendants*
                                                *JadooTV, Inc. and Sajid Sohail*

---

[55] Sohail Decl. ¶¶56, 69.