Mark Punzalan (State Bar No. 247599)
Email: mark@chanpunzalan.com
A. Chowning Poppler (State Bar No. 272870)
Email: chowning@chanpunzalan.com
Jin Im-Saeteurn (State Bar No. 266810)
Email: jin@chanpunzalan.com
Lawrence Ng (State Bar No. 328082)
Email: lawrence@chanpunzalan.com
CHAN PUNZALAN LLP
22 Battery Street, Suite 401
San Francisco, CA 94111
Telephone: 650.362.4150

*Counsel for Defendants
JadooTV, Inc. and Sajid Sohail*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C., <br><br> Plaintiff, <br><br> vs. <br><br> JADOOTV, INC. and SAJID SOHAIL, <br><br> Defendants. | Case No. 3:20-cv-01891-CRB <br><br> **DEFENDANT SAJID SOHAIL'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION** <br><br> Date: June 9, 2023 <br> Time: 10:00 am <br> Dept: Courtroom 6, 17th Floor <br> Judge: Hon. Charles R. Breyer |

# TABLE OF CONTENTS

I.   INTRODUCTION, FACTS, AND SUMMARY OF ARGUMENT ................................. 1

II.  ARGUMENT .......................................................................................................... 2

   A.   Mr. Sohail was Not the "Guiding Spirit" Behind the Alleged Infringement .......... 2

   B.   Mr. Sohail did not Profit from the Alleged Infringement ....................................... 6

   C.   A Permissive Adverse Inference Jury Instruction Does Not Preclude Summary Judgment ............................................................................................................... 7

   D.   Mr. Sohail's Summary Judgment Evidence Should Not Be Excluded .................... 8

III. CONCLUSION ........................................................................................................ 9

# TABLE OF AUTHORITIES

CASES

*American Federation of Musicians of U.S. & Canada v. Paramount Pictures Corp.*,
903 F.3d 968, 976 (9th Cir. 2018) ............................................................................................ 9

*Bangkok Broadcasting & T.V. Co., Ltd. V. IPTV Corp.*,
742 F.Supp.2d 1101, 1115 (C.D. Cal. 2010) ............................................................................ 2

*CNC Software, LLC v. Aerospares Fabrication, LLC*,
2023 WL 2347443, at *5-6 (C.D. Cal. Jan. 11, 2023) ........................................................... 1, 5

*Coach Serv., Inc. v. Cielo Creations, Inc.*,
2011 WL 13217091, at *15 (C.D. Cal. Aug. 16, 2011) ............................................................ 3

*Facebook v. Power Ventures, Inc.*,
844 F.3d 1058, 1069 (9th Cir. 2016) ........................................................................................ 3

*GoDigital Media Group, LLC, v. GoDigital, Inc.*,
2018 WL 494453, at *3 (C.D. Cal. Sept. 5, 2018) ................................................................. 1, 6

*L.A. Printex Indus., Inc. v. T.J. Maxx of Cal., LLC*,
2010 WL 11519577, at *4 (C.D. Cal. Jan. 11, 2010) ............................................................... 2

*Marina Vape, LLC v. Nashick*,
2017 WL 3579874, at *8 (C.D. Cal. July 7, 2017) ................................................................... 3

*Netbula, LLC v. Chordiant Software, Inc.*,
2009 WL 750201, at *3-4 (N.D. Cal. Mar. 20, 2009) ........................................................... 1, 2

*Novell, Inc. v. Unicom Sales, Inc.*,
2004 WL 1839117, at *17 (N.D. Cal. Aug. 17, 2004) ............................................................. 2

*O'Neil v. City & Cnty. Of San Francisco*,
2021 WL 2914975, at *11 at n. 12 (N.D. Cal. July 12, 2021) .................................................. 8

*TV Ears, Inc. v. SYK Group, LLC*,
2016 WL 6248539, at *7 (S.D. Cal. Oct. 26, 2016) .................................................................. 2

RULES

Civil Local Rule 7-5(b) ................................................................................................................ 8
Federal Rule of Civil Procedure 56(c)(4) .................................................................................... 8
Federal Rule of Evidence 801(c) ................................................................................................. 9

## I. INTRODUCTION, FACTS, AND SUMMARY OF ARGUMENT

Defendant Sajid Sohail is entitled to summary judgment as to his personal liability for copyright infringement because Plaintiff DISH has failed to show that he was guiding spirit behind third parties adding DISH's content to JadooTV's eMedia and Video-on-Demand (VOD) features. *Netbula, LLC v. Chordiant Software, Inc.*, 2009 WL 750201, at *3-4 (N.D. Cal. Mar. 20, 2009) (if a corporate officer is not the "active conscious force behind the corporation's infringement" the officer is not liable for copyright infringement).

The pertinent inquiry is not whether Mr. Sohail controlled the company, but whether he controlled the infringing activity. Specifically, DISH has failed to show that Mr. Sohail (1) controlled the third-party content that DISH claims it has exclusive rights that was added to eMedia and VOD; (2) controlled the third-parties that added the content; (3) paid for CDNs that transmitted the content; or (4) financially benefited from the content. *CNC Software, LLC v. Aerospares Fabrication, LLC*, 2023 WL 2347443, at *5-6 (C.D. Cal. Jan. 11, 2023); *GoDigital Media Group, LLC, v. GoDigital, Inc.,* 2018 WL 494453, at *3 (C.D. Cal. Sept. 5, 2018).

Although Mr. Sohail did not have the ability to stop the alleged infringement by third parties, he actively tried to address the issues raised by DISH by responding to DISH's letters, reaching out to the software team in 2016 about creating an eMedia filter, removing content which JadooTV had control over, investigating and only linking to content on YouTube from official channels, redirecting the engineering team to spend months developing and implementing software to try to filter DISH's content from eMedia, and ultimately removing the eMedia from JadooTVs set-top-boxes (STBs) and applications even though it contained material that was unrelated to DISH's content.

In addition, DISH's arguments regarding a permissive adverse inference jury instruction precluding summary judgment and the admissibility of the declarations and exhibits submitted in support of Mr. Sohail's motion are without merit.

Mr. Sohail's motion for summary judgment on all causes of action should be granted and DISH's motion for summary judgment related to Mr. Sohail's personal liability should be denied (ECF No. 242).

## II. ARGUMENT

### A. Mr. Sohail was Not the "Guiding Spirit" Behind the Alleged Infringement

Mr. Sohail is entitled to summary judgment as to his personal liability because he did not authorize, direct, or participate in JadooTV's alleged infringement. *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 524 (9th Cir. 1989). If a corporate officer is not the "active conscious force behind the corporation's infringement" the officer is not liable for copyright infringement. *Netbula, LLC v. Chordiant Software, Inc.*, 2009 WL 750201, at *3-4 (N.D. Cal. Mar. 20, 2009) (quoting *Novell, Inc. v. Unicom Sales, Inc.*, 2004 WL 1839117, at *17 (N.D. Cal. Aug. 17, 2004)).

DISH's arguments regarding Mr. Sohail's role as the owner, founder, and CEO of JadooTV is not sufficient to hold him personally liable for copyright infringement (ECF No. 254 at 4:16-5:18). *TV Ears, Inc. v. SYK Group, LLC*, 2016 WL 6248539, at *7 (S.D. Cal. Oct. 26, 2016)(merely being a founder, CEO, or sole member of a company is not sufficient to show individual personally participated and encouraged sales of infringing products); *L.A. Printex Indus., Inc. v. T.J. Maxx of Cal., LLC,* 2010 WL 11519577, at *4 (C.D. Cal. Jan. 11, 2010) (collecting cases).

Mr. Sohail having a family business is irrelevant to DISH's allegations of infringement, especially because DISH's statements regarding Mr. Sohail's hiring practices all involve U.S. employees (ECF No. 254 at 5:19-6:5).[1] The departments that are relevant to DISH's allegations of infringement – content, engineering, customer support, and network operations – are all based in Pakistan. Sohail Decl. ¶11 (ECF No. 243-14). DISH presents no evidence showing that Mr. Sohail was personally involved in hiring all of the people doing work for JadooTV in the U.S. and abroad, making DISH's reliance on *Bangkok Broadcasting & T.V. Co., Ltd. V. IPTV Corp.*, 742 F.Supp.2d 1101, 1115 (C.D. Cal. 2010) inapposite.

---

[1] DISH incorrectly states that JadooTV had fewer than 20 employees during the time of alleged infringement (ECF No. 254 at 5:22-23). The evidence DISH cites makes clear there were approximately 20 employees in the U.S. and there were approximately 100 people working with JadooTV overseas. *See* Ex. 10 to Frank Declaration (ECF No. 254-1).

Furthermore, Mr. Sohail delegated oversight of engineering, content, and customer service to industry experts in Pakistan. Sohail Decl. ¶¶13-14; 17-21 (ECF No. 243-14); DISH Apx. 201:4-22 (ECF No. 242-2 at 195)(Altair developed all of the software including eMedia and the VOD service); DISH Apx. 289:5-23 (ECF No. 242-2 at 283)(customer support reported to Faisal Abdullah and that department created the customer support training manual). Although there was nothing inherently improper about eMedia, Mr. Sohail was not involved in its development and implementation.[2] Mr. Sohail's limited role related to eMedia and the video-on-demand ("VOD")[3] feature distinguishes him from company leaders where personal liability was found. *See, e.g., Marina Vape, LLC v. Nashick*, 2017 WL 3579874, at *8 (C.D. Cal. July 7, 2017) (sole owner with no employees admitted he had sole control over company and operations); *Facebook v. Power Ventures, Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016) (CEO admitted that the infringing promotion was his idea and controlled and directed it); *Coach Serv., Inc. v. Cielo Creations, Inc.*, 2011 WL 13217091, at *15 (C.D. Cal. Aug. 16, 2011) (company president personally made decision to buy and sell infringing product).

---

[2] The concept behind eMedia was to allow content owners to create and add content to JadooTV's platform worldwide. Providing eMedia made the platform open, meaning that people outside of JadooTV could add to it. JadooTV made its guide to add eMedia publicly available on its website. The head of engineering in Pakistan, Faisal Abdullah, developed and implemented all software applications, including eMedia, with a team of approximately 20 software engineers. Implementation of eMedia was completely in the hands of the engineering team in Pakistan and they determined that XML files would be used to add content to JadooTV and that it would be hosted on GitHub, a website and cloud-based service. JadooTV did not and could not identify who was adding content to eMedia through GitHub, nor did it have the resources and people power to review every video and file uploaded by third parties to eMedia. Sohail Decl. ISO Opp. to DISH's MSJ ¶¶ 27-28, 32, 36, 47(ECF No. 257-1); *see also* 30(b)(6) Depo. at 206:5 – 207:16 (the team in Pakistan drafted the eMedia XML guide and uploaded it to JadooTV's website)(**Ex. 1** to Poppler Decl.).

[3] JadooTV's VOD feature had content from several sources. First, JadooTV maintained VOD content on its servers. Second, some VOD content was added through eMedia by third parties. Third, most of the VOD content was bookmarked from publicly available sources on the internet, like YouTube and Daily Motion. For the latter two categories, JadooTV neither hosted that material on its servers nor copied it to its servers. Sohail Decl. ISO Opp. to DISH's MSJ ¶25 (ECF No. 257-1). Mr. Aftab and his company in Pakistan, IDC Resources, was responsible for VOD and live channel monitoring for JadooTV. *Id.* at ¶13. IDC Resources employed Haseeb Shah and Awais Malik both of whom were responsible for content and reported to Mr. Aftab in Pakistan. *Id.* at ¶14. Mr. Malik was a VOD manager. Mr. Shah managed network operations of the livestreams worldwide. *Id.* at ¶¶13-14, 23.

The pertinent inquiry is not whether Mr. Sohail controlled the company, but whether he controlled the infringing activity. DISH's general arguments about JadooTV's eMedia and VOD technology and content miss the mark because they do not address DISH's specific allegations of infringement. DISH claims that it has exclusive rights to show in the U.S. certain South Asian content that was made available through JadooTV's eMedia application and video-on-demand ("VOD") features. DISH fails to connect Mr. Sohail to the infringing activity because DISH cannot show that Mr. Sohail was the "guiding spirit" or controlled the third parties that added content to eMedia or VOD.

Specifically, JadooTV's users added and accessed content through eMedia. JadooTV does not have access to, control over, or knowledge of what content a user adds to their device through eMedia. Sohail Decl. ISO Opp. to DISH's MSJ ¶¶34, 60 (ECF No. 257-1). DISH acknowledges that third parties – Albert John, Peter May, Ali85one, and Rayred – added XML files to eMedia that contained DISH's purportedly protected content. Jones Report (DISH Apx. 1302 (ECF No. 272-7 at 34)). DISH does not present any evidence that Mr. Sohail controlled those people.[4] In addition, DISH presents no evidence that Mr. Sohail or JadooTV paid for the CDNs[5] associated with the channels added by these third parties.[6] JadooTV did not have CDN accounts for content added by third parties to eMedia, because that content was not on JadooTV's servers, it was stored on GitHub. Sohail Decl. ISO Opp. to DISH's MSJ at ¶40 (ECF NO. 257-1). Similarly, JadooTV did not have CDN accounts for VOD content that came from publicly available online sources like YouTube and DailyMotion because that content was not maintained on JadooTV's servers, and it was added by third parties. *Id.* There is no evidence that Mr. Sohail authorized, directed, or participated in JadooTV creating CDN accounts to transmit DISH's content. Sohail Decl. ISO Opp. to DISH's MSJ ¶¶40-41 (ECF No. 257-1).

---

[4] See additional discussion at Defendants' Opp. to DISH's MSJ at 16:20 – 19:9 (ECF No. 257).

[5] A content delivery network (CDN) is a geographically distributed group of servers that caches content close to end users which allows for the quick transfer of content. Sohail Decl. ISO Opp. to DISH's MSJ ¶37 (ECF No. 257-1). JadooTV paid CDNs for the content that it controlled and maintained, which included LiveTV, some VOD content, and movies. *Id.* ¶38.

[6] Rafa Decl. at ¶21 (DISH Apx. 5290-5291 (ECF No. 242-32 at 9-10)); Sohail Decl. ISO Opp. to DISH's MSJ ¶¶38-41 (ECF No. 257-1).

DISH argues that Haseeb Shah is connected to these third parties, but DISH fails to connect Mr. Sohail to Mr. Shah's personal conduct. *CNC Software, LLC v. Aerospares Fabrication, LLC*, 2023 WL 2347443, at *5-6 (C.D. Cal. Jan. 11, 2023) (owner of company was not personal liability for copyright infringement when allegations failed to connect employee's conduct to owner). Mr. Shah was an independent contractor hired to manage the network operations of JadooTV's livestreams. Sohail Decl. ¶¶18, 21 (ECF No. 243-14). In that role, Shah had access to JadooTV's CDN accounts and limited access to the company's Paypal account to make payments to server companies he needed to use for JadooTV's service. *Id.* at ¶21. DISH presents no evidence that Mr. Sohail controlled, is responsible for, or endorsed any acts by the person who owns the email address Haseeb110@gmail.com. If Haseeb110 is Haseeb Shah, the fact he did not use his work email address indicates that he was not acting within the scope of his work with JadooTV.

As for VOD content, Mr. Sohail occasionally weighed in on content issues, but he was not in charge of content for JadooTV. Sohail Decl. ¶17 (ECF No. 243-14). JadooTV's VOD content was sourced from publicly available online locations from YouTube and DailyMotion. Sohail Decl. ISO Opp. to DISH's MSJ ¶¶25, 35, 61 (ECF No. 251-1).[7] JadooTV did not place that content on YouTube or DailyMotion, it simply bookmarked the location on the internet. *Id*. That content was not hosted on JadooTV's servers, nor was it copied to JadooTV's servers if a user clicked on a bookmarked link in the VOD section of JadooTV's service. Mr. Sohail did not have control over the third parties who added content to YouTube.

DISH misrepresents the content of an email Mr. Sohail wrote regarding VOD content (ECF No. 254 at 9:8-23). The email actually states that certain channels had official YouTube pages and Mr. Sohail asked the team to "Please look into this urgently and try to verify from content partners as well as seeing if they will play on our platforms."[8] The exchange shows Mr. Sohail inquiring about why the channels were showing their content on YouTube if they had agreements with DISH and requesting that the team reach out to the channels (the creators of the

---

[7] *See also* DISH Supp. Apx. 109 (ECF No. 254-1 at 111).
[8] July 24, 2018, email from Sajid Sohail to Faisal Aftab, et al. re: YouTube VOD Content (DISH Apx. 319-321 (ECF No. 242-2 at 313-315).

5

content) to confirm. Mr. Sohail had no way of knowing which copyright owners had rights in which works; which aspects of those works those rights holders had licensed to which third parties; and which materials copyright owners or licensees chose to put on the Internet for promotional reasons.

Although he did not have the ability to stop the alleged infringement by third parties, Mr. Sohail actively tried to address the issues by responding to DISH's letters, reaching out to the software team in 2016 about creating a filter, removing content which JadooTV had control over, investigating and only linking to content on YouTube from official channels, redirecting the engineering team to spend months developing and implementing software to try to filter DISH's content from eMedia, and ultimately removing eMedia from JadooTVs STBs and applications even though it contained material that was unrelated to DISH's content. Sohail Decl. ISO Opp. to DISH's MSJ ¶¶58-67 (ECF No. 257-1).

### B. Mr. Sohail did not Profit from the Alleged Infringement

Mr. Sohail did not profit from the alleged infringement. Mr. Sohail's salary, disconnected from the infringing activity, does not support DISH's individual liability claim. *GoDigital Media Group, LLC, v. GoDigital, Inc.,* 2018 WL 494453, at *3 (C.D. Cal. Sept. 5, 2018) (CEO's salary had no causal connection with allegations of infringement; plaintiff did not establish a direct financial interest in the infringing activity for personal liability). DISH fails to demonstrate how Mr. Sohail's salary is directly connected to the infringing activity.

As an initial matter, JadooTV's business model did not rely heavily on DISH's 22 channels. In 2016, JadooTV offered 200,000 hours of VOD content, over 500 channels were available on LiveTV from India, Pakistan, Bangladesh, Afghanistan, Sri Lanka, Nepal, and Iran and that number grew to over 800 channels in subsequent years.[9] Half of JadooTV's customers lived outside the U.S. in Canada, Europe, Australia, and New Zealand.[10] DISH's allegations

---

[9] ECF No. 257-11; Sohail Decl. ISO Opp. to DISH's MSJ ¶35 (ECF No. 257-1).
[10] Sohail Decl. ISO Opp. to DISH's MSJ ¶36 (ECF No. 257-1).

involve 22 channels that only affected U.S. customers. A very small percentage of content available through JadooTV involved DISH's material.[11]

Furthermore, JadooTV did not generate any advertising revenue from DISH's content because advertising was not placed on content from eMedia or from online sources from YouTube because JadooTV did not have control over that third party content. Sohail Decl. ¶29 (ECF No. 243-14). JadooTV had no economic incentive to encourage consumers to view DISH's "protected" content, because JadooTV did not charge users for viewing third party content nor did it generate any advertising revenue from users viewing the bookmarked VOD content. *Id*. Moreover, any advertisement that was embedded in the bookmarked VOD content was provided by the website hosting the content, not by JadooTV. *Id.*  Indeed, JadooTV had no profits attributable to DISH's purported protected channels between 2016 and 2019. *See* Damages Rebuttal Expert Report (ECF No. 257-22).

In addition, JadooTV's sales were declining before it deleted eMedia. Sohail Decl. ¶33 (ECF No. 243-14); Salahuddin Decl. ¶¶6-15 (ECF No. 243-1); 30(b)(6) Depo. at 192:15-193:12 (**Ex. 1** to Poppler Decl.)(since the lawsuit was filed Jadoo's sales declined for a number of reasons including "the scare tactics that you guys [DISH] used in sending hundreds of subpoenas to small mom-and-pop shops that don't know how to defend against them. They all stopped carrying our product").

Taken together, DISH's evidence is far too attenuated to establish that Mr. Sohail is personally liability for copyright infringement and his motion for summary judgment should be granted and DISH's motion for summary judgment should be denied.

### C. A Permissive Adverse Inference Jury Instruction Does Not Preclude Summary Judgment

The Court found no evidence that Defendants' failure to preserve Mr. Shah's email was intentional. ECF No. 225 at 2:3-4. As a result, the Court determined a remedy that was "no greater than necessary to cure the prejudice" of the lost emails. *Id.* at 9:3-4. That remedy was a permissive

---

[11] Approximately 6% of JadooTV's VOD content involved DISH's content and 2-4% of JadooTV's channels involved DISH's channels. Sohail Decl. ISO Opp. to DISH's MSJ ¶68 (ECF No. 257-1).

adverse inference jury instruction to determine *whether* the destruction of the emails was intentional and *whether* the emails were unfavorable to Defendants, in accordance with CACI 204. *Id.* at 9:4-9 (emphasis added). DISH's requests for default judgment or a mandatory adverse inference instruction deeming certain facts established was denied by the Court (*Id.* at 10:1-2), and yet DISH argues that summary judgment should be denied because the jury is entitled to infer that Mr. Shah's emails "would have been unfavorable to Defendants." ECF No. 11:25-27. That is not a foregone conclusion, as the instruction is for the jury to determine *whether* the emails were unfavorable to Defendants. As that determination has not yet been made, it does not raise a genuine issue of fact for purposes of summary judgment. Furthermore, Mr. Sohail's emails with Mr. Shah have been produced. To the extent there were any email communications connecting Mr. Sohail to Mr. Shah and DISH's allegations of infringement, DISH presumably included them with its nearly 6,000 pages of exhibits filed with its motion for summary judgment. The permissive adverse instruction does not preclude summary judgment related to Mr. Sohail's personal liability. *See, e.g. O'Neil v. City & Cnty. Of San Francisco,* 2021 WL 2914975, at *11 at n. 12 (N.D. Cal. July 12, 2021)(court decided summary judgment without reaching permissible adverse inference question).

### D.  Mr. Sohail's Summary Judgment Evidence Should Not Be Excluded

The declarations submitted by Mr. Sohail and Mr. Salahuddin comply with Federal Rule of Civil Procedure 56(c)(4) and Civil Local Rule 7-5(b) as they are based on personal knowledge and provide the underlying basis for their statements based on information and belief.  For example, in ¶21 of his declaration, Mr. Sohail explains that his understanding of Mr. Shah having access to JadooTV's PayPal account is based on Mr. Shah's role managing network operations for JadooTV.  ECF No. 243-14.  In ¶30 of his declaration, Mr. Sohail explains that his understanding that content was removed from the LiveTV section of JadooTV is based on conversations he had with the content and engineering teams. Similarly, Mr. Salahuddin's statements in ¶¶14-15 are based on conversations he had with retailers as part of his role as Vice President of Sales for JadooTV. ECF No. 243-1.

1     DISH's hearsay objections are misplaced, as the statements made in Mr. Sohail and Mr. Salahuddin's declarations have independent legal significance. The hearsay rule is not implicated where the issue is whether certain things were said or done, and not whether those things were true or false. These statements are admissible nonhearsay to prove that words were spoken or an act was done. Federal Rule of Evidence 801(c); *American Federation of Musicians of U.S. & Canada v. Paramount Pictures Corp.*, 903 F.3d 968, 976 (9th Cir. 2018). For example, Mr. Sohail's statements about what the content and engineering team told him are offered to show what actions Mr. Sohail took in response to DISH's notices of infringement. Mr. Salahuddin's statements regarding his conversations with retailers is offered to show that JadooTV's retail sales declined starting in 2014.

    Lastly, Defendants are not raising the good faith compliance defense on the basis of advice of counsel. In compliance with the Court's order (ECF No. 229), on November 21, 2022, Defendants stipulated "that they will not seek to introduce communications with their attorneys regarding their response to the alleged infringement at trial to support any good faith compliance defense." **Ex. 2** to Poppler Decl. As an initial matter, the letters responding to DISH's notices of infringement that were attached to Mr. Sohail's declaration (ECF Nos. 243-15, 243-16, 243-17, 243-18) are not attorney-client privileged communications as they were sent to DISH. Furthermore, the letters are ***not*** being offered to show that Defendants complied with copyright law. Rather, the letters are being offered to show that Defendants responded to DISH's notices.

    The declarations and letters submitted with Mr. Sohail's motion for summary judgment are proper and should be considered.

### III.    CONCLUSION

    For the foregoing reasons, Mr. Sohail respectfully requests that this Court grant his motion for summary judgment on all causes of action and deny DISH's motion for summary judgment (ECF No. 242).

//

//

//

| | | |
|---|---|---|
| 1 | Dated:  April 20, 2023 | Respectfully submitted, |
| 2 | | CHAN PUNZALAN LLP |
| 3 | | */s/ Chowning Poppler* <br> Chowning Poppler |
| 4 | | |
| 5 | | *Counsel for Defendants* <br> *JadooTV, Inc. and Sajid Sohail* |