UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| DISH NETWORK L.L.C., | Case No. 20-cv-01891-CRB (LB) |
| Plaintiff, | |
| v. | **DISCOVERY ORDER** |
| JADOO TV, INC., et al., | Re: ECF No. 262 |
| Defendants. | |

**INTRODUCTION**

In an earlier discovery order in this copyright infringement case, the court sanctioned the defendants, JadooTV, Inc. and Sajid Sohail, under Rule 37(e) for failing to preserve emails of Haseeb Shah, a former JadooTV employee and former defendant in this case. The plaintiff, Dish Network LLC, had asked for a sanction in the form of a default judgment or a mandatory adverse-inference instruction. The court held that the failure to preserve evidence was negligent or grossly negligent, but was not intentional spoliation, and thus the appropriate remedy was a permissive adverse-instruction instruction allowing the jury to determine whether the destruction of emails was intentional and whether the emails would have been unfavorable to the defendants.[1]

---

[1] Order – ECF No. 225. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 20-cv-01891-CRB (LB)

The plaintiff moved for reconsideration of that order on the ground of newly discovered evidence in the form of productions of Mr. Shah's email metadata from non-party Google. The metadata allegedly shows that the defendants failed to produce emails from Mr. Shah's account, misrepresented whether there were emails in the account, and intentionally deleted thousands of the emails after the litigation began.[2] The court granted reconsideration to consider the new evidence and ordered briefing on an expedited schedule given the interplay with the summary-judgment schedule.[3] The court can decide the motion for additional sanctions without oral argument, N.D. Cal. Civ. L.R. 7-1(b), and denies the motion because the plaintiff still has not shown intentional spoliation.

## STATEMENT

### 1. General Background

The plaintiff generally alleges that the defendants transmitted television channels on their service that the plaintiff had exclusively licensed. The defendants did so through their "South Asian Super Pack" of channels and their video-on-demand content, as part of Mr. Sohail's "'vision' of delivering South Asian television content over the Internet to the South Asian immigrant and expatriate community in the United States."[4] The South Asian Super Pack was provided through the defendants' "eMedia" menu on their set-top boxes.[5] Mr. Shah, who resides in Pakistan, was allegedly an agent of the defendants and a third-party direct infringer who was involved in the logistics of providing the South Asian Super Pack to JadooTV users.[6]

### 2. The Earlier Sanctions Order

The court's earlier sanctions order summarized what the record showed at the time about the defendants' failure to preserve Mr. Shah's emails:

---

[2] Mot – ECF No. 262.

[3] Order – ECF No. 263.

[4] First Am. Compl. – ECF No. 194 at 2 (¶¶ 1, 3–4), 6 (¶ 18).

[5] *Id.* at 7–9 (¶¶ 24–27).

[6] *Id.* at 9–10 (¶ 28), 12 (¶ 37), 15 (¶ 44), 21–22 (¶ 59), 28 (¶ 75).

ORDER – No. 20-cv-01891-CRB (LB)   2

>The plaintiff filed the complaint in this case in November 2018. The plaintiff named [Mr.] Shah as a defendant and alleged that he acted as an agent of defendant JadooTV. Before filing the complaint, the plaintiff corresponded with the defendants in 2016 and 2018 concerning the alleged copyright infringement. Nonetheless, defendant Sajid Sohail (a "principal" of defendant JadooTV) waited until May 2019 to instruct employees, including Mr. Shah, to preserve documents that may have been relevant to the case.
>
>In February 2019, the plaintiff requested Mr. Shah's emails. To date, the defendants have not produced "a single email from Shah's *haseeb.shah@jadootv.com* email account" but have produced a subset of emails that were forwarded from Mr. Shah's email account to a second email account (*nocoperations@jadootv.com*). According to the plaintiff, this subset of emails consisted of only "227 pages of emails" that were all dated after the case was filed, and most were dated after Mr. Shah's employment with JadooTV had been suspended, which occurred seven months after the case was filed. Furthermore, most of these emails were advertisements and not responsive to the plaintiff's discovery requests. The plaintiff contends that defendants' failure to preserve the emails prejudiced its case because the emails would have shown that "Shah, as Defendants' agent, transmitted the Protected Channels in the VOD [video-on-demand] and Emedia sections of the Jadoo service." To support this position, the plaintiff cites other emails showing that Mr. Shah sent and received relevant emails from his *haseeb.shah@jadootv.com* account.[7]

The plaintiff contended, based on the following circumstantial evidence, that the defendants intentionally destroyed the emails:

>(1) [T]he delayed instruction to preserve the emails and their failure to preserve the emails themselves, (2) Mr. Shah's role as the alleged infringer, (3) Mr. Shah's alleged use of aliases, (4) the defendants' failure to use "Google Workspace or eDiscovery tools to preserve" the emails, (5) the relevance of the emails, (6) the need to compel the defendants to produce other documents, (7) the fact that the defendants' prior counsel represented Mr. Shah and the defendants' payment of Mr. Shah's legal fees, and (8) Mr. Shah's failure to participate in discovery.[8]

The court held, in short, that "[t]hese facts show[ed] that the defendants' failure to preserve Mr. Shahs' emails was negligent or perhaps grossly negligent. But the facts [did] not show intent." For example, "the plaintiff [did] not show[] that an individual intentionally deleted the emails." The court thus imposed a sanction under Rule 37(e)(1) rather than (e)(2) (which requires intent): "the jury should be given a permissive instruction — consistent with California's CACI 204 — to

---

[7] Order – ECF No. 225 at 2–3. The court incorporates this earlier order by this reference.
[8] *Id.* at 8.

ORDER – No. 20-cv-01891-CRB (LB)   3

determine whether the destruction was intentional and whether the emails were unfavorable to the defendant."[9]

### 3. The Newly Discovered Evidence and the Current Dispute

Mr. Shah used two email accounts when he worked at JadooTV: haseebshah@jadootv.com and nocoperations@jadootv.com. In January 2020, the plaintiff sent a subpoena to non-party Google, which hosted the accounts. The subpoena requested email metadata (specifically, the to, from, cc, and date fields) for emails dated between January 1, 2015, and January 29, 2020. Google objected to the subpoena but preserved the requested data.[10]

After the court's earlier sanctions order, the plaintiff sent a second subpoena to Google on October 26, 2022, requesting the same metadata for emails dated between January 1, 2015, and October 26, 2022. The plaintiff included the court's order with the subpoena. Google then produced the metadata.[11]

The plaintiff compared the two datasets provided by Google to determine whether the defendants deleted any emails while this case was pending. The plaintiff reasoned that if any emails present in the first dataset (collected by Google on April 15, 2020) were not present in the second dataset (collected by Google on December 14, 2022), then the defendants deleted those missing emails. From this comparison, the plaintiff deduced that the defendants deleted 4,115 emails from

---

[9] *Id.* at 8–9.

[10] Frank Decl. – ECF No. 262-1 at 2 (¶¶ 2–3); Jan. 29, 2020 Subpoena & Resp., Ex. 1 to *id.* – ECF No. 262-2 at 1–10; Hafeez Decl. – ECF No. 265-10 at 2 (¶ 4) ("The email accounts haseeb.shah@jadootv.com and nocoperations@jadootv.com were only used by [Mr.] Shah.").

[11] Frank Decl. – ECF No. 262-1 at 2 (¶ 3); Oct. 26, 2022 Subpoena & Resp., Ex. 2 to *id.* – ECF No. 262-2 at 11–20; Nov. 28, 2022 Subpoena Resp., Exs. 4–5 to *id.* – ECF Nos. 262-3 to -4 (thousands of pages of email metadata); Feb. 3, 2023 Subpoena Resp., Exs. 6–7 to *id.* – ECF Nos. 262-5 to -7 (thousands of pages of email metadata).

ORDER – No. 20-cv-01891-CRB (LB)    4

the Shah account, plus another 2,307 that were forwarded from the Shah account to the NOC account, for a total of 6,422 deleted emails.[12] The defendants did not produce any of those emails.[13]

The plaintiff's counsel corresponded with Google concerning the import of Google's productions. In one email from Google, dated February 16, 2023, and apparently in response to questions from the plaintiff's counsel (including about whether the data shows that JadooTV users deleted emails), Google said "[t]here may be a difference in information contained in the [two] productions due [to] the passage of time, and changes in what data is integrated/pulled from Google's legal tooling."[14]

The plaintiff expands further on the email productions. It characterizes its count of 6,422 deleted emails as "highly conservative," given that it's possible that emails were received and deleted in the time period between Google's two data collections (and thus those deletions were not captured by Google's collections).[15] The deletions occurred after the defendants' (belated) May 2019 litigation-hold notice and after Mr. Shah was dismissed from the case in March 2020.[16] The emails were manually deleted, given that the defendants admit that they had no automatic deletion policy in place.[17] And the emails were selectively deleted, given that not all of the emails from the accounts in question were deleted.[18]

The plaintiff further contends that in light of Google's productions, several representations that the defendants made in the discovery letter underlying the earlier sanctions order were false. First, the defendants said that "JadooTV and Mr. Sohail promptly preserved all evidence from May

---

[12] Frank Decl. – ECF No. 262-1 at 2–4 (¶¶ 4–10); Spreadsheets, Exs. 9–10 to *id.* – ECF No. 262-8 at 4–272 (spreadsheets created by the plaintiff that allegedly show the emails deleted from the two accounts).

[13] Frank Decl. – ECF No. 262-1 at 3 (¶ 6), 4 (¶ 10).

[14] Emails from Google, Ex. 8 to *id.* – ECF No. 262-8 at 3; Poppler Decl. – ECF No. 265-1 at 4–5 (¶ 12).

[15] Mot. – ECF No. 262 at 9.

[16] Order – ECF No. 150 (dismissing Mr. Shah for lack of personal jurisdiction); Order – ECF No. 225 at 2 (the defendants "waited until May 2019 to instruct employees, including Mr. Shah, to preserve documents").

[17] Email from the Defendants' Counsel, Ex. 12 to Frank Decl. – ECF No. 262-8 at 279.

[18] Frank Decl. – ECF No. 262-1 at 2–3 (¶¶ 5, 7–8).

2019 onwards, and instructed JadooTV employees to do the same when it was advised by counsel."[19] Second, the defendants said that they "produced all of Mr. Shah's emails in [their] possession, custody, and control."[20] Third, they argued that they "[did] not have any control over Mr. Shah's actions, and so any deletion would have been Mr. Shah's own decision."[21] Fourth, the plaintiff generally contends that the accounts in question "held more than 18,000 unproduced emails," so the defendants' claims that there were "not many emails and [that] all were produced" were false.[22] The unproduced emails, moreover, were relevant: the metadata shows that "[a]mong the deleted emails are communications that [Mr.] Shah had with [Content Delivery Networks] providers that [the] [d]efendants used to transmit [the plaintiff]'s copyrighted works," and "[t]he deleted emails also include communications between [Mr.] Shah and other key figures in the allegations of infringement and the parties' summary judgment briefing."[23]

Regarding several of these previous representations by the defendants — those to the effect that they had produced all of Mr. Shah's emails in their control — the plaintiff raises an issue distinct from whether the defendants intentionally deleted emails: whether the defendants failed to produce Mr. Shah's existing emails.

As of April 15, 2020 (after the plaintiff requested Mr. Shah's emails in February 2019), there were 5,716 emails in Mr. Shah's email account and 12,088 in the NOC email account.[24] As of December 14, 2022 (when Google collected the second set of metadata in response to the plaintiff's second subpoena), there were 4,774 emails in Mr. Shah's email account and 14,024 in the NOC account. But the defendants did not produce any emails from Mr. Shah's account, and they produced only seventy-six emails that were forwarded from Mr. Shah's account to the NOC

---

[19] Joint Disc. Letter – ECF No. 224 at 6.
[20] *Id.* at 5.
[21] *Id.*
[22] Mot. – ECF No. 262 at 13.
[23] *Id.* at 13–14.
[24] Frank Decl. – ECF No. 262-1 at 2–3 (¶¶ 5, 7).

account.[25] In the parties' prior discovery letter, the defendants' counsel said that "[a]s a corporation undergoing a Chapter 11 proceeding, JadooTV does not have the resources to retain an expensive third-party discovery vendor," and that "JadooTV has confirmed with its counsel it has already produced all emails from Mr. Shah in its possession."[26]

Based on all of the foregoing, the plaintiff requests greater sanctions than the court previously imposed for the defendants' spoliation of evidence. Specifically, the plaintiff says that the court should, "[a]t minimum, . . . award a mandatory presumption that Shah's deleted emails were unfavorable to [the] [d]efendants and instruct the jury accordingly," and the court should also:

> (1) [I]nstruct any jury that the following facts are admitted and must be accepted as true: (a) Shah, as an agent of Defendant JadooTV, Inc., transmitted the Works in the eMedia and VOD sections of the JadooTV Service (as these terms are defined in DISH's summary judgment briefing); (b) Shah did so with Defendant Sajid Sohail's knowledge and authorization and at his direction; and (2) treat these facts as admitted when deciding the parties' motions for summary judgment.[27]

The defendants counter generally that Google's productions don't change anything; the court and the parties knew at the time of the earlier sanctions order that emails were lost. The defendants never agreed to produce all emails in Mr. Shah's email accounts and instead agreed to produce only emails that were responsive to the plaintiff's document requests.[28] In September 2020, the defendants began the process of collecting responsive emails from Mr. Shah's account and the NOC account. A manager for the defendants ran the search terms and exported to the defendants' counsel all documents that hit on those terms. In October 2020, the plaintiff's counsel was told that the defendants were not finding responsive emails in Mr. Shah's account, and that they were not finding emails from his account or the NOC account "that [were] dated prior to the filing of this action."[29]

---

[25] *Id.* at 3 (¶ 6), 4 (¶ 10).

[26] Joint Disc. Letter – ECF No. 224 at 6.

[27] Mot. – ECF No. 262 at 14–15.

[28] Defs.' Resps. to Pl.'s Reqs. for Produc., Ex. 2 to Poppler Decl. – ECF No. 265-3; Sohail Decl. – ECF No. 265-11 at 2–3 (¶¶ 8–9).

[29] Poppler Decl. – ECF No. 265-1 at 3–4 (¶ 5(f)–(h)); Correspondence Between Counsel, Ex. 1 to *id.* – ECF No. 265-2 (relevant portions highlighted).

ORDER – No. 20-cv-01891-CRB (LB)                 7

The defendants explain who had access to Mr. Shah's email accounts and when. Mr. Shah "stopped working for IDC Resources and managing JadooTV's network operations in the summer of 2019," but the passwords to his email accounts were not reset until September 1, 2020. The defendants do not know whether Mr. Shah was able to access the accounts in the interim.[30] But no one else at JadooTV accessed the accounts during that time.[31] Nor has anyone at JadooTV accessed the accounts since they were searched for responsive documents in September 2020.[32]

After the present motion for reconsideration was filed, the defendants' counsel accessed Mr. Shah's email accounts. As of May 17, 2023, there were 2,966 unread emails in the Shah account inbox, all of which are marketing emails. The oldest email in that inbox is dated September 14, 2020. The "sent" mailbox contains 1,637 emails consisting of one line: "Due to unavailability I won't be able to receive email." "[T]he oldest sent email is dated February 2, 2019."[33] As for the NOC account, as of May 22, 2023, the oldest email in the inbox was dated December 21, 2018 and there were 146 emails in the "sent" mailbox.[34]

According to the defendants, this is all consistent with the state of the record (and specifically Mr. Shah's two email accounts) at the time of the earlier sanctions order.[35] For example, that the Shah account had 2,160 emails as of October 14, 2020 is not surprising: "those emails were generic marketing-related emails and were not responsive to [the plaintiff]'s requests nor relevant to the case."[36] Similarly, even before Google's productions of metadata, "one could deduce that something had happened in these [email] accounts[,] in light of the fact there were limited communications involving Mr. Shah from a limited time period."[37] As for the plaintiff's argument that Mr. Shah's emails with key individuals at JadooTV and Content Delivery Networks were

---

[30] Hafeez Decl. – ECF No. 265-10 at 2 (¶ 5).

[31] *Id.* at 3 (¶ 6).

[32] *Id.* (¶ 8).

[33] Poppler Decl. – ECF No. 265-1 at 2 (¶ 4).

[34] Hafeez Decl. – ECF No. 265-10 at 3 (¶ 9).

[35] Opp'n – ECF No. 265 at 6.

[36] *Id.* at 8.

[37] *Id.* at 6.

relevant, the defendants respond that if so, "those communications with Mr. Shah would have been produced."[38]

The defendants also contend that they were not promptly provided access to Google's productions, as required by Federal Rule of Civil Procedure 45. Whereas the plaintiff received the productions on November 28, 2022, and February 3, 2023, the defendants did not receive them until May 2, 2023 — three days before the plaintiff filed the present motion.[39]

### 4. Relevant Procedural History

Fact discovery closed on November 11, 2022.[40] The parties have briefed their summary-judgment motions, which will be heard by the trial court on June 9, 2023.[41] The trial court previously referred all discovery matters to the undersigned.[42] As mentioned, the court granted leave for the plaintiff to move to reconsider the earlier sanctions order.[43]

## ANALYSIS

The court denies further sanctions because the plaintiff still has not shown intentional spoliation under Rule 37(e)(2).

### 1. Legal Standard

"Magistrate judges may issue monetary sanctions and adverse inference jury instructions for spoliation." *Clear-View Techs., Inc. v. Rasnick*, No. 5:13-cv-02744-BLF, 2015 WL 2251005, at *6 (N.D. Cal. May 13, 2015) (citing, *inter alia*, *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 985 (N.D. Cal. 2012)) ("[M]agistrate judges throughout the Ninth Circuit have commonly

---

[38] *Id.* at 9.
[39] Mot. – ECF No. 265 at 6–7.
[40] Scheduling Order – ECF No. 218 at 15.
[41] Clerk's Notice – ECF No. 246.
[42] Order of Reference – ECF No. 173.
[43] Order – ECF No. 263.

relied on their inherent power to issue adverse inference jury instructions as a sanction for spoliation."). "Because a permissive adverse inference jury instruction does not have an effect similar to those motions considered dispositive under [28 U.S.C.] § 636(b)(1)(A), such an instruction is not properly characterized as dispositive and so is within the magistrate judge's authority." *Id.* (cleaned up).

Before Rule 37 was revised in 2015, courts could issue sanctions for spoliating electronically stored information (ESI) under their inherent authority or Rule 37. *Clear-View Techs.*, 2015 WL 2251005, at *7 (holding that courts "may issue sanctions for spoliation under two authorities" and that "[w]here Rule 37 does not apply, the court has additional discretion under its inherent authority to respond to abusive litigation practices"). But after the 2015 amendments to Rule 37, courts can no longer rely on inherent authority to issue sanctions for failing to preserve ESI. *Newberry v. Cnty. of San Bernardino*, 750 F. App'x 534, 537 (9th Cir. 2018) (the "detailed language of Rule 37(e) 'therefore foreclose[d] reliance on inherent authority' to determine whether terminating sanctions were appropriate") (quoting Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment); *Fiteq Inc v. Venture Corp.*, No. 13-cv-01946-BLF, 2016 WL 1701794, at *3 (N.D. Cal. Apr. 28, 2016) ("the Advisory Committee's Notes to Rule 37(e) explicitly foreclose[s]" relying on inherent authority to impose spoliation sanctions).

As revised in 2015, Rule 37(e) identifies three requirements to show that electronically stored information (ESI) was spoliated: "(1) the 'electronically stored information' at issue 'should have been preserved in the anticipation or conduct of litigation'; (2) that information 'is lost because a party failed to take reasonable steps to preserve it' and (3) 'it cannot be restored or replaced through additional discovery.'" *Matthew Enter. v. Chrysler Grp. LLC*, No. 13-cv-04236-BLF, 2016 WL 2957133, at *3 (N.D. Cal. May 23, 2016) (quoting Fed. R. Civ. P. 37(e)).

Concerning the sanctions available for spoliation, Rule 37(e)(1) provides that the court "may order measures no greater than necessary to cure the prejudice." Rule 37(e)(2), however, provides for more severe sanctions in cases where a party intentionally destroys information. Under Rule 37(e)(2), the court may issue the following sanctions: (1) a presumption "that the lost information

was unfavorable to the party"; (2) a jury instruction "that it may or must presume the information was unfavorable to the party"; or (3) a dismissal or default judgment.

For purposes of Rule 37(e)(2), "intent . . . means the evidence shows, or it is reasonable to infer, that a party purposefully destroyed evidence to avoid its litigation obligations." *Facebook, Inc. v. OnlineNIC Inc.*, No. 19-cv-07071-SI (SVK), 2022 WL 2289067, at *6 (N.D. Cal. Mar. 28, 2022) (cleaned up). "Relevant factors [concerning intent] can include, *inter alia*, the timing of the destruction, the method of deletion (*e.g.*, automatic deletion vs. affirmative steps of erasure), selective preservation, the reason some evidence was preserved, and, where relevant, the existence of institutional policies on preservation." *Laub v. Horbaczewski*, No. CV 17-6210-JAK (KS), 2020 WL 9066078, at *6 (C.D. Cal. July 22, 2020). But, in any case, "[n]egligence — even gross negligence — in failing to retain relevant evidence is not sufficient to support an adverse inference under Rule 37(e)(2)." *Meta Platforms, Inc. v. BrandTotal Ltd.*, No. 20-cv-07182-JCS, 2022 WL 1990225, at *6 (N.D. Cal. June 6, 2022).

For example, in *Phan v. Costco Wholesale Corp.*, the defendant in a slip-and-fall personal-injury case failed to preserve a video of the fall, but the plaintiff did not submit evidence that the defendant intentionally deleted the video. No. 19-cv-05713-YGR, 2020 WL 5074349, at *4 (N.D. Cal. Aug. 24, 2020). The court found that the failure to preserve the video "indicate[d] sloppiness, but not necessarily intent" and denied a request for the more severe sanctions available under Rule 37(e)(2). *Id.* Instead, the court held that the jury should be instructed — consistent with California's CACI 204 — to determine whether the destruction was intentional and whether the video was unfavorable to the defendant. *Id.* On the other hand, in *First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, the court held that an "explicit agreement to avoid communicating electronically suggest[ed] a shared intent to keep incriminating facts out of evidence," and that the explanation that several individuals "happened to have a habit of routinely deleting text messages" was unlikely. No. 15-cv-1893-HRL, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016). On these facts, the court issued a permissive adverse-inference instruction as a sanction under Rule 37(e)(2). *Id.* at *3–4.

Concerning the kinds of adverse-inference instructions available under Rule 37, there are three types of adverse-inference instructions (listed from harshest to most lenient): (1) an instruction "that certain facts are deemed admitted and must be accepted as true"; (2) "a mandatory presumption"; and (3) an instruction that "permits (but does not require) a jury to presume that the lost evidence is both relevant and favorable to the innocent party." *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1150 (N.D. Cal. 2012) (cleaned up); *see also Dae Kon Kwon v. Costco Wholesale Corp.*, 469 F. App'x 579, 580 (9th Cir. 2012) ("A fact finder may draw an inference against any party that destroys or despoils evidence, but that inference is permissive rather than mandatory."). Here, the plaintiff seeks a mandatory presumption and mandatory adverse-inference instructions that would require the jury to find that certain facts have been established (and would require the trial court to so find for purposes of the summary-judgment motions).[44]

**2. Application**

The court denies greater sanctions. The plaintiff has the burden to show the intent required by Rule 37(e)(2). *Chinitz v. Intero Real Est. Servs.*, No. 18-cv-05623-BLF, 2020 WL 7389417, at *2 (N.D. Cal. May 13, 2020) ("A party moving for spoliation sanctions under Rule 37(e)(2) has 'the burden of establishing spoliation by demonstrating that [the non-moving party] destroyed documents and had some notice that the documents were potentially relevant to the litigation before they were destroyed.'") (quoting *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015)). The email metadata produced by Google does not meet that burden.

The plaintiff's main point is that the differences between the two sets of metadata (one set collected in April 2020 and the other in December 2022) show that specific emails were manually and selectively deleted. But in its explanation of the metadata, Google said "[t]here may be a difference in information contained in the [two] productions due [to] . . . changes in what data is

---

[44] Mot. – ECF No. 262 at 14–15.

integrated/pulled from Google's legal tooling."[45] It is thus uncertain whether the differences between the two sets of metadata can be relied on as circumstantial evidence of intent.

More broadly, the metadata does not change the core circumstantial evidence that the court previously relied on to impose sanctions. At the time of the earlier order, it was undisputed that spoliation had occurred. At best, Google's productions show the to, from, cc, and date fields of the specific emails that were spoliated. But given that the defendants were obligated to produce only those emails that were responsive to the plaintiff's document requests, the limited metadata in Google's productions is insufficient to determine whether the allegedly spoliated emails were relevant (even assuming sufficient proof that they were deleted selectively). *Deerpoint Grp., Inc. v. Agrigenix, LLC*, No. 118CV00536AWIBAM, 2022 WL 16551632, at *17–18 (E.D. Cal. Oct. 31, 2022) (whether the spoliated emails have been shown to be responsive to document requests can be important to determining whether the spoliation was intentional).

For example, one of the plaintiff's document requests asked for all emails exchanged with certain entities "concerning the Protected Channels, eMedia, [the South Asian Super Pack], alleged copyright infringement, or [Mr.] Shah." Another requested "[a]ll documents exchanged between JadooTV and [Mr.] Shah." The defendants objected to the requests as overbroad and, for the second request, agreed to produce "non-privileged documents sufficient to show Jadoo Defendants' communications with [Mr.] Shah pertaining to the Protected Channels and [the South Asian Super Pack]."[46] The exact scope of the defendants' productions from the two email accounts in question was then the subject of a meet-and-confer process ordered by the court in October 2020.[47] Given the defendants' declaring that they never agreed to produce every email involving Mr. Shah, the court is left to assume that the defendants' productions were limited in accordance with their objections — meaning that the emails' relevance depended on their content. Because Google's productions do not include the content or subject lines of the allegedly spoliated emails,

---

[45] Emails from Google, Ex. 8 to *id.* – ECF No. 262-8 at 3; Poppler Decl. – ECF No. 265-1 at 4–5 (¶ 12).

[46] Defs.' Resps. to Pl.'s Reqs. for Produc., Ex. 2 to Poppler Decl. – ECF No. 265-3 at 3–4.

[47] Disc. Letter – ECF No. 208; Order – ECF No. 209.

the court cannot tell whether those emails were relevant — *i.e.*, whether they concerned the Protected Channels or the South Asian Super Pack. Thus, the current record is effectively the same as before: sometime before September 2020, emails were lost, and at most the court can infer gross negligence.

The plaintiff also contends that the metadata shows that the defendants failed to produce emails that weren't deleted. *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995) (sanctions are permissible for concealment as opposed to destruction of documents). For example, "at the time Google gathered the [second set of] email headers [in December 2022], there were 14,024 of [Mr.] Shah's emails in the NOC Account and an additional 4,774 emails in the Shah [a]ccount that were never produced."[48] But this argument faces the same problem as the plaintiff's spoliation argument: the Google metadata is insufficient to show relevance. And there are other reasons specific to the two accounts to reject the plaintiff's contention here.

As for the 4,774 emails in Mr. Shah's account, it appears that irrelevant emails (such as marketing emails) continued to be sent to the account after the defendants searched the account for discovery purposes in September 2020. For instance, the plaintiff contends that as of April 15, 2020, there were 5,716 emails in Mr. Shah's account, that 4,115 of these emails were deleted sometime later, and that as of December 2022 there were 4,774 emails in the account.[49] The defendants declare that as of May 2023, the unread emails in Mr. Shah's inbox were marketing emails.[50] This all suggests that Mr. Shah's account still exists and receives marketing emails. The plaintiff thus has not shown that the defendants failed to produce relevant emails (other than the main spoliation that was the subject of the earlier sanctions order).

The 14,024 emails in the NOC account may present a closer issue. According to the plaintiff, the defendants apparently "did not even make an effort to review [those emails]."[51] In their

---

[48] Reply – ECF No. 266 at 4.
[49] Frank Decl. – ECF No. 262-1 at 2–3 (¶¶ 5–6).
[50] Poppler Decl. – ECF No. 265-1 at 2 (¶ 4).
[51] Reply – ECF No. 266 at 4.

declarations, the defendants explain only that as of May 2023, the oldest email in the inbox was dated December 21, 2018 and there were 146 emails in the "sent" mailbox.[52] Still, the parties' 2020 correspondence (after the trial court granted the plaintiff's motion to compel a broad range of documents[53]) appears to show that the NOC account was searched for responsive emails in good faith (albeit with an inefficient process that used only JadooTV personnel).

As of September 3, 2020, the defendants were in the process of collecting emails from the Shah and NOC accounts.[54] The defendants' counsel was "provid[ing] specific search terms to Faisal Abdullah and he [was] export[ing] all emails that hit on those search terms to [counsel] without selecting which ones to provide."[55] Responsive emails were not being found in Mr. Shah's account, possibly because they had been forwarded to the NOC account, and emails dated prior to the filing of this case were not being found in either account.[56] On November 13, 2020, some emails were produced from the NOC account.[57]

The court cannot tell, and Google's productions of metadata do not clarify, whether the defendants failed to produce relevant emails that hadn't been deleted. If anything, this issue should have been pursued as a matter of fact discovery after the November 2020 production. As mentioned, the court did order the parties to meet and confer on several matters — including the Shah and NOC account productions — in October 2020.[58] The lack of a follow-up dispute or proof that relevant emails weren't produced leaves the court without reason to question the defendants' good faith in running search terms and then producing responsive emails.

The plaintiff's remaining arguments do not change the result.

---

[52] Hafeez Decl. – ECF No. 265-10 at 3 (¶ 9).

[53] Order – ECF No. 145.

[54] Correspondence Between Counsel, Ex. 1 to Poppler Decl. – ECF No. 265-2 at 14 (relevant portions highlighted).

[55] *Id.* at 8 (relevant portions highlighted).

[56] *Id.* at 4–6 (relevant portions highlighted).

[57] *Id.* at 2 (identifying bates range JAD009175–JAD009401).

[58] Disc. Letter – ECF No. 208; Order – ECF No. 209.

The plaintiff points out that the delay in changing Mr. Shah's email-account passwords after he ceased working for the defendants (a delay from July 2019 to September 2020) "is contrary to how [the defendants] typically handled the email accounts of their departing employees."[59] The defendants declare that JadooTV filed for bankruptcy in May 2019 and subsequently there was a "tumultuous time at JadooTV with the bankruptcy and massive layoffs."[60] Also, after Mr. Shah's departure, no one at JadooTV accessed his email accounts, other than for discovery purposes in September 2020.[61] Again, this is effectively the same record the court was presented with before, and at most it shows gross negligence.

The plaintiff also contends that given differences between the email counts (1) identified by the defendants when their counsel reviewed Mr. Shah's accounts in May 2023 and (2) when Google collected the second set of metadata in December 2022, the defendants must have deleted emails after Google's second collection.[62] But again, the exact counts in Google's data depend, as Google explained, on its "legal tooling." In any case, it is unclear how recent deletions after the close of fact discovery could have been for the purpose of depriving the plaintiff of using the emails in the litigation. Fed. R. Civ. P. 37(e)(2).

The plaintiff further contends, based on *Deerpoint Grp.*, that the actions of former employees after their employment ended can be sufficient grounds to find intent under Rule 37(e)(2).[63] 2022 WL 16551632, at *17–18. But in that case, the court found that the defendants had displayed "conscious disregard in letting the [former employees'] laptops leave [the defendants'] custody and control." *Id.* at *17. Here, by contrast, the bankruptcy circumstances suggest only negligence or gross negligence. And in *Deerpoint Grp.*, the plaintiff had "uncovered documents from third parties which should have been produced by [the] [d]efendants as responsive to document

---

[59] Reply – ECF No. 266 at 5.

[60] Sohail Decl. – ECF No. 265-11 at 2 (¶¶ 3, 6–7).

[61] Hafeez Decl. – ECF No. 265-10 at 3 (¶¶ 6, 8).

[62] Reply – ECF No. 266 at 6, 8.

[63] *Id.* at 7.

requests." *Id.* at *18. That is unlike the situation here, where Google's metadata productions are insufficient to show relevance.

According to the plaintiff, the Google metadata shows — contrary to the defendants' representations — that persons other than Mr. Shah had access to and used the NOC account after Mr. Shah stopped using it.[64] Even if that is true, though, the relevant discovery from the NOC account would have been from the time period that Mr. Shah was using that account. For example, the defendants originally searched the NOC account based on the fact that Mr. Shah had forwarded emails to it from his main account. The NOC account's relevance — at least for purposes of this sanctions dispute — was because of Mr. Shah.[65]

Finally, even if the totality of facts made it "reasonable to infer" that the spoliation that occurred was intentional, *Facebook*, 2022 WL 2289067, at *6, the court would adopt the same sanction as it did before. *See, e.g.*, *First Fin. Sec.*, 2016 WL 5870218, at *3–4 (finding intent but imposing only a permissive adverse-inference instruction).

## CONCLUSION

The court denies further sanctions against the defendants. This disposes of ECF No. 262.

**IT IS SO ORDERED.**

Dated: June 1, 2023

LAUREL BEELER
United States Magistrate Judge

---

[64] *Id.* at 8–9.

[65] Correspondence Between Counsel, Ex. 1 to Poppler Decl. – ECF No. 265-2 at 5 (relevant portions highlighted).